**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

|  |  |
|---|---|
| DAVID P. DONOVAN, | |
| Plaintiff, | Civil Action No. 1:20-CV-01344-AJT-IDD |
| v. | |
| BETH A. WILKERSON, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF NONPARTY WP COMPANY LLC'S**
**MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF ASSERTING THE**
**PUBLIC INTEREST IN ACCESS TO JUDICIAL RECORDS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................2

    A.    The Post's Coverage of Workplace Sexual Harassment at the Team......................2

    B.    This Litigation.......................................................................................3

    C.    The Post's Motion to Intervene................................................................5

ARGUMENT ........................................................................................................6

I.    The Post Has Standing To Intervene for the purpose of asserting the Public Interest in Access. ...................................................................................6

II.    The Post's Intervention Will Not cause undue delay or prejudice. ......................7

III.    Plaintiff's Claimed Interest In Confidentiality Does Not Overcome the Presumption of Public Access. ...................................................................8

    A.    The Broad Redactions Sought By Plaintiff Are Precluded By the First Amendment.........................................................................................9

    B.    The Broad Redactions Sought by Plaintiff Are In Conflict With Federal Common Law....................................................................................13

CONCLUSION....................................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allstate Ins. Co. v. Warns*,
  2012 WL 681792 (D. Md. Feb. 29, 2012) ............................................................10

*Black v. Central Motor Lines, Inc.*,
  500 F.2d 407 (4th Cir. 1974) ..................................................................................7

*Boone v. City of Suffolk*,
  79 F. Supp. 2d 603 (E.D. Va. 1999) .......................................................................7

*Bureau of Nat'l Affairs v. Chase*,
  2012 WL 3065352 (D. Md. July 25, 2012)............................................................11

*Cochran v. Volvo Grp. N. Am., LLC*,
  931 F. Supp. 2d 725 (M.D.N.C. 2013) ..................................................................11

*Cohen v. Trump*,
  2016 WL 3036302 (S.D. Cal. May 27, 2016).........................................................15

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) .......................................................................... *passim*

*Good v. West Virginia-Am. Water Co.*,
  2017 WL 3381363 (S.D. W. Va. Aug. 4, 2017) ......................................................9

*Hargrove v. Ryla Teleservices, Inc.*,
  2013 WL 1897027 (E.D. Va. Apr. 12, 2013), *R. & R. adopted*, 2013 WL
  1897110 (E.D. Va. May 03, 2013).........................................................................11

*In re Knight Publ'g Co.*,
  743 F.2d 231 (4th Cir. 1984) ..........................................................................10, 14

*In re Marriott*,
  2019 WL 4855202 (D. Md. Aug. 30, 2019) ............................................................9

*K.S. v. Ambassador Programs Inc.*,
  2010 WL 3565481 (E.D. Va. Sept. 3, 2010)..........................................................12

*Kamakana v. City & Cty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ...............................................................................13

*Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*,
  611 F. Supp. 2d 572 (E.D. Va. 2009) ....................................................................12

*Lifenet Health v. Lifecell Corp.*,
2015 WL 12517430 (E.D. Va. Feb. 12, 2015)............................................................9, 11, 12

*Malon v. Franklin Fin. Corp.*,
2014 WL 12768782 (E.D. Va. Dec. 4, 2014) ........................................................................12

*Miles v. Ruby Tuesday, Inc.*,
799 F. Supp. 2d 618 (E.D. Va. 2011) ....................................................................................11

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978).....................................................................................................1, 13, 14

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994)......................................................................................................6

*Press-Enter. Co. v. Super. Ct.*,
464 U.S. 501 (1984)............................................................................................................9, 13

*Price v. Tuggle*,
2016 WL 4098547 (E.D. W. Va. July 28, 2016) ....................................................................13

*Rosenfeld v. Montgomery Cty. Public Schs.*,
25 F. App'x 123 (4th Cir. 2001) .............................................................................................6

*Rushford v. New Yorker Magazine, Inc.*,
846 F.2d 249 (4th Cir. 1988) ....................................................................................6, 9, 10, 13

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*,
2013 WL 3465352 (D. Md. July 9, 2013)...............................................................................11

*Smith v. Westminster Mgmt., LLC*,
2018 WL 9944968 (D. Md. Jan. 11, 2018)...............................................................................8

*Stone v. Univ of Md. Med. Sys. Corp.*,
855 F.2d 178 (4th Cir. 1988) .........................................................................................6, 7, 9

*U.S. ex rel. Permison v. Superlative Techs., Inc*,
492 F. Supp. 2d 561 (E.D. Va. 2007) .....................................................................................14

*Under Seal v. Under Seal*,
326 F.3d 479 (4th Cir. 2003) ..................................................................................................12

*United States v. Cianfrani*,
573 F.2d 835 (3d Cir. 1978)......................................................................................................9

*Virginia Dep't of State Police v. Wash. Post*,
386 F.3d 567 (4th Cir. 2004) .........................................................................................6, 8, 9

iii

**Rules**

E.D. Va. L. Civ. R. 5(C) ...........................................................................................3, 8

Fed. R. Civ. P. 24(b)(3)................................................................................................7

Fed. R. Civ. P. 41(a)(1)(A)(i) ..................................................................................3, 4

Fed. R. Civ. P. 72(a) ....................................................................................................5

**Constitutional Provisions**

U.S. Const. amend. I ...........................................................................................*passim*

WP Company LLC d/b/a The Washington Post (the "Post") submits this memorandum of law in support of its Motion to Intervene for the limited purpose of asserting its right, as a member of the public, to access court records in this matter.

## PRELIMINARY STATEMENT

This lawsuit has largely been litigated under cover of darkness.  Plaintiff filed his complaint under seal, and nearly all details concerning his claims and the underlying facts remain shrouded in secrecy.  Based upon the few details currently available on the public docket, it appears that Plaintiff David Donovan ("Plaintiff"), a former general counsel for the Washington Redskins (now known as the Washington Football Team), commenced this lawsuit to try and prevent the disclosure of a confidential 2009 Settlement Agreement to which he was a party.  Defendant Beth Wilkinson ("Defendant"), a partner at the law firm Wilkinson Stekloff, is currently conducting an investigation overseen by the NFL concerning allegations by multiple women concerning workplace sexual harassment in the Washington Football Team organization (the "Team").

Given the substantial public interest in this issue, and the well-established presumption of access to judicial records, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), the Post respectfully asks that this Court unseal all documents filed by the parties and that any redactions be as narrow as possible so that the public can understand in clear terms the nature of the issues that gave rise to this suit.  As the Fourth Circuit has explained, "When parties 'call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.'"  *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) (citation omitted).

Counsel for the Post conferred with counsel for the parties and for Intervenor Pro-Football, Inc. (the "Team") regarding this Motion.  Defendant takes no position on the Post's

1

Motion, but Plaintiff and the Team indicated that they do not consent (Plaintiff's objections are addressed below).

## BACKGROUND

### A.    The Post's Coverage of Workplace Sexual Harassment at the Team.

The Post has reported extensively on these issues.  On July 16, 2020, the Post published an investigative report detailing allegations made by fifteen female Team employees during the period 2006 to 2019.[1]  The next day, the Post reported that the Team had hired Defendant to conduct an internal investigation into the allegations.[2]  A series of stories followed, including a Post report about the Team agreeing to let the NFL oversee Defendant's investigation.[3]

---

[1] Will Hobson, et al., *From dream job to nightmare: More than a dozen women allege sexual harassment and verbal abuse by former team employees at Redskins Park*, Wash. Post (July 16, 2020), https://www.washingtonpost.com/sports/2020/07/16/redskins-sexual-harassment-larry-michael-alex-santos/?arc404=true.

[2] Adam Kilgore, *Who Is Beth Wilkinson? Lawyer Leading Washington NFL Team's Investigation Has High-Profile* History, Wash. Post. (July 17, 2020), https://www.washingtonpost.com/sports/2020/07/17/beth-wilkinson-washington-nfl-investigation/

[3] Will Hobbson, et al., *Lewd cheerleader videos, sexist rules: Ex-employees decry Washington's NFL team workplace*, Wash. Post (Aug. 26, 2020), https://www.washingtonpost.com/sports/2020/08/26/redskins-cheerleaders-video-daniel-snyder-washington/?arc404=true&itid=lk_inline_manual_5; Liz Clarke, et al., *NFL assumes oversight of investigation into Washington Football Team workplace*, Wash. Post (Aug. 31, 2020), https://www.washingtonpost.com/sports/2020/08/31/nfl-assumes-oversight-investigation-into-washington-football-team-workplace/; Will Hobson, *NFL asked Snyder to 'back off' use of private investigators, lawyer says, as PI visits rattle ex-employees*, Wash. Post (Sept 4, 2020), https://www.washingtonpost.com/sports/2020/09/04/dan-snyder-private-investigators-nfl/; Les Carpenter, *Jason Wright has helped save big corporations. Next up: The Washington Football Team*, Wash. Post (Sept. 5, 2020), https://www.washingtonpost.com/sports/2020/09/04/jason-wright-washington-football-team/; Beth Reinhard, et al., *Ex-Washington cheerleaders shaken by lewd videos: 'I don't think they viewed us as people*, Wash. Post (Oct. 16, 2020), https://www.washingtonpost.com/sports/2020/10/16/washington-cheerleaders-video-lawsuit/' Will Hobson, *Harassment claims and dwindling donations: The fall of Daniel Snyder's nonprofit for Native Americans*, Wash. Post (Nov. 18, 2020), https://www.washingtonpost.com/sports/2020/11/18/original-americans-foundation-harassment/; Beth Reinhard, et al., *NFL investigation of Washington Football Team uncovers confidential*

2

### B.   This Litigation.

Plaintiff commenced this suit by filing a Verified Complaint on November 9, 2020.  Dkt. 32 at 1.  In his Non-Confidential Memorandum In Support Plaintiff's Motion For Leave to File Under Seal and to Seal Case, Plaintiff stated that he "seeks to enjoin Defendant from disseminating information that is the subject of a confidential agreement to which Plaintiff is a party, and other related confidential information."  Dkt. 24 at 1.  Plaintiff further stated that "all allegations, motions, exhibits and testimony are inextricably intertwined with Confidential Information that the action seeks to protect."  *Id.* at 2.

On November 10, 2020, this Court issued an order "directing that all current and future pleadings in this case be sealed 'until further Order of this Court.'"  Dkt. 32 at 1 (quoting Dkt. 7).

On November 17, 2020, the Court denied Plaintiff's motion to seal the entire case.  Dkt. 32 (the "November 17 Order").  However, the Court also ordered that "the existing pleadings and transcripts which currently remain sealed pursuant to Local Rule 5(C) shall remain sealed pending the Magistrate Judge's decision as to any particular pleading or transcript or portion thereof . . . ."  *Id.* at 4.

On November 23, 2020, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice pursuant to Rule 41(a)(1)(A)(i).  Dkt. 63.  Two days later, on November 25, 2020, Plaintiff filed a Notice of Lack of Jurisdiction and Mootness, in which Plaintiff argued, *inter alia*, that his filing of a Notice of Voluntary Dismissal divested the Court "of jurisdiction over the merits of this matter; [and] as a result, the Court should maintain the status quo and permit the documents to remain under seal."  Dkt. 67 at 1.  The same day, Defendant filed a response, in

---

*settlement*, Wash. Post (Dec. 7, 2020), https://www.washingtonpost.com/sports/2020/12/07/beth-wilkinson-lawsuit-washington-football/.

which she set forth arguments and case law supporting the Court's continued exercise of jurisdiction over "the unresolved redacting and sealing issues." Dkt. 69 at 4. In her response, Defendant also observed that, "[s]ince the outset of this action, Mr. Donovan has sought to litigate this case in secret," Dkt. 69 at 2, and noted that during a November 20, 2020 hearing before Judge Davis (the transcript of which is not on the public docket), Judge Davis told Plaintiff's counsel that "if Mr. Donovan wanted everything kept out of the public eye, he should not have filed this lawsuit."[4] *Id.*

On November 25, 2020, Judge Davis entered an Order regarding the parties' pending motions to file certain documents under seal, granting in part and denying in part the parties' respective motions to seal, and specifying redactions to particular documents. Dkt. 68 at 1-3. Specifically, Judge Davis directed the parties to make the following redactions:

> [T]he phrases "settlement" and "settlement agreement;" references to the date, year and age of the settlement; references to the matter giving rise to allegations and the year of said matter; the "Complainant" in reference to the matter and settlement, as well as complainant's name and title; and all references to news media investigation of or inquiries into the matter. All discussions or references concerning particularities of the settlement or agreement, such as a requirement that a waiver of confidentiality be in writing and prohibition on disparagement, shall be redacted. Any references to arbitration demand; any information protected by attorney-client privilege, such as letters between lawyers and clients; and any references to the NFL, Washington Football team or the word "team" in reference to the matter giving rise to the settlement shall be redacted.

Dkt. 68 at 1-2.

Judge Davis ordered further redactions with respect to specific exhibits filed by the parties under seal. For example, with respect to Defendant's Prehearing Memorandum, filed under seal as Exhibit C to Defendant's Objections to Plaintiff's Proposed Redactions of the

---

[4] For the reasons set forth in Defendant's brief, the Post agrees with Defendant that the Court retains jurisdiction in this matter, including jurisdiction to determine how documents are to be filed on the public docket. *See* Dkt. 69.

Record, Dkt. 46-3, Judge Davis ordered that in the second paragraph, "the adjective characterizing the nature of misconduct should be redacted."  Dkt. 68 at 2.  Judge Davis further ordered that the parties make additional redactions to certain documents, but, without access to the underlying sealed documents, it is difficult to ascertain the substance of those additional redactions based on the language in the Court's Order (see, *e.g.*, "[i]n Exhibit A, Transcript of a motions hearing before Judge Trenga, . . . page 22, lines 22 through page 23, line 2, ending in 'gain' shall be redacted.").  *Id*.  Judge Davis further ordered that the parties "modify any other Motions to Seal that have been filed but not referenced in this Order to be consistent with redactions approved and denied by this Order."  *Id*. at 3.

On December 7, 2020, Judge Davis entered an Order requiring that "no party shall submit additional filings of previously sealed materials in redacted form for public filing prior to noon on December 9, 2020, to allow third parties time to complete preparing their papers and file materials in this Court seeking the opportunity to assert privileges and other privacy and related interests."  Dkt. 75.

On December 9, 2020, Judge Davis granted a Motion to Intervene filed by the Team.  Dkt.  84.  The same day, Judge Davis ordered that the parties and the Team submit their proposed redactions to the Clerk for review on December 17, 2020.  Dkt. 84.

On December 16, 2020, Judge Davis ordered that the "deadline for any party or intervenor to file objections, pursuant to Federal Rule of Civil Procedure 72(a), to the Court's November 25, 2020 Sealing Order" be extended to January 5, 2021."  Dkt. 90.

### C.    The Post's Motion to Intervene.

With this Motion, the Post seeks to intervene for the purpose of asserting the public interest in understanding this litigation.  Specifically, all documents filed by the parties should be available on the public docket, and any redactions should be minimal and narrowly tailored to

allow for transparency into these proceedings, consistent with the First Amendment and federal common law.

## ARGUMENT

### I.   THE POST HAS STANDING TO INTERVENE FOR THE PURPOSE OF ASSERTING THE PUBLIC INTEREST IN ACCESS.

As this Court observed in its November 17 Order, "'[i]t is well settled that the public and press have a qualified right of access to [judicial documents and records] filed in civil and criminal proceedings.'"  Dkt. 32 at 2 (quoting *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014)).  Consistent with that well-settled principle, the Fourth Circuit has held that "the press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records." *Rosenfeld v. Montgomery Cty. Public Schs.*, 25 F. App'x 123, 131 (4th Cir. 2001).  *See also Stone v. Univ of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988), (recognizing newspaper's right to intervene for the purpose of unsealing records); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (permitted the Post to intervene for limited purpose of asserting public's interest in sealed records); *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 572 (4th Cir. 2004) (media organizations permitted to intervene and to move for unsealing of documents).  *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) ("The Newspapers may have standing notwithstanding the fact that 'they assert rights that may belong to a broad portion of the public at large.'") (citation omitted).

Moreover, Plaintiff's voluntary dismissal has no effect on the Court's jurisdiction to grant the Post's Motion to Intervene, and the Post joins in Defendant's arguments in favor of this Court's continued jurisdiction.  *See* Dkt. 69.  In the Fourth Circuit, nonparty media intervenors have been permitted to move to unseal records even after an action is terminated.  *See Boone v.*

*City of Suffolk*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999) (citing *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974); *Stone*, 855 F.2d at 180).

## II.    THE POST'S INTERVENTION WILL NOT CAUSE UNDUE DELAY OR PREJUDICE.

In deciding a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  By Order dated December 9, 2020 – just over one week ago – Judge Davis held that the Team's intervention satisfied this standard:

> This action was only recently commenced and has not progressed past the preliminary stages.  To date, the Defendant has not submitted an answer, no Case Management Order has been entered, discovery has not been served, and, the Court has not held a hearing on the Plaintiff's motion for a preliminary injunction.  As required by Rule 24(b)(3), the Team's intervention would also not unduly delay or prejudice the adjudication of the original parties' rights. The merits of this case have already been resolved, including by the Plaintiff's voluntary dismissal.  The only outstanding issues concern questions of confidentiality.  Thus, the Team's intervention would not cause any prejudice or otherwise disrupt the proceedings that are, for all intents and purposes, already resolved aside from this narrow issue.

Dkt. 84 ¶¶ 3-4.  The Post's motion is timely and will not cause undue delay or prejudice for the same reasons.

Even though the Team was permitted to intervene just last week, counsel for Plaintiff has indicated to the Post's counsel that Plaintiff opposes the Post's Motion.  While this Court and Judge Davis have rendered decisions on sealing, as Plaintiff stated in Plaintiff's Consent Motion For Extension of Time, dated December 15, 2020, "the parties and the Team have been meeting and conferring in good faith to reach agreement on application of redactions to the sealed materials under the Sealing Order," and the deadline for submitting proposed redactions to the Clerk is December 17, 2020.  Dkt. 85 ¶¶ 3-4.  Judge Davis granted in part and denied in part Plaintiff's Motion for an Extension of Time, ordering that the deadline for filing objections to the

Sealing Order would be extended to January 5, 2021.  Dkt. 90.  Based upon the foregoing, it seems that adjudication of the confidentiality issues in this case is ongoing.

Moreover, while Defendant has generally opposed the broad scope of sealing and redaction proposed by Plaintiff, there is no party or intervenor in this case currently asserting the public's interest in access.  Even where – as here – one of the parties is already advocating for greater disclosure, courts still permit the media to intervene on the public's behalf.  *See Smith v. Westminster Mgmt., LLC*, 2018 WL 9944968, at *1 (D. Md. Jan. 11, 2018) ("Nonparty media intervenors have been permitted to intervene to seek access to records even when parties to the case have also opposed the sealing of records.") (citing *Virginia Dep't of State Police*, 386 F.3d at 572).

The Post's motion should be granted because it is timely and will not cause undue delay or prejudice.

## III.   PLAINTIFF'S CLAIMED INTEREST IN CONFIDENTIALITY DOES NOT OVERCOME THE PRESUMPTION OF PUBLIC ACCESS.

Plaintiff's efforts to litigate this case in secret are in direct conflict with the well-established right of public access.  *See Doe*, 749 F.3d at 265.  *See also* E.D. Va. L. Civ. R. 5(C) ("Motions to filed documents under seal are disfavored and discouraged" and "[b]lanket sealing of entire briefs, documents or other papers is rarely appropriate.").  Given the substantial public interest in this case, the Court should ensure that any document redactions are minimal, and that they do not interfere in any way with the public's ability to understand either the nature of this litigation or the facts that gave rise to it.[5]

---

[5] To be clear, the Post does *not* seek disclosure of privileged material, or sensitive personal information, such as social security numbers, home addresses, phone numbers, or sensitive personal financial information.

As the Fourth Circuit explained in *Doe*:

> The public right of access has two dimensions.  First, the right protects the public's ability to oversee and monitor the workings of the Judicial Branch.  Second, public access to the courts promotes the institutional integrity of the Judicial Branch.  'Public confidence [in the judiciary] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'

749 F.3d at 263 (internal citations omitted) (quoting *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978)).  "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment."  *Va. Dep't of State Police*, 386 F.3d at 575.  Under either standard, "[t]he public's right of access to judicial records and documents may be abrogated only in unusual circumstances."  *Stone*, 855 F.2d at 182.

### A.  The Broad Redactions Sought By Plaintiff Are Precluded By the First Amendment.

The test for satisfying the First Amendment standard is "more rigorous" than under the federal common law test.  *Rushford*, 846 F.2d at 253.  Under the First Amendment test,  "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is ***essential to preserve higher values and is narrowly tailored to serve that interest***."  *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984).  "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."[6]  *Id.*  "In making that determination, the district

---

[6] The First Amendment test for limiting access to court documents applies equally to decisions to seal documents and to redactions of filed documents.  *See, e.g.*, *Lifenet Health v. Lifecell Corp.*, 2015 WL 12517430, at *4 (E.D. Va. Feb. 12, 2015) (applying First Amendment test to redactions in trial transcript); *Good v. West Virginia-Am. Water Co.*, 2017 WL 3381363 (S.D. W. Va. Aug. 4, 2017) (applying First Amendment test to deny proposed redactions); *In re Marriott*, 2019 WL 4855202, at *4 n.3 (D. Md. Aug. 30, 2019) (appointing special master to

court must follow the procedural requirements" set forth by the Fourth Circuit. *Rushford*, 846 F.2d at 253 (citing *In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984)). *See also* November 17 Order at 2-3. "First, the district court must give the public adequate notice that the sealing of documents may be ordered." *Rushford*, 846 F.2d at 253. "Second, the district court must provide interested persons an opportunity to object to the request before the court ma[kes] its decision." *Id.* (citation and internal quotation marks omitted). "Third, if the district court decides to close a hearing or seal documents, it must state its reasons on the record, supported by specific findings." *Id.* (citation and internal quotation marks omitted). "Finally, the court must state its reasons for rejecting alternatives to closure."[7]

In this case, there is no question as to whether the "more rigorous" First Amendment test applies:  Plaintiff has already conceded, and Judge Trenga has held "that the First Amendment right of access applies to sealing motions for injunctive relief, which is the primary object of this litigation."[8]  November 17 Order at 2.  As such, "strict scrutiny applies to any decision to prevent such access." *Id.*

Plaintiff's arguments for broad sealing and redactions wither under strict scrutiny. Indeed, Plaintiff has not come even close to articulating a compelling interest justifying closure under the First Amendment.  Plaintiff's central argument seems to be that there is a "bargained-for confidentiality provision" in the 2009 Settlement Agreement that outweighs the public interest in disclosure.  *See, e.g.*, Dkt. 24 at 3, Dkt. 67 at 3-4; Dkt. 49 at 2; Dkt. 62 at 2-3.  In

---

determine "what narrowly tailored redactions may be justified as consistent with the First Amendment right to public access").

[7] The second step of this required procedure – providing interested persons an opportunity to object – weighs in favor of granting the Post's Motion to Intervene in this case.

[8] Accordingly, the First Amendment standard applies to all documents filed in this case, including the Complaint and all briefing.  *See, e.g.*, *Allstate Ins. Co. v. Warns*, 2012 WL 681792, at *16-17 (D. Md. Feb. 29, 2012).

making this argument, Plaintiff relies primarily on *Lifenet Health*, 2015 WL 12517430, at *4, *see, e.g.*, Dkt. 24 at 3, Dkt. 67 at 3, but the facts of that case are easily distinguishable.  While it is true that the court in *Lifenet* allowed redactions of financial information under the First Amendment test where the information was "protected by confidentiality and non-disclosure agreements," Plaintiff mischaracterizes this holding as being some kind of bright-line rule under which the existence of a confidentiality agreements in an agreement between private parties serves as a talisman for overcoming the First Amendment.  Even under the less rigorous federal common law test, courts in the Fourth Circuit ***routinely*** deny sealing motions notwithstanding that the information to be disclosed is subject to a confidentiality agreement.  *Hargrove v. Ryla Teleservices, Inc.*, 2013 WL 1897027, at *10 (E.D. Va. Apr. 12, 2013) ("[T]he undersigned does not find that the parties' interest in negotiating a confidential settlement outweighs the public's interest in access to the settlement."), *R. & R. adopted*, 2013 WL 1897110 (E.D. Va. May 03, 2013); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618, 624 (E.D. Va. 2011) (holding the parties' agreement to preserve the confidentiality of the settlement agreement, "while relevant, cannot trump or outweigh the strong interest in public access to court proceedings"); *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 2013 WL 3465352, at *10 (D. Md. July 9, 2013) ("the confidentiality provision would not overcome the common law presumption of public access."); *Bureau of Nat'l Affairs v. Chase*, 2012 WL 3065352, at *3 (D. Md. July 25, 2012) ("[p]rivate parties are entitled to enter into confidential agreements, but the courts ordinarily are not party to such promises of confidentiality"); *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, at

729 (M.D.N.C. 2013) ("parties cannot by agreement overcome the public's right of access to judicial records.").[9]

Unlike this case, the information at issue in *Lifenet* was "commercially sensitive" information without "bearing importance to any public matters." *Lifenet Health*, 2015 WL 12517430, at *3, *4 (internal citations omitted). Here, Plaintiff does not appear to be trying to protect trade secrets, and there is a *substantial* public interest justifying disclosure – namely, the public's interest in understanding the conduct of a major professional football team, particularly as to how it may relate to how the Team handled chronic allegations of workplace sexual harassment. Plaintiff's warning that "[p]ublic notice of this lawsuit will undermine public confidence in the enforceability of confidential agreements between private parties," Dkt. 24 at 4, finds no basis in the law of this Circuit.[10]

---

[9] *See also K.S. v. Ambassador Programs Inc.*, 2010 WL 3565481, at *3 (E.D. Va. Sept. 3, 2010):

> One might argue that sealing settlement agreements furthers the public policy favoring out-of-court settlement. This argument proves too much; it result[s] in the exception swallowing the rule. While the interest in fostering settlement is undeniably woven into the judicial fabric, this generalized interest cannot heavily outweigh the public's interest in access to the judicial process. To conclude otherwise would, as noted, convert the exception to the commonplace, as all settlements would be sealed whenever vetted by the courts. At the very least, parties cannot rely on such a broad policy statement where, as here, they have given no indication that publication would deter or prevent their settlement.

[10] The other cases cited by Plaintiff in support of his Motion for Leave to File Under Seal and to Seal Case, Dkt. 24 at 3, are also distinguishable. *See Under Seal v. Under Seal*, 326 F.3d 479, 485-86 (4th Cir. 2003) (rejecting appellants claim of a privacy right because "the presumption in favor of public disclosure can only be overcome by a significant countervailing interest"); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 591 (E.D. Va. 2009) ("asserted private confidentiality interests, however legitimate, *simply do not figure in the Court's analysis where the First Amendment guarantee is implicated.*") (emphasis added); *Malon v. Franklin Fin. Corp.*, 2014 WL 12768782, at *3 (E.D. Va. Dec. 4, 2014) (granting sealing of trade secrets where there was no countervailing public interest beyond a generalized public interest in access).

At most, the interest asserted by Plaintiff is potential embarrassment that might result from revelation of the facts underlying the 2009 Settlement Agreement.  But it is well-established that embarrassment is not an adequate ground for overcoming the presumption of public access to court documents.  *See, e.g.*, *Price v. Tuggle*, 2016 WL 4098547, at *1 (E.D. W. Va. July 28, 2016) ("significant negative publicity, animosity, disdain, embarrassment[,] vexation[,] . . . unfair bias and undue prejudice" not sufficient grounds for sealing records); *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("[t]he mere fact that the production of records may lead to a litigant's embarrassment . . . will not, without more, compel the court to seal its records.").

Of course, even if Plaintiff *were* able to articulate how his proposed sealing and redactions were "essential to preserve higher values" – and thus far he has not done so (at least on the public record) – he would also need to prove that the sealing and redactions were "narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510.  At this point, the proposed redactions are not available on the public docket, but once they are, the Post anticipates weighing in on whether they are appropriately "narrowly tailored."

**B.     The Broad Redactions Sought by Plaintiff Are In Conflict With Federal Common Law.**

Even if the more rigorous First Amendment test were not applicable here – and it is – Plaintiff's efforts to conceal the filings in this case also contravene the presumption of public access under federal common law.  "Under common law, there is a presumption of access accorded to judicial records." *Rushford*, 846 F.2d at 253 (citing *Nixon*, 435 U.S. at 597).  The "presumption of access" can be rebutted only "if countervailing interests heavily outweigh the public interests in access," and a "party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.*  The common law right

13

of access is grounded in a "citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon*, 435 U.S. at 597-98. *See, e.g.*, *U.S. ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561 (E.D. Va. 2007) (motion to redact name in complaint constitutes limitation of public access to information about court proceedings and countervailing interest in avoiding employer retaliation does not outweigh public interest in access").

The Fourth Circuit has described the test for the common law right of public access:

> [T]he factors to be weighed in the balancing test include whether the records are sought for improper purposes, such as promoting public scandals or gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.

*In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (citing *Nixon*, 435 U.S. at 597-608).

Here, at least on the public record, Plaintiff has offered nothing more than conclusory statements to suggest that any of these factors are present. The press and the public want to understand the issues underlying this case, not to promote scandal or gain business advantage, but to shed greater light on the way the Team conducted business (particularly as it may relate to how it handled workplace sexual harassment, too often, is concealed by those with the power to stop it).

Again, the primary interest Plaintiff has asserted in this case as justification for overcoming the presumption of public access is a vague, generalized interest in respecting the confidentiality provision of a 2009 Settlement Agreement. But that generalized interest – which as set forth above is frequently denied by courts as a basis for sealing or redacting court records – cannot possibly be said to outweigh the significant public interests here. Plaintiff seeks to minimize the public interest by suggesting that his voluntary dismissal somehow makes the issue moot. Dkt. 67 at 4. But this argument is unpersuasive. There is significant public interest in

14

how the Team handled long-running allegations of workplace sexual harassment, and the public

deserves to understand exactly what Plaintiff – the Team's former general counsel – was

attempting to accomplish with this lawsuit.  As Defendant explained in her Motion for Hearing

dated November 23, 2020:

> While the provisional sealing of case materials constrains Plaintiff and Defendant,
> there is no such constraint on third parties.  Today, the majority owner of the
> Washington Football Team again commented publicly on the ongoing
> investigation.  The fact that third parties continue to comment on the investigation
> underscores the need for this Court to decide the redaction and sealing issues, so
> the public can understand what Plaintiff is trying to accomplish through this lawsuit
> and how it relates to the investigation writ-large.

Dkt. 58 at 2 (internal citation omitted).

The importance of considering the public interest when analyzing the common law right

of access was well illustrated in another case in which the Post intervened to gain public access

to documents.  In *Cohen v. Trump*, 2016 WL 3036302 (S.D. Cal. May 27, 2016), the court

granted the Post's motion to intervene for the purpose of accessing documents concerning Trump

University.  *Id.* at *1.  The defendant – who was, at that time, the front-runner for the Republican

nomination for president – argued that the sealed documents contained trade secrets subject to a

protective order.  *Id.* at *5.  The court granted the Post's motion to intervene, and ordered that the

challenged documents be unsealed, finding that "the public interest in understanding the judicial

process is heightened" when other public interests weigh in favor of disclosure.  *Id.* at *6

(considering the impact of the business practices taught at Trump University and their potential

destabilizing impact on local housing markets).  Similarly, in this case, the profound societal

interest in workplace sexual harassment "heightens" the "public interest in understanding the

judicial process" and is not overcome by Plaintiff's vague, purported privacy interests.

As this Court correctly pointed out, "if Mr. Donovan wanted everything kept out of the public eye, he should not have filed this lawsuit." Dkt. 69 at 2. Now that Plaintiff has sought "subsidized dispute resolution" in the public's court system, he "must accept the openness that goes with" it. *Doe*, 749 F.3d at 271.

## CONCLUSION

For the foregoing reasons, the Post's Motion to Intervene should be granted.


Dated: December 17, 2020

**DAVIS WRIGHT TREMAINE LLP**,


*/s/ Patrick Curran*
Patrick J. Curran Jr. (VSB #86144)
Laura R. Handman, *pro hac vice pending*
1301 K Street, N.W.
Suite 500 East
Washington, D.C.  20005-3317
(202) 973-4200
(202) 973-4499 (fax)
patcurran@dwt.com

*Attorneys for WP Company LLC d/b/a The Washington Post*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of December, 2020, I caused the foregoing

Memorandum of Law in Support of Motion to Intervene to be served via the court's CM/ECF

system, which will send notification to all counsel of record.


December 17, 2020
Washington, D.C.


/s/ Patrick Curran
Patrick Curran