**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| DAVID P. DONOVAN,<br><br>        Plaintiff,<br><br>v.<br><br>BETH A. WILKINSON,<br><br>        Defendant,<br><br>PRO-FOOTBALL, INC.<br><br>        Intervenor. | Civil Action No. 1:20-CV-01344-AJT-IDD |

**INTERESTED PARTY WP COMPANY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS SECOND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF ASSERTING THE PUBLIC INTEREST IN ACCESS TO THE JANUARY 8, 2021 HEARING ON INTERVENOR PRO-FOOTBALL, INC'S <u>MOTION TO SEAL, STRIKE, AND RECONSIDER IN PART</u>**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| PROCEDURAL BACKGROUND | 1 |
| ARGUMENT | 2 |
|     I.   THE PUBLIC SHOULD BE HEARD ON THE ISSUE OF ACCESS | 3 |
|     II.  THE FIRST AMENDMENT TEST APPLIES | 4 |
|     III. THERE IS NO BASIS FOR TOTAL CLOSURE. | 5 |
|     IV. PARTIAL CLOSURE IS A WORKABLE ALTERNATIVE TO TOTAL CLOSURE. | 10 |
|     V.  CONCLUSION. | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Baker v. Dolgencorp, Inc.*,
 818 F. Supp. 2d 940 (E.D. Va. 2011) ...................................................................................3

*Bureau of Nat'l Affairs v. Chase*,
 No. ELH-11-1641, 2012 WL 3065352 (D. Md. July 25, 2012) ..............................................6

*Covington v. Semones*,
 No. 7:06cv00614, 2007 WL 1170644 (W.D. Va. Apr. 17, 2007) ...........................................3

*Cox Broad. Corp. v. Cohn*,
 420 U.S. 469 (1975) ...............................................................................................................7

*Doe v. Public Citizen*,
 749 F.3d 246 (4th Cir. 2014) ............................................................................................1, 5

*Globe Newspaper Co. v. Super. Ct.*,
 457 U.S. 596 (1982) ...............................................................................................................3

*Hargrove v. Ryla Teleservices, Inc.*,
 No. 2:11cv344, 2013 WL 1897027 (E.D. Va. Apr. 12, 2013), *R. & R. adopted*,
 2013 WL 1897110 (E.D. Va. May 3, 2013) ...........................................................................3

*In re Copley Press*,
 518 F.3d 1022 (9th Cir. 2008) .............................................................................................10

*In re NC Swine Farm Nuisance Litig.*,
 No. 5:15-CV-00013-BR, 2017 WL 5178038 (E.D.N.C. Nov. 8, 2017) ..................................9

*Integrated Global Servs., Inc. v. Mayo*,
 No, 3:17cv563, 2017 WL 4052809 (E.D. Va. Sept. 13, 2017) ...............................................6

*Miles v. Ruby Tuesday, Inc.*,
 799 F. Supp. 2d 618 (E.D. Va. 2011) ...................................................................................6

*Minter v. Wells Fargo Bank, N.A.*,
 258 F.R.D. 118 (D. Md. 2009) ..............................................................................................4

*Press-Enterprise Co. v. Super. Ct.*,
 464 U.S. 501 (1984) ...............................................................................................................4

*Rothman v. Snyder*,
 No. 8:20-cv-3290-PJM (D. Md.) ................................................................................. *passim*

*Rushford v. New Yorker Magazine, Inc.*,
    846 F.2d 249 (4th Cir. 1988) ..................................................................................................5

*Stone v. Univ. of Md. Med. Sys. Corp.*,
    855 F.2d 178 (4th Cir. 1998) ..................................................................................................3

*Taylor v. Kellog Brown & Root Svcs., Inc.*,
    No. 2:09cv341, 2009 WL 10689733 (E.D. Va. Dec. 18, 2009) .................................................9

*White v. Chapman*,
    No. 1:14cv848(JCC/IDD), 2015 WL 4360329 (E.D. Va. July 14, 2015) ..................................3

**Rules**

Fed. R. Civ. P. 5.2(a) ..................................................................................................................6

Interested Party WP Company LLC (the "Post") respectfully submits this Memorandum of Law in support of its Second Motion to Intervene For the Limited Purpose of Asserting the Public Interest in Access to the January 8, 2021 Hearing (the "Hearing") on Intervenor Pro-Football, Inc's (the "Team's") Motion to Seal, Strike, and Reconsider in Part this Court's Order dated November 25, 2020 (the "Motion to Seal").

Yesterday, Magistrate Judge Davis granted the Team's Motion to Close the Hearing on its Motion to Seal.  Dkt. 117.  However, the Post respectfully contends that there is simply no basis for ***total closure*** of the Hearing.  Rather, the Hearing should be open to the public to the greatest extent possible, and the Post should be given an opportunity to argue on behalf of public access to the hearing and to the documents at issue here.  The Post's first Motion to Intervene set forth why the First Amendment and federal common law require that the public be given access to these proceedings generally.  *See* Dkt. 99.  But the basis for opening this Hearing and unsealing the documents at issue on the Team's Motion to Seal is even clearer now given that last week, the Team's owners disclosed purportedly confidential information concerning what appears to be the 2009 agreement at issue in this case by filing that information on the public docket in a federal lawsuit in the District of Maryland, *Rothman v. Snyder*, 8:20-cv-03290-PJM (D. Md.).  *See infra* § III.  In light of the well-settled qualified right of public access to the courts, *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014), the Post's Second Motion to Intervene should be granted.

## PROCEDURAL BACKGROUND

On December 17, 2020, the Post filed its first Motion to Intervene for the limited purpose of asserting the public interest in access.  Dkt. 98.  The Post noticed the hearing on its first Motion to Intervene for January 27, 2020, which is the first week that both Plaintiff and the Intervenor said they were available.  Dkt. 104.  By Order dated December 22, 2020, the Court

granted Plaintiff's Consent Motion for Extensions of Time to File Response to Motion to Intervene and Reply: opposition to the Post's motion is due on January 8, 2021 and the Post's reply is due on January 19, 2021. Dkt. 107. The hearing on the Post's Motion was subsequently set for January 29, 2021. 12/21/20 Minute Entry.

On Christmas Eve, December 24, 2020, the Team filed an Unopposed Motion to Close the Hearing On Its Motion to Seal, Strike, and Reconsider in Part. Dkt. 110. The Team did not consult the Post before filing its Unopposed Motion. The hearing on the Team's Motion to Seal was set for January 8, 2021, via Zoom. 12/28/20 Minute Entry. By Order dated December 28, 2020, the Court granted the Team's motion to close the hearing. Dkt. 117.

By email dated December 28, 2020, counsel for the Post sought consent from the Team and the Parties to allow the Post 10 minutes to argue at the January 8, 2020 hearing on behalf public access to the hearing and the documents at issue on the Team's Motion to Seal. The Intervenor and the Plaintiff refused to consent. The Defendant did not consent, but did not oppose. Plaintiff and the Intervenor oppose the Post's Second Motion to Intervene. Defendant does not oppose this Motion.

Accordingly, the Post now moves to intervene for the limited purpose of asserting the public's interest in access to the January 8 hearing. The hearing should be accessible to the public to the greatest extent possible, and the Post should be given the opportunity to argue on the Team's Motion to Seal.

**ARGUMENT**

In the its initial Motion to Intervene, the Post argued that it should be granted intervenor status in order to assert the public interest in access to filed documents in this case. *See* Memorandum of Law in Support of WP's Motion to Intervene, Dkt. 99. The Post incorporates by reference herein all arguments made in support of its initial motion to intervene. *Id.* In

2

addition, the Post respectfully sets forth below additional bases for granting its second motion to intervene for the purpose of asserting the public's interest in access to the January 8 hearing, and for allowing the Post an opportunity to argue on the Team's Motion to Seal.

I.      THE PUBLIC SHOULD BE HEARD ON THE ISSUE OF ACCESS.

Hearings on motions to seal are normally open so that the public may assert its interest in access. *See, e.g.*, *White v. Chapman*, No. 1:14cv848(JCC/IDD), 2015 WL 4360329 (E.D. Va. July 14, 2015) (denying motion to seal). In *White*, for example, the district court observed that "Judge Davis held a hearing in open court to discuss the proposed sealing in which interested persons could object," and after considering the substantial public interest in the material sought to be sealed, found that "there was no legal basis to keep the documents sealed." 2015 WL 4360329, at *4. *See also Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) ("representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion'") (citation omitted); *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027, at *8 (E.D. Va. Apr. 12, 2013) (interested non-party member of the press permitted to appear at motion to seal hearing), *R. & R. adopted*, 2013 WL 1897110 (E.D. Va. May 3, 2013); *Baker v. Dolgencorp, Inc.*, 818 F. Supp. 2d 940, 942 (E.D. Va. 2011) (motion to seal hearing open to public and press); *Covington v. Semones*, No. 7:06cv00614, 2007 WL 1170644, at *1 n.1 (W.D. Va. Apr. 17, 2007) (denying motion to close hearing and exclude newspaper reporter).

Public access is especially important in this case, because there is a high level of public interest in the documents at issue. *See* WP' First Mot. to Intervene, Dkt. 99 at 2. Specifically, this case appears to implicate issues involving the Team's handling of multiple allegations of workplace sexual harassment. *Id.* Accordingly, the Post should have an opportunity to be heard for the purpose of asserting the public's interest in access to documents that the Intervenor and

Plaintiff David P. Donovan ("Plaintiff") seek to shield from public view. *See, e.g.*, *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1998) (recognizing newspapers' right to assert public's interest in unsealing records). In addition, even if protection of the Team's purported "confidential information" did provide a basis for sealing – and the Team has not demonstrated this to be the case – that argument is unpersuasive in light of the fact that details concerning what appears to be the 2009 Settlement Agreement at issue has already been publicly filed in another litigation involving the Team's owners. *See Rothman v. Snyder*, No. 8:20-cv-3290-PJM (D. Md.) (the "Maryland Federal Litigation").[1] *See infra* § III.

## II. THE FIRST AMENDMENT TEST APPLIES.

Judge Trenga has already held "that the First Amendment right of access applies to sealing motions for injunctive relief, which is the primary object of this litigation." Order Denying Plaintiff's Motion to Seal, Dkt. 32 at 2. *See also Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009) ("Although the Fourth Circuit [] has not explicitly held that a First Amendment right of access exists with regard to non-dispositive civil motions and hearings, the precedent strongly favors that view, with the higher burden for sealing."). The Team's effort to close the entire hearing is contrary to the First Amendment, because the Team has not identified any "compelling government interest" or "higher values at stake," much less made the required showing that closure is "narrowly tailored to serve that interest." *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 509 (1984) ("Closed proceedings . . . must be rare[.]").

---

[1] The Maryland Federal Litigation was commenced by the Team's minority owners, Robert Rothman, Dwight C. Schar, and Frederick W. Smith (the "Maryland Plaintiffs"). *Rothman*, No. 8:20-cv-3290-PJM, Dkt. 2-3 at 1. In their suit, the Maryland Plaintiffs allege that the Team's majority owner, Dan Snyder, took "improper actions" in connection with a confidential proposal to sell shares in the team. *Id.* at 3.

4

Even under the less stringent federal common law standard, district courts may not close proceedings without following the procedures required by the Fourth Circuit:

> First, the district court must give the public adequate notice that the sealing of documents may be ordered. Second, ***the district court must provide interested persons "an opportunity to object to the request before the court ma[kes] its decision."*** Third, if the district court decides to close a hearing or seal documents, "it must state its reasons on the record, supported by specific findings." Finally, the court must state its reasons for rejecting alternatives to closure.

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253-54 (4th Cir. 1988) (emphasis added) (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 234-35 (4th Cir. 1984)). Since the district court "must" provide an opportunity to hear objections to proposed sealing, closure of the hearing would contravene clear Fourth Circuit law. *Id.* at 253.

## III. THERE IS NO BASIS FOR TOTAL CLOSURE.

The team argues that the hearing on its Motion to Seal should be closed because there will be references to: "(1) privileged communications between the Team and its lawyers; (2) communications between the Team and the NFL privileged by the common interest doctrine; (3) attorney work product; and (4) references to confidential information."[2] Team's Memorandum of Law in Support ("Team Br."), Dkt. 111 at 4-5. None of these bases justify total closure of a hearing.

With respect to the first three categories – information that is potentially privileged or protected by the common interest or work product doctrines – the Post accepts that such information need not be discussed in open court, so long as a redacted transcript of the hearing is filed publicly and expeditiously, and any redactions are as

---

[2] The Team also argues that it is not technically feasible for the Court to conduct a hearing that includes both public and closed portions, but that argument is unpersuasive since here, the court will be able in advance to arrange a dedicated public access line or use the Zoom waiting room function.

5

narrow as possible to withhold only that information that is privileged or protected by other applicable doctrines. *See Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("the public and press generally have a contemporaneous right of access to court documents and proceedings").[3]

Beyond its privilege and work product concerns, the Team has failed to demonstrate that discussion of its purported "confidential information" justifies closure under the First Amendment. For example, the Team has not suggested that it plans to discuss trade secrets.[4] And as the Post explained in its first Motion to Intervene, the fact that certain information might be subject to the confidentiality provision of a settlement agreement does not outweigh the public interest in disclosure. *See* WP's First Mot. to Intervene, Dkt. 99 at 10-12 (collecting cases); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618, 624 (E.D. Va. 2011) (holding that parties' agreement to preserve the confidentiality of their settlement agreement, "while relevant, cannot trump or outweigh the strong interest in public access to court proceedings"); *Bureau of Nat'l Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352, at *3 (D. Md. July 25, 2012) ("Private parties are entitled to enter into confidential agreements, but the courts ordinarily are not

---

[3] The Court has ordered the Team and the Parties to meet and confer in good faith to redact the transcript in accordance with the Court's Order dated November 25, 2020, Dkt. 68, and any subsequent orders of the Court. Dkt. 117.

[4] *Integrated Global Servs., Inc. v. Mayo*, No, 3:17cv563, 2017 WL 4052809, at *1 n.6 (E.D. Va. Sept. 13, 2017), is inapposite. *See* Team Br. at 7-8. The documents at issue in that case contained proprietary business information and trade secrets, and there was no party asserting a public interest in disclosure. This case is distinguishable because neither Plaintiff nor the Team has argued that they are trying to protect trade secrets, and there is demonstrable public interest in the material the Team and Plaintiff seek to conceal.

party to such promises of confidentiality").[5]

Moreover, there is no compelling interest in withholding information that is already in the public domain, including in court filings and in media reporting. *See, e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) ("[I]nterests in privacy fade when the information involved already appears on the public record . . . [t]his conclusion is compelling when viewed in terms of the First and Fourteenth Amendments and in light of the public interest in a vigorous press.").

For example, information concerning what appears to be the same 2009 Settlement Agreement at issue in this case has already been publicly filed by the Team's owners in the Maryland Federal Litigation, and reported in the media.[6] For example, the Team's minority owners filed a notice on December 21, 2020 linking an article published by the *New York Times* on December 19, 2020 (the "Times Article"),[7] and claiming that "the confidential information was provided to the New York Times by Mr. Snyder or his agents." Handman Decl. Ex. B (Plaintiff's Notice of Supplemental Authority) at 1. As set forth in that notice, the Times Article discusses the "2009 settlement of a sexual misconduct allegation against [the Team's majority

---

[5] The Post, of course, concedes that certain sensitive information is properly redacted where there is no countervailing public interest in disclosure. *See, e.g.*, Fed. R. Civ. P. 5.2(a) (requiring redaction of *inter alia* social security numbers, taxpayer-identification numbers, birthdates, and financial account numbers).

[6] It is unclear whether there have been further public disclosures in other disputes between the Team's owners. In an Order dated December 23, 2020, the court in the Maryland Federal Litigation ordered the parties to "file a joint statement by the close of business on Monday, December 28, 2020, listing for the Court every ongoing court and arbitration proceeding involving the parties to this case, including the forum; the name of the judge or arbitrator; a brief description of who is seeking what relief from whom; the current status of the proceeding; and whether the proceeding involves any confidentiality or nondisparagement orders." Declaration of Laura R. Handman ("Handman Decl.") Ex. A (12/23/20 Order) ¶ 1.

[7] Ken Belson & Katherine Rosman, *Fight for Washington N.F.L. Team May Tighten Owner's Grip on It*, N.Y. Times (Dec. 19, 2020), https://www.nytimes.com/2020/12/19/sports/football/washington-nfl-daniel-snyder.html (the "Times Article").

owner] Mr. Snyder." *Id.* at 3. According to the Times Article:

- "Two investigations conducted in 2009, one by the team and another by an outside law firm hired by the team, said they were unable to substantiate the woman's claim that Snyder accosted her in April 2009 on a flight to Washington from Las Vegas. The team fired the woman because it said she lied to the team's lawyers."

- "To avoid any potential negative publicity if the woman sued Snyder, the team paid her a financial settlement and five people, including Snyder and the accuser, signed nondisclosure agreements, according to a person with knowledge of the arrangements who was not authorized to discuss it publicly."

*Id.* (quoting the Times Article).

On December 22, 2020, Mr. Snyder filed papers referencing "the 2009 settlement." Handman Decl. Ex. C (Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Emergency Motion) at 8. In that filing, Mr. Snyder denied leaking any information to the *New York Times*, *id.* at 2, and attached the Times Article, Handman Decl. Ex. D (Declaration of Careen Winters) at 8. On December 23, 2020, Mr. Snyder filed a Supplemental Declaration, once again addressing the 2009 settlement and stating that the underlying allegations were "meritless," and that "no evidence of wrongdoing was found after an investigation by a well-respected law firm." Handman Decl. Ex. E (First Supplemental Declaration of Daniel M. Snyder) ¶ 6. Mr. Snyder further stated in the public filing that, despite no finding of wrongdoing, "the insurance carrier decided to settle." *Id.*[8] In the same filing, Mr. Snyder attached as an exhibit a related article published by the Post on December 22, 2020 (the "Post Article"), *id.* at 6-8.[9] The Post Article filed by Mr. Snyder

---

[8] In an Order dated December 23, 2020, the court in the Maryland Federal Litigation noted that it was Mr. Snyder who proposed filing his Supplemental Declaration in unredacted form in response to the plaintiffs' unredacted supplemental notice, which was filed on December 21, 2020. Handman Decl. Ex. F (12/23/20 Order).

[9] Will Hobson et al., *Washington Football Team settled sexual misconduct claim against Daniel Snyder for $1.6 million*, WASH. POST (Dec. 22, 2020),

8

revealed certain details from a 2009 settlement agreement involving the Team, and identified evidence suggesting that the agreement is likely the same one that is the subject of this litigation.[10] Among the details in the Post Article filed by Mr. Snyder were the following:

- The Team "paid a female former employee $1.6 million as part of a confidential settlement in 2009."

- "The settlement was struck after the woman accused team owner Daniel Snyder of sexual misconduct . . . ."

- "The alleged incident occurred on Snyder's private plane on a flight returning from the Academy of Country Music Awards in Las Vegas . . . ."

- "The female employee made 'certain allegations' in April 2009, according to a copy of the agreement, and was later fired."

- The agreement was signed on July 22, 2009 by an attorney on behalf of Snyder and two other team executives.

- "Though the woman had been terminated for cause, she and the team agreed that her personnel file would be changed to show that she voluntarily resigned."

- "Donovan led the team's investigation into the woman's allegations that preceded the settlement . . . ."

- "The 2009 agreement reviewed by The Post was signed by Howard Shapiro, an attorney for Snyder; Gershman; and Donovan."

*Id.* To the extent that the Team's purported "confidential information" is already in the public domain, discussion of such information does not warrant denying public access, and the

---

https://www.washingtonpost.com/sports/daniel-snyder-sexual-misconduct-settlement/2020/12/22/f81131d8-4339-11eb-a277-49a6d1f9dff1_story.html.

[10] "It is unclear from the scant records made public whether this is the same settlement agreement reviewed by The Post, but Sullivan, the attorney for the woman who accused Snyder of misconduct in 2009, also is involved in the case prompted by Donovan's lawsuit." *Id.* at 7. "Sullivan submitted an affidavit in support of Wilkinson, court records show." *Id.* "Court records in Donovan's lawsuit describe that settlement as involving five parties, and the settlement reviewed by The Post also has five parties: the woman, Snyder, the team, Donovan and Gershman." *Id.*

information should not be sealed. *See, e.g.*, *Taylor v. Kellog Brown & Root Svcs., Inc.*, No. 2:09cv341, 2009 WL 10689733, at *2 (E.D. Va. Dec. 18, 2009) (no compelling interest to justify sealing when material is already in the public domain); *In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2017 WL 5178038, at *13 (E.D.N.C. Nov. 8, 2017) (no basis for sealing deposition testimony when the basis for that testimony is already in the public domain).

## IV.  PARTIAL CLOSURE IS A WORKABLE ALTERNATIVE TO TOTAL CLOSURE.

The Team's motion to close the hearing relies primarily upon a case from the Ninth Circuit, *In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008). *See* Team Br. at 3, 6-8. But in that case, the court considered First Amendment access to a hearing on a motion to seal and found that "logic requires that at least *part* of these hearings be open to the public because one of their purposes is to give the public an opportunity to be heard." *In re Copley Press*, 518 F. 3d at 1027. The same result should apply here. For example, in the Maryland Federal Litigation, the court recognized the need to allow public access to a hearing on a motion for sanctions, and set up a public access line so that the Post could argue during the open portion of the December 22, 2020, hearing.[11]  Handman Decl. Ex. G (12/21/20 Order).

The Post respectfully asks that the Court follow the same approach adopted by the courts in the Maryland Federal Litigation and in *In re Copley Press*: the Post should be permitted to argue at an open portion of the hearing, and then, if the Team or the parties wish to discuss information they believe is privileged or protected by applicable doctrines, the public portion of the hearing can be closed.

---

[11] The court in that case is also holding a public hearing on January 7, 2021, to determine whether the parties have leaked information to the press in violation of confidentiality and nondisparagement provisions of the Court's prior order. Handman Decl. Ex. A (12/23/20 Order).

10

## V. CONCLUSION.

For the foregoing reasons, the Post asks that the Court grant its Second Motion to Intervene, and that public access be permitted to the greatest extent possible.

DATED: December 29, 2020

**DAVIS WRIGHT TREMAINE LLP**,

*/s/ Patrick J. Curran Jr.*
Patrick J. Curran Jr. (VSB #86144)
Laura R. Handman, *pro hac vice*
1301 K Street, N.W.
Suite 500 East
Washington, DC 20005-3317
(202) 973-4200
(202) 973-4499 (fax)
patcurran@dwt.com

Adam I. Rich, *pro hac vice*
1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104
(212) 489-8230
(212) 489-8340 (fax)
adamrich@dwt.com

*Attorneys for WP Company LLC d/b/a The Washington Post*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of December, 2020, I caused the foregoing Memorandum of Law in Support of Motion to Intervene to be served via the court's CM/ECF system, which will send notification to all counsel of record.

Dated: December 29, 2020
       Washington, D.C.

                                      */s/ Patrick J. Curran Jr.*
                                      Patrick J. Curran Jr.