# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

DAVID P. DONOVAN

        Plaintiff,

v.

BETH A. WILKINSON

        Defendant,

PRO-FOOTBALL, INC.

        Intervenor.

Civil Action No. 1:20-cv-01344 (AJT/IDD)

---

**INTERVENOR PRO-FOOTBALL, INC.'S MEMORANDUM IN OPPOSITION TO INTERESTED PARTY WP COMPANY LLC'S SECOND MOTION TO INTERVENE**

Intervenor Pro-Football Inc., d/b/a the Washington Football Team (the "Team"), submits this Memorandum in Opposition to Interested Party WP Company LLC's, d/b/a The Washington Post (the "Post), Second Motion to Intervene for the Limited Purpose of Asserting the Public Interest in Access to the January 8, 2021 Hearing on Intervenor Pro-Football Inc.'s Motion to Seal, Strike, and Reconsider in Part (Dkt. 124) (the "Post's Motion") . Since the Court has already determined it appropriate to close the January 8th Hearing, the Post's Motion, which opposes that ruling, should be denied as moot and procedurally improper. The Post's Motion also fails on the merits because the Court's decision to close the Hearing was correctly decided on the law and the facts.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND .......................................................................................... 2

III.    ARGUMENT ................................................................................................................... 5

        A.      The Post Must Wait Until a Ruling on its Motion to Intervene to Litigate
                Sealing Issues ...................................................................................................... 7

        B.      The Hearing Should Remain Closed To the Public ............................................. 9

                1. The Court Correctly Held that there is no Public Right of Public Access
                to the Hearing and that Closure was Essential .................................................. 9

                2. Whether the Documents Should Ultimately be Unsealed is a Red
                Herring................................................................................................................ 12

                3. Information about Confidential Information Has Not Been Made Public ....... 13

                4. Partial Closure of the Hearing Would be Unworkable ................................... 14

IV.     CONCLUSION............................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atl. Mut. Ins. Co. v. Nw. Airlines, Inc.*,
    24 F.3d 958 (7th Cir. 1994) ..................................................................7

*Baker v. Dolgencorp, Inc.*,
    818 F. Supp. 2d 940 (E.D. Va. 2011) ..................................................11

*Burnett v. Miller*,
    631 F. App'x 591 (10th Cir. 2015) .......................................................6

*Combs v. Nevada*,
    No. 11-cv-528, 2017 WL 4158616 (D. Nev. Sept. 19, 2017)...............6

*In re Copley Press, Inc.*,
    518 F.3d 1022 (9th Cir. 2008) ......................................................10, 15

*Datatel, Inc. v. Rose & Tuck, LLC*,
    No. Civ. A. 05-495, 2005 WL 1668020 (E.D. Va. June 17, 2005) ...................8, 15

*De Luna v. Navarro*,
    No. 18-cv-2261, 2019 WL 6139920 (C.D. Cal. Sept. 6, 2019) ............6

*Globe Newspaper Co. v. Superior Court*,
    457 U.S. 596 (1982)............................................................................11

*Gomez v. City of Chicago*,
    No. 85 C 149, 1986 WL 8733 (N.D. Ill. Aug. 1, 1986)........................7

*Hargrove v. Ryla Teleservices, Inc.*,
    No. 2:11CV344, 2013 WL 1897027 (E.D. Va. Apr. 12, 2013).............11

*IndyMac Bank v. Aryana/Olive Grove Land Dev., LLC*,
    No. 12-cv-01494, 2012 WL 12895842 (C.D. Cal. Oct. 25, 2012) ...........6

*Katz v. Berisford Int'l PLC*,
    No. 96 CIV. 8695 (JGK), 2000 WL 1760965 (S.D.N.Y. Nov. 30, 2000) ...............7

*Kelly v. FedEx Ground Package Sys., Inc.*,
    No. 3:10-CV-01265, 2011 WL 1584764 (S.D.W. Va. Apr. 26, 2011).....................14

*Lawson v. McDonough*,
    No. 04-cv-105, 2006 WL 3462588 (N.D. Fla. Nov. 29, 2006)................6

*Lifenet Health v. Lifecell Corp.*,
  No. 2:13CV486, 2015 WL 12517430 (E.D. Va. Feb. 12, 2015) .............................................12

*Lord Corp. v. S & B Tech. Prod., Inc.*,
  No. 5:09-CV-205-D, 2012 WL 895947 (E.D.N.C. Mar. 15, 2012).........................................12

*Malon v. Franklin Fin. Corp.*,
  No. 3:14CV671, 2014 WL 12768782 (E.D. Va. Dec. 4, 2014)..............................................12

*Mut. Produce, Inc. v. Penn Cent. Transp. Co.*,
  119 F.R.D. 619 (D. Mass. 1988) ..............................................................................................7

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978).................................................................................................................14

*Riddick v. Ryder*,
  No. 7:13CV00402, 2014 WL 4827884 (W.D. Va. Sept. 29, 2014).........................................6

*X Corp. v. Doe*,
  805 F. Supp. 1298 (E.D. Va. 1992) ...................................................................................8, 15

**Other Authorities**

Fed R. Civ. P. 72.................................................................................................................................7

Local Civ. R. 7 ...................................................................................................................................7

## I. INTRODUCTION

This case, to which the Team was not a party, arises out of a dispute between two individuals regarding their respective legal work on behalf of the Team. During the course of the case, the Court has repeatedly recognized that the Plaintiff's and Defendant's (together, the "Parties") filings disclose privileged and confidential information, including communications between the Team and its attorneys. *See* Dkts. 68, 84, 117. Accordingly, the Court has ordered that much of this material—including privileged communications and references to certain confidential information—be redacted from the public record. Dkt. 68 (November 25, 2020 Order) (the "Sealing Order") at 1.

The Post's present motion attempts to relitigate a narrow procedural issue on which this Court has already: whether the upcoming hearing on January 8, 2021 (the "Hearing") should remain closed, as this Court originally ordered, Dkt. 117 (the "Closing Order"), or be opened to the public. The Hearing concerns the Team's motion to seal and strike portions of the Parties' filings. Dkt. 94 (the "Motion to Seal"), and as such will likely involve detailed discussion of privileged and confidential information for the purpose of determining which of that information should ultimately be disclosed to the public. The Post's motion should be denied for two independent reasons. First, the Post's Motion is moot because the Court has already ruled on this issue, and as a non-party, the Post lacks standing to challenge that ruling. Second, the Court's order is legally and factually correct because, as the Court stated, *inter alia*, "[t]he public has no right of access to hearings on motions to seal," Dkt. 117 ¶ 3, and even to the extent such a right exists, "closing the hearing is essential to protect overriding interests." *Id.* ¶ 5

The Post's Motion attempts to create an illusion of urgency that justifies departure from the orderly resolution of this case where none exists. This case has been pending for some months.

Numerous public orders and filings have been entered regarding issues of sealing and redactions, and several hearings have already been held on those issues. For the first time now that the case is essentially over, however, the Post, wrapping itself in the cloak of public access, seeks to intervene. *See* Dkt. 98 (the "Motion to Intervene"). And rather than wait until its actual Motion to Intervene is fully briefed as required by the Federal and Local Rules, the Post has now rushed to the courthouse to be heard on the upcoming hearing, challenged the Court's Closing Order and seeks to argue at the January 8th Hearing. This Court has now thrice closed hearings on the sealing issues. The fact that the Post has moved to intervene justifies neither deviating from that practice nor allowing the Post to participate before it has been admitted as a party.

## II.     FACTUAL BACKGROUND

The very nature of the dispute at issue in the case calls for discussion of privileged and confidential information. In the Plaintiff's own words, his "Verified Complaint [sought] to enjoin [the] Defendant from disseminating information that is the subject of a confidential agreement to which [the] Plaintiff is a party, and other related confidential information." Dkt. 24 at 1. Accordingly, when Plaintiff first filed this lawsuit, he sought to seal the case in its entirety. *See* Dkt. 32 at 1.

U.S. District Court Judge Anthony Trenga held a closed hearing on preliminary issues, including the question of sealing, on November 12, 2020. *Id.* The Post did not attempt to open or otherwise attend that hearing. Five days later, Judge Trenga denied Plaintiff's motion to seal the entire case but, recognizing that "there may be subject matter, facts, allegations or references that would justify redactions from the public record," instructed the Parties to submit proposed redactions to Magistrate Judge Davis. *Id.* at 4.

After further filings by the Parties, Magistrate Judge Davis held another hearing regarding sealing issues on November 20, 2020. The hearing was originally open to the public, but after the parties inadvertently discussed confidential information, and especially once it became clear that further discussion of those issues was required, the Court ordered the remainder of the hearing closed. *See* Tr. of 11/20/2020 Open Hrg 21:24-22:15; Tr. of 11/20/2020 Sealed Hrg. By then, the party names had been publicly disclosed, but the Post did not attempt to attend that hearing. Soon after the hearing, Magistrate Judge Davis issued the Sealing Order, which directed the Parties to redact privileged and confidential information from the public record, including privileged attorney-client communications and certain confidential information regarding the Team. Dkt. 68.

On December 9, 2020 the Team, with the Parties' consent, moved to intervene for the purpose of asserting its privilege, confidentiality, and privacy rights with regard to the Parties' filings, which had not been considered by the Court when issuing its Sealing Order Dkt. 79. The Court granted that motion the same day. Dkt. 84. On December 17, 2020, the Team filed a motion to seal or strike portions of the Parties' filings that revealed or referred to the Team's privileged and confidential information, Dkt. 94, and submitted proposed redactions to the Court. Most of these proposed redactions fall under, or are related to, the categories the Court already ruled should be redacted in the Sealing Order. As required by Local Rule 7(E), the Team conferred with the Parties and filed a notice of hearing on December 24, 2020 requesting a hearing on its Motion to Seal for Friday, January 8, 2020 or as soon thereafter as counsel may be heard. Simultaneously, the Team also filed an unopposed motion to close that Hearing (the "Motion to Close"). Both documents were filed publicly on the case docket.

The Court granted the Team's Motion to Close on December 28, 2020, Dkt. 117 (the "Closing Order"). The Closing Order found, *inter alia*, that "[t]he public has no right of access to

hearings on motions to seal," *id.* ¶ 3, that "[t]o the extent the public has a right of access to hearings on a motion to seal, that right is governed by the common-law standard," *id.* ¶ 4, and that "closing the hearing is essential to protect overriding interests" because the Hearing "will inevitably entail discussion of privileged and confidential portions of previous filings in this case and additional privileged and confidential information relevant to the Team's arguments," *id.* ¶ 5. The Closing Order also provided that the Team and Parties would file a transcript of the Hearing to be redacted in accordance with the Court's eventual ruling. *Id.* at 2-3.

In the interim, on December 17, 2020, the Post filed a "motion to intervene for the limited purpose of asserting the public interest in access to judicial records." Dkts. 98 & 99. After the Motion to Intervene was reassigned several times and eventually referred to Magistrate Judge Davis, the Court scheduled a hearing on the Motion to Intervene for January 29, 2021. Pursuant to the Local Rules and a joint motion to extend deadlines, the Team's opposition to the Motion to Intervene is due on January 8, 2021 and the Post's reply on January 19, 2021. Dkt. 107.

Following the Court's order closing the January 8th Hearing, the Post filed a second motion to intervene "for the limited purpose of asserting the public interest in access to the January 8, 2021 Hearing." Dkts. 124 & 125 (Corrected). The Post's brief in support of this motion makes three main arguments. First, the Post argues that the Court should not have closed the Hearing because "[h]earings on motions to seal are normally open so that the public may assert its interest in access." Dkt. 125, at 3-5. Second, the bulk of the Post's brief argues that the Team has no right to keep its confidential information private. *Id.* at 5-10. Third, the Post argues that "partial closure is [an] alternative to total closure." *Id.* at 10.

Significantly, much of the Post's brief misleadingly refers to a suit pending before the District of Maryland between the Team's owners (the "Maryland action"). *See id.* at 7-10

(referencing *Rothman v. Snyder*, No. 8:20-cv-3290-PJM (D. Md.). For example, the Post states that "information concerning what appears to be the same … Settlement Agreement at issue in this case has already been publicly filed by the Team's owners in the [Maryland action]." *Id.* at 7. But the Maryland action involves none of the privileged and confidential information at issue here. Rather, that suit, which involves none of the same parties here and none of same documents, is a commercial dispute arising out of a "confidential proposal" to purchase minority shares in the Team and related "confidential negotiations," *see Rothman*, No. 8:20-cv-3290-PJM, Dkt. 2 at 4-5, and alleged leaks about those negotiations to the media, *id.* Dkt. 86. The Post, as an intervenor in the Maryland action is well-aware of these facts but buries them in footnotes. *See* Dkt. 25 at 4 n.1, 10 n.11. None of the parties in the Maryland action, have filed anything in that case regarding the privileged and confidential information that is the subject of the lawsuit before this Court. While references to that case should have no bearing on the issues here, it is important to note that the court there also closed and excluded the Post from a hearing only because it involved discussion of the business dispute. *See Rothman*, No. 8:20-cv-3290-PJM, Dkt. 87 at 10:22-11:14.

## III.   ARGUMENT

By its own terms, the Post's motion deals with a narrow issue: "the public interest in access to the January 8, 2021 Hearing." This motion does not address the questions of which court filings should be sealed and whether the Post should be allowed to intervene to litigate that issue. Indeed, despite its title, the Post's Motion is not a motion to intervene at all. Nowhere does the Post's brief even cite Federal Rule of Civil Procedure 24, let alone apply its requirements, to justify its participation in the January 8th proceeding. Instead, the Post merely "incorporates by reference" the arguments made in its Motion to Intervene, Dkt. 25 at 2, which has not yet been fully briefed, heard, or ruled on. What the Post's Motion really is, then, is a non-party's attempt to file an opposition to the Team's Motion to Close, after the Court already granted that motion and closed

the Hearing. As such, the "motion" is both procedurally improper and wrong on the merits.

The Post's attempt to file a backdoor objection to this Court's Closing Order as a non-party is moot and procedurally improper. The Post's *de facto* opposition to the Team's Motion to Close "was moot when it was filed because the court already had granted." *Combs v. Nevada*, No. 11-cv-528, 2017 WL 4158616, at *2 (D. Nev. Sept. 19, 2017) (granting motion to strike opposition brief). A "motion in opposition" to a motion that has already been granted should be denied as moot. *See Riddick v. Ryder*, No. 7:13CV00402, 2014 WL 4827884, at *1 n.1 (W.D. Va. Sept. 29, 2014) (denying a motion in opposition to a court order granting a prior motion as moot); *see also e.g. IndyMac Bank v. Aryana/Olive Grove Land Dev., LLC*, No. 12-cv-01494, 2012 WL 12895842, at *1 n.2 (C.D. Cal. Oct. 25, 2012) ("Since the Court has already ruled on the motion, Braswell's opposition is moot.").

Indeed, the Post lacks standing to challenge an issue the Court has already ruled on because its Motion to Intervene has not yet been granted, nor is it fully briefed. Even if the Post were a party to the case, the "proper procedur[e]" for a to challenge the non-dispositive ruling of a magistrate judge "is to file objections to the order … pursuant to Rule 72" of the Federal Rules of Civil Procedure. *Lawson v. McDonough*, No. 04-cv-105, 2006 WL 3462588, at *1 (N.D. Fla. Nov. 29, 2006). One cannot circumvent Rule 72 by filing another form of motion that seeks "to ignore [a] Magistrate Judge['s] decision on the same issues." *See, e.g.*, *De Luna v. Navarro*, No. 18-cv-2261, 2019 WL 6139920, at *2 (C.D. Cal. Sept. 6, 2019); *accord Burnett v. Miller*, 631 F. App'x 591, 597 (10th Cir. 2015), (holding that court could not revisit magistrate judge's ruling where no timely objections were filed), *aff'd*, 738 F. App'x 951 (10th Cir. 2018).

The Post lacks standing to object to the Closing Order because it is not a party to the case. Under Federal Rule of Civil Procedure 72(a), only "[a] *party* may serve and file objections" to a

magistrate judge's order. Fed R. Civ. P. 72(a) (emphasis added). A third party that has merely filed a motion to intervene does not "acquire[] the status of a party" until its motion to intervene is granted. *See Atl. Mut. Ins. Co. v. Nw. Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994); *accord Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 620–21 (D. Mass. 1988).

For the same reasons, courts have held that proposed intervenors lack standing to move for reconsideration under Rule 59 or Rule 60. *Gomez v. City of Chicago*, No. 85 C 149, 1986 WL 8733, at *1 (N.D. Ill. Aug. 1, 1986) ("Accordingly, proposed intervenors, not being parties to this action, cannot seek reinstatement of this case pursuant to Rule 60(b)."); *Katz v. Berisford Int'l PLC*, No. 96 CIV. 8695 (JGK), 2000 WL 1760965, at *2 (S.D.N.Y. Nov. 30, 2000) (would-be intervenors not permitted to file Rule 59 motion). Thus, because the Post's Motion amounts to nothing more than a non-party's attempt to challenge the Court's Closing Order, its motion is procedurally improper and must be denied.

A. **The Post Must Wait Until a Ruling on its Motion to Intervene to Litigate Sealing Issues**

Perhaps aware of the fact that it cannot directly challenge the Court's Closing Order, the Post styles its motion as a motion to intervene and "incorporates by reference" its arguments from its original Motion to Intervene, which is not yet fully briefed and is scheduled to be heard on January 29th. Dkts. 98 & 99. But a ruling on those arguments at this point would be prejudicially premature. The Local Rules set a clear procedure and timetable for ruling on motions, including motions to intervene. Local Civ. R. 7(E), 7(F)(1). The Parties and the Court have already agreed to a schedule for litigating the Post's Motion to Intervene, and a hearing will be held, after full briefing, on January 29, 2021. Dkt. 107. Thus, the proper procedure, under the Local and Federal Rules, is for the January 8, 2021 hearing to proceed between the Team and current Parties only, then for the Court to rule on the Post's original Motion to Intervene, and, only if that motion is

granted, the Post will then be able to present its arguments on the merits of sealing.

This procedure, while required by the Rules, is also logical and minimizes the risk of irreparable harm. As explained in the Team's Motion to Close, the Hearing will involve substantial discussion of privileged and confidential information that this Court has already repeatedly ruled should not be made public. Dkt. 111. Opening the hearing presupposes that those rulings were erroneous. Likewise, allowing the Post to participate in the closed Hearing presupposes that it will be granted intervenor status and given access to all sealed documents before the Team and the Plaintiff have even briefed the grounds for their oppositions. Otherwise, the Team and the Parties would be required to discuss the very information to be sealed in either the public's or the Post's presence, which would defeat the entire purpose of the Team's motion to seal and would violate the existing November 25, 2020 Sealing Order. "Once confidential attorney-client communications are disclosed, their confidential nature is permanently and irrevocably impaired." *X Corp. v. Doe*, 805 F. Supp. 1298, 1303-04 (E.D. Va. 1992), *aff'd sub nom. Under Seal v. Under Seal*, 17 F.3d 1435 (4th Cir. 1994); *see also Datatel, Inc. v. Rose & Tuck, LLC*, No. Civ. A. 05-495, 2005 WL 1668020, at *2 (E.D. Va. June 17, 2005) (upholding preliminary injunction to prevent "irreparable injury" from disclosure of confidential business information).

On the other hand, even though the Hearing is closed, if the Court later determines that the Post or public should have access to some of it, a redacted transcript can be produced with no harm to the public's interests. Indeed that is the current procedure underway with respect to the prior sealed hearing transcripts in this matter.

Thus, in sum, the Court has already ruled that the Hearing should be closed, and the Post, as merely a proposed intervenor, lacks standing to challenge the Closing Order. The proper procedure, dictated by both the Rules and good sense, is to hold the closed Hearing without the

Post, then rule on the Post's Motion to Intervene, and, if the Post succeeds in intervening, then allow it to litigate its objections to the Court's sealing orders. Thereby, the Court can reserve giving the Post, and *a fortiori* the public, access to the Team's privileged and confidential information until it has been able to properly consider what information should be revealed and to whom.

### B.    The Hearing Should Remain Closed To the Public

The Post has provided no compelling basis for the Court to revisit its decision to close the Hearing.  Indeed, the Court's decision to close the January 8th Hearing marks the **third** time that the Court has closed a hearing in this case, and the same concerns that existed the first two times exist now. Nothing the Post has argued changes those facts and the law is not on its side. First, the Court's Closing Order was legally sound because the public has no right of access to a hearing on a motion to seal. Indeed, such a right would be illogical and self-defeating. Second, the Post conflates the narrow procedural issue here—whether the Hearing should be closed—with the question of whether the Team's confidential information should ultimately be unsealed. In doing so, the Post also mischaracterizes ongoing litigation in the District of Maryland—an unrelated business dispute involving none of the parties in this case. Finally, the Post's proposal to divide the Hearing into public and private portions is unworkable because it risks inadvertent and irreparable disclosure of the Team's confidential and privileged information.

#### 1. The Court Correctly Held that there is no Public Right of Public Access to the Hearing and that Closure was Essential

As this Court already ruled: "[t]he public has no right of access to hearings on motions to seal." Dkt. 117 ¶ 3 (citing *In re Copley Press, Inc.*, 518 F.3d 1022, 1027-29 (9th Cir. 2008)).  To hold otherwise would render hearings on motions to seal inherently self-defeating. It is undisputed that at least some portions of the Parties' filings should be redacted to protect the Team's privilege interests. *See* Dkt. 68 at 1; Dkt. 25 at 5 (accepting that privileged communications need not be

made public). But the court cannot hold a meaningful hearing regarding the appropriate scope of redactions without a frank and open discussion of the specific information to be redacted. To make that hearing open to the public would, therefore, force the Team and Parties to publicly disclose the very information at issue, including the information the Court ultimately rules should be kept private

The Ninth Circuit's opinion in *In re Copley Press, Inc.* is directly on point. There, the appellate court held that the public has neither a First Amendment nor common-law right of access to a hearing on a motion to seal. 518 F.3d 1022, 1027-29 (9th Cir. 2008). Such a right would be "highly illogical" because at such hearings the parties and the judge need to discuss "not only the facts the parties hope to keep secret, but also their reasons for doing so, which are likely to be just as private as the facts at issue." *Id.* at 1027.

This approach is consistent with the Court's direction at the November 20, 2020 hearing before Magistrate Judge Davis. There, the Court initially conducted a public hearing, but after the parties inadvertently discussed confidential information, and especially once it became clear that further discussion of privileged and confidential issues was required, the Court ordered the remainder of the hearing closed. *See* Tr. of Nov. 20, 2020 Open Hrg. at 21:24-22:15. Similarly, Judge Trenga closed the initial hearing involving sealing issues. Dkt. 32 at 1. Another court in this district followed a similar approach in *Integrated Global Services, Inc. v. Mayo* by granting (in part) a party's "Motion to Seal the Courtroom and Transcript" and then allowing the movant to "move to redact those portions of the transcript" that contain confidential information "after the transcript is filed." No. 3:17CV563, 2017 WL 4052809, at *1 n.6 (E.D. Va. Sept. 13, 2017).[1]

---

[1] Contrary to the Post's implication, Post Mem. at 6 n.4, nothing in *Integrated Global Services* says that its reasoning behind sealing the hearing and transcript is unique to trade secret cases.

In contrast, the cases the Post cites are inapposite because they did not involve motions to close hearings. Instead, the Post simply cites cases where hearings on motions to seal were open to the public because, unlike here, no party had moved to close them. For example, the Post's leading case, *White v. Chapman*, simply noted in passing that "Judge Davis held a hearing in open court to discuss the proposed sealing." No. 1:14CV848 JCC/IDD, 2015 WL 4360329, at *4 (E.D. Va. July 14, 2015). There is no indication that any party had moved to close the hearing or that any sensitive information was discussed at the hearing. *See also Hargrove v. Ryla Teleservices, Inc.*, No. 2:11CV344, 2013 WL 1897027, at *8 (E.D. Va. Apr. 12, 2013), *rpt. & rec. adopted*, 2013 WL 1897110 (E.D. Va. May 3, 2013); *Baker v. Dolgencorp, Inc.*, 818 F. Supp. 2d 940, 942 (E.D. Va. 2011).[2]

Other cases the Post cites deal with issues of uniquely public concern that are far removed from the issue here of protecting a non-party's confidential information in non-dispositive civil litigation. *Cf. Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (public access to criminal trials); *Hargrove*, 2013 WL 1897027, at *8 (public's unique right of access to FLSA settlements).

Even to the extent the public ever has a right of access to hearings on motions to seal, here closure is "essential to protect overriding interests," Closing Order, ¶ 5, because "[t]he hearing on the Team's Motion to Seal will inevitably entail discussion of privileged and confidential portions of previous filings in this case and additional privileged and confidential information relevant to the Team's arguments." *Id.* The right of access—to the extent it exists—would be governed by the

---

[2] *Covington v. Semones* does little more, simply mentioning in a footnote that at the hearing the defendants "moved to close the hearing and exclude a newspaper reporter" (presumably orally and spontaneously) and the court denied that motion. No. 7:06 CV 00614, 2007 WL 1170644, at *1 n.1 (W.D. Va. Apr. 17, 2007). The case says nothing about the grounds for the motion or its denial.

common law standard because the Hearing relates only to collateral issues of sealing and does not involve any "dispositive relief." *See, e.g.*, *Lord Corp. v. S & B Tech. Prod., Inc.*, No. 5:09-CV-205-D, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) (sealing documents related to motions *in limine* under common law standard).[3]

The common law standard is easily satisfied here because the hearing will involve discussion of the Team's privileged communications and confidential information. *See* Closing Order ¶ 5. Even the Post itself concedes that "information that is potentially privileged or protected by the common interest or work product doctrines ... need not be discussed in open court." Dkt. 25 at 5-6. Furthermore, this Court has already ruled that discussion of the Team's confidential information should also remain under seal. Dkt. 68 at 1; *see also, e.g.*, *Malon v. Franklin Fin. Corp.*, No. 3:14CV671 (HEH-RCY), 2014 WL 12768782, at *3 (E.D. Va. Dec. 4, 2014) (business documents subject to "strict confidentiality agreement"); *Lifenet Health v. Lifecell Corp.*, No. 2:13CV486, 2015 WL 12517430, at *4 (E.D. Va. Feb. 12, 2015) (confidentiality provision in agreement).

### 2. Whether the Documents Should Ultimately be Unsealed is a Red Herring

Much of the Post's brief is devoted to arguing the merits of whether references to the Team's confidential information should be redacted. But that argument is premature and irrelevant. The Post has filed a separate Motion to Intervene for the purpose of litigating what documents should be sealed and which released. The motion at issue here seeks only intervention "for the limited purpose of asserting the public interest in access to the January 8, 2021 Hearing." Post Mem. at 1. Thus, while the documents at issue here should be redacted, as this Court has already

---

[3] The Post's citation to Judge Trenga's discussion of the First Amendment standard in his November 17, 2020 Order misleadingly conflates the broader question of *what* should be sealed with the narrow question here: whether the *discussions about what to seal* should be had in public.

held, that issue is irrelevant to the Post's instant motion. Rather, the correct way for the Post to argue for public disclosure is through its motion to intervene. Only if that motion is granted will the Post be entitled to litigate its objections to the Court's rulings sealing of portions of the record.

Moreover, the history of this case shows that there is no unique urgency that justifies putting the cart before the horse in the manner the Post proposes. There were two hearings on sealing issues in this case last November, neither of which the Post attended, let alone attempted to participate in. Nor did the Post move to intervene until weeks after the Court entered its Sealing Order. And since then the Post has not attempted to participate in the case, such as by opposing the Team's Motion to Seal. If there was no exigency that merited disrupting the orderly resolution of these collateral sealing issues before, the scheduling of a third hearing on proposed sealing does not create one now.

### 3. *Information about Confidential Information Has Not Been Made Public*

The Post misleadingly argues that the Team and Plaintiff have lost their privacy interests in their confidential information because "information concerning what appears to be the same … Settlement Agreement at issue in this case has already been publicly filed by the Team's owners in the Maryland Federal Litigation, and reported in the media." Dkt. 25 at 7-10 (referencing *Rothman v. Snyder*, No. 8:20-cv-3290-PJM (D. Md.). First and foremost, none of the Team's owners in the Maryland action have filed anything in that case that is the subject of this lawsuit, nor is the Plaintiff, Mr. Donovan, a party in that case or involved in it in any way. The Post grossly mischaracterizes the nature of that lawsuit—a case in which it has intervened and should therefore know better.

That suit is a commercial dispute between the Team's owners and has nothing to do with any of the issues or the parties involved in this case. As the Post is well aware given its status as an intervenor there, that case involves confidential negotiations and offers to purchase minority

shares in the team, and leaks about those negotiations to the media. *See Rothman*, No. 8:20-cv-3290-PJM, Dkt. 2 at 4-5; Dkt. 86. The Post, as an intervenor in the Maryland action, is well-aware of these facts but buries them in footnotes. *See* Dkt. 25 at 4 n.1, 10 n.11. Read in context, it becomes clear that the "confidential information" discussed in the Maryland parties' filings refers to the recent agreement to purchase shares in the Team and has nothing to do with the issues in this case. *See Rothman*, No. 8:20-cv-3290-PJM, Dkt. 73 at 2; Dkt. 73-1. While it is true that the plaintiffs in the Maryland action reference a recent New York Times story involving a settlement, they seemingly did so only for the purpose of trying to identify the source of a leak regarding their business negotiations. *Id.* Dkt. 77 at 1-2; Dkt. 82 at 8-9. Importantly, the Team is not a party in that case. Moreover, the plaintiffs' reference to a public news article that fails to disclose its source hardly constitutes what the Post characterizes as "public[] fil[ing] by the Team's owners" of "the same [confidential information] at issue in this case." Dkt. 25 at 7.

The Post's efforts to contort the truth for purposes of strengthening its argument here should provide further justification to deny it access. Indeed, a key function of the court's inherent "supervisory power over its own records and files" is to deny access where its "files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978). Similarly, these inherent powers are an appropriate tool to "police litigant misconduct and impose sanctions on those who abuse the judicial process." *Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10-CV-01265, 2011 WL 1584764, at *3 (S.D.W. Va. Apr. 26, 2011).

The Post's argument is also paradoxical: to the extent the information it seeks has already been publicly revealed elsewhere, the Post (and the public) already have access to it. To the extent some information has not been revealed, it remains confidential.

### 4. Partial Closure of the Hearing Would be Unworkable

The Post's final proposal of "partial closure" is not, in fact, a "workable alternative to total

closure." Dkt. 25 at 10. First, as the Post is not a party, it should not be permitted to speak at the Hearing. The Post's reference to the Maryland action is, once again, misleading. While the Post was given the opportunity to argue at a recent hearing in the Maryland action, its motion to intervene in that case had already been granted. Moreover, even in that case the Post was not allowed to attend any part of the parties' substantive discussion on confidential issues. Instead, U.S. District Court Judge Peter J. Messitte permitted the Post to speak for a mere 10 minutes on the issue of public access. After hearing from the Post, the court denied the Post's request, excused the Post's attorneys, and closed the remainder of the hearing, which again merely involved a business dispute. *See Rothman*, No. 8:20-cv-3290-PJM, Dkt. 87 at 5:10-11:14. The interest in closing the Hearing here is even greater because the Hearing will involve discussion of privileged communications relating to the Sealing Order and other confidential information the Sealing Order already found entitled to sealing.

Second, the Post's suggestion to split the Hearing into public and private sessions is unworkable because it creates a tremendous risk that privileged information will be inadvertently, and irrevocably, revealed. As in *In re Copley Press*, this Court has already found that "[t]he hearing on the Team's Motion to Seal will inevitably entail discussion of privileged and confidential portions of previous filings in this case and additional privileged and confidential information relevant to the Team's argument" Dkt. 117 ¶ 5. Thus, trying to bifurcate a hearing that intrinsically involves privileged and confidential information, let alone a hearing between four parties with different opinions and access to confidential documents, would court irreparable harm that privileged or confidential information will be revealed. *Cf. X Corp*, 805 F. Supp. at 1303-04 ("Once confidential attorney-client communications are disclosed, their confidential nature is permanently and irrevocably impaired."); *Datatel, Inc.*, 2005 WL 1668020, at *2 (upholding

preliminary injunction to prevent "irreparable injury" from disclosure of confidential business information).

In fact, this very problem arose at the November 20, 2020 open hearing before Magistrate Judge Davis when counsel for the Defendant inadvertently revealed confidential information in explaining that such information had been "taken … out" of certain filings, Tr. of Nov. 20, 2020 Open Hrg. at 8:8-9:2, and counsel for the Plaintiff repeated Defendant's "spontaneous utterance." *Id.* at 10:6-13; *See also id.* at 20:8-20 21:4. These mentions of confidential information left the Parties and the Court scrambling to figure out whether any members of the public were listening in, something that in this age of remote hearings cannot be established with complete certainty. *See id.* at 10:14-23, 21:11-22:15.[4] Thus, all substantive discussions of the Team's Motion to Seal and the proposed redactions should be held in the closed hearing. As this Court has already ruled, "releasing a partially redacted transcript after the hearing is narrowly tailored to protect the compelling interests" in avoiding premature disclosure and "no less intrusive form of relief is available that would adequately give effect to those interests." Dkt. 117 ¶ 6.

## IV.  CONCLUSION

For the foregoing reasons, the Post's Motion should be denied. The January 8, 2021 Hearing should remain closed and the Post, as a non-party, should not be allowed to attend or participate.

---

[4] Indeed, such disclosure would be even more harmful than at the November 20, 2020 hearing because the Post, a major newspaper that has already shown its interest in obtaining the confidential information in this case, would be in attendance but, as a non-party, not bound by any sealing orders.

Dated:   January 6, 2021           **DECHERT LLP**
         Washington, D.C.

By:   <u>s/ *Christina Guerola Sarchio*</u>
      Christina Guerola Sarchio
      Virginia Bar No. 87166
      1900 K Street NW
      Washington, D.C. 20006
      Phone: (202) 261-3300
      Fax: (212) 261-3333
      christina.sarchio@dechert.com

      Andrew J. Levander (*admitted pro hac vice*)
      Neil A. Steiner (*admitted pro hac vice*)
      Three Bryant Park
      1095 Avenue of the Americas
      New York, NY 10036
      Phone: (212) 698-3500
      Fax: (212) 698-3599
      andrew.levander@dechert.com
      neil.steiner@dechert.com

      *Attorneys for Intervenor Pro-Football Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2021, a true and correct copy of the foregoing *Intervenor Pro-Football, Inc.'s Memorandum in Opposition to Interested Party WP Company LLC's Opposition to Interested Party WP Company LLC's Second Motion to Intervene* was filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Christina Guerola Sarchio*
Christina Guerola Sarchio