**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| DAVID P. DONOVAN, <br><br> Plaintiff, <br><br> v. <br><br> BETH A. WILKINSON, <br><br> Defendant, <br><br> PRO-FOOTBALL, INC. <br><br> Intervenor. | Civil Action No. 1:20-CV-01344-AJT-IDD |

**WP COMPANY LLC'S REPLY IN FURTHER SUPPORT OF SECOND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF ASSERTING THE PUBLIC INTEREST IN ACCESS TO THE JANUARY 8, 2021 HEARING ON INTERVENOR PRO-FOOTBALL, INC.'S MOTION TO SEAL, STRIKE, AND RECONSIDER IN PART**

WP Company LLC d/b/a The Washington Post (the "Post) respectfully submits this reply brief in further support of its Second Motion to Intervene For the Limited Purpose of Asserting the Public Interest in Access to the January 8, 2021 Hearing (the "Hearing") on Intervenor Pro-Football, Inc.'s (the "Team's") Motion to Seal, Strike, and Reconsider in Part.

As a preliminary matter, the Post takes strong exception to the Team's statement that the Post misled this Court as to the nature of public filings in *Rothman v. Snyder*, No. 8:20-cv-3290-PJM (D. Md.) (the "Maryland Litigation"). *See* Dkt. 141 ("Team Br.") at 14. To the contrary, the Post quoted directly from the relevant papers, each of which was attached as an exhibit to the Post's motion. It is the Team who failed to inform the Court in its Christmas Eve Motion to Close this Hearing that the Team's majority owner, Dan Snyder – represented by the same

1

counsel representing the Team here – had just that week publicly filed information about the 2009 Settlement Agreement.  The Team's other arguments are similarly without merit.

1. **Discussion About Sealing the 2009 Agreement Should Be Public To The Extent Such Information Is Already In the Public Domain.**

The Team argues that the Hearing should be closed in order to protect its "confidential information."  Team Br. at 11-12.  But the Team ignores that much of this information appears to already be in the public domain (as evidenced by the exhibits to the Post's motion).  *See* Post's Mem. of Law in Support, Dkt. 125 ("Post Br.") at 7-9.  The Team's silence about these public filings speaks volumes.  For example, the Team ignores that:

- Snyder referenced the "2009 settlement" in a filing on December 22, 2020, Handman Decl. Ex. C (Dkt. 126-3);

- Snyder stated in and affidavit dated December 23, 2020, that the allegations underlying the 2009 settlement were "meritless," that "no evidence of wrongdoing was found after an investigation by a well-respected law firm," and that despite no finding of wrongdoing, "the insurance carrier decided to settle." Handman Decl. Ex. E (Dkt. 126-5);

- Snyder's December 23 filing also included a Post article reporting that, *inter alia*, the Team "paid a female former employee $1.6 million as part of a confidential settlement in 2009," the "settlement was struck after the woman accused team owner Daniel Snyder of sexual misconduct," the "alleged incident occurred on Snyder's private plane," the Plaintiff in this case, David P. Donovan "led the team's investigation into the woman's allegations that preceded the settlement," and the Agreement was signed on July 22, 2009 by Howard Shapiro, an attorney for Snyder, Mitch Gershman, then the team's chief operating officer, and Plaintiff.  *Id.*

Moreover, filings in *this* case indicate that Plaintiff commenced this action "to enjoin Defendant from disseminating information that is the subject of a confidential agreement to which Plaintiff is a party, and other related confidential information," Dkt. 24 at 1, and that the relevant agreement was signed in 2009, Dkt. 42.  Nevertheless, the Team states in its opposition to the Post's motion that, "'[n]one of the parties in the Maryland Litigation, have filed anything in that

2

case regarding the privileged and confidential information that is the subject of the lawsuit before this Court." Team Br. at 5.  That is a seemingly unequivocal position, but the Team's failure to address its majority owner's disclosures in the Maryland Litigation leave the import of this statement unclear.[1]  The public has a right to know whether the 2009 agreement at the center of this litigation is the same 2009 settlement agreement referenced in the Maryland Litigation.  If so, there is no basis for excluding the public from discussions about sealing that agreement, or to conceal details about the agreement that are already in the public domain.  *See, e.g.*, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (holding that before sealing records, court must consider "whether the public has already had access to the information contained in the records" (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-608 (1978)).

**2.      The Team's Asserted Interest in Confidentiality is Outweighed By the Public Interest in Access to Court Proceedings and Records.**

The Team has also failed to satisfy its burden of showing that the extreme step of closure is "narrowly tailored" to satisfy any "compelling government interest" or "higher values at stake." *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 509 (1984) ("Closed proceedings . . . must be rare[.]").  Instead, they insist that the First Amendment simply does not apply, even though Judge Trenga has already recognized precedent to the contrary.  *See* Dkt. 32 at 2.  *See also Va Dep't of State Police v. Wash. Post*, 386 F.3d 567, 580 (4th Cir. 2004) ("[P]roceedings in civil cases are traditionally open . . . and in some civil cases the public interest in access . . . may be as strong as, or stronger than, in most criminal cases.") (internal citations and quotation marks omitted); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009) ("Although the

---

[1] For example, the Team states in its brief that "to the extent the information [the Post] seeks has already been publicly revealed elsewhere, the Post (and the public) already have access to it." Team Br. at 14.

3

Fourth Circuit [] has not explicitly held that a First Amendment right of access exists with regard to non-dispositive civil motions and hearings, the precedent strongly favors that view, with the higher burden for sealing."). The Team suggests that even if the First Amendment applies with respect to sealing, it does not apply to "*discussions about*" sealing. Team Br. at 12 n.3. This makes no sense and is contrary to Fourth Circuit law, which requires that even under the less stringent federal common law standard, "the district court must provide interested persons '*an opportunity to object to the request before the court ma[kes] its decision.*'" *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253-54 (4th Cir. 1988) (emphasis added) (quoting *In re Knight*, 743 F.2d at 234-35).

The Team also continues to rely on other cases that undermine its position.[2] *Lifenet Health v. Lifecell Corp.*, No. 2:13CV486, 2015 WL 12517430 (E.D. Va. Feb. 12, 2015), stands only for the proposition that *proprietary and trade-secret information* may justify partial sealing of a court record. *Id.* at *1, *4. Here there are no trade secrets at issue; the Team's allegedly confidential information appears to be more in the nature of reputational harm, which the Fourth Circuit has held to be an insufficient ground for sealing. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 269-70 (4th Cir. 2014) ("claims that carry the potential for embarrassing or injurious revelations . . . [is] part of the day-to-day operations of federal courts.").[3] And where, as here,

---

[2] For example, the Team argues that there was nothing in *Integrated Global Services, Inc. v. Mayo*, No. 3:17cv563, 2017 WL 4052809 (E.D. Va. Sept. 13, 2017) (granting motion to close hearing in order to protect trade secrets), that "says that its reasoning . . . is unique to trade secrets," Team Br. at 10 n.1. But since there was no countervailing public interest asserted in that case, the court did not expand upon its reasoning at all – the court just stated in a footnote that it had granted the "Motion to Seal the Courtroom and Transcript . . . from the bench during the hearing." 2017 WL 4052809, at *1 n.6.

[3] *See also Doe*, 749 F.3d at 269 (explaining that the weight of authority on this is substantial and the court was "unaware . . . of *any* case in which a court has found a company's bare allegation

4

the information at issue has been made public – in *Lifenet* in an article, here in filings by the majority owner – "it cannot overcome the First Amendment right to public access." 2015 WL 12517430, at *3. *See also Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 587 (E.D. Va. 2009) (holding that public release of documents "'effectively mooted any argument that the documents retained any protected status'") (quoting *Rambus, Inc. v. Infineon Techs. AG*, No. Civ.A.3:00CV524, 2005 WL 1081337, at *1 (E.D. Va. 2005); *Benedict v. Hankook Tire Co.*, 323 F. Supp. 3d 747, 755 (E.D. Va. 2018) (citing *Doe*, 749 F.3d at 269).

Moreover, the holding in *Lifenet* is inapposite because it was explicitly based on a demonstrated interest in protecting the confidentiality interests of *third parties*. 2015 WL 12517430, at *3. There is no evidence to suggest that there are any third-party interests to be protected here. The Team is an intervenor and Mr. Donovan is a party. It is also notable that Brendan Sullivan, the attorney who reportedly signed the 2009 Agreement as counsel for the female employee who asserted harassment allegations against Mr. Snyder,[4] filed a sealed affidavit in support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction.[5] Dkt. 55-4.

Moreover, as the Post has stated in its prior papers, the fact that certain information might be subject to the confidentiality provision of a settlement agreement does not outweigh the public interest in disclosure. *See* WP's First Mot. to Intervene, Dkt. 99 at 10-12 (collecting cases);

---

of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access.").

[4] Will Hobson et al., *Daniel Snyder, in court filing, calls sexual misconduct allegation 'meritless'*, Wash. Post (Dec. 23, 2020), https://www.washingtonpost.com/sports/2020/12/23/daniel-snyder-response-allegations/.

[5] Since the Sullivan affidavit is sealed, the Post is unaware of, and makes no representations about, its content.

*Bureau of Nat'l Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352, at *3 (D. Md. July 25, 2012) ("Private parties are entitled to enter into confidential agreements, but the courts ordinarily are not party to such promises of confidentiality.").

**3.     The Public Has a Right To Be Heard On Issues of Access *Before* Closure or Sealing.**

Since there is no substantive basis for total closure of the Hearing, it is perhaps not surprising that the Team devotes a large part of its opposition brief to arguing that the Post's motion is procedurally barred. Team Br. at 5-6. The Team is wrong. *See, e.g,*, *Rosenfeld v. Montgomery Cty. Pub. Schs.*, 25 F. App'x 123, 131 (4th Cir. 2001) ("[T]he press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records."); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988) (recognizing newspaper's right to intervene for the purpose of unsealing records); *Rushford*, 846 F.2d at 252 (permitted the Post to intervene for limited purpose of asserting public's interest in sealed records); *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 572 (4th Cir. 2004) (media organizations permitted to intervene and to move for unsealing of documents); *Benedict*, 323 F. Supp. 3d at 753 ("It is well-established that there exists a 'right of public access' to 'judicial records.'") (quoting *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)).

Also unpersuasive is the Team's argument that the Post's intervention is somehow contrary to Fed. R. Civ. P. 24. Team Br. at 5. To the contrary, courts "have expressed a willingness to adopt flexible interpretations of Rule 24" to allow media intervention on issues of public access. *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("Given this flexible approach and our longstanding tradition of public access to court records, we construe Rule 24(b) as an avenue for third parties to have their day in court to contest the

6

scope or need for confidentiality, [and] . . . third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.") (internal citations and quotation marks omitted).

The Team also contends that the Post's motion to intervene is untimely, because it is only asserted "for the first time now that the case is essentially over." Team Br. at 2. That is a surprising position for the Team to take given that they filed their own motion to intervene on December 9, 2020, just over a week before the Post's first motion to intervene. As the Team argued, and as this Court ultimately found when it granted the Team's Motion to Intervene on December 9, 2020:

> This action was only recently commenced and has not progressed past the preliminary stages. To date, the Defendant has not submitted an answer, no Case Management Order has been entered, discovery has not been served, and, the Court has not held a hearing on the Plaintiff's motion for a preliminary injunction.

Dkt. 84 ¶¶ 3-4. Regardless, courts in this Circuit have given the media great latitude with respect to timing of motions to intervene, even permitting such motions after an action is terminated. *See Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999) (citing *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974); *Stone*, 855 F.2d at 180).

The Team also argues that the Court is precluded from revising its own ruling with respect to closing this hearing. But that decision was issued before the Court had been advised (at least in any public filing) of the disclosures about the 2009 Agreement in the Maryland Litigation, and before any party had attempted to assert the public's interest in access. In any event, as the Team concedes, a district court has "inherent 'supervisory power over its own records and files.'" Team Br. at 14 (quoting *Nixon*, 435 U.S. at 598-99). As the Ninth Circuit

7

found in the Team's main case, *In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008), "logic requires that at least *part* of these hearings be open to the public, because one of their purposes is to give the public an opportunity to be heard." *Id.* at 1027.  There is simply no procedural bar to excluding the public from this Hearing altogether.

*\*\*\**

For the foregoing reasons, as well as those asserted in the Post's prior briefing in support of intervention, the Post respectfully asks that the Court grant public access to the Hearing to the greatest extent possible, and that the Post be permitted to argue in favor of the public interest in access to these proceedings.

Dated:  January 7, 2021

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Patrick J. Curran Jr.*
Patrick J. Curan Jr. (VSB #86144)
Laura R. Handman (*pro hac vice*)
1301 K Street, N.W.
Suite 500 East
Washington, DC  20005-3317
(202) 973-4200
(202) 973-4499 (fax)
patcurran@dwt.com
laurahandman@dwt.com

Adam I. Rich (*pro hac vice*)
1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104
(212) 489-8230
(212) 489-8340 (fax)
adamrich@dwt.com

*Attorneys for WP Company LLC d/b/a The Washington Post*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January, 2021, I caused the foregoing reply brief to be served via the court's CM/ECF system, which will send notification to all counsel of record.

January 7, 2021

/s/ *Patrick J. Curran Jr.*
Patrick J. Curran Jr.