**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

|  |  |
|---|---|
| DAVID P. DONOVAN<br><br>       Plaintiff,<br><br>   v.<br><br>BETH A. WILKINSON<br><br>       Defendant,<br><br>PRO-FOOTBALL, INC.<br><br>       Intervenor. | Civil Action No. 1:20-cv-01344 (AJT/IDD) |

**INTERVENOR PRO-FOOTBALL, INC.'S BRIEF IN OPPOSITION TO**
**WP COMPANY LLC'S MOTION TO INTERVENE**

Intervenor Pro-Football, Inc., d/b/a the Washington Football Team (the "Team"), submits this Memorandum in Opposition to WP Company LLC's, d/b/a The Washington Post (the "Post"), Motion to Intervene (Dkt. 98). The Post's motion for permissive intervention should be denied because the Post fails to raise a common question of law or fact with the main action, as required by Federal Rule of Civil Procedure 24(b)(1)(B). Its intervention would also introduce needless complexity and delay, as it remakes arguments the Court already considered before ruling that certain material should be redacted from the Parties' filings. Moreover, the Court's decision to redact the Team's privileged and confidential information before unsealing the filings—something the Court, Team, and Parties are already working to implement—was factually and legally correct.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................................ii

I.  INTRODUCTION ............................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

III.  LEGAL STANDARD....................................................................................... 5

IV.  THE COURT SHOULD NOT PERMIT THE POST TO INTERVENE.......................... 6

    A.  The Post Does Not Have A Claim Or Defense That Shares A Common Question Of Law Or Fact With the Main Action ................................................... 7

    B.  The Court Should Exercise Its Discretion And Deny Permissive Intervention ..................................................................................... 10

V.  The Team's Privileged And Confidential Information Should Remain Under Seal ........ 12

    1.  *The Public Has No Right Of Access To Information The Court Has Already Ordered Sealed*............................................................................ 13

    2.  *Even If A Right Of Access Existed, It Would Be Governed By The Common Law Standard*............................................................................ 15

    3.  *Redactions Are Necessary To Preserve The Bargained-For Confidentiality Rights Of Nonparties, Including The Team* .................... 17

    4.  *The Team's Privacy Interests Have Not Been Waived by ThirdParty Media Leaks in Unrelated Litigation*........................................................ 21

    5.  *Immaterial And Scandalous Allegations About Non-Parties Should Also Remain Sealed Or Be Stricken*........................................................ 23

    6.  *The Team's Rights Warrant Redacting Its Confidential Information Under Any Standard* ........................................................................... 24

VI.  CONCLUSION................................................................................................ 27

# TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co. v. Warns*,
   2012 WL 681792 (D. Md. Feb. 29, 2012) ...............................................................17

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*,
   2020 WL 973751 (E.D. Va. Feb. 7, 2020).................................................................15

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*,
   2019 WL 8108115 (E.D. Va. Aug. 15, 2019).................................................13, 15

*Cavelle v. Chicago Transit Auth.*,
   2020 WL 6681344 (N.D. Ill. Nov. 12, 2020) ...........................................................9

*City of Norfolk v. Commonwealth of Virginia*,
   2020 WL 6330050 (E.D. Va. Jan. 10, 2020) ...........................................................5

*Clehm v. BAE Sys., Inc.*,
   2017 WL 11367644 (W.D. Va. Mar. 21, 2017).......................................................16

*Cohen v. Trump*,
   2016 WL 3036302 (S.D. Cal. May 27, 2016)..........................................................26

*Cunningham v. Rolfe*,
   131 F.R.D. 587 (D. Kan. 1990)..........................................................................7, 8

*Doe v. Public Citizen*,
   749 F.3d 246 (4th Cir. 2014) ....................................................................... *passim*

*Dorsey v. TGT Consulting, LLC*,
   888 F. Supp. 2d 670 (D. Md. 2012) ........................................................................19

*Globe Newspaper Co. v. Superior Court of Norfolk Cty.*,
   457 U.S. 596 (1982).................................................................................................11

*Hargrove v. Ryla Teleservices, Inc.*,
   2013 WL 1897027 (E.D. Va. Apr. 12, 2013) ..........................................................19

*Hoots v. Com. of Pa.*,
   672 F.2d 1133 (3d. Cir. 1982).................................................................................10

*In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*,
   184 F. Supp. 2d 1353 (N.D. Ga. 2002) ...................................................................22

*In re N.C. Swine Farm Nuisance Litig.*,
   2017 WL 5178038 (E.D.N.C. Nov. 8, 2017)....................................................14, 22

*In re Policy Mgmt. Sys. Corp.*,
1995 WL 541623 (4th Cir. Sept. 13, 1995) ..............................................14, 15, 16

*In re Roman Catholic Archbishop of Portland in-Oregon*,
661 F.3d 417 (9th Cir. 2011) ...................................................................22

*In re Williams*,
2017 WL 6278764 (Bankr. W.D. Va. Dec. 8, 2017) ...........................................18

*Jones. Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ..................................................................23

*Jones v. City of Danville*,
2020 WL 6063063 (W.D. Va. Oct. 14, 2020) ......................................................23

*Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*,
314 F.R.D. 180 (E.D. Va. 2016) ..............................................................6, 12

*Lifenet Health v. Lifecell Corp.*,
2015 WL 12517430 (E.D. Va. Feb. 12, 2015) ..........................................18, 20, 24

*Lord Corp. v. S & B Tech. Prod., Inc.*,
2012 WL 895947 (E.D.N.C. Mar. 15, 2012) .......................................................16

*Malon v. Franklin Fin. Corp.*,
2014 WL 12768782 (E.D. Va. Dec. 4, 2014) .....................................................18

*Matter of New York Times Co.*,
828 F.2d 110 (2d Cir. 1987) ...............................................................20, 24

*Midgett v. Hardcastle*,
2018 WL 4365580 (E.D. Va. July 19, 2018) ......................................................11

*Miles v. Ruby Tuesday, Inc.*,
799 F. Supp. 2d 618 (E.D. Va. 2011) ...........................................................19

*Moussouris v. Microsoft Corp.*,
2018 WL 1159251 (W.D. Wash. Feb. 16, 2018) ...................................................20

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ....................................................................... *passim*

*Org. for Competitive Markets, Inc. v. Seaboard Farms, Inc.*,
2001 WL 842029 (8th Cir. Feb. 1, 2001) ...........................................................7

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ..............................................................12, 13, 14

*Press-Enter. Co. v. Superior Court of Cal.*,
    464 U.S. 501 (1984)................................................................................24

*Procter & Gamble Co. v. Bankers Trust Co.*,
    78 F.3d 219 (6th Cir.1996) ...................................................................22

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984)...............................................................19

*Rosenfeld v. Montgomery Cnty. Pub. Sch.*,
    25 F. App'x 123 (4th Cir. 2001) ....................................................9, 26

*Rushford v. New Yorker Magazine, Inc.*,
    846 F.2d 249 (4th Cir. 1988) ........................................................ *passim*

*Smith v. Pennington*,
    352 F.3d 884 (4th Cir. 2003) ..................................................................6

*Smith v. Westminster Mgmt., LLC*,
    2018 WL 9944968 (D. Md. Jan. 11, 2018)...........................................11

*Stone v. Univ. of Md. Med. Sys. Corp.*,
    855 F.2d 178 (4th Cir. 1988) ......................................................9, 17, 26

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013) ..........................................................6, 10

*Swift Beef Co. v. Alex Lee, Inc.*,
    2018 WL 792070 (W.D.N.C. Feb. 8, 2018) ........................................23

*Taylor v. Kellog Brown & Root Svcs., Inc.*,
    2009 WL 10689733 (E.D. Va. Dec. 18, 2009) ....................................22

*U. S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978)....................................................................6

*United States v. Lexin*,
    434 F. Supp. 2d 836 (S.D. Cal. 2006)...................................................12

*Va. Dep't of State Police v. Wash. Post*,
    386 F.3d 567 (4th Cir. 2004) ........................................................ *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 24 ........................................................................ *passim*

## I.      INTRODUCTION

This suit began as a dispute between the Plaintiff and the Defendant about the Defendant's actions in connection with a privileged and confidential internal investigation she was performing for the Team.  Recognizing that pursuing his suit would involve the disclosure of privileged and confidential information—including information belonging to nonparties such as the Team— Plaintiff sought to seal the entire case.  Defendant took the exact opposite approach, vigorously opposing sealing.  Indeed, the Defendant made most of the substantive arguments, and even cited many of the same cases, the Post cites its present motion.

This Court ruled that the correct course lay in the middle, ordering that the Parties' filings should be unsealed but that certain kinds of information should be redacted.  *See* Dkts. 32, 68.  The information to be redacted includes, *inter alia*, attorney-client communications and information regarding a confidential agreement between Plaintiff, the Team, and other nonparties.  Because the merits of the case are no longer at issue due to Plaintiff's Rule 41(a)(1)(A)(i) voluntary dismissal, Dkt. 63, the only collateral issue that remains is to resolve a handful of disagreements over how the existing sealing order should be applied to portions of the record that the Post is not entitled to see until that issue is resolved.  And, even though this case was filed more than two months ago and has now been *dismissed* for more than a month, the Post only sought to intervene on that question after the Team intervened to assert a right belonging to it, namely to protect its privileged and confidential information.

The Post acknowledges that it does not have a right to intervene in this case.  Instead, it asks the Court to grant it permissive intervention.  However, the Post does not meet the requirements for permissive intervention because it does not have "a claim or defense that shares with the main action a common question of law or fact."  *See* Fed. R. Civ. P. 24(b).  That is, the Post does not present any common questions with the Plaintiff's claims or Defendant's defenses;

1

its motion relates only to the collateral issues regarding sealing.  Intervention should also be denied on prudential grounds.  Allowing the Post to intervene would add needless complexity and delay resolution of the few issues that remain to be resolved.

The Post's request to unseal the Team's confidential information should also be denied. The public has no right of access to the documents at issue because they are not part of a dispositive motion or trial and contain confidential information that the Court has already ruled should be redacted from the public record.  *See* Dkt. 68 (Sealing Order).  Moreover, to the extent such a public right of access exists, that right would be governed by the more lenient common law standard rather than the First Amendment standard.  But the Team's application of the sealing order to the record through its proposed redactions satisfy either standard because they are narrowly tailored and essential to preserve higher public values, including the attorney-client privilege, the enforcement of bargained for confidentiality, and the prevention of gratuitous harm to nonparties.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case, to which the Team was not a party, and in which it has intervened only for a limited purpose post-dismissal, arises out of a dispute between two individuals regarding their respective legal work on behalf of the Team.  The Plaintiff brought this suit to "enjoin [the] Defendant from disseminating information that is the subject of a confidential agreement to which Plaintiff is a party, and other related confidential information."  Dkt. 24 at 1.  The Defendant obtained that information from the Team's representatives in the course of providing legal services to the Team.

Thus, by its nature, the case involves discussion of the privileged and confidential information, and in the course of the litigation, the Plaintiff and Defendant (together, the "Parties") filed numerous motions, briefs, and exhibits that contained or referenced the Team's privileged

and confidential information, including:  (1) privileged communications between the Team and the Defendant; (2) privileged communications between the Team and the NFL; (3) the Defendant's attorney work product; and (4) a confidential agreement between the Team and other parties. Many of the filings also contained immaterial or needlessly scandalous statements or information about the Team and other non-parties.

Accordingly, when the Plaintiff first filed this lawsuit, he sought to seal the case in its entirety.  *See* Dkt. 32 at 1.  Defendant opposed those efforts, *see generally, e.g.*, Dkt. 32 at 1; Dkt. 42; Dkt. 69 at 4, though she has not opposed redaction of the information addressed by the Sealing Order.   In opposing Plaintiff's motion to seal, Defendant made most of the same principal arguments the Post makes now, and even cited many of the same cases.  *Compare, e.g.*, Dkt. 26 (Def.'s Non-Confidential Opp. to Pl.'s Motion for Leave to File Under Seal and Seal Case) at 2 ("[W]hen litigants 'call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.'") *with*  Dkt. 99 (Post's Mem. In Support of Motion to Intervene) at 16 ("[I]f Mr. Donovan wanted everything kept out of the public eye, he should not have filed this lawsuit.  Now that Plaintiff has sought "subsidized dispute resolution" in the public's court system, he must accept the openness that goes with it.")  (citations and some quotation marks omitted)).

On November 17, 2020, the Court denied the Plaintiff's motion to seal the entire case, but held that "there may be subject matter, facts, allegations or references that would justify redactions from the public."  Dkt. 32 at 4.  As a result, the Court directed the Parties "to present expeditiously any such issues to Magistrate Judge Davis."  *Id*.  After additional briefing and a hearing, Magistrate Judge Davis issued an order on November 25, 2020 directing certain material be redacted from the public record (the "Sealing Order").  Dkt. 68.  The Sealing Order ordered that, *inter alia*, references

to the confidential agreement, the matter giving rise to the agreement, "news media investigation of or inquiries into the matter," and "information protected by attorney-client privilege" should be redacted from "all filings by either party." *Id.* at 1-2. The Sealing Order directed the parties to "revise the documents subject to this Order to incorporate the redactions pursuant to the guidance in this Order." *Id.* at 3.

On December 9, 2020, following the Plaintiff's voluntary dismissal but before any further rulings on sealing or redaction, the Team moved, on consent of both Parties, to intervene to assert its privilege, confidentiality, and privacy rights with regard to the Parties' filings. Dkt. 79. The Court granted the Team's motion, Dkt. 84, and ordered "[t]he Parties and the Team [to] promptly meet and confer … to submit agreed-upon redactions to the documents currently under seal," with disputed redactions to be resolved by the Court. *Id.* ¶ 3. The Court found that the Team met the requirements to intervene as of right under Federal Rule of Civil Procedure 24(a), and, in the alternative, should be granted permissive intervention under Rule 24(b)(1)(B).

On December 17, 2020, the Team filed a motion to seal or strike portions of the Parties' filings (the "Motion to Seal"), Dkt. 94, and submitted proposed redactions to the Court. Most of these proposed redactions fall under, or are related to, the categories of information the Court already ruled should be redacted in the Sealing Order. On the same day, the Post filed the present "motion to intervene for the limited purpose of asserting the public interest in access to judicial records" (the "Motion to Intervene"). Dkt. 98 & 99.

On December 28, 2020, the Court granted the Team's motion to close the hearing on its Motion to Seal. *See* Dkt. 117. In doing so, the Court found that, to the extent the public has a right of access to the Team and Parties' discussions regarding sealing, the common law standard applies because the hearing deals only with "collateral, non-dispositive issues." *Id.* ¶ 4 (citing

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988)). The Court also found that "closing the hearing [was] essential to protect overriding interests, including … giving effect to prior orders of the Court; enforcing bargained-for confidentiality provisions; and upholding the attorney-client privilege." *Id.* ¶ 5.

Also of note, Judge Peter Messitte recently ordered sealing of confidential information in another case the Post intervened in before the District of Maryland between the Team's owners. *Rothman v. Snyder*, No. 8:20-cv-3290-PJM (D. Md.) ("Md-Dkt."). In that case, the plaintiff moved to seal the entire case, which concerns a confidential purchase offer, related confidential negotiations, and confidential arbitration proceedings.[1] *See generally* Md-Dkt. 69. After the Post was permitted to intervene with the parties' consent for the purpose of opposing sealing, Judge Messitte ruled that the case should be unsealed but ordered that the parties' confidential business information and information "pertaining to" the arbitration proceedings should be redacted from the public docket. *Id.* at 1, 7, 8, 10-11. In that matter, there were no claims of privilege—attorney-client, or otherwise—but merely concerns for confidentiality of certain business information, which were abided by Judge Messitte in the court's redaction order.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 24(b)(1)(B) allows intervention only where the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1); *see also City of Norfolk v. Commonwealth of Virginia*, No. 2:19CV436, 2020 WL 6330050, at *4 (E.D. Va. Jan. 10, 2020) (denying motion to intervene for failure to raise common question). Even where this requirement is met, however, "a decision to

---

[1] The Team was not a party to that litigation and the confidential information involved in that case and this one are completely different. Among other differences, that case did not involve revelation of privileged material. *See* Dkt. 141.

deny permissive intervention under Rule 24(b) 'lies within the sound discretion of the trial court.'"
*Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003); *see also* Fed. R. Civ. P. 24(b)(1)(B) ("The
court *may* permit anyone to intervene who ... has a claim or defense that shares with the main
action a common question of law or fact." (emphasis added)).

In evaluating a motion for permissive intervention, a court's discretion is guided by several
factors. "[T]he court must consider whether the intervention will 'unduly delay or prejudice the
adjudication of the rights of the original parties.'" *Liberty Mut. Fire Ins. Co. v. Lumber
Liquidators, Inc.*, 314 F.R.D. 180, 183-84 (E.D. Va. 2016); Fed. R. Civ. P. 24(b)(3). For example,
the Fourth Circuit has noted that permissive intervention is rightly denied where bringing in the
intervenors would "complicate the discovery process and consume additional resources of the
court and the parties." *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013).

"Other relevant factors include the nature and extent of the intervenors' interests, whether
their interests are adequately represented by the other parties, and whether parties seeking
intervention will significantly contribute to full development of the underlying factual issues in
the suit and to the just and equitable adjudication of the legal questions presented." *U. S. Postal
Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) (internal quotation marks omitted) (quoting
*Spangler v. Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (internal quotation marks
omitted) (affirming denial of intervention).

## IV.    THE COURT SHOULD NOT PERMIT THE POST TO INTERVENE

Here, the Post fails to meet the threshold requirement for permissive intervention. Its
collateral interest in seeing the documents filed in this case does not present a "common question"
with the merits of the Plaintiff's suit. And even if it did, intervention would add needless
complexity and delay given that the Court already weighed the public interest in its prior rulings
permitting redactions.

A.       **The Post Does Not Have A Claim Or Defense That Shares A Common Question Of Law Or Fact With the Main Action**

Intervention is improper where the proposed intervenor lacks a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Moreover, to permit intervention, the "common question" must be related to the "main action" and not merely relate to a collateral issue.  *See, e.g.*, *Org. for Competitive Markets, Inc. v. Seaboard Farms, Inc.*, No. 00-3432, 2001 WL 842029, at *1, 3 (8th Cir. Feb. 1, 2001); *Cunningham v. Rolfe*, 131 F.R.D. 587 (D. Kan. 1990).  Yet nowhere in its brief does the Post even assert that its motion presents a "common question" with this lawsuit, let alone raise one.

A mere interest in seeing confidential court filings for one's own purposes, such as the Post presents here, is insufficient to satisfy the requirements of Rule 24(b).  For example, in *Org. for Competitive Markets*, "[t]he underlying litigation … involved breach of contract and tort claims" and "[t]he parties stipulated to a protective order to protect from disclosure certain materials." 2001 WL 842029, at * 1.  After the merits of the case had been resolved, the proposed intervenor, a non-profit organization, moved to intervene "for the limited purposes of opposing Seaboard's motion to seal certain portions of the trial transcript and to obtain access to materials covered by the protective order in order 'to make available to 'farmers, ranchers, policy makers and the general public' information affecting the marketing of livestock and to 'refine public knowledge about the meatpacking industry.'"  *Id.*  The court of appeals affirmed the trial court's denial of the motion to intervene because the "only thing the motion for permissive intervention and the underlying litigation ha[d] in common [was] the materials covered by the protective order," and, therefore, "the motion did not raise a claim or defense that shared a common question of law or fact with the underlying litigation."  *Id.* at *2-3.

Similarly, in *Cunningham*, the plaintiff brought a products liability action against two manufacturers. 131 F.R.D. at 589. The case "was effectively concluded when, in conjunction with plaintiff's stipulation of dismissal of his action with prejudice and upon the joint motion of the parties, the court entered a Final Protective Order." *Id.* Soon after, the proposed intervenors filed a suit against the same manufacturers. *Id.* The proposed intervenors sought to intervene in the *Cunningham* case "for purposes of gaining access to information produced in" that case and to "vacate or modify the Final Protective Order." *Id.* The court found that intervention was prohibited by Rule 24(b) because "the question of the propriety of the Final Protective Order entered in *Cunningham* is collateral to any legal questions raised by plaintiff Cunningham's substantive tort claims" and, therefore, proposed intervenors failed to demonstrate a "common question" with the main action. *Id.* at 590.

Here, the Post, like the proposed intervenors in *Organization for Competitive Markets* and *Cunningham*, similarly fails to present a "common question of law or fact" "with the main action." As the Post recognizes, Plaintiff brought this action for a temporary restraining order and injunctive relief, predicated on a tort claim, against Beth Wilkinson, an attorney in private practice. Dkt. 99 at 3. But the Post does not assert any claims or defenses related to the question of the Defendant's allegedly tortious conduct. Instead, like the rejected intervenor in *Organization for Competitive Markets*, the Post seeks to intervene "for the limited purpose of asserting its right, as a member of the public, to access court records in this matter." But as this Court has already recognized, questions of sealing present only "collateral, non-dispositive issues" that do not relate to the merits of Plaintiff's claims or Defendant's defenses. Dkt. 117 ¶ 4.

To avoid the common question requirement, the Post cites cases that gave members of the press appellate standing to seek review of sealing orders of the district courts or, specifically, to

unseal records.  Notably, none of the Fourth Circuit cases the Post cites include any discussion of Rule 24.  *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 572 (4th Cir. 2004); *Rosenfeld v. Montgomery Cnty. Pub. Sch.*, 25 F. App'x 123 (4th Cir. 2001); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988).  For example, *Rosenfeld* turns on an Article III *standing* analysis, which is distinct from the question of whether a proposed intervenor has satisfied Rule 24(b)'s requirements.  25 F. App'x at 131 ("We have held that the press has *standing* to intervene in actions in which it is not otherwise a party *to seek review of a district court's order sealing documents and court records*." (emphasis added)).

Moreover, these cases are factually inapposite because the Post does not seek review of the Court's sealing order.  In *Stone*, for example, the Baltimore Sun moved to intervene for the limited purpose of challenging the district court's one-sentence order sealing seal the entire record except for the pleadings.  855 F.2d at 180.  "No hearing [had been] held on the motion to seal, and no reasons for the order were stated."  *Id.*  Here, however, the Post merely asks the Court to ensure that any redactions are narrow, but has not objected to the Court's Sealing Order (which is already narrow and reasoned).  Indeed, such a request would be largely premature because the Court has not ruled on the Team's and Parties' proposed redactions.  The Post cannot usurp the Court's function by asserting its own view that the Court should "unseal all documents filed by the parties." Dkt. 99 at 1.  Instead, the Post's intervention serves no purpose other than to gain access to confidential information that the Court has already ruled should be sealed under applicable law, balancing the public's right to access judicial records.  Dkt. 68.  Because the Post does not actually challenge the Court's ruling for limited redactions, the Post does not present a common question of law.  *See Cavelle v. Chicago Transit Auth.*, No. 17-CV-5409, 2020 WL 6681344, at *5 (N.D.

Ill. Nov. 12, 2020) (noting that permissive intervenor sought "to challenge the protective order, at least with respect to her, giving her a question of law in common with the parties to the case.").

> **B.    The Court Should Exercise Its Discretion And Deny Permissive Intervention**

Even if the Post meets the threshold requirement for permissive intervention—which it does not—the Court should exercise its discretion to deny intervention.  Several factors weigh in favor of denying permissive intervention.

Here, as in *Stuart*, the Post's proposed intervention would add needless complexity and "consume additional resources of the court and the parties."  706 F.3d at 355.  The Court and parties have already spent considerable time litigating issues of sealing.  For weeks after the Sealing Order, the Team and Parties met and conferred to implement the Sealing Order, often in the face of strong disagreement, and spent dozens of hours preparing proposed redactions applying the Sealing Order to the record to be delivered to the Court.

Moreover, the Post's interests have been adequately considered by the Court.  Defendant Wilkinson opposed sealing the case, based on the same grounds and principles as the Post, and those arguments were ruled on in the Court's Sealing Order.  *See* Dkt. 68.  Thus, as in *Stuart*, the Court should deny permissive intervention because permitting intervention would "result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants, the courts, or the process" because "the existing [d]efendants are zealously pursuing the same ultimate objectives" as the appellants.  *Stuart*, 706 F.3d at 355 (affirming trial court's denial of a motion to intervene because "the existing defendants [were] zealously pursuing the same ultimate objectives as the [proposed intervenors]"); *see also Hoots v. Com. of Pa.*, 672 F.2d 1133 (3d. Cir. 1982) ("Where interests of applicant for intervention in every manner match those of existing party and party's representation is deemed adequate, district court is well within its discretion in deciding that applicant's contributions to proceedings would be superfluous and that any resulting delay . .

. would be 'undue.'"); *Midgett v. Hardcastle*, No. 2:17CV663, 2018 WL 4365580, at *6 (E.D. Va. July 19, 2018) ("Plaintiff adequately represents Mary Lee's claims that share common questions of law or fact with the underlying dispute.  The Court sees no need for Mary Lee to intervene in order to ensure that these claims are fully litigated."), *on reconsid.*, 2018 WL 4781178 (E.D. Va. Oct. 3, 2018).[2]

Indeed, the case's present posture proves that Defendant's prior briefing adequately addressed the Post's interest in access.  In its brief, the Post requests that the Court "unseal all documents filed by the parties" with the "minimal" redactions required.  Dkt. 99 at 1, 5, 8.  But the Court and parties are already in the process of doing this, pursuant to Judge Davis's Sealing Order, which the Post does not purport to challenge.

The Post attempts to argue that its motion to intervene is *per se* justified because the Team was granted intervention "just over one week" before the Post filed its motion.  But that argument ignores two critical distinctions.  First, the Team was allowed to intervene *as of right* because it "has a legally protected interest in preserving the privilege and confidentiality of its records and communications."  Dkt. 84 ¶ 1.  Intervention as of right does not require consideration of delay or prejudice, making the equities very different from the Post's motion for permissive intervention.

---

[2] The Post relies on *Smith v. Westminster Mgmt., LLC*, No. JKB-17-3282, 2018 WL 9944968, at *1 (D. Md. Jan. 11, 2018), to argue otherwise.  Aside from being an unpublished decision without any persuasive authority, *Smith* should not be followed because the decision relied on case law that is not applicable here.  In granting a motion to intervene by members of the press, the District Court of Maryland noted that when a party moves to seal records, "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion,'" quoting *Globe Newspaper Co. v. Superior Court of Norfolk Cty.*, 457 U.S. 596, 609 n.25 (1982).  However, in *Globe Newspaper*, the U.S. Supreme Court only recognized "the constitutional right of the press and public to gain access *to criminal trials*," which can be restricted "where necessary to protect the State's interest."  *Id.* at 609 (emphasis added).

Second, when the Team moved to intervene, there was no party representing its interest in maintaining confidentiality of its highly sensitive information.[3]

## V.    The Team's Privileged And Confidential Information Should Remain Under Seal

As an initial matter, the Post's request that "all documents filed by the parties" should be available on the public docket, Dkt. 99 at 1, is overbroad and should be denied.  *See United States v. Lexin*, 434 F. Supp. 2d 836, 846 (S.D. Cal. 2006) (news organization's motion to intervene in order to gain access to all court records denied as overbroad).  Nevertheless, the Team, Parties, and Court are already in the process of unsealing the filings in this case with only appropriate redactions pursuant to the Sealing Order and in connection with the Team's Motion to Seal.

More importantly, however, as this Court has already ruled, much of the information in the Parties' filings, including privileged communications and other confidential material, should not be made public.  Dkt. 68.  The Post's "right to inspect … judicial records is not absolute."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  Here, the public has no right of access to the Parties' filings because they were filed under seal and never used in support of a dispositive motion.  *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (collecting cases).

Even to the extent a public right of access exists, it is governed by the more lenient common law standard, not the First Amendment.  This is so because the Parties' filings (most of which

---

[3] The Post "seeks to intervene for the purpose of asserting the public interest in understanding this litigation" and for all documents to become public. Dkt. 99 at 5.  If the Post is allowed to intervene, however, it should be for the limited purpose of attempting to challenge the Court's Sealing Order (though doing so would be futile because the Post asserts the same public access arguments Defendant originally made and the Court considered).  "Intervention may be subject to conditions based on the particular case."  *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 187 (E.D. Va. 2016).  After extensive briefing and argument, the Court has determined that certain limited information should be sealed from the public.  To allow the Post access to all Court records would render the Court's Sealing Order meaningless.

relate to collateral sealing issues) do not "substantively resolve" the case.  *See Rushford*, 846 F.2d at 252; *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Organisation*, No. 2:17-CV-503, 2019 WL 8108115, at \*2 (E.D. Va. Aug. 15, 2019).  Regardless, the Team's privileged and confidential information warrants sealing under either standard.  As even the Post concedes, the Team's "privileged material" should be redacted.  Dkt. 99, at 8 n.5.  This category includes not only direct communications between the Team and its attorneys but also the Defendant's work product and common interest communications between the Team and third parties, including the NFL.  Other non-privileged confidential information should also be sealed because doing so is "essential to protect overriding interests, including … enforcing bargained-for confidentiality provisions," Dkt. 117 ¶ 5, and avoiding disclosure of harmful, immaterial, and unsubstantiated insinuations against the Team and its executives.  *See Nixon.*, 435 U.S. at 598-99.

1.    *The Public Has No Right Of Access To Information The Court Has Already Ordered Sealed*

As the Supreme Court has observed, the decision whether to allow public access to court records is generally "left to the sound discretion of the trial court, … to be exercised in light of the relevant facts and circumstances of the particular case."  *Nixon*, 435 U.S. at 599.  This Court has already analyzed the common law and First Amendment issues raised by the Post—in large part because the Defendant already raised them—and ruled that the confidential information contained in the Parties' filings, including regarding the confidential agreement, matters should be sealed. Dkt. 68.  The Post does not purport to challenge the Court's Sealing Order.

Indeed, the consensus of federal courts is that "the federal common law right of access does not apply to documents filed under seal" at least until those documents are used in support of a dispositive motion.  *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (collecting cases).  *Rushford*, which the court of appeals cited in *Phillips*, supports

13

this view as well, holding only that documents previously subject to a protective order lose their protected "status" once they are "made part of a *dispositive* motion, such as a summary judgment motion." 846 F.2d at 252 (emphasis added). "Therefore, when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released." *Phillips*, 307 F.3d at 1213.

In addition, the Fourth Circuit has held documents that "do not play any role in the adjudicative process" are "more akin to discovery materials" and do not trigger a public right of access. *In re Policy Mgmt. Sys. Corp.*, No. 94–2254, 1995 WL 541623, at *3, 4 (4th Cir. Sept. 13, 1995). *Policy Mgmt. Sys. Corp.*, for example, involved confidential exhibits that were attached to a motion to dismiss but that the trial court did not consider in granting the motion. *Id.* at *1-2. The Court of Appeals reversed the trial court's order unsealing those materials, holding that because the materials "did not play *any* role in the district court's adjudication" they "did not achieve the status of judicial documents" that would trigger a common law or First Amendment right of public access. *Id.* at *4. Similarly, in *In re NC Swine Farm Nuisance Litigation*, a case the Post itself cites, Dkt. 125 at 9, the trial court held that "there is no right of public access" to confidential documents that a party attached to a summary judgment motion that was later voluntarily withdrawn because "the court [never] considered [them]." No. 5:15-CV-00013-BR, 2017 WL 5178038, at *8 (E.D.N.C. Nov. 8, 2017).

Here, as in *Phillips*, this Court "already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality," and "[a]pplying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly

14

eviscerate, the broad power of the district court to fashion protective orders." *Id.* at 1213.  It "makes little sense" to render sealing useless "simply because [a party] attached a sealed discovery document to a nondispositive … motion filed with the court." *Id.*  And, as in *Policy Mgmt. Sys. Corp.*, the sealed documents played no role in the court's adjudication of the parties' rights. Indeed, the considerations here are identical to those in *In re NC Swine Farm Nuisance Litigation*, because the Plaintiff voluntarily dismissed his case before the Court adjudicated the Parties' rights. Thus, the sealed documents are not judicial records and do not trigger the "presumption of public access." *In re Policy Mgmt. Sys. Corp.*, 1995 WL 541623 at *4.

> 2.  *Even If A Right Of Access Existed, It Would Be Governed By The Common Law Standard*

Even if the public had a right to the Parties' sealed filings relating to nondispositive motions—which it does not—that right would be governed by the common law standard.  "The public's right to access judicial records stems from two sources:  the common law and the First Amendment to the United States Constitution." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*, No. 2:17-CV-503-HCM, 2020 WL 973751, at *13 (E.D. Va. Feb. 7, 2020) (citing *Level 3 Comm's LLC v. Limelight Networks. Inc.*, 611 F. Supp. 2d 572, 577-78 (E.D. Va. 2009)).  Under this standard, the public right of access is rebutted when the public interest is heavily outweighed by "countervailing interests." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004).

The First Amendment standard applies only to matters that "substantively resolve" the case. *See Rushford*, 846 F.2d at 252; *BASF Plant Sci., LP*, 2019 WL 8108115 at *2.  As the Fourth Circuit has observed: "[n]either the Supreme Court nor this Court has ever held that the mere filing of a document triggers the First Amendment guarantee of access." *In re Policy Mgmt. Sys. Corp*., 1995 WL 541623, at *3, 4 (reversing trial court's application of First Amendment to "documents

filed with a motion to dismiss").  For example, "the public has [no] First Amendment right of access to a pretrial hearing on a non-dispositive civil motion or to the transcript of such a hearing." *Va. Dep't of State Police*, 386 F.3d at 580; *accord, e.g.*, *Clehm v. BAE Sys., Inc.*, No. 7:16-CV-00012, 2017 WL 11367644, at *1 (W.D. Va. Mar. 21, 2017) (applying common law standard to motion to seal "motion to compel, enlarge time for discovery, and continue trial"); *Lord Corp. v. S & B Tech. Prod., Inc.*, No. 5:09-CV-205-D, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) (sealing documents related to motions *in limine* under common law standard).

In light of this critical distinction, the Fourth Circuit cases the Post cites in support of its First Amendment argument are inapposite because they all involved dispositive motions.  *E.g.*, *Va. Dep't of State Police*, 386 F.3d 567 (motion for summary judgment).  Here, this standard applies because almost all of the documents the Team seeks to redact—with the sole exception of the Plaintiff's motion for a preliminary injunction—involve non-dispositive filings, such as the complaint, motions to seal, and pretrial hearings.

The Post's sole argument for why the First Amendment standard would apply to everything is that "the First Amendment right of access applies to sealing motions for injunctive relief, which is the primary object of this litigation."  Dkt. 99 at 10 (quoting Dkt. 32 at 2).  But the fact that the "primary object" of the Plaintiff's suit involved injunctive relief does not mean that every piece of paper the Parties filed is governed by the First Amendment standard, and the Post cites no cases supporting that proposition.  To the contrary, the Fourth Circuit has made clear that "the mere filing of a document" does not "trigger[] the First Amendment guarantee of access."  *In re Policy Mgmt. Sys. Corp.*, 1995 WL 541623 at *3.

Indeed, the Post's suggestion that once the First Amendment right of access applies to any part of a case it applies to "all documents filed in this case, including the Complaint and all

briefing," Dkt. 99 at 10 n.8, flies in the face of the Fourth Circuit's requirement that a court "must determine the source of the right of access with respect to each document" separately. *Stone*, 855 F.2d at 181.[4]  Moreover, such an approach would completely subsume the well-established distinction between dispositive and non-dispositive filings because *every* lawsuit seeks some form of dispositive relief.  Rather, what the case law holds is that, regardless of the nature of relief Plaintiff seeks, the public's right to access documents under the First Amendment applies "only to particular judicial records and documents."  *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014).  The Post does not, and cannot, cite any precedent for the proposition that the Parties' numerous filings on collateral sealing issues trigger the First Amendment right of access.

3.    *Redactions Are Necessary To Preserve The Bargained-For Confidentiality Rights Of Nonparties, Including The Team*

Most of the material the Team seeks to redact is privileged, and the Post concedes that "privileged material" should be redacted.  Dkt. 99 at 8 n.5.  This category includes not only direct communications between the Team and its attorneys but also the Defendant's work product and common interest communications between the Team and third parties, including the NFL.  *See* Dkt. 94 at 7-13; Dkt. 125 at 5-6 (Post concedes that "information that is potentially privileged or protected by the common interest or work product doctrines … need not be discussed in open court.").  Thus, it appears that the only sealed material the Post seeks to have released relates to the confidential agreement that triggered Plaintiff's suit against Defendant.  *See* Dkt. 99 at 10-12.

As an initial matter, however, there is considerable overlap between that material and privileged material.   For example, many of the Team's proposed redactions involve

---

[4] The only case the Post cites for its proposed remarkably broad expansion of the First Amendment right, *Allstate Ins. Co. v. Warns*, No. CIV. CCB-11-1846, 2012 WL 681792 (D. Md. Feb. 29, 2012), says no such thing.  In fact, *Allstate* explicitly quotes *Stone*'s requirement to consider each document individually.  *Id.* at *16.

communications with the Defendant, the Team's lawyer, or other information Defendant learned

from the Team as part of her representation, such as the existence and contents of the confidential

agreement.  *See* Dkt. 55-1 (Ex. W1) at 15-18; Dkt. 46-3 (Wilkinson's Prehearing Memorandum)

at 1-2, 4-7.

Moreover, even to the extent this material is not privileged, this Court has already ruled

that information about the confidential agreement—including its terms, parties, and provenance—

should be redacted from the record:

> With regard to all filings by either party, the documents shall redact
> … the phrases "settlement" and "settlement agreement;" references
> to the date, year and age of the settlement; references to the matter
> giving rise to allegations and the year of said matter; the
> "Complainant" in reference to the matter and settlement, as well as
> complainant's name and title; [a]ll discussions or references
> concerning particularities of the settlement or agreement, such as a
> requirement that a waiver of confidentiality be in writing and
> prohibition on disparagement.

Dkt. 68 at 1-2.  The Sealing Order also instructed the Parties to redact "all references to news

media investigation of or inquiries into the matter" and "any references to the NFL, Washington

Football team or the word 'team.'"  *Id.* at 2.

This ruling, which the Post does not purport to challenge, accords with the general rule that

the existence of a confidentiality agreement is a strong factor that weighs in favor of sealing and

outweighs any public right of access.  *See, e.g.*, *Malon v. Franklin Fin. Corp.*, No. 3:14CV671

(HEH-RCY), 2014 WL 12768782, at *3 (E.D. Va. Dec. 4, 2014) (granting motion to seal sensitive

business documents subject to "strict confidentiality agreement"); *Lifenet Health v. Lifecell Corp.*,

No. 2:13CV486, 2015 WL 12517430, at *4 (E.D. Va. Feb. 12, 2015) (finding that a confidentiality

provision in a prior agreement overrode even First Amendment presumption); *In re Williams*, No.

15-71767, 2017 WL 6278764, at *4 (Bankr. W.D. Va. Dec. 8, 2017) (maintaining a seal on

documents that were subject to confidentiality provisions directly applying to their content); *see also Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1074 (3d Cir. 1984) (recognizing that the existence of "an enforceable confidentiality agreement" justifies denying public access to judicial materials). More generally, documents that "contain confidential and proprietary information . . . provide the requisite compelling government interest" in sealing "even under the more stringent First Amendment right." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 690 (D. Md. 2012).

Contrary to this well-settled law advocated by the Plaintiff in his earlier sealing motion papers and presumably considered by the Court, the Post asserts that "courts in the Fourth Circuit *routinely* deny sealing motions notwithstanding that the information to be disclosed is subject to a confidentiality agreement." Dkt. 99 at 11. But the cases the Post cites deal with exceptions or considerations that do not apply here. The first two, for example, involved a unique exception for FLSA settlements, which, unlike most private litigation, "may only be settled if supervised by the United States Department of Labor or approved by a court." *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11CV344, 2013 WL 1897027, at *2 (E.D. Va. Apr. 12, 2013), *rpt & rec. adopted*, 2013 WL 1897110 (E.D. Va. May 3, 2013); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618 (E.D. Va. 2011). *Cochran v. Volvo Grp. N. Am., LLC*, involved discovery material subject to a protective order, not a bargained-for confidentiality agreement. 931 F. Supp. 2d 725, 729 (M.D.N.C. 2013). And in *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, the court found that disclosure fell within an exception to the agreement itself. No. CIV.A. DKC 13-0031, 2013 WL 3465352, at *10 (D. Md. July 9, 2013).

More fundamentally, however, these cases the Post cites all involve confidentiality agreements *between the parties*. Here, however, the confidential agreement at issue is between

the Plaintiff and other persons who were not party to the case, including the Team—and several of whom remain non-parties, not before this Court.  Sealing is especially appropriate, and satisfies the First Amendment standard, when necessary to protect the privacy of third parties.  For example, in *Pittston Co. v. United States*, "in order to facilitate the discovery of documents from the [a nonparty], counsel for both [the plaintiff] and [the nonparty] agreed that certain categories of information produced in discovery would be protected from public disclosure."  368 F.3d 385, 406 (4th Cir. 2004).  The Fourth Circuit refused a motion to unseal those documents even after the plaintiff had attached them in support of its motion for summary judgment.  *Id.*; *see also, e.g.*, *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (analyzing privacy interests of third parties against qualified First Amendment right to access).

Federal courts, therefore, routinely seal information based on confidentiality agreements under the First Amendment standard where the privacy rights of third parties are implicated.  *E.g.*, *Lifenet*, 2015 WL 12517430, at *3-4 (sealing documents under First Amendment standard to protect privacy of absent third parties); *Lord Corp.*, 2012 WL 4056755, at *1 (same); *Moussouris v. Microsoft Corp.*, No. 15-CV-1483 JLR, 2018 WL 1159251, at *6 (W.D. Wash. Feb. 16, 2018) (finding that the privacy interests of non-parties who raised allegations of workplace misconduct outweighed the public's interest in access), *rpt. & rec. adopted*, 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018).

*Saunders v. Champ Sports, Inc.*, is also analogous.  No. CIV.A. 2:07-CV-00655, 2008 WL 5142393 (S.D.W. Va. Dec. 8, 2008).  There, the parties filed a joint motion to settle an FMLA case.  *Id.* at *1.  Under Fourth Circuit precedent, the parties were required to file a copy of the settlement with the court for approval.  *Id.* at *1-2.  The court granted the parties' motion to seal the proposed settlement agreement because their "privacy interest in the proposed settlement

agreement outweighs the need for public access to this document, particularly because the parties did not voluntarily elect to file the settlement agreement with the court but were required to do so [by law]."  *Id.* at *1.  Thus, the Post's arguments that "if Mr. Donovan wanted everything kept out of the public eye, he should not have filed this lawsuit" and that he "must accept the openness that goes with" filing a federal lawsuit, Dkt. 99 at 16 (quoting Dkt. 69 at 2 and *Doe*, 749 F.3d at 271), does not apply to the Team who was not a party to, let alone the initiator of, this suit and sealing is appropriate to protect the Team's confidential information.

4.    *The Team's Privacy Interests Have Not Been Waived by Third-Party Media Leaks in Unrelated Litigation*

In a subsequent filing, the Post has tried to argue that the Team's confidential information is "already in the public domain" because "information concerning what appears to be the same 2009 Settlement Agreement at issue in this case has already been publicly filed by the Team's owners in the Maryland Federal Litigation, and reported in the media."  Dkt. 125 at 7-10.  First and foremost, the Post's argument there involves a gross mischaracterization of the Maryland action.  That suit—a business dispute between the Team's owners—involves completely different parties and completely different issues.  *See generally* Dkt. 141 at 13-14.  The "confidential information" discussed in the Maryland parties' filings refers to an agreement to purchase shares in the Team and confidential arbitration proceedings; it has nothing to do with the sealed information in this case.  *See generally, e.g.*, Md-Dkts. 65, 69.  The Post, as an intervenor in the Maryland action, is well-aware of these facts but buries them in footnotes.  *See* Dkt. 125 at 4 n.1, 10 n.11.  The parties' brief citations to news articles about an alleged "2009 Settlement Agreement," were made only for the purpose of trying to identify the source of a leak regarding their business negotiations.  *See* Md-Dkt. 77 at 1-2; Dkt. 82 at 8-9.

Even assuming *arguendo* that the Post's characterization were accurate—which it is not—the Team still has substantial and controlling confidentiality interests here.  Indeed, Judge Messitte rejected this very argument in the Maryland action, holding that "[a]ny leaks to the media that may already have occurred do not nullify Plaintiffs' overriding interest in keeping the Confidential Proposal confidential."  Md-Dkt. 65 ¶ 20.  This is so for two reasons.  First, "even after accurate confidential information has been disclosed in national newspapers, the subjects of such leaked confidential data retain[] their interests in preventing further disclosure."  *In re Roman Catholic Archbishop of Portland in-Oregon,* 661 F.3d 417, 428 (9th Cir. 2011).  Here, even if any part of the parties' filings in the Maryland action actually disclosed the confidential information at issue here—which they do not—much of the information under seal remains confidential, including the entire confidential agreement.  Indeed, if the Post did not believe the filings in this case contained *additional* information, it would not be seeking access to them.

Second, "sealed or confidential documents do not become matters of public record simply because they are leaked to members of the public, ... or even where they are actually reported by the press and widely disseminated in another medium."  *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.,* 184 F. Supp. 2d 1353, 1364 (N.D. Ga. 2002); *see also Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 222, 227 (6th Cir.1996) (conducting First Amendment analysis even after sealed documents were leaked to a media and reported on).[5]  Here, the ultimate source

---

[5] These two factors also make this case radically different from the cases the Post cites in support of its argument.  In all three, the exact information at issue had already been made public and that revelation had been made in transparent judicial filings.  For example in *Cox Broadcasting Corp. v. Cohn*, the sole information at issue was the name of a rape victim, which was already included in a public indictment. 420 U.S. 469 (1975); *see also In re N.C. Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2017 WL 5178038, at *13 (E.D.N.C. Nov. 8, 2017) (defendant who did not move to seal references to deposition transcripts in the plaintiff's response brief waived right to seal deposition transcript itself); *Taylor v. Kellog Brown & Root Svcs., Inc.*, No. 2:09cv341, 2009

of the supposed "information" the Post refers to is unsourced and unverified news articles.  Such leaks hardly constitute "public[] fil[ing] by the Team's owners" of "the same [confidential information] at issue in this case." Dkt. 125 at 7.

> 5.      *Immaterial And Scandalous Allegations About Non-Parties Should Also Remain Sealed Or Be Stricken*

The Team's proposed redactions are also appropriate to prevent the Parties' filings from being used to "gratify private spite or promote public scandal" or from becoming "reservoirs of libelous statements for press consumption."  *Nixon*, 435 U.S. at 598-99 (describing established exceptions to the presumed right of public access).  As explained more fully in the Team's Motion to Seal, the Defendant's filings in particular contain numerous jabs and unsubstantiated insinuations against the Team and nonparties not before this Court.  *See* Dkt. 94 at 15-17.  Such immaterial and impertinent matter has no place in federal court.  *See Jones v. City of Danville*, No. 4:20-CV-20, 2020 WL 6063063, at *3 (W.D. Va. Oct. 14, 2020) (striking and impertinent paragraphs disparaging the actions, thoughts, and motives of the Commonwealth's attorney, a non-party to the case); *Swift Beef Co. v. Alex Lee, Inc.*, No. 5:17-CV-176, 2018 WL 792070, at *3 (W.D.N.C. Feb. 8, 2018) (allegations that "unnecessarily reflect on a party's moral character or detracts from the dignity of the court" may be stricken even where relevant).

The Post argues that "embarrassment is not an adequate ground for overcoming the presumption of public access to court documents," Dkt. 99 at 13, but the cases the Post cites do not address the risks of gratuitous harm to nonparties like the Team or others here, or the non-party attorney in *Jones*.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), says only that "[t]he mere fact that the production of records may lead to a litigant's embarrassment,

---

WL 10689733, at *2 (E.D. Va. Dec. 18, 2009) (information at issue had already been discussed "in a thirty-one-page judicial opinion").

incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179. This language is inapplicable here because the Team was not a litigant on the original suit. *Price v. Tuggle* is even more afield. There, the plaintiff moved to seal his complaint to prevent embarrassment, disdain, or prejudice *to the defendants*. No. CV 2:16-1529, 2016 WL 4098547, at *1 (S.D.W. Va. July 28, 2016). But the defendants themselves opposed the plaintiff's motion and "disclaim[ed] any concerns Price has raised on their behalf." *Id.*[6] Here, by contrast, the principal party to be protected (the Team) is the one asserting the risk of harm.

6.     *The Team's Rights Warrant Redacting Its Confidential Information Under Any Standard*

As this Court has already found, the weighty policy considerations described above, including "enforcing bargained-for confidentiality provisions" and "upholding the attorney-client privilege," "satisfy[y] even the First Amendment standard." Dkt. 117 ¶ 5 (closing hearing on Team's Motion to Seal). Inasmuch as the First Amendment standard applies—which it does not except as to the Plaintiff's motion for a preliminary injunction—the Team's proposed redactions are proper because they are "essential to preserve higher values" and narrowly tailored to include only privileged and confidential information. *See Press-Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 502 (1984). Most significantly, as in *Lifenet Health*, sealing is essential to protect the bargained-for confidentiality interests of the Team because it was not a party to this litigation. *See* 2015 WL 12517430, at *4; *see also Matter of New York Times Co.*, 828 F.2d at 116 (analyzing privacy interests of third parties against qualified First Amendment right to access). These

---

[6] The court also noted the unique importance of keeping the proceedings public because the defendant was "a government entity" and allowing the case "to proceed under seal would be the antithesis of the state's policy of a transparent, accountable government." *Id.* at *3.

considerations are certainly, *a fortiori,* sufficient "countervailing interests" to "heavily outweigh the public interests in access" under the common law. *Va. Dep't of State Police*, 386 F.3d at 575.

Judge Messitte recently took the same approach in the *Rothman* case, which, again, involved only confidential business information and did not raise issues of privilege or reputational harm. There, the court concluded that the First Amendment applied to the complaint only and that all other documents were governed by the common law standard because they had not yet "play[ed] a role in the adjudicative process." Md-Dkt. 69 at 5 (quoting *In re Pol'y Mgmt. Sys. Corp.*, 1995 WL 541623, at *4). Applying those standards, the court ruled that "filings containing … confidential business information" and "information pertaining to [confidential arbitration] proceedings" should be "subject to narrow redactions to protect such information" before those documents are unsealed. *Id.* at 7, 8. And, as relevant here, the court in another order also observed that the confidentiality concerns of third parties was another factor in favor of redacting confidential business information. Md-Dkt. 65 ¶ 15.

The Post claims that there is "substantial public interest in this case," Dkt. 99 at 8, and that "[t]he press and the public want to understand the issues underlying this case … to shed greater light on the way the Team conducted business." *Id.* at 14. But there is a world of difference between what the public is interested *in* and the legal public interest in accessing judicial records. As the Fourth Circuit has made clear, the public right of access does not exist to give the public access to litigants' business for its own sake. Rather, the "public right of access … protects the public's ability to oversee and monitor the workings of the Judicial Branch" and "promotes the institutional integrity of the Judicial Branch." *Doe*, 749 F.3d at 263. The courts' concern is that "[p]ublic confidence [in the judiciary] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with

the record supporting the court's decision sealed from public view." *Id.* (quoting *United States v. Cianfrani,* 573 F.2d 835, 851 (3d Cir. 1978)).

Neither of these considerations apply where, as here, the documents were originally filed under seal, and the Court never ruled on the merits of Plaintiff's case. Because the case was voluntarily terminated early on, the disclosure of the Team's confidential information would shed no light on "the workings of the Judicial Branch." *Doe*, 749 F.3d at 263. And for the same reason, this case does not present a situation where "judicial decisions are made behind closed doors." *Id.* Indeed, all of this Court's orders (which have been non-dispositive) have been publicly filed with written explanations.

This situation contrasts starkly with the Fourth Circuit cases cited by the Post which all involved rulings on summary judgment. *See generally Va. Dep't of State Police*, 386 F.3d at 580; *Rosenfeld*, 25 F. App'x 123; *Stone*, 855 F.2d 178; *Rushford*, 846 F.2d 249. Moreover, those cases tend to involve issues of unique public concern, such as civil rights violations, *e.g.*, *Va. Dep't of State Police*, 386 F.3d at 580; *Stone*, 855 F.2d 178; *Rosenfeld*, 25 F. App'x 123, or the business dealings of a presidential front-runner, *Cohen v. Trump*, No. 13-cv-2519-GPC-WVG, 2016 WL 3036302 (S.D. Cal. May 27, 2016). The purported "public's interest in understanding the conduct of a major professional football team," Dkt. 99 at 12, comes nowhere close to these extreme facts.

Thus, in sum, the Team's proposed redactions involve weak public interest in access and strong public policy in favor of redaction. The public interest in access is weak because the case is now long dismissed, involved an internal investigation that was privileged and confidential to begin with, and never advanced past the pleading stage. The interest in redaction is strong because it is essential to preserve the attorney-client privilege and bargained-for confidentiality rights of nonparties, as well as to prevent judicial records from being used to "gratify private spite or

promote public scandal." *Nixon*, 435 U.S. at 598-99.  The Court's ruling that such material should be redacted is as correct now as it was six weeks ago.  The Post's intervention would be unnecessary for—and counterproductive to—the maintenance of properly redacted filings, and closing of this case.

## VI.     CONCLUSION

For the foregoing reasons, the Post's Motion to Intervene should be denied.

Dated:     January 8, 2021                              **DECHERT LLP**
           Washington, D.C.

                                          By:     s/ *Christina Guerola Sarchio*
                                                  Christina Guerola Sarchio
                                                  Virginia Bar No. 87166
                                                  1900 K Street NW
                                                  Washington, D.C. 20006
                                                  Phone: (202) 261-3300
                                                  Fax: (212) 261-3333
                                                  christina.sarchio@dechert.com

                                                  Andrew J. Levander (*admitted pro hac vice*)
                                                  Neil A. Steiner (a*dmitted pro hac vice*)
                                                  Three Bryant Park
                                                  1095 Avenue of the Americas
                                                  New York, NY 10036
                                                  Phone: (212) 698-3500
                                                  Fax: (212) 698-3599
                                                  andrew.levander@dechert.com
                                                  neil.steiner@dechert.com

                                                  *Attorneys for Intervenor Pro-Football, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of January, 2021, a true and correct copy of the

foregoing *Intervenor Pro-Football, Inc.'s Brief in Opposition to WP Company LLC's Motion to*

*Intervene* was filed with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing to all counsel of record.


/s/ *Christina Guerola Sarchio*
Christina Guerola Sarchio