**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **DAVID P. DONOVAN,**<br><br>*Plaintiff,*<br><br>v.<br><br>**BETH A. WILKINSON,**<br><br>*Defendant.* | **Civil Action No. 1:20-cv-1344** |

**PLAINTIFF'S CONFIDENTIAL REPLY**
**TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE UNDER SEAL AND TO SEAL CASE**

Pursuant to Rules 5(C), 5(F), and 7 of the Local Civil Rules for the United States District Court for the Eastern District of Virginia, Plaintiff David P. Donovan ("Plaintiff") submits this reply to Defendant's Opposition to Plaintiff's Motion to File Under Seal and to Seal Case.[1]

## I. ARGUMENT



Plaintiff filed this lawsuit to preserve his [redacted] concerning the [redacted] [redacted] [redacted] under which he remains bound to strict [redacted] -- and to protect his role in that matter from being unfairly the subject of public criticism and disparagement that he is prohibited from addressing or responding to in any way. Plaintiff's action does not seek to "derail [Defendant]" from conducting her investigation of recent allegations that have nothing to do with Plaintiff. (Defendant's Confidential Opposition to Motion for Leave to File Under Seal and to Seal Case ("Def.'s Opp'n. Br."), at 1). [redacted] [redacted] including [redacted] has, [redacted], realized the benefits for

[1] All capitalized terms used herein shall have the same meaning as those defined in the Verified Complaint.

[REDACTED] For Plaintiff, that benefit was peace – peace through assurances that [REDACTED] would never be publicly disclosed as [REDACTED] and that he would not therefore be subject to risk of personal liability (and the expense of litigation) were he to be drawn into a public debate about these events. [REDACTED], left Plaintiff with no option but to file an action to secure [REDACTED] secrecy, which remedy can only be achieved by litigating the matter under seal. Sealing is discretionary, and the Court must balance each of the interests asserted by Plaintiff against the public's interest in disclosure. *See Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 579 (E.D. Va. 2009) (under the First Amendment standard, "the court must weigh and balance the competing interest"). The Court should seal this entire case because (1) [REDACTED] overcomes the public's right to access under the circumstances; (2) [REDACTED] (3) sealing is the only way to adequately protect Plaintiff's and other significant third-party interests; and (4) publicly second-guessing Plaintiff's work from [REDACTED] will unnecessarily expose him and his reputation to unrelenting, abusive, and harmful media scrutiny that he has no ability to counter without [REDACTED]

A careful balancing of the competing interests in this private dispute – taken together and weighed against the public's interest in access to this case, and Defendant's own responsibility for falsely inducing [REDACTED] to violate [REDACTED] – clearly justifies sealing this case.

**A. [REDACTED] Overcomes The First Amendment Presumption.**

Defendant contends [REDACTED] is not sufficient to overcome the First Amendment presumption of public access. (Def.'s Opp'n. Br., at 8). Defendant is wrong.

**1. [REDACTED] Are Compelling Interests Sufficient To Overcome The Public's Right of Access.**

This Court has held that the existence of a [REDACTED] is a compelling interest, or higher value, sufficient to overcome the First Amendment presumption of access. For example, in *Lifenet Health v. Lifecell Corp.*, No. 2:13CV486, 2015 WL 12517430 (E.D. Va. Feb. 12, 2015), this Court held that protection of third-party interests, coupled with the bargained-for protection of [REDACTED] weighed in favor of sealing. Relying on *Publicker Inds., Inc. v. Cohen*, 733 F.2d 1059 (3d. Cir. 1984), the Court recognized that "[t]he Third Circuit did note that [REDACTED] would have been a factor to support the sealing of the record, but that such a consideration was absent." *Id.* at *4 (citing *Publicker*, 733 F.2d at 1059). After balancing the interests as they existed in the case at bar, the Court ultimately held that "(1) the existence of information that could harm third-parties and not just the movant's interests, and (2) the existence of [REDACTED]" weighed in favor of sealing. Further, "LifeCell's interest in protecting its and third-parties['] confidential commercial information is significant enough to outweigh the First Amendment right of access in this case." *Lifenet*, 2015 WL 12517430, at *4.

The same result is warranted here, particularly given the substantial third-party interests to be considered and the fact that none of the information sought to be sealed had been made public prior to Defendant's tortious interference, as well as the expectation that this information was to

be protected by the attorney client privilege.[2] *Accord Malon v. Franklin Fin. Corp.*, No. 3:14 CV 671 (HEH-RCY), 2014 WL 12768782, at *3 (E.D. Va. Dec. 4, 2014) [REDACTED] (Verified Compl., Ex. 2 ([REDACTED] Decl.), ¶¶ 4, 7 (discussing expectation of privilege with Defendant)).

**2. The Cases Cited By Defendant Are Inapposite To This Case.**

Unable to escape *Lifenet*'s strong support for sealing, Defendant contends that "courts have 'repeatedly found that the preservation of . . . [REDACTED] does not overcome the presumption of access to judicial documents.'" (Def.'s Opp'n. Br., at 5 (citing *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017); *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-CV-478, 2016 WL 8254918, at *2 (E.D. Va. Aug. 16, 2016); and *Callendar v. Anthes*, No. CIV.A. DKC 14-0121, 2014 WL 1577787, at *9 (D. Md. Apr. 18, 2014))). Of the three cases Defendant cites, only one is from this jurisdiction and none are applicable here.

First, as a threshold matter, all three of the cases involve litigation between the parties to the agreements over the enforcement of rights under the agreements. Of course, this case does not involve litigation among [REDACTED] Rather, it involves [REDACTED]

---

[2] Unlike *Lifenet*, however, there is no less drastic alternative to sealing this entire case because the documents sought to be sealed are so rife with information covered by the [REDACTED] – as demonstrated by Defendant's own briefing – that redactions would "render [the filings] useless to the public." *E. W., LLC v. Rahman*, No. 1:11CV1380 JCC/TCB, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) (analyzing *Ashcraft* factors and granting motion to seal); *accord, e.g.*, *Hubrick Ltd. v. Wanderset, Inc.*, No. CV18-7980-SJO (RAOx), 2019 WL 3000652 (C.D. Cal. Mar. 19, 2019) (maintaining provisional seal over all filings because of the depth in which they all included or discussed the information covered by the parties' [REDACTED]. This is discussed in greater detail in Section I.B., *infra*.

Second, none of these cases involved the number or breadth of compelling interests that justify sealing in this case. For example, in *Asghari-Kamrani* the sole basis a party identified to justify sealing a document was the fact that it contained [REDACTED] *Asghari-Kamrani*, No. 2:15-CV-478, at *2. This Court held that the presence of [REDACTED] was insufficient to justify sealing it. *Id.*

Similarly, in *Callendar*, the movants' only justification for sealing was [REDACTED] in an agreement between the parties to the litigation. *Callendar*, 2014 WL 1577787, at *9. The District Court concluded that, standing alone, the [REDACTED] was not sufficient to justify sealing. *Id.* Particularly distinguishable from Plaintiff's case though, the *Callendar* court also found that the need to seal was undermined by the fact that the information sought to be sealed had already been made public by [REDACTED] *Id.* ("Furthermore, any concerns about confidentiality are diminished after Mr. Callender testified to the name of the funding source potentially covered by [REDACTED]"). That is a compelling difference from this case where Plaintiff has filed this action seeking emergency relief to prevent public disclosure *before* it occurs.

Lastly, *Under Seal* involved a lawsuit between a famous television personality and the person who she hired to ghost-write a book for her. *Under Seal*, 273 F. Supp. 3d at 465. There, applying Second Circuit law, the District Court rejected the plaintiff's sealing motion, concluding that the existence of [REDACTED] coupled with the possibility of future adverse impact on the plaintiff's ***celebrity*** status was not sufficient to overcome the presumption of access to judicial documents. *See id.* at 470-71.

Unlike the cases cited by Defendant, Plaintiff asserted multiple bases for sealing ***in addition to*** [REDACTED] which courts have deemed



are sufficient to withstand First Amendment scrutiny under various circumstances. This is particularly true once all of these bases are weighed together. These additional facts include that: [redacted] (and should have continued but for [redacted] the [redacted] was provided to Defendant in a privileged communication; and no party to the [redacted] has previously caused the [redacted] to be released to the public. Therefore, none of Defendant's cases denying sealing resembles this case.

### 3. [redacted] Command Additional Weight When They Are The Product Of [redacted]

As an additional circumstance not present in the Defendant's cases, the confidential [redacted] was, itself, born from a [redacted] (Verified Compl., Ex. 1 (Donovan Decl.), ¶¶ 26-27). This Court has indicated that where an [redacted] and where the parties enter into a [redacted] specifically intended to cover the documents arising from that [redacted] sealing may be warranted under the First Amendment presumption. *See Craddock v. LeClairRyan*, No. 3:16-CV-11, 2019 WL 2437460, at *7 (E.D. Va. June 11, 2019).[3] Such is the case here.

---

[3] Other courts agree. "Courts tend to honor parties' decisions to enter into [redacted] *Barkley v. Pizza Hut of Am., Inc.*, No. 6:14–cv–376–Orl–37DAB, 2015 WL 5915817, at *2 (M.D. Fla. Oct. 8, 2015). While *Barkley* analyzed the common law presumption of access against the parties' intention to keep an underlying [redacted] when deciding whether to seal documents related to that [redacted] it is still instructive for the proposition that where the source of documents sought to be is a [redacted] a court should factor that source into its analysis.



[redacted] (Verified Compl., Ex. 1, Donovan Decl., ¶¶ 25-26). [redacted] (*Id.*, ¶ 25). [redacted] (*Id.*, ¶ 26). [redacted] (*Id.*) [redacted] (*Id.*, ¶ 27). [redacted] (*Id.*, ¶¶ 28-29). [redacted] *See* (*Id.*, ¶ 24).

**4. None of The [redacted] Carve-Outs Apply Here.**

Defendant seems to respond to Plaintiff's fear of being sued by [redacted] if he discusses the [redacted] by arguing that Plaintiff "overlooks that the [redacted] (Def.'s Opp'n. Br., at 8) (quoting Verified Compl., Ex. 1-A, § 21(C)) (emphasis omitted)). This argument is pointless because it is not applicable here. [redacted] which, to

Plaintiff's knowledge has not happened in the [REDACTED] and which is not threatened even now. [REDACTED] Here, of course, [REDACTED] so Defendant's reference to the mere existence of a standard and inapplicable carve out is irrelevant.

**B. The Entire Case Should Be Sealed Because The Content Of All Filings Was Intended To Be Protected By The [REDACTED]**

Defendant criticizes Plaintiff for not proposing redactions or less restrictive means than sealing. But that is because the only purpose of Plaintiff's filings is to discuss precisely the information [REDACTED] agreed to keep confidential. This Court and others have relied on cases finding that private interests sufficient to overcome the First Amendment presumption "'can involve the content of the information at issue, the relationship of the parties, or the nature of the controversy.'" *Level 3*, 611 F. Supp. 2d at 580 (quoting *Publicker*, 733 F.2d at 1073).

For instance, the court in *Publicker*, a leading Third Circuit case often cited by this Court, held that the "content of information is critical" in determining the weight to afford a [REDACTED] against the public's right of access – that is, the more sensitive the information covered by [REDACTED] the more likely the provision is to override the First Amendment presumption. *Publicker*, 733 F.2d at 1073. Despite ultimately vacating the lower court's sealing order and remanding, the court repeatedly noted that an enforceable [REDACTED] is the type of compelling interest which can overcome the First Amendment, though it was not present in that particular case. *See, e.g.*, *id.* at 1073-74 ("A similar situation would be presented where [REDACTED] which to the court seems innocuous but newsworthy; in that situation unbridled disclosure of the nature of the controversy would deprive the litigant of his right to

enforce a legal obligation.") (emphasis added); *id.* at 1074 ("In the absence of other considerations, [REDACTED] . . . .") (emphasis added). Here, since there is no disagreement that the [REDACTED] is binding and enforceable, and discussion of it is inextricably intertwined with all of the filings in this case, there are no less restrictive means than sealing the entire case to preserve the [REDACTED] secrecy. Redactions necessary to protect the [REDACTED] would eviscerate the filings and render them meaningless.

In *Hubrick*, the court maintained a prior-issued seal over all filings in the case because of a pre-existing [REDACTED] covering the very content which had been "discussed with particularity" in the filings to that point. 2019 WL 3000652, at *4. Since the documents sought to be unsealed were attached to a motion for preliminary injunction, the court applied a "compelling reasons" standard similar to the Fourth Circuit's "compelling interests" standard for the First Amendment presumption of access. The court held that (1) because the filings which were provisionally sealed, including the attachments to the motion for preliminary injunction, contained the very information sought to be kept private by the pre-existing [REDACTED] and (2) because disclosure exposed the plaintiffs to the risk of additional litigation, "compelling reasons" existed sufficient to rebut the presumption of access. *Id.* After weighing those compelling interests in sealing against the interests in access, the court maintained the seal over the filings, holding that "if the Requested Documents are disclosed, Plaintiffs and Defendants risk potential law suits and injury as a result of a breached [REDACTED]" *Id.* at *6. The court thereby upheld the seal over the entire case. *See id.* The same circumstances are present here where the [REDACTED]

**C. Sealing Protects Plaintiff's Interests And The Interests Of Third Parties.**

*Lifenet* cites the combination of a [REDACTED] and protection of the interests of third parties as sufficiently compelling to overcome the presumption of public access. *Compare Lifenet*, 2015 WL 12517430, at *4, *with* (Def.'s Opp'n. Br., at 9 (dismissing Plaintiff's identification of protection of third parties as an important factor)). [REDACTED]

Indeed, [REDACTED] *Moussouris v. Microsoft Corp.*, No. 15-CV-1483 JLR, 2018 WL 1159251, at *6 (W.D. Wash. Feb. 16, 2018) [REDACTED] ([REDACTED] weigh heavily in favor of sealing – especially when they have not placed their circumstances into the public sphere), *report and recommendation adopted*, No. C15-1483JLR, 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018). This was certainly the case at all times prior to Defendant's tortious interference with [REDACTED]

**D. Publicly Second-Guessing [REDACTED] Will Unjustly Expose Plaintiff To Media Attacks And Reputational Harm.**

Evidence of actual or impending reputational harm may also defeat the First Amendment presumption. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 270 (4th Cir. 2014); *Butigan v. Al-Malki*, No. 113CV00514GBLTCB, 2017 WL 3097772, at *3 (E.D. Va. July 20, 2017); *Adler v. CFA Inst.*, No. 1:11–CV–1167, 2012 WL 3257822, at *1 (E.D. Va. Aug, 7, 2012).[4] Here,

[4] Defendant contends that *Adler* applies only the common law presumption. (Def.'s Opp. Br., at 8). However, *Adler* explicitly applied the First Amendment presumption, finding that the movant's asserted basis for sealing – reputational harm – was far too speculative to rebut the First Amendment presumption under the facts of that case. *Adler*, 2012 WL 3257822, at *2.

Defendant's briefing confirms that Plaintiff has good reason to fear imminent damage to his reputation.



*See* (Def.'s Opp'n. Br., at 1-2 (listing the topics Defendant's

Defendant waxes poetic regarding the role of a free press in American society and by virtue of the press's import to American society, this case should be unsealed without exception. (Def.'s Opp'n. Br., at 7). However, "[t]here is also no question that the public's and the media's right of access is not absolute." *United States v. Giordano*, 158 F. Supp. 2d 242, 244 (D. Conn. 2001) (citing *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 9, 106 S. Ct. 2735 (1986)). For well over a century, courts have declined the public's access to its records simply to satisfy "a morbid craving for that which is sensational and impure." *In re Caswell*, 18 R.I. 835, 836, 29 A. 259, 259 (1893). Indeed, courts have the power to insure that their records are not "used to gratify private spite or promote public scandal," and have "refused to permit their files to

("Specifically, the Court holds, first, that the public's right of access to many of these documents is protected by the First Amendment, including two dispositive motions and related briefs and exhibits."). Regardless, both *Butigan* and *Adler* indicated that evidence of reputational harm or use of information sought to be sealed for improper purposes could establish the type of harm that may rebut the First Amendment presumption. *See Butigan*, 2017 WL 3097772, at *3 (indicating that "real evidence that [the documents sought to be sealed would be used for improper purposes] if the record were to be left open to public access" could establish sufficient harm); *see also Adler*, 2012 WL 3257822, at *3 (similar).

serve as reservoirs of libelous statements for press consumption." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598, 98 S. Ct. 1306, 1312 (1978).

Here, the media attention to this matter has already proven to be intense, and there is no doubt that Defendant's forecasted negative reviews of [redacted] and accusations of [redacted] will harm his reputation if thrust into the current media frenzy



[5] *See* Will Hobson, Liz Clarke, Beth Reinhard, and Alice Crites, *NFL asked Snyder to 'back off' use of private investigators, lawyer says, as PI visits rattle ex-employees*, THE WASHINGTON POST, (Sept. 4, 2020), https://www.washingtonpost.com/sports/2020/09/04/dan-snyder-private-investigators-nfl/ (last visited Nov. 17, 2020) (asserting that individuals purporting to be private investigators are attempting to intimidate witnesses and intrude upon Defendant's current investigation); John Feinstein, *Dan Snyder is failing his public trust,* THE WASHINGTON POST (July 23, 2020), https://www.washingtonpost.com/opinions/2020/07/23/dan-snyder-failing-his-public-trust/?tid=ss_mail (last visited Nov. 17, 2020) (labeling the Team that Plaintiff used to represent as "racist," "arrogant," "flat-out disgusting," "cringeworthy," and having a "frat-boy mentality"); Will Hobson, Beth Reinhard, Liz Clarke, and Dalton Bennett, *Lewd cheerleader videos, sexist rules: Ex-employees decry Washington's NFL team workplace*, THE WASHINGTON POST (Aug. 26, 2020), https://www.washingtonpost.com/sports/2020/08/26/redskins-cheerleaders-video-daniel-snyder-washington/?arc404=true (last visited Nov. 17, 2020) (accusing the Team and its personnel of inducing post-traumatic stress disorder, and that newly-arrived interns were like "fresh meat to a pack of wolves"); *id.* (asserting that ***any*** investigation conducted by the Team – like Defendant's ***or*** the one conducted by Plaintiff over eleven years ago – cannot be trusted "to be unbiased").

[6] Bloomberg Markets and Finance, *Media Bias and High Profile Cases*, YouTube (Nov. 28, 2018), https://www.youtube.com/watch?v=BkJT6ElR8pk (last visited Nov. 17, 2020) ("I mean you can talk to some people until you're blue in the face as we know and you're not going to persuade them in fact they have an agenda[] . . . and because there are no real standards in the media."); *accord id.* (discussing a case losing "in the court of public opinion," and "*that* normally for most clients, whether they're individuals or corporations, is honestly more important.").

lodged by the media against one of her client's former associates – a private person living a private life – simply for being associated with her client years prior: "And you know what's happened to him? He's become harassed, he's had to leave, he has had to hire a lawyer. And he doesn't want to become part of this circus, and . . . how could you blame him? Who would want to be part of this?" CNN, *Kavanaugh's lawyer: He doesn't know this woman*, YouTube (Sept. 26, 2018), https://www.youtube.com/watch?v=Cju3fb9iIks (last visited Nov. 17, 2020).

Plaintiff most certainly does not want to enter a harassing media circus either. Indeed, Plaintiff is in the same position as the man for whom Defendant's recent public comments sought mercy – if this matter is not sealed, he faces the same unrelenting media scrutiny admonished by Defendant. Indeed, his situation is even worse, given that he would still [REDACTED]

## II. CONCLUSION

When balanced together, Plaintiff's compelling interests to seal this case plainly outweigh the public's qualified right to access. These interests include (i) maintaining the [REDACTED] (ii) avoiding potential litigation for his forced b[REDACTED] (iii) protecting the interests of [REDACTED] to the [REDACTED] – particularly [REDACTED] who was tortiously induced to disclose [REDACTED] – and (iv) the avoidance of biased, agenda-driven media coverage which will most certainly cast Plaintiff as it has unfairly cast others who are associated with the Team. Further, the sensitive nature of this matter, as well as [REDACTED] make it such that there is no less drastic alternative to sealing this entire case. As a

result, there is no less drastic means to protect this information, and thus the entire case should be sealed.

Respectfully submitted this 17th day of November, 2020.

/s/ Cathy A. Hinger

Cathy A. Hinger (VSB No. 46293)
Lela M. Ames (VSB No. 75932)
Claire J. Rauscher (Admitted Pro Hac Vice)
Ana L. Jara (Admitted Pro Hac Vice)
WOMBLE BOND DICKINSON (US) LLP
1200 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
Telephone: 202-857-4489
Facsimile: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: lela.ames@wbd-us.com
Email: Claire.Rauscher@wbd-us.com
Email: Ana.Jara@wbd-us.com

*Counsel for Plaintiff*

2020 DEC 17 P 4: 37

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA