**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

DAVID P. DONOVAN,

                  Plaintiff,

    v.

BETH A. WILKINSON,

                  Defendant,

PRO-FOOTBALL, INC.

                  Intervenor.

Civil Action No. 1:20-CV-01344-AJT-IDD

**INTERESTED PARTY WP COMPANY LLC'S REPLY IN FURTHER SUPPORT OF MOTION TO INTEREVENE FOR THE LIMTED PURPOSE OF ASSERTING THE PUBLIC INTEREST IN ACCESS TO JUDICIAL RECORDS**

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................1

I.      THE POST'S INTERVENTION IS APPROPRIATE. ........................................3

II.     THERE IS NO BASIS FOR SEALING THE 2009 AGREEMENT OR
        REDACTING INFORMATION RELATING TO THE AGREEMENT...........................7

        A.      Information in the Public Domain Should Not Be Sealed. ....................................8

        B.      Embarrassment and Reputational Concerns Do Not Overcome the
                Presumption of Public Access Here...................................................................11

        C.      The Agreement's "Bargained-For Confidentiality Provision" Is Also Not a
                Basis For Sealing ..............................................................................................12

        D.      Conclusory Assertions of Privilege Are Insufficient. ..........................................14

        E.      Reconsideration of the November 25, 2020 Sealing Order Is Warranted. ............15

        CONCLUSION ...............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*,
No. 12 Civ. 3274, 2012 WL 3583176 (S.D.N.Y. Aug. 21, 2012) ...........................................13

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
800 F.2d 339 (3d Cir. 1986)........................................................................................................12

*Benedict v. Hankook Tire Co.*,
323 F. Supp. 3d 747 (E.D. Va. 2018) ........................................................................................10

*Bernsten v. O'Reilly*,
307 F. Supp. 3d 161 (S.D.N.Y. 2018)........................................................................................12

*Boone v. City of Suffolk*,
79 F. Supp. 2d 603 (E.D. Va. 1999) .............................................................................................6

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019)...........................................................................................................4

*Bureau of National Affairs v. Chase*,
No. ELH-11-1641, 2012 WL 3065352 (D. Md. July 25, 2012) ...............................................12

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975).......................................................................................................................8

*Cunningham v. Rolfe*,
131 F.R.D. 587 (D. Kan. 1990).....................................................................................................5

*Dobson v. Milton Hershey Sch. & Sch. Tr.*,
No. 1:16-CV-1958, 2020 WL 7405406 (M.D. Penn. Dec. 17, 2020).......................................10

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) ............................................................................................ *passim*

*EEOC v. Nat'l Children's Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998)....................................................................................................5

*Hawkins v. Stables*,
148 F.3d 379 (4th Cir. 1998) ........................................................................................................2

*In re Application of Storag Etzel GmbH*,
No. 19-mc-209-CFC, 2020 WL 2949742 (D. Del. Mar. 25, 2020), *R. & R.*
*adopted in relevant part*, 2020 WL 2915781 (D. Del. June 3, 2020)......................................10

*In re Baycol Prods. Litig.*,
    214 F.R.D. 542 (D. Minn. 2003)...........................................................5

*In re McClatchy Newspapers, Inc.*,
    288 F.3d 369 (9th Cir. 2002) ............................................................12

*In re Pineapple Antitrust Litig.*,
    No. 04 md 1628, 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015)..........6

*K.S. v. Ambassador Programs, Inc.*,
    No. 1:10CV439, 2010 WL 3565481 (E.D. Va. Sept. 3, 2010).............11

*Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*,
    611 F. Supp. 2d 572 (E.D. Va. 2009) .................................................10

*Lifenet Health v. Lifecell Corp.*,
    No. 2:13CV486, 2015 WL 12517430 (E.D. Va. Feb. 12, 2015) .....10, 13

*Mendez v. City of Gardena*,
    222 F. Supp. 3d 782 (C.D. Cal. 2015) .................................................6

*Org. for Competitive Markets, Inc. v. Seaboard Farms, Inc.*,
    No. 00-3432, 2001 WL 842029 (8th Cir. Feb. 1, 2001) ......................5

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)...................................................................5

*Rambus, Inc. v. Infineon Techs. AG*,
    No. Civ.A.3:00CV524, 2005 WL 1081337 (E.D. Va. 2005) ..............15

*Rosenfeld v. Montgomery Cty. Pub. Schs.*,
    25 F. App'x 123 (4th Cir. 2001) ..........................................................3

*Rothman et al. v. Snyder*,
    No. 20-cv-3290-PJM, Dkt. 63 (D. Md. Dec. 8, 2020) ....................3, 11

*Smith v. Westminster Mgmt., LLC*,
    No. JKB-17-3282, 2018 WL 9944968 (D. Md. Jan. 11, 2018) .............4

*Stone v. Univ. of Md. Med. Sys. Corp.*,
    855 F.2d 178 (4th Cir. 1988) ..........................................................6, 15

*United States v. Erie Cty.*,
    763 F.3d 235 (2d Cir. 2014).................................................................6

*Wilmington Savings Fund Soc'y, FSB v. Houston Cas. Co.*,
    No. 17-cv-1867, 2018 WL 3768531 (D. Del. Aug. 8, 2018)...............14

**Rules**

Federal Rule of Civil Procedure 24 ..................................................................................5

**Other Authorities**

Elizabeth C. Tippett, *The Legal Implications of the MeToo Movement*, 103 Minn. L. Rev. 229, 234 (2018)..........................................................................................1

Interested Party WP Company LLC d/b/a The Washington Post (the "Post") respectfully submits this reply brief in further support of its (First) Motion to Intervene for the Limited Purpose of Asserting the Public Interest in Access to Judicial Records, Dkt. 98.

## ARGUMENT

In opposing this motion, neither Plaintiff nor Intervenor Pro-Football, Inc. (the "Team") dispute that the document at the heart of this case is a 2009 Settlement Agreement – signed by Plaintiff and the Team's majority owner, Daniel Snyder – to resolve allegations of sexual harassment made against Mr. Snyder by a former employee. And while Plaintiff and the Team urge this Court to keep their Agreement secret, they are silent as to the powerful, countervailing public interest warranting disclosure: more than 40 former female employees of the Team have now come forward to allege that they were sexually harassed by Snyder or others associated with the Team, going back to 2006.[1] The public has a right to understand how the Team handled these allegations and the extent to which it has turned to the Court to try to avoid public scrutiny. Now that the sole focus of this case is to litigate the unsealing and redaction of documents, the Post should be granted intervenor status so that it can continue to assert the public's interest in access.

---

[1] *See* Liz Clarke, *Daniel Snyder denies media leaks as Washington ownership fight spills into open court*, WASH. POST (Jan. 7, 2021), https://www.washingtonpost.com/sports/2021/01/07/daniel-snyder-washington-football-ownership-media-leaks/; Post's Mem. of Law in Support of Mot. to Intervene ("Post Br."), Dkt. 99 at 2. There is, of course, broader context: namely, the worldwide "Me Too" movement that rose to prominence in 2017, in the wake of widely-publicized harassment allegations made against high-profile men. "The MeToo movement also revealed the ways in which the law can be misused to enable and conceal harassment." Elizabeth C. Tippett, *The Legal Implications of the MeToo Movement*, 103 MINN. L. REV. 229, 234 (2018). "[Film producer Harvey] Weinstein successfully covered his tracks for decades using contracts, threats, and a powerful network." *Id.*

The landscape of this issue has shifted materially since the Post filed its opening brief. In a series of public filings on December 21, 22 and 23, 2020, the Team's owners revealed many (if not all) details of the 2009 Agreement, implicitly waiving confidentiality as to that information. *See* Post's Second Motion to Intervene, Dkt. 125, at 7-10. That same week, the Team moved to close the hearing on its motion to seal without advising the Court that at least some of the information it was trying to seal had *just that week* been released into the public domain. *See* Team's Mot. to Close Hearing, Dkt. 111. It was the Post – not Plaintiff or the Team – who brought this to the Court's attention. This example alone shows the value of the Post's intervention in this case.

Moreover, the Team's public disclosures warrant a reconsideration of the Court's November 25, 2020, Order, Dkt. 68 – as well as any non-public subsequent orders issued by the Court – to the extent they allow the Parties and the Team to redact non-privileged details about the 2009 Agreement. Documents filed in this case should be made public because there is no basis for withholding information that is in the public domain, and reputational harm or embarrassment does not overcome the presumption in favor of public access. *Doe v. Pub. Citizen*, 749 F.3d 246, 269-70 (4th Cir. 2014). Moreover, conclusory assertions of privilege are insufficient to withstand disclosure. Plaintiff and the Team have not even attempted – at least in any public filing – to satisfy their burden of demonstrating that any specific communication is privileged or that the privilege has not been waived by public disclosures. *Hawkins v. Stables*, 148 F.3d 379 (4th Cir. 1998) (holding that the party asserting privilege bears the burden of showing that it applies and has not been waived). The Court's November 25, 2020 Order permitting sealing of this information should also be revisited because it was unsupported (at least in public orders) by "reasons—with specific findings—supporting closure and its rejections

of less drastic alternatives," as required by the Fourth Circuit. *Doe*, 749 F.3d at 272. For all of these reasons, the Post should be permitted to intervene, and the Court should reconsider its sealing orders to require that information relating to the 2009 Agreement be filed on the public docket.

## I.   THE POST'S INTERVENTION IS APPROPRIATE.

Plaintiff and the Team contend that the Post has not satisfied the legal requirements for intervention in this case. *See* Team's Opp. at 6-12; Pl.'s Opp. at 5-8. They are wrong. Indeed, this Court already permitted the Post to intervene with respect to the January 8, 2021, hearing, Dkt. 146, and the public deserves a continued seat at the table while the Court adjudicates ongoing sealing issues.

It is well settled that courts in this Circuit permit news organizations to intervene in actions for the purpose of challenging sealing orders. *Doe*, 749 F.3d at 262. "[T]he press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records." *Rosenfeld v. Montgomery Cty. Pub. Schs.*, 25 F. App'x 123, 131 (4th Cir. 2001). *See also* Post Br. at 6 (collecting cases). For example, the Post has been granted intervenor status in the ongoing business dispute between the team owners (the "Maryland Federal Litigation"). *Rothman et al. v. Snyder*, No. 20-cv-3290-PJM, Dkt. 63 (D. Md. Dec. 8, 2020) (granting intervenor status to the Post).

By asserting the public's interest in access, the Post plays an important role in this case. As discussed above, it was the Post who brought to the Court's attention the fact that the Team's owners had made public disclosures about the same 2009 Settlement Agreement that Plaintiff and the Team appear to be trying to conceal here. *See* Post's Second Motion to Intervene, Dkts. 125, 142. The mere fact that Defendant has advanced some of the same arguments made by the Post is also not a basis for denying the Post's intervention. *See* Pl.'s Opp. at 2, 8-10; Team's

Opp. at 1, 3, 10.  Defendant is in a different posture than the Post, constrained to some extent by the fact that this case appears to involve matters directly relevant to her ongoing investigation into the Team's handling of workplace harassment allegations.  Defendant represents herself, not the public at large, and just because she has argued in favor of greater disclosure, that is not a basis for denying intervention on behalf of the public interest.[2]  *See Smith v. Westminster Mgmt., LLC*, No. JKB-17-3282, 2018 WL 9944968, at *1 (D. Md. Jan. 11, 2018) ("Nonparty media intervenors have been permitted to intervene to seek access to records even when parties to the case have also opposed the sealing of records.") (citing *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 572 (4th Cir. 2004)).  Both Plaintiff and the Team argue that the Post's intervention would create inefficiencies by requiring the parties and the Court to consider the Post's arguments on behalf of the public interest.  Pl.'s Opp. at 2, 8-10; Team's Opp. at 1, 3, 10.  But this point just argues more strongly for granting the Post intervenor status so that it can efficiently and promptly address future sealing orders from this court without continuing to re-litigate the basis for its intervention each time it does so.

Courts widely recognize the value of intervention by the media.  For example, in *Brown v. Maxwell*, 929 F.3d 41, 53 (2d Cir. 2019), the Second Circuit affirmed the lower court's decision to permit media intervention in a case involving highly publicized allegations of sexual misconduct (involving Jeffrey Epstein), observing that:

> [T]he press plays a vital role in ensuring the public right of access and in enhancing the quality and safeguards the integrity of the factfinding process.  When faithfully observing its best traditions, the print and electronic media contributes to public understanding of the rule of law and validates [its] claim of functioning as surrogates for the public.

---

[2] Indeed Plaintiff states in his opposition brief that "Defendant has since changed her position and no longer objects to the proposed redactions."  Pl.'s Opp. at 9 n.4.

*Id.* (citation, internal quotation marks, and footnotes omitted).

Moreover, such intervention is consistent with the federal rules, notwithstanding Plaintiff's and the Team's unpersuasive arguments to the contrary. *See* Team's Opp. at 6-12; Pl.'s Opp. at 5. Courts "have expressed a willingness to adopt flexible interpretations of Rule 24" to allow media intervention on issues of public access. For example, in *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045-46 (D.C. Cir. 1998), the court granted intervention to access documents involving sexual misconduct, based in part on the long-recognized "flexible approach" to Rule 24:

> Given this flexible approach and our longstanding tradition of public access to court records, we construe Rule 24(b) as an avenue for third parties to have their day in court to contest the scope or need for confidentiality, [and] . . . third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.

*Id.* (internal citations and quotation marks omitted). *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777-78 (3d Cir. 1994) (holding that the commonality requirement under Rule 24(b) is satisfied when third-party media organization objects to a confidentiality order).[3] "Whether deemed an intervention as of right under Rule 24(a) or a permissive intervention under Rule 24(b), intervention by the press – a step preliminary to determining whether any sealed

---

[3] None of the cases cited by Plaintiff or the Team support their arguments against intervention by the Post. For example, the Team relies chiefly upon an unpublished Eighth Circuit decision, *Org. for Competitive Markets, Inc. v. Seaboard Farms, Inc.*, No. 00-3432, 2001 WL 842029, at *1, *3 (8th Cir. Feb. 1, 2001) (per curiam) (affirming denial of motion to intervene filed by non-profit organization seeking access to materials covered by a protective order). *See* Team's Opp. at 7. But that decision has been called into question within the Eighth Circuit as an unreasoned departure from the weight of authority holding that "Rule 24(b)(2) should be interpreted broadly" to allow permissive intervention by the media. *In re Baycol Prods. Litig.*, 214 F.R.D. 542, 543-44 (D. Minn. 2003) (noting that unpublished decisions "are not precedent" under the rules of that circuit). The Team also relies on *Cunningham v. Rolfe*, 131 F.R.D. 587 (D. Kan. 1990), but that case is easily distinguishable because it did not involve a media intervenor and there was no public interest asserted.

documents should be disclosed – should be granted absent some compelling justification for a contrary result." *In re Pineapple Antitrust Litig.*, No. 04 md 1628, 2015 WL 5439090, at *1 (S.D.N.Y. Aug. 10, 2015) (footnote omitted).

There is also no merit to the contention that Plaintiff's voluntary dismissal renders intervention moot, or that there is no right to public access just because the documents at issue were not taken into account by the Court in deciding a dispositive motion. *See* Pl.'s Opp. at 7; Team's Opp. at 1, 15. Public access is not defeated by a plaintiff's voluntary dismissal, and courts in this Circuit give the media great latitude with respect to timing of motions to intervene, even permitting such motions after an action is terminated. *See, e.g.*, *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999) (granting media intervention after voluntary dismissal of claims); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (allowing newspaper to intervene after defendant was granted summary judgment). *See also Giuffre v. Maxwell*, 325 F. Supp. 3d 428 (S.D.N.Y. Aug. 27, 2018) (granting motion to intervene by the *Miami Herald* after case was voluntarily dismissed), *vacated and remanded on other grounds*, 929 F.3d 41 (2d Cir. 2019); *United States v. Erie Cty.*, 763 F.3d 235 (2d Cir. 2014) (holding that, even after case was settled, the New York Civil Liberties Union should be granted intervenor status to seek the unsealing of compliance reports recognizing "public's fundamental right of access to judicial documents, guaranteed by the First Amendment"); *Mendez v. City of Gardena*, 222 F. Supp. 3d 782 (C.D. Cal. 2015) (after § 1983 claims were voluntarily dismissed, court granted motion to intervene by third-party media organizations for the purpose of unsealing police car camera footage). Here, the Team's former general counsel invoked the Court's authority to issue injunctive relief so that he could try to silence Defendant; the public interest in

access survives his dismissal despite Plaintiff's attempt to undermine that access by withdrawing

his claims soon after Judge Trengna denied Plaintiff's motion to seal the entire case.

The Post has already demonstrated its value in asserting the public interest in this case

and should be granted formal intervenor status so that it can continue to do so.

## II.      THERE IS NO BASIS FOR SEALING THE 2009 AGREEMENT OR REDACTING INFORMATION RELATING TO THE AGREEMENT.

This Court's November 25, 2020, Order directed the parties to redact from their filings

nearly all information relating to the 2009 Agreement:

> With regard to all filings by either party, the documents shall redact the following: the phrases "settlement" and "settlement agreement;" references to the day, year and age of the settlement; references to the matter giving rise to allegations and the year of said matter; the "Complainant" in reference to the matter and settlement, as well as complainant's name and title; and all references to news media investigation of or inquiries into the matter. All discussions or references concerning particularities of the settlement or agreement, such as a requirement that a waiver of confidentiality be in writing and prohibition on disparagement, shall be redacted. Any references to arbitration demand; any information protected by attorney-client privilege, such as letters between lawyers and clients; and any references to the NFL, Washington Football team or the word "team" in reference to the matter giving rise to the settlement shall be redacted.

Dkt. 68 at 1-2. However, the Team owners' subsequent public disclosures of key information

about the Agreement warrants reconsideration of the Court's Order. Reconsideration is also

warranted because the potential of reputational damage does not outweigh the interest in public

access, and no party has asserted any confidentiality interest (such as trade secrets) that would

warrant sealing. Moreover, the Court's public sealing Order did not include any specified

findings justifying closure, as is required under controlling Fourth Circuit law. *See Doe*, 749

F.3d at 272. As this Court has recognized, "the law gives this Court an absolute inherent right to

change its mind." 1/8/21 Hr'g Tr. 13:21-22. Reconsideration is appropriate here.

## A.    Information in the Public Domain Should Not Be Sealed.

There is no compelling interest in withholding information that is already in the public domain, including in court filings and in media reporting.  *See, e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) ("[I]nterests in privacy fade when the information involved already appears on the public record. . . . This conclusion is compelling when viewed in terms of the First and Fourteenth Amendments and in light of the public interest in a vigorous press.").  In its Second Motion to Intervene, the Post detailed the various disclosures made by the Team owners in the Maryland Public Litigation and attached the relevant filings.  *See* Second Mot. to Intervene, Dkt. 125, at 7-9; Declaration of Laura R. Handman in Support of Second Motion to Intervene ("Handman Decl."), Dkt. 126.  These details included information that was unrebutted by either the Team's minority owners or Mr. Snyder, the Team's majority shareholder, including *inter alia* that:

- There was a "2009 settlement of a sexual misconduct allegation against [the Team's majority owner] Mr. Snyder."  Handman Decl. Ex. B (Plaintiff's Notice of Supplemental Authority), Dkt. 126-2 at 3 (quoting reporting by the *New York Times*,[4] the ("Times Article").

- "Two investigations conducted in 2009, one by the team and another by an outside law firm hired by the team, said they were unable to substantiate the woman's claim that Snyder accosted her in April 2009 on a flight to Washington from Las Vegas.  The team fired the woman because it said she lied to the team's lawyers."  *Id.* (quoting the Times Article).

- "To avoid any potential negative publicity if the woman sued Snyder, the team paid her a financial settlement and five people, including Snyder and the accuser, signed nondisclosure agreements, according to a person with knowledge of the arrangements who was not authorized to discuss it publicly."  *Id.* (quoting the Times Article).

- *Without rebutting any of the facts reported*, Mr. Snyder stated in a Supplemental Declaration that the underlying allegations were "meritless" and that "no evidence of

---

[4] Ken Belson & Katherine Rosman, *Fight for Washington N.F.L. Team May Tighten Owner's Grip on It*, N.Y. TIMES (Dec. 19, 2020), https://www.nytimes.com/2020/12/19/sports/football/washington-nfl-daniel-snyder.html.

wrongdoing was found after an investigation by a well-respected law firm." Handman Decl. Ex. E (First Supplemental Declaration of Daniel M. Snyder) ¶ 6 (Dkt. 126-5). Mr. Snyder further stated in the public filing that despite no finding of wrongdoing, "the insurance carrier decided to settle." *Id.*

- Snyder also filed an article by the *Washington Post* (the Post Article)[5] *without rebutting any of the information contained therein.* For example, the Post Article filed by Snyder stated that:

  o The Team "paid a female former employee $1.6 million as part of a confidential settlement in 2009."

  o "The settlement was struck after the woman accused team owner Daniel Snyder of sexual misconduct . . . ."

  o "The alleged incident occurred on Snyder's private plane on a flight returning from the Academy of Country Music Awards in Las Vegas . . . ."

  o "The female employee made 'certain allegations' in April 2009, according to a copy of the agreement, and was later fired."

  o The agreement was signed on July 22, 2009, by an attorney on behalf of Snyder and two other team executives.

  o "Though the woman had been terminated for cause, she and the team agreed that her personnel file would be changed to show that she voluntarily resigned."

  o "Donovan led the team's investigation into the woman's allegations that preceded the settlement . . . ."

  o "The 2009 agreement reviewed by The Post was signed by Howard Shapiro, an attorney for Snyder; Gershman; and Donovan."

*Id.* Significantly, while Snyder characterized the underlying allegations made against him as

"meritless," he conceded that the allegations were made and investigated, and that $1.6 million

was paid to resolve the female employee's allegations (a settlement to which Mr. Snyder was a

---

[5] Will Hobson et al., *Washington Football Team settled sexual misconduct claim against Daniel Snyder for $1.6 million*, WASH. POST (Dec. 22, 2020), https://www.washingtonpost.com/sports/daniel-snyder-sexual-misconduct-settlement/2020/12/22/f81131d8-4339-11eb-a277-49a6d1f9dff1_story.html.

party).  These public admissions as to the fact of the settlement and the circumstances surrounding the settlement constitute an implied waiver of confidentiality.  *See Lifenet Health v. Lifecell Corp.*, No. 2:13CV486, 2015 WL 12517430, at *3 (E.D. Va. Feb. 12, 2015) (claim of confidentiality as to matter already made public in an article "cannot overcome the First Amendment right to public access"); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 588 (E.D. Va. 2009) (holding that public release of documents effectively mooted argument that the documents retained protected status"); *Benedict v. Hankook Tire Co.*, 323 F. Supp. 3d 747, 755 (E.D. Va. 2018) (citing *Doe*, 749 F.3d at 269); *Dobson v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-CV-1958, 2020 WL 7405406 (M.D. Penn. Dec. 17, 2020) ("materials which are already in the public domain, such as newspaper articles, plainly need not be sealed.") (citation and internal quotation marks omitted); *In re Application of Storag Etzel GmbH*, No. 19-mc-209-CFC, 2020 WL 2949742, at *29 (D. Del. Mar. 25, 2020) ("After material appears unsealed on a court's docket, and therefore in the public domain, there are little, if any, plausible justifications for subsequently sealing the same material."), *R. & R. adopted in relevant part*, 2020 WL 2915781 (D. Del. June 3, 2020).

As stated above, neither Plaintiff nor the Team dispute that the 2009 Agreement at issue in this case is the same one that was substantially disclosed in the Maryland Federal Litigation. Rather, the Team argues that the Maryland Federal Litigation is "a business dispute between the Team's owners" and "involves completely different parties and completely different issues." Team's Opp. at 21.  That may be so, but it has no bearing on the fact that the Team's owners nonetheless publicly revealed details of the 2009 Agreement—and implicitly accepted the facts asserted in news reports by filing them on the docket of that case without challenging their accuracy.  Indeed, the Team's owners filed these disclosures as evidence of leaks to the media.

*See* Team's Opp. at 21-23.  The subject matter of the Maryland Federal Litigation does not change the fact that the parties' filings were public.  These disclosures warrant reconsideration of the Court's Order.

**B.  Embarrassment and Reputational Concerns Do Not Overcome the Presumption of Public Access Here.**

Plaintiff and the Team assert that sealing and broad redactions are necessary to preserve their "confidential information."  Pl.'s Opp. at 2, 12; Team's Opp. at 17-21.  But neither Plaintiff nor the Team have asserted that the documents at issue contain any proprietary business information or trade secrets.  Rather, at best, they allege that disclosure could harm their reputations, which the Fourth Circuit has clearly held to be an insufficient ground for sealing.  *See, e.g.*, *Doe*, 749 F.3d at 269-70 ("[C]laims that carry the potential for embarrassing or injurious revelations . . . are part of the day-to-day operations of federal courts.").  *See also id.* (explaining that the weight of authority on this is substantial and the court was "unaware . . . of *any* case in which a court has found a company's bare allegation of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access.") (emphasis added) (citing *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 225 (6th Cir. 1996); *Republic of Philippines. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991); *Cent. Nat'l Bank of Mattoon v. U.S. Dep't of Treasury*, 912 F.2d 897, 900 (7th Cir. 1990); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985) (per curiam); and *Littlejohn v. Bic Corp.*, 851 F.2d 673, 685 (3d Cir. 1988)).  *Accord Rothman et al.*, Dkt. 110 (D. Md. Jan. 13, 2021) (granting Post's Motion for Reconsideration of Order relating to the filing of negative accusations by the parties); *K.S. v. Ambassador Programs, Inc.*, No. 1:10CV439, 2010 WL 3565481 (E.D. Va. Sept. 3, 2010) ("[W]hile negative publicity may be undesirable . . .  it does not amount to an improper purpose sufficient to warrant sealing.") (citation and internal

quotation marks omitted); *C.f. In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2002) (holding that under federal common law, "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free").

### C. The Agreement's "Bargained-For Confidentiality Provision" Is Also Not a Basis for Sealing

The mere existence of a "bargained-for confidentiality agreement," Team's Opp. at 17, is also not a basis for withholding information concerning the 2009 Agreement. As the Post observed in its opening brief, courts routinely deny sealing motions notwithstanding that the information is subject to a pre-existing confidentiality agreement between the parties. Post Br. at 11 (collecting cases). The Team suggests that this is only true in limited circumstances like those involving FLSA agreements, Team's Opp. at 19, but the cases refusing to seal information subject to private confidentiality agreements are far more broad. *See, e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168, 170 (S.D.N.Y. 2018) (denying motion to seal because "bargained-for confidentiality [in agreement to resolve sexual harassment claim] does not overcome the presumption of access to judicial documents," and even partial redactions found to not be a viable alternative). For example, in *Bureau of National Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352, at *3 (D. Md. July 25, 2012), the court ordered unsealed portions of a confidential settlement agreement that was not even central to the claims at issue in the case. As the Court in that case explained, "[p]rivate parties are entitled to enter into confidential agreements, but the courts ordinarily are not party to such promises of confidentiality." *Id. See also Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986) (finding that interest in encouraging confidential settlements – in that case between a bank and a real estate developer – does not outweigh the interest in public access: "We cannot permit the expediency of the moment to overturn centuries of tradition of open access to court

documents and orders."); *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, No. 12 Civ. 3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) (denying motion to seal agreement in private insurance suit: "[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents.").

The main case relied upon by the Team and Plaintiff, *Lifenet Health*, 2015 WL 12517430, at *4, is easily distinguishable. There, the court found that *financial information* was protected by confidentiality and non-disclosure agreements. But neither the Team nor Plaintiff have even suggested that they are trying to protect financial information here.

Nor is there any merit to the argument that sealing of information is necessary to protect third-party interests. No third-party interest has been identified here. The Team is represented, and its counsel is the same legal team representing the Team's majority owner, Mr. Snyder, in the Maryland Federal litigation. To suggest that Mr. Snyder's interests are not represented is beyond implausible. Moreover, there is no evidence to suggest that the female employee who made the relevant allegations against Mr. Snyder wants the 2009 Agreement kept secret.[6] To the contrary, Brendan Sullivan, the attorney who reportedly signed the 2009 Agreement as counsel for that female former employee,[7] filed a sealed affidavit in support of Defendant's Opposition to

---

[6] For this reason, it seems clear that the Team's attempt to hide behind the confidentiality agreement is entirely self-serving. Moreover, there is growing recognition that honoring NDAs in agreements to resolve sexual harassment allegations is bad public policy. For example, the state of New Jersey has passed legislation to effectively negate such agreements, and at least a dozen other states have passed laws to limit their use. *See, e.g.*, Elizabeth A. Harris, *Despite #MeToo Glare, Efforts to Ban Secret Settlements Stop Short*, N.Y. TIMES (June 14, 2019), https://www.nytimes.com/2019/06/14/arts/metoo-movement-nda.html.

[7] Will Hobson et al., *Daniel Snyder, in court filing, calls sexual misconduct allegation 'meritless'*, WASH. POST (Dec. 23, 2020), https://www.washingtonpost.com/sports/2020/12/23/daniel-snyder-response-allegations/.

Plaintiff's Motion for Preliminary Injunction.[8]  Dkt. 55-4.  There are no cognizable confidentiality interests here to protect.

"When parties call on the courts, they must accept the openness that goes with subsidized dispute reputation by public (and publicly accountable) officials."  *Doe*, 749 F.3d at 271 (citation and internal quotation marks omitted).  "If they wish a public servant's consideration of materials which are not trade secrets but may be 'sensitive' to their business, i.e., may affect their balance sheet based on past conduct, they should expect public review in a federal courthouse just like every other litigant."  *Wilmington Savings Fund Soc'y, FSB v. Houston Cas. Co.*, No. 17-cv-1867, 2018 WL 3768531, at *3 (D. Del. Aug. 8, 2018).  "[T]he federal courts are not private arbitrations and the price to pay for the public trust in resolutions reached under Article III includes the public viewing of controversies."  *Id.* at *1.  As this Court has previously observed, "if Mr. Donovan wanted everything kept out of the public eye, he should not have filed this lawsuit."  Dkt. 69 at 2 (quoting 11/20/20 Hr'g Tr.).  Any details about the 2009 Agreement that have been filed by the parties in this case should be made public.

### D.     Conclusory Assertions of Privilege Are Insufficient.

The Team also claims that some of the parties' filings relating to the 2009 Agreement are privileged.  Team's Opp. at 2-3.  Specifically, the Team contends that the parties' filings contain "(1) privileged communications between the Team and the Defendant; (2) privileged communications between the Team and the NFL; [and] (3) the Defendant's attorney work product."  *Id.* at 3.  But bare conclusory assertions of privilege are insufficient to deny public access:  a party asserting privilege "has the burden to prove that the privilege applies," and that

---

[8] Since the Sullivan affidavit is sealed, the Post is unaware of and makes no representations about its content.

"burden includes establishing that the privilege was not waived." *Rambus*, 220 F.R.D. at 278

(citing *Hawkins*, 148 F.3d at 383).  For example, there has been no explanation (at least in the

public record) regarding why communications between the Team and the NFL are privileged.

Plaintiff and the Team should be ordered to produce privilege logs to substantiate their privilege

claims, and the Post, as intervenor, should be given an opportunity to evaluate those claims.

>    **E.**    **Reconsideration of the November 25, 2020 Sealing Order Is Warranted.**

Circumstances have changed since this Court issued its November 25 Order.  The Team

has intervened to assert its interests, and the Court has had an opportunity to consider further

briefing from the Post with respect to the public interest in disclosure.  But most of all, the Team

and its owners have implicitly waived claims of confidentiality with respect to information they

filed on the public record.  Reconsideration of the Court's November 25 Order is also warranted

because it contains no "specific findings" warranting closure, or any explanation rejecting "less

drastic alternatives."  *Doe*, 749 F.3d at 272.  Even if these findings are set forth in non-public,

sealed parts of the record, the Fourth Circuit has held that the need for public transparency into

the workings of the judiciary require that decisions to deny access must be based upon specific,

*public* findings of law.  *See Stone*, 855 F.2d at 181 ("Even if the district court considered these

questions before sealing the record, it erred . . . in failing to state explicitly its conclusions and to

support them with specific findings.").  The 2009 Agreement is not some ancillary document

here; rather, it goes to the heart of the injunctive relief sought by the Plaintiff.  Reconsideration is

appropriate, and the parties should be ordered to file any sealed, non-privileged details about the

2009 Agreement in unreacted form.

## CONCLUSION

The Post's Motion to Intervene for the limited purpose of asserting the public right to access should be granted, and the Post respectfully requests that the Court reconsider its sealing Orders to allow public access.

Dated:  January 19, 2021

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**

/s/ Patrick J. Curran Jr.
Patrick J. Curran Jr. (VSB #86144)
Laura R. Handman (*pro hac vice*)
1301 K Street, N.W.
Suite 500 East
Washington, DC  20005-3317
(202) 973-4200
(202) 973-4499 (fax)
patcurran@dwt.com
laurahandman@dwt.com

Adam I. Rich (*pro hac vice*)
1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104
(212) 489-8230
(212) 489-8340 (fax)
adamrich@dwt.com

*Attorneys for WP Company LLC d/b/a The Washington Post*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of January, 2021, I caused the foregoing Reply in Further Support of the Post's (First) Motion to Intervene to be served via the court's CM/ECF system, which will send notification to all counsel of record.

January 19, 2021

/s/ *Patrick J. Curran Jr.*
Patrick J. Curran Jr.