1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
DAVID P. DONOVAN,             .    Civil Action No. 1:20cv1344
                              .
             Plaintiff,       .
                              .
      vs.                     .    Alexandria, Virginia
                              .    February 5, 2021
BETH WILKINSON,               .    10:30 a.m.
                              .
             Defendant.       .
                              .
.  .  .  .  .  .  .  .  .  .   .
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE IVAN D. DAVIS
UNITED STATES MAGISTRATE JUDGE
(Via ZoomGov)

APPEARANCES:

FOR THE PLAINTIFF:              LELA M. AMES, ESQ.
                               CATHY A. HINGER, ESQ.
                               CLAIRE J. RAUSCHER, ESQ.
                               Womble Bond Dickinson (US) LLP
                               1200 19th Street, N.W., Suite 500
                               Washington, D.C. 20036-2421


FOR THE DEFENDANT:             THOMAS G. CONNOLLY, ESQ.
                               THOMAS B. MASON, ESQ.
                               JARED P. MARX, ESQ.
                               Harris Wiltshire & Grannis LLP
                               1919 M Street, N.W., 8th Floor
                               Washington, D.C. 20036


FOR INTERVENOR,                CHRISTINA G. SARCHIO, ESQ.
   PRO-FOOTBALL, INC.:         AMISHA R. PATEL, ESQ.
                               Dechert, LLC
                               1900 K Street, N.W.
                               Washington, D.C. 20006


(Pages 1 - 35)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1   APPEARANCES:  (Cont'd.)

 2   FOR INTERVENOR,                THEODORE E. YALE, ESQ.
        PRO-FOOTBALL, INC.:         Dechert, LLC
 3                                  Cira Centre
                                    2929 Arch Street
 4                                  Philadelphia, PA 19104-2808

 5
     FOR WP COMPANY LLC:            LAURA R. HANDMAN, ESQ.
 6                                  ROBERT G. SCOTT, JR., ESQ.
                                    Davis Wright Tremaine LLP
 7                                  1301 K Street, N.W.
                                    Suite 500 East
 8                                  Washington, D.C. 20005
                                      and
 9                                  ADAM I. RICH, ESQ.
                                    Davis Wright Tremaine LLP
10                                  1251 Avenue of the Americas
                                    21st Floor
11                                  New York, NY 10020-1104

12
     ALSO PRESENT:                  KALEA CLARK, ESQ.
13

14   OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                                    U.S. District Court, Third Floor
15                                  401 Courthouse Square
                                    Alexandria, VA 22314
16                                  (703)299-8595

17

18

19

20

21

22

23

24

25
```

3

P R O C E E D I N G S

1

2          THE CLERK:  The Court calls Civil Action No.

3     20cv1344, David Donovan versus Beth Wilkinson.  May we have

4     appearances of counsel, please, starting with the plaintiff.

5          MS. AMES:  Good morning, Your Honor.  Lela Ames on

6     behalf of plaintiff, David Donovan.  On the public access line

7     are my colleagues, Cathy Hinger and Claire Rauscher, as well.

8          THE COURT:  Good morning.

9          MR. CONNOLLY:  Your Honor, good morning.  Tom

10    Connolly on behalf of Beth Wilkinson, along with my partners,

11    Tom Mason and Jared Marx.

12         THE COURT:  Good morning.

13         MR. CONNOLLY:  Good morning, Your Honor.

14         MR. SCOTT:  Good morning, Your Honor.  Robert Scott

15    for WP Company LLC, the party trying to intervene in this

16    matter.  Along with me is Laura Handman, who will argue the

17    motion.

18         THE COURT:  Good morning.

19         MS. SARCHIO:  Good morning.

20         MS. HANDMAN:  Your Honor, on the line with us is Adam

21    Rich, my colleague, and I believe Kalea Clark, deputy general

22    counsel of *The Washington Post*.

23         THE COURT:  Good morning.

24         MS. SARCHIO:  Good morning, Your Honor -- I'm sorry.

25    On behalf of intervenor, the Washington Football Team, this is

4

1    Christina Sarchio, and on the line with me I have Amisha Patel

2    and Theodore Yale.

3              THE COURT:  Good morning.  Is that it?

4              MS. SARCHIO:  That's it.

5              THE COURT:  All right.  This matter is before the

6    Court on the nonparty Washington Post Company -- or WP Company

7    LLC's motion to intervene in this matter for the limited

8    purpose of asserting the public interest in access to judicial

9    records.  It being previously ordered by several orders of this

10   Court that certain matters be sealed, certain matters be

11   redacted, and other information may be publicly accessible, the

12   Washington Football Team intervened to protect its interest

13   concerning information it believed was its private confidential

14   information that could have been discussed and it did not

15   believe was appropriate to place in the public forum.

16             The nonparty WP's motion appears to be based on the

17   fact that it does not believe that any public interest to

18   represent the access to judicial records being based either on

19   the common, common law basis or First Amendment basis would be

20   protected by anyone currently in the case, and therefore, it

21   wishes to represent the public's interest to said access.

22             Is there anything that nonparty WP would like to add

23   to your motion at this time?

24             MS. HANDMAN:  Yes, Your Honor, if I might briefly be

25   heard?  Thank you for hearing us on January 8 and granting us

1    our motion to intervene there to be heard on the closure of

2    that hearing.

3         As Your Honor recalls, we have filed declarations and

4    other filings that had been made in a Maryland case, *Rothman v.*

5    *Snyder*, which we believed affected this case because in that

6    case, Mr. Snyder directly addressed in his declaration the 2009

7    confidential agreement that we believe is the object of the

8    case here, and he described it, as you may recall, saying the

9    allegations of sexual misconduct against him were, quote,

10   meritless; that there was no evidence of wrongdoing after an

11   investigation by a well-respected law firm; and, quote, the

12   insurance carrier decided to settle.

13        And Your Honor said at the hearing that placing it in

14   the public forum, it is in the public forum, which means why

15   should it be taken back out?  And so the Court has an absolute

16   right, Your Honor said, to say, well, now that it's in the

17   public view, the public has access to it.

18        After that, the plaintiff and the Team filed

19   oppositions to our motion to intervene.  They didn't deny that

20   that agreement was the subject of this proceeding, and -- but

21   they failed to address the fact that this information was now

22   public.  They instead said, well, *The Post* shouldn't have the

23   right to intervene.

24        Well, as Your Honor knows, A, you granted it on

25   February 8.  Then the Maryland case, *The Washington Post* was

6

1    granted intervention, and, indeed, media intervention is

2    routinely granted for exactly the reasons that are here.

3            So the parties say, well, it's either too late or too

4    early for intervention.  They say it's too late because Your

5    Honor ruled on November 25 and set forth the different

6    parameters of redaction for the documents, but as Your Honor

7    knows, as I just said, subsequent events, these filings in late

8    December, we believe, warrant reconsideration of that order in

9    light of what has been revealed both in those declarations and

10   then what was filed in that case, which are two articles, one

11   from *The New York Times*, one from *The Washington Post*, that

12   describe in some detail that settlement for 1.6 million of

13   allegations by a, now an employee who said there was sexual

14   misconduct by Mr. Snyder on a flight from Vegas to D.C.

15           And we also don't believe it's too late just because

16   Mr. Donovan decided to dismiss the case.  Judge Trenga before

17   it was dismissed said that the complaint, the injunctive relief

18   all have a presumption of First Amendment access, and we put in

19   a case decided on the 24th of January by Magistrate Judge Kuo

20   in the Eastern District of New York that's very much on point.

21           There there was an intervention by Reuters after the

22   case had settled.  They sought documents that had been filed in

23   connection with a *Daubert* motion.  The court never reached the

24   *Daubert* motion because the case had been settled, so they never

25   relied on the documents or ruled on them, but nonetheless,

1    Magistrate Judge Kuo said the First Amendment right of access

2    attaches to these judicial documents as soon as they're filed,

3    and she said that otherwise, any other ruling would say that

4    parties could summarily close the curtain is what she said, and

5    then language that I think will be quoted in the future, the

6    public has the right to see what's going into the sausage,

7    factory even if the particular sausage is not made.  And that

8    is, of course, the case here.

9            So we believe that both the First Amendment

10   presumption of access and the common law right of access apply,

11   and we've seen nothing at least in the public record that would

12   suggest what is required, which is it has -- the sealing has to

13   be essential to preserve higher values, a compelling government

14   interest.

15           Here the plaintiff has articulated only basically

16   that he wants to be free of criticism, but that -- and, and

17   embarrassment, but those courts in the Fourth Circuit and

18   elsewhere have said it's not sufficient to warrant sealing, and

19   that's particularly true here, where it would appear that the

20   criticism would relate to whatever investigation was done by

21   Mr. Donovan of these allegations by the employer -- employee

22   who was subsequently fired, and that, of course, is part of the

23   larger investigation that is being looked at by Ms. Wilkinson

24   into allegations by a number of women of harassment by the

25   Washington Football Team and the front office, and so it's part

1   of a larger picture that's currently ongoing.

2          It also -- courts and, and legislatures have been

3   concerned about courts being used to hide serious allegations

4   of -- and, and systemic problems with harassment, and that

5   would be what would be, you know, NDAs therefore are not

6   favored necessarily in this situation, and beyond that, even

7   confidential agreements don't -- while the Court definitely

8   should take into account that the parties agree to

9   confidentiality, it is not necessarily dispositive.

10          The notion that, well, the parties are all engaged in

11   this process already and can -- and represent these interests,

12   first of all, obviously, Ms. Wilkinson has been advocating for

13   broader access, but she doesn't represent the public.  She

14   obviously represents her interests.

15          And it was *The Post* that brought to Your Honor's

16   attention these filings that we believe are critical in, in the

17   Maryland case.  The Team did not, did not do it, even though

18   they're representing Mr. Snyder in that case.  The plaintiff

19   didn't do it.  Ms. Wilkinson didn't do it.  It was *The Post*

20   that did it.

21          And we believe that that is a separate, you know,

22   public interest that must be asserted, and I would point out

23   even in the January 17 filing by the plaintiff of briefs that

24   had been filed in November, there was vast over-redaction,

25   redaction of any reference to the agreement, redaction of what

1   the purpose of the lawsuit was, even redaction of quotes from

2   court opinions in, in public record.

3        THE COURT:  Let's deal with things that are

4   supposedly redacted and/or requested to be sealed now.  The

5   Court has already ruled on those matters and said they were not

6   sealable, so that does not support your argument because

7   those -- that information is now in the public's access and

8   would not serve as a basis to unseal other information.

9        MS. HANDMAN:  Well, I don't know that the complaint

10  and the injunctive relief are in the public record yet.  I know

11  the Court and the parties have been going through redactions,

12  and we expect that there'll be public filings shortly, and we

13  would review them promptly.

14       We would hope that the grounds for redaction would be

15  articulated by the parties and, and by the Court, and we would

16  obviously consider that, but in terms of intervening now, the

17  most -- the most efficient process would be to grant our motion

18  and -- to intervene now so that as soon as those documents are

19  filed in the public record, we could review them and see,

20  evaluate then whether we believe there should be more unsealing

21  than what is currently -- what would be allowed by Your Honor

22  once those documents are filed.

23       So we think the most efficient process is to allow us

24  to intervene now so that we'd be ready to immediately bring to

25  the Court's attention anything that we thought required further

10

1    review, and as I say, it would be helpful if the grounds for

2    the redactions were set forth in the public record both by the

3    parties and the Court.

4            And I would point out that we're not delaying any of

5    the underlying proceeding because that's done, so it's just a

6    question of the public access here, and not delaying the

7    underlying proceedings.

8            THE COURT:  Well, I don't understand quite your

9    reasoning behind it's more efficient to allow you to intervene

10   now so you can be prepared to review any documents that are

11   placed in the public arena.  You have that absolute right now.

12   The public has that absolute right now.

13           Intervening or not -- this Court granting

14   intervention at this juncture or not would not change either

15   *The Washington Post*'s right or the public's right to go on the

16   public docket and see what has been filed in this case.

17           MS. HANDMAN:  That's 100 percent correct, Your Honor,

18   but what -- you know, instead of having to make a motion to

19   intervene and the parties briefing, you know, most of their

20   briefs are about, well, is intervention proper, you know,

21   what's their party interest, etc., etc.  If that's resolved,

22   then we can cut right to the chase of, okay, is there -- has

23   there been, you know, is the sealing warranted or should there

24   be further public access?

25           THE COURT:  Well, then let's get to that actual point

1  because we have not yet.  Your entire argument is based on, it

2  appears, the merits of the sealing, which is not the basis of

3  your motion.  There are rules in the federal rules, particular

4  rules that set the standard for intervention.  You have not

5  addressed those.

6          We're not here to decide whether their requested

7  redactions are appropriate.  That's for this Court to decide

8  based on the standards of sealing as set forth in the rules as

9  well as legal authority, case citations that support those

10 rules.  That's not the purpose of this hearing.  That's not the

11 purpose of your motion.

12         The purpose of your motion supposedly is to intervene

13 to do that in the future, but you have not addressed the

14 standard that the law requires that this Court determines has

15 been satisfied for purpose of granting intervention.

16         MS. HANDMAN:  Your Honor, in our brief, both our

17 moving brief and in our reply, we put extensive case law

18 granting media right of access to, A, be heard on these very

19 subjects, and --

20         THE COURT:  I'm not here to discuss other cases from

21 other districts and whether they granted or not.  The Federal

22 Rules of Civil Procedure have a standard that this Court must

23 take into consideration in deciding whether it's appropriate

24 that a party requesting intervention should be granted

25 intervention.  I would like you to address the standard.

12

1          MS. HANDMAN:  Your Honor, the Fourth Circuit's been

2    very clear that the public has a right to intervene where

3    they -- there are documents that are sealed and they are

4    asserting a right of access.  That's been a number of cases

5    that we've cited, and it's -- it is very standard.

6          THE COURT:  Where the public --

7          MS. HANDMAN:  It's not the same as a party -- sorry.

8          THE COURT:  The cases say the public have a right of

9    access.  They don't talk about the public's right to intervene.

10   There's some federal rule that specifically addresses the

11   standard for intervention.  Are we going to address that

12   standard or not?  Because if you don't, you have failed in your

13   obligation to convince this Court that your intervention would

14   be proper.

15         MS. HANDMAN:  Your Honor, I believe it would be the

16   permissive intervention, and it is not the same as looking at,

17   you know, standing of, you know, a party to assert a specific

18   right at issue.

19         It is the standard -- the standing is on behalf of

20   the public to assert the right of public access, and that's

21   been recognized in courts within this jurisdiction frequently,

22   and that is exactly what's happening here, and we are -- we've

23   done it promptly, and if anything, as you say, before the Court

24   has, you know, these documents have been put in the public

25   record, we've addressed what has already been the ruling, have

1   brought to light things that we think bear on that ruling by

2   the Court which has been guiding the parties in their

3   redactions, and we think that there's no question that as the

4   mechanism for being able to assert that right, intervention is

5   what is the mechanism that has been recognized by courts for

6   the press to assert that public access.

7            THE COURT:  Ms. Handman, no one here today has denied

8   the fact that the law authorizes public access to judicial

9   records.  The law does not authorize public access to all

10  judicial records.  There are a set of circumstances in which

11  certain portions of judicial records should be sealed and/or

12  redacted based on the law.

13           This Court and the federal rules provide a process by

14  which that is done:  motions are filed, nonconfidential

15  memorandum, notice to the public, all of that.  That satisfies

16  the public's access at that juncture.

17           This Court then determines whether or not all

18  information that is requested to be sealed should be sealed

19  and/or redacted or whether or not the public has a right of

20  access to certain information even though the parties have

21  requested it to be sealed.

22           So the only issue then arises on whether or not the

23  Court was -- the Court's ruling was appropriate in regards to

24  what the public should have access to or not.  That's what

25  we're here to decide, whether you have the right to intervene

1   on behalf of the public, because the public has a right of

2   access.   That's why we have a local rule that provides notice

3   of the possibility of sealing a nonconfidential memorandum

4   setting forth why the party who's requesting sealing wants it

5   to be sealed, giving both *The Washington Post* and the public a

6   right to object to the request for sealing.   That's a right of

7   access.

8            What appears you're asking for is for *The Washington*

9   *Post* to represent the entire public to be involved in the

10   process of determining what should be sealed.   That's the job

11   of the Court.

12            MS. HANDMAN:   Your Honor, I don't think we were in

13   any way suggesting that we take the place of the job of the

14   Court or that we're entitled to access to everything.   As we

15   said in our moving papers, we understand there may be

16   attorney-client privilege information that would be rightly

17   sealed assuming it's narrowly tailored and hasn't been waived,

18   and that Your, Your Honor has been going through a vigorous

19   process on this, and the parties have been going through a

20   vigorous process, but that doesn't substitute once -- you know,

21   we've raised questions about the November 25 article,

22   particularly -- order, particularly regarding subsequent events

23   and subsequent disclosures and whether that should be

24   reconsidered, and we will be taking a look at what gets

25   produced and being able to then assess whether there should be,

1    we believe should be further argument on whether it was

2    properly sealed or not, but the mechanism for that is a motion

3    to intervene, whether we do it now or we do it after those

4    documents are unsealed.

5         We have moved to intervene in order for

6    reconsideration of the November 25 order in light of subsequent

7    events, and, and, you know, Rule 24 has said that there should

8    be a flexible approach on intervention here, and courts have

9    applied that to allow the press to appear.

10        THE COURT:  Well, how is it not premature if the

11   documents that you wish to review for public access have not

12   yet been documented?  You don't know, *The Washington Post* or

13   the public, what has -- what this Court has ordered to be

14   sealed and/or redacted or not, so how can you have an opinion

15   on whether or not that Court's determination gives the public

16   an appropriate right of access without seeing what the Court

17   has ordered the public to have access to?

18        MS. HANDMAN:  Well, Your Honor, we do have a concern

19   about the November 25 order, and if those are the guidelines

20   that the redacting process has followed, where everything

21   related to --

22        THE COURT:  The Court has already modified that

23   order.

24        MS. HANDMAN:  Oh, well, I -- I didn't know whether

25   you had or not, Your Honor.  I don't see a public record of

1    that.

2            THE COURT:  On more than one occasion.

3            MS. HANDMAN:  I appreciate that, Your Honor.  Thank

4    you very much.

5            And as I said, we -- you know, once the records are

6    filed, we will obviously review, and we may find ourselves in

7    total agreement, but the point is for us to be heard on what we

8    think going forward, for example, the fact that nearly -- the

9    plaintiff doesn't want to be the subject of criticism is not a

10   sufficient grounds to overcome the presumption of access under

11   either the First Amendment or the common law, in our view, and

12   so as to going forward, we would hope that the parties would

13   take that into consideration, and just looking at what was

14   filed on January 17 by the plaintiff, the extent of

15   over-redaction there suggests that it isn't being followed, and

16   so that's a concern that is already present, and we thought it

17   would be most efficient if we were, already had a seat at the

18   table, and then we could both address what's happened in the

19   past and what's going to be happening in the future.

20           THE COURT:  Well, then point out in Federal Rule of

21   Civil Procedure 24(b) what provision should this Court

22   determine exists in order to grant your motion.

23           MS. HANDMAN:  Well, I don't have that directly in

24   front of me, Your Honor.  I'm not in my office.  I'm

25   unfortunately at home, but I will be happy to address that in a

1    subsequent filing if Your Honor would like.

2             THE COURT:  No, we're deciding this motion today.

3             MS. HANDMAN:  Okay.

4             THE COURT:  Let me give you a little assistance.

5             MS. HANDMAN:  Thank you, Your Honor.

6             THE COURT:  Rule 24(b), permissive intervention,

7    section 1, in general, 1(A), on timely motion, the court may

8    permit anyone to intervene who:  (A) is given a conditional

9    right to intervene by federal statute, inapplicable; or (B),

10   has a claim or defense that shares with the main action a

11   common question of law or fact.

12            That's all you're left with.  Convince this Court

13   that *The Washington Post* request meets that standard.

14            MS. HANDMAN:  On -- I believe on timely motion, the

15   Court is permitted to grant any intervention permissive basis,

16   and we did cite cases that say that the court provides a

17   flexible approach.

18            THE COURT:  Ms. Handman, the Court starts with the

19   rule.  The rule interprets the statute.

20            This Court doesn't feel it is necessary to look at

21   cases that interpret statutes unless it first determines that

22   the statute is ambiguous.  It doesn't appear so here.  It

23   appears the statute is clear.  Your representation that the

24   Court has the right to permit under that provision any

25   intervention would be an inaccurate interpretation of existing

18

1    law.

2           MS. HANDMAN:  Your Honor, I would suggest that while

3    it's not a statute, it's the Constitution and the common law

4    that give us the right of access to ensure a presumption of

5    access.

6           THE COURT:  And you have it.  The public has an

7    absolute right to access the records that are put in front of

8    it from a judicial standpoint.  There is no constitutional

9    right for the public to have access to all judicial records.

10   It's a right of access once it's determined that the standards

11   of sealing have not been met.

12          They have a general right of access to judicial

13   records.  That access can be overridden by the standards for

14   sealing.  That is this Court's job to ensure that those

15   standards are met before it grants a request to redact or seal.

16          So the intervention truthfully is for the purpose of

17   arguing that the Court's determination to redact or seal is

18   inappropriate under the circumstances under the standards for

19   sealing, but you first must satisfy the standard of permissive

20   intervention before the Court gives you, *The Washington Post*,

21   the, the right to act on behalf of the entire public.

22          MS. HANDMAN:  Your Honor, if I might refer you to a

23   D.C. Circuit case that noted that the Rule 24, the courts have

24   a flexible approach to allow media intervention on issues of

25   public access, and they argue for a flexible approach as an

1    avenue for third parties to have their day in court.

2             THE COURT:  Ms. Handman, the Court understands its

3    discretion.  We're here to determine whether it's appropriate

4    for the Court to utilize that discretion to grant intervention

5    by *The Washington Post*.

6             In order for this Court to do so from a legal

7    standpoint, you must meet the standard set forth in Rule 24.

8    The Court can be flexible with that standard.  You have yet to

9    address the standard.

10            MS. HANDMAN:  Well, in our cases that we cited where

11   it should be granted absent some compelling justification to

12   the contrary is another case that we cited, and we -- as I

13   said, it's routine, and it was granted in the case in Maryland

14   involving the owners of the Football Team just a, you know, few

15   months ago.

16            THE COURT:  Because a court decided that under the

17   facts of that case as they apply to Rule 24, felt it flexible

18   enough to grant it.  The facts of this case are

19   distinguishable.  You still have to satisfy the standard set

20   forth in Rule 24, period.

21            MS. HANDMAN:  We believe we --

22            THE COURT:  The rule is there for a reason,

23   Ms. Handman.

24            MS. HANDMAN:  We believe we do both with regard to

25   what's already happened in this case regarding the November 25

1    order and some of the filings already made, and we believe that

2    we have standing under the Constitution and the common law to

3    be permitted to intervene in order to assert these rights.

4           THE COURT:  We're not mixing apples and oranges.

5    You're here because the Court has concluded you have standing

6    to make this argument.  Otherwise, you wouldn't be here.

7           We're not here to decide whether you have standing to

8    make the argument.  We're here to -- for the Court to determine

9    whether you meet the standard as set forth in Federal Rule of

10   Civil Procedure 24(b) in determining whether it should grant

11   you intervention.

12          MS. HANDMAN:  Well, Your Honor, I appreciate very

13   much the fact that you did grant intervention a couple weeks

14   ago with regard to closing the hearing, and we believe the

15   similar exercise of your discretion should apply here, and as

16   we say, we think this will make the process more efficient and

17   allow -- be sure that the Court hears the public access

18   representation.

19          THE COURT:  The Court --

20          MS. HANDMAN:  We share the common question of law on

21   sealing that is before your Court -- before Your Honor right

22   now.  That's exactly what we've put papers on, and I know the

23   others have as well.  So it's the same issue that is before

24   Your Honor right now.

25          THE COURT:  Shares with the main action.  The main

1   action is not sealing.  This is a collateral matter.

2          MS. HANDMAN:  But it's what remains of the action is

3   about access to the documents that were filed in the main

4   action, and that's what, as I understand it, the parties have

5   been engaged in and the Court has been arduously reviewing.

6          THE COURT:  Ms. Handman, the rule would never be

7   interpreted that way because that would give everyone always,

8   the public, a right of access to all judicial records whether

9   they met the standard of sealing because they always have some

10  interest in whether documents are sealed or not.  That's why it

11  doesn't talk about sealing.  It talks about a claim or defense.

12         Let's start with those two, claim or defense.  Those

13  are like allegations as set forth in a complaint and an answer.

14  A claim or defense that shares with the main action, a common

15  question of law or fact.

16         This is why your argument would not have worked in

17  regards to your arguments of First Amendment right of access.

18  They do not apply because the main reason Judge Trenga granted

19  it for purposes of the preliminary injunction is because a

20  preliminary injunction is deemed dispositive.  So the standard

21  changes from common law right of access to judicial records to

22  First Amendment right of access to judicial records.

23         Simply because the case started as a preliminary

24  injunction, which gave parties -- or the public a First

25  Amendment right of access to things that dealt with that

22

1    specific issue, the preliminary injunction, it does not give

2    the public a First Amendment right of access to anything else

3    that occurs in that case, in particular discovery issues.

4           MS. HANDMAN:  Well, Your Honor, all that I understand

5    that is happening now are sealing discussions about the

6    complaint, the injunctive relief that were sought, the, the

7    opposition to the TRO, and so that is at the dispositive case

8    involved, and these are the documents related to that, and the

9    access to that --

10          THE COURT:  It does not say things that are related

11   to case dispositive.  The public's right of access First

12   Amendment is to case-dispositive issues.  Sealing and not

13   sealing documents that are filed in an action -- because every

14   action at some point is dispositive because it has to be

15   resolved.  Matters that were filed regarding the preliminary

16   injunction, matters that are filed regarding summary judgment

17   motions, matters that are filed at trial, the public has a

18   First Amendment right of access to.

19          Matters that are filed concerning motions to compel

20   and the such regarding discovery the public only has a common

21   law right to because technically the rules say the public

22   doesn't have a right to discovery matters, period.

23          MS. HANDMAN:  But this is not about a discovery

24   matter, as I understand it, and if I look at the January 17

25   filing --

23

1          THE COURT:  Ms. Handman, we're not going to go around

2    in circles here.

3          MS. HANDMAN:  Okay.

4          THE COURT:  This is not a matter -- none of this

5    sealing is dealing -- is with regards to something that's case

6    dispositive.  If it were dealing with the preliminary

7    injunction, you would be correct.

8          If it were dealing or filed pursuant to -- let me say

9    it that way.  If it's filed pursuant to supporting or arguing

10   against a preliminary injunction, public has First Amendment

11   right of access.  If it's filed pursuant to or as part of a

12   motion for summary judgment or defending or opposing said

13   motion, public would have First Amendment right of access.  If

14   it's filed as part of trial, either proving the claim or

15   defending against it, the public would have a First Amendment

16   right of access to it.

17         The documents filed here do not fall under one of

18   those three categories.  The public only has, this Court has

19   concluded, a common law right of access to these documents.

20         MS. HANDMAN:  Your Honor, does your conclusion relate

21   to things like the TRO and the opposition to the TRO and the

22   complaint?  Because take the January 17 filing by the

23   plaintiff.  All the references to the complaint were redacted,

24   so --

25         THE COURT:  And I made a ruling that the accusations

1    in the complaint cannot be sealed because they're the

2    accusations.  At that point in time, things were sealed because

3    Judge Trenga had sealed the case.

4              MS. HANDMAN:  Right.

5              THE COURT:  I didn't have any part of that.

6              MS. HANDMAN:  Correct.

7              THE COURT:  Once he unsealed the case, he directed

8    the parties to this magistrate judge to determine whether

9    things that had already been filed and things that would be

10   filed should be sealed and/or redacted.  That's the process

11   we're going through now.

12             MS. HANDMAN:  Understood, Your Honor.

13             THE COURT:  The public has a right to object to the

14   Court's conclusions about that.  You have not convinced the

15   Court that *Washington Post* has a right to intervene to speak to

16   the Court prior to the Court making said conclusions.

17             MS. HANDMAN:  Your Honor, we have raised the

18   question --

19             THE COURT:  You have the right to contest the

20   conclusion.  That's what some of those cases you cite represent

21   and stand for.

22             The Court has made a decision.  You disagree.  You

23   think too much has been sealed and redacted and the public

24   should have a right of access to it.  That's why they argue

25   this is premature, because the sealed and redacted documents

1  have not come out yet.

2          MS. HANDMAN:  Understood, Your Honor, but we have

3  raised questions about documents that have been filed, and the

4  order from November 25, which I'm pleased to hear has been

5  modified --

6          THE COURT:  And the Court has concluded whether or

7  not it believed it should have reconsidered, and some of that

8  additional information should not be redacted.  That's why it

9  gave you standing to intervene before, because you brought to

10 the Court's attention something that had not yet been brought,

11 that some of that information the Court said was appropriate to

12 redact had been placed subsequently into the public arena.

13         That's why the Court gave you standing to hear that

14 issue.  We've already dealt with that.

15         MS. HANDMAN:  Well, courts do give us the right to

16 intervene -- I think of the *Knight* decision from the Fourth

17 Circuit -- even --

18         THE COURT:  Your job --

19         MS. HANDMAN:  -- on common law presumption of access.

20         THE COURT:  Your job, Ms. Handman, is to convince

21 this Court.

22         MS. HANDMAN:  I appreciate that, Your Honor.

23         THE COURT:  This Court is not a rubber stamp for what

24 other courts do.

25         MS. HANDMAN:  I appreciate that.  Well, that's partly

1    why we've cited Fourth Circuit cases to assist the Court as you

2    decide when we should be permitted to appear.  I mean, Your

3    Honor, if -- we thought that intervention was what was required

4    in order to assert this interest, and, you know, I don't -- I

5    think that's the mechanism by which the -- and the press, as

6    it's been long recognized, the press stands in the shoes of the

7    public, and, and in order to be able to see how the judicial

8    branch is working and what's going on and when parties have

9    invoked the powers like injunctive relief, that's where the

10   press stands in for the public, and the courts have recognized

11   that and recognized intervention as the mechanism to do that,

12   and so that's what we're arguing here.

13            I appreciate that some of what we're arguing is

14   what's happened already and some of it's what will happen in

15   the future.  We thought the Court would be pleased that we

16   were -- already had a seat at the table raising some of these

17   issues as the Court goes forward considering redactions.  We

18   think we were helpful in raising what happened in the Maryland

19   court, and we appreciate very much that the Court has taken all

20   that into consideration.

21            So we thought and we believe we have a right to have

22   a seat at the table on this and to review what ends up being

23   filed and to review what's already been filed.

24            THE COURT:  The Court understands your position.

25            Would anyone else like to speak and be heard?

1          MS. SARCHIO:  Your Honor, good morning.  This is

2    Christina Sarchio on behalf of the Washington Football Team.

3    If I may briefly be heard?

4          Your Honor, we oppose *The* -- we oppose *The Washington*

5    *Post*'s motion, and I just wanted to point out a few things.

6    Obviously, we've said a lot in our briefs and Your Honor has

7    covered a lot of ground today.  I wanted to point out just a

8    few things.

9          Ms. Handman started her argument today focused on the

10   Maryland action and what had been filed in the Maryland action

11   as some sort of implicit waiver that documents filed in this

12   case should now be open to the public.  I want to point out

13   that *The Post* moved to intervene before those filings in, in

14   the Maryland action, and so *The Post*'s initial motion to

15   intervene didn't address any of the issues.  They still sought

16   to intervene.

17         So now they're hanging their hat on what happened in

18   Maryland, but that wasn't the basis for their initial motion to

19   intervene.  Their initial motion to intervene, Your Honor,

20   failed to satisfy Federal Rule 24(b) in terms of why they

21   should be granted permissive intervention.  They did not

22   establish that they had, they shared a common, an interest in

23   either the fact or law of the material action, and they didn't

24   otherwise satisfy their burden initially, and -- nor did they

25   challenge the November 25 order in their initial motion to

1    intervene.

2            They, in fact, agreed with the Court's order.  They,

3    they agreed with the Court's decision that it (inaudible)

4    attorney-client privileged information and other confidential

5    information, it should be redacted, and so we pointed that out

6    in our brief, that they essentially didn't meet the standards

7    to be permitted to intervene in this action.

8            In reply, they're now raising completely new

9    arguments, Your Honor, and, frankly, have changed direction

10   from what they initially moved on.  In reply, they're now

11   raising *The Washington Post* intervention in Maryland, which was

12   not opposed, which is different from what has happened in this

13   case.

14           They also are now claiming for the first time in

15   reply that they do take issue with Your Honor's November 25

16   order.  They still don't articulate what that issue is, but

17   they raised that issue for the first time in reply, which

18   should be rejected, because arguments in reply that are raised

19   for the first time should be ignored, but also they don't

20   explain the basis for complaining about Your Honor's

21   November 25 order.

22           And so I wanted to point out that it's a -- their

23   theory is shifting because they are not able to satisfy the

24   standard for permissive intervention.

25           And the last thing I want to point out, Your Honor,

1   is they really articulated two grounds for, for intervention,

2   but they're conflating the two.  There are situations -- and

3   Ms. Handman pointed out to the D.C. Circuit case, which is a

4   case involving the EEOC, and in that case, permissive

5   intervention was permitted not involving the media, Your Honor,

6   but it was a woman whose child had been abused by the same

7   center that was at issue in this case, and so she was trying to

8   get documents in that case that she could use in her case.

9          That is quite a different situation from what we have

10   here.  The only times that the media has been permitted to

11   intervene, Your Honor, and the cases they cite to deal more

12   with standing to assert the public's right to access, is when a

13   court has failed its duties in some capacity in (inaudible)

14   something to be maintained under seal.

15          THE COURT:  Ms. Sarchio?  Ms. Sarchio?

16          MS. SARCHIO:  Yes?

17          THE COURT:  From a technical standpoint, something is

18   happening on your end, and you're breaking up.  Is there

19   something you can do about that?  Because obviously, this is

20   being taken down by a court reporter, and we'd like the most --

21          MS. SARCHIO:  Clean record.

22          THE COURT:  Yes.  Thank you.

23          MS. SARCHIO:  Is this a little bit better, Your

24   Honor?

25          THE COURT:  Ms. Thomson?

30

1          Well, at this moment, it might, but breaking up, just

2     make sure that you don't have any other devices, one that is

3     trying to connect to the Zoom like cell phones and things.

4     Those interrupt the signals, so --

5          MS. SARCHIO:  Okay.  Your Honor, I'm holding the

6     phone to my head, so hopefully that makes it better.

7          THE COURT:  All right.  Proceed.

8          MS. SARCHIO:  All right.  Thank you, Your Honor.

9          Your Honor, in terms of the, the instances that *The*

10    *Washington Post* relies on where the media has been permitted to

11    come in and assert the public's right of interest is when a

12    district court has not done the kind of rigorous analysis that

13    Your Honor has conducted here already and continues to be in

14    the process of conducting.

15          It's when a court has permitted the parties to seal a

16    case or to seal certain parts of a case without really

17    explaining the basis for the sealing, and that's when an

18    appellate court typically has permitted the media to come in

19    and be able to challenge that order and then has remanded for

20    the district court to then do its diligence to comply with the

21    rules as required and to, to articulate a basis for sealing,

22    but that's not what we have here, Your Honor.

23          What we have is Your Honor is undergoing a rigorous

24    exercise that it had already started and is continuing to

25    undertake in terms of determining what, what documents and what

1   materials should be redacted and should not be redacted, but

2   what *The Washington Post* is doing is conflating the issues.

3          They want more than to be able to articulate a

4   public's right to access the documents.  They actually want to

5   be able to stand in the shoes of the Court.

6          I know Ms. Handman said that she stands in the shoes

7   of the public, but if you look at their reply brief, they're

8   asking to do much more.  They're asking for privilege logs.

9   They're, they're challenging a party's ability to assert

10  privilege, saying that they need to get underneath that, and so

11  they're asking to look at the documents, to stand in the shoes

12  of he Court to be able to determine whether a party's

13  invocation of privilege, invocation of confidentiality is

14  warranted, and that they're not permitted to do.

15         There's absolutely no case that they cite that

16  permits the media to come in and stand in the shoes of the

17  court to be able to determine whether something is properly

18  redacted or not properly redacted.  At best, the media has been

19  able to ask a court to actually explain the basis for the

20  redaction but not more than that, Your Honor.

21         The only last thing I would like to point out is

22  Ms. Handman also referenced filings that were put on the

23  docket, I think she said January 17.  Again, she's raising

24  these arguments actually for the first time here at the

25  hearing.  In the reply brief that was filed on January 19,

1   after these filings were posted, there is no complaint about

2   these filings.  There's no criticism of these filings.

3         These are just, again, continuous, new arguments that

4   they're making, because their initial argument that permissive

5   intervention is warranted doesn't hold up, Your Honor.  Thank

6   you.

7         THE COURT:  Well, let's be clear.  We all know what

8   the complaint is.  The complaint is *The Washington Post* would

9   prefer not to have any of the information redacted.

10        MS. SARCHIO:  Yes, Your Honor.

11        MS. HANDMAN:  Your Honor, if I might respond?

12        THE COURT:  No, you may not.

13        MS. HANDMAN:  Okay.

14        THE COURT:  Anyone else like to be heard?

15        MS. AMES:  Your Honor, on behalf of plaintiff, I just

16   wanted to reiterate that we, we join the Team in their

17   opposition to the motion for intervention, and just to correct

18   the record with regard to something Ms. Handman said earlier,

19   our client did not bring this lawsuit to protect himself from

20   any criticism.  He brought this lawsuit to protect him from

21   criticism to which he could not respond due to certain

22   confidentiality obligations.

23        So I just, just wanted to clarify that point, but I

24   think Your Honor has already heard extensive argument on these

25   issues, and we join the Team in the opposition.

33

```
 1           THE COURT:  All right.  Having read all briefings
 2   concerning this matter and now having had the opportunity to
 3   hear all interested parties from an oral perspective, the Court
 4   has concluded that the nonparty Washington Post Company LLC has
 5   failed to satisfy the standard as set forth in Federal Rule of
 6   Civil Procedure 24(b) for permissive intervention.
 7           In particular, it does not -- has not been given a
 8   conditional right to intervene by federal statute.  It has
 9   failed to successfully argue to this Court that it has a claim
10   or defense that shares with the main action a common question
11   of law or fact.
12           This request to intervene is completely different
13   than the request to intervene that the Court granted for the
14   Washington Football Team.  This Court granted that request
15   under Rule 24(a), an intervention by right, because the
16   Washington Football Team successfully argued to this Court on
17   timely motion that it be permitted to intervene because it had
18   a claim or interest relating to the property or transaction
19   that is the subject of the action.
20           The main issue when the Court -- when the case was
21   filed was preliminary injunction brought by Mr. Donovan for the
22   purpose of preventing the defendant from utilizing what they
23   believe was confidential information that was the subject of an
24   agreement between several parties based on allegations against
25   the Team.  That confidential information was gathered in an
```

34

1    investigation.

2            Much of that confidential information had to do with

3    the Team itself.  So they had a claim or interest relating to

4    the property.  The property of the transaction subject to the

5    action was the confidential information, because it was argued

6    that it was being utilized in an inappropriate and illegal

7    manner, in contravention of certain agreements.  They had a

8    right to intervene pursuant to Rule 24(a)(2).

9            *The Washington Post* has no such right to intervene

10   and has not argued and shown successfully to this Court that it

11   should be permitted to intervene pursuant to Federal Rule of

12   Civil Procedure 24(b)(1)(A) or (B).

13           Motion to intervene by *Washington Post* is denied,

14   without prejudice, of course, Ms. Handman.

15           MS. HANDMAN:  Thank you, Your Honor.

16           MS. SARCHIO:  Thank you, Your Honor.

17           THE COURT:  Anything further in this matter?

18           MS. HANDMAN:  No, Your Honor.

19           THE COURT:  Thank you.

20           MR. CONNOLLY:  Your Honor, have a nice weekend.

21   Thank you.

22           MR. SCOTT:  Thank you.

23           THE COURT:  You and everybody be safe out there.

24           MR. SCOTT:  Thank you, sir.

25

35

1                    (Which were all the proceedings

2                      had at this time.)

3

4              CERTIFICATE OF THE REPORTER

5        I certify that the foregoing is a correct transcript of

6    the record of proceedings in the above-entitled matter.

7

8

9                                    _____
                                              /s/

10                                       Anneliese J. Thomson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25