JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DAVID P. DONOVAN

**(b)** County of Residence of First Listed Plaintiff Fairfax
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cathy A. Hinger, Womble Bond Dickinson (US) LLP
1200 19th Street, NW, Suite 500, Washington, DC 20036,
202-857-4489

## DEFENDANTS

BETH A. WILKINSON

County of Residence of First Listed Defendant Washington, DC
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [X] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. § 1332

Brief description of cause:
Defendant knew of a valid contact between Plaintiff and third parties and intentionally interfered inducing/causing a breach, which damaged Plaintiff.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** At least $100,000, TR

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 11/9/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

**DAVID P. DONOVAN**

*Plaintiff,*

v.

**BETH A. WILKINSON**

*Defendant.*

Civil Action No.______________

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND INJUNCTIVE RELIEF**

Plaintiff David P. Donovan ("Donovan"), by and through his undersigned counsel, Womble Bond Dickinson (US) LLP, hereby files this Complaint for Temporary Restraining Order, and Preliminary and Injunctive Relief against Defendant Beth A. Wilkinson, Esq. ("Wilkinson").

**NATURE OF THE CASE**

1. This action seeks to enjoin attorney Wilkinson from disseminating information that is the subject of a [redacted] confidential information related thereto ("Confidential Information"). Wilkinson only obtained this [redacted]t because it was delivered to her through privileged communications with her client, Pro-Football, Inc., d/b/a the Washington Football Team (formerly named the "Washington Redskins") (the "Team"). Donovan, the former general counsel of the Team, [redacted] not to discuss it or any Confidential Information related to it. Wilkinson, who was retained by [redacted] to investigate recent allegations

of workplace misconduct [REDACTED] has demanded Donovan be interviewed [REDACTED] Confidential Information. Donovan has refused due to his [REDACTED] and his attorney-client privilege obligations to [REDACTED]. In response, rather than acknowledge her wrongful position and retract her request, Wilkinson has threatened to include in her report to [REDACTED] that Donovan, who has a longstanding relationship with [REDACTED], is not cooperating, and is interfering with her investigation.

2. She has also intentionally induced at least one party to the [REDACTED] breach [REDACTED] by speaking about the Confidential Information with Wilkinson. Wilkinson coerced this breach by falsely telling this party that [REDACTED] But Wilkinson, as a lawyer, must have known that [REDACTED] even if granted – which it was not – would not be effective because [REDACTED] Donovan never agreed to [REDACTED]; therefore, it is impossible for there to have been a valid and effective [REDACTED]. Wilkinson's representation that [REDACTED] false, misleading and intended to induce a breach [REDACTED]

3. Wilkinson has also expressed that she intends to share [REDACTED] Confidential Information with [REDACTED] the report of her investigation after she completes her final witness interview this week. [REDACTED] reports [REDACTED] recently contacted [REDACTED]s about some of the Confidential Information [REDACTED] Wilkinson's plan to disclose to [REDACTED] and other information she



obtained through violation of attorney-client privilege and fraudulent trickery of an unwary party is almost certain to land on the front page of the Washington Post. And, even though Wilkinson's original [REDACTED] was a privileged communication and has demanded that [REDACTED]

4. If Wilkinson is not enjoined, Donovan's professional reputation will be irreparably harmed. The [REDACTED], as well as his attorney-client obligations to [REDACTED] prohibit Donovan from responding, in any way, to anything Wilkinson reports concerning [REDACTED] his role in the events that led up to it. The dilemma in which Donovan finds himself is precisely the type of circumstance [REDACTED] are designed to prevent, especially with respect to the types of high profile figures involved in this case.

5. As will be shown herein, and in the accompanying declarations, exhibits and motion for temporary and preliminary injunctive relief, Wilkinson's tortious interference [REDACTED] achieved by unethical and deceptive means, warrants entry of an immediate temporary restraining order prohibiting her from using the Confidential Information in her report [REDACTED] and ordering her to destroy and not use the [REDACTED] Confidential Information. This relief is necessary to prevent the imminent and irreparable harm to Donovan's reputation and business relationship that is certain to follow Wilkinson's threatened unauthorized and improper release of this information. The balance of the interests here decidedly weighs in favor of Donovan, who is an innocent bystander in this conflict between Wilkinson and [REDACTED] whose privilege she appears to be violating in her representation of her other client, [REDACTED] Wilkinson's likely argument that an injunction

will interfere with or delay her investigation [REDACTED] is not a legitimate interest to consider, for it was her inexplicable abandonment of her duty of privilege to her original client, [REDACTED] and her inducements of [REDACTED] that landed her in this conflict, which it appears she can resolve only by withdrawing as counsel for [REDACTED]

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1332.

7. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1391(b)(2).

8. Wilkinson is subject to personal jurisdiction in Virginia pursuant to VA Code Ann. § 8-01.328.1(A)(3) & (A)(4). Wilkinson regularly does business, solicits business and engages in a persistent course of conduct in Virginia with respect to her practice of law, including representation of numerous clients in Virginia courts.

**PARTIES**

9. Plaintiff Donovan is a citizen and resident of the Commonwealth of Virginia. Donovan enjoyed a long and successful career as a litigation partner with the law firm of WilmerHale, as well as serving as the general counsel for the Team from 2005 to 2011. (*See generally* Ex. 1, Donovan Dec. ¶¶ 2-22.) Plaintiff retired from private practice at the end of 2018.

10. Defendant Wilkinson is a citizen and resident of the District of Columbia. Wilkinson is also a prominent lawyer in Washington D.C. who is a named partner in the firm of Wilkinson Stekloff, until recently known as Wilkinson Walsh.

**STATEMENT OF FACTS**

**The [REDACTED] And [REDACTED]**

11. [REDACTED] reported an alleged incident [REDACTED]

[redacted] to Donovan. Donovan retained outside counsel from WilmerHale, and worked with them to thoroughly investigate [redacted] Donovan drafted a report documenting the factual findings of the investigation and conclusions [redacted] was highly confidential, both to [redacted]. (*Id.*, ¶¶ 23-25.)

12. Following a series of communications and interactions between [redacted] (*Id.*, ¶¶ 26-28.)

13. The [redacted] investigation [redacted] were maintained with the utmost confidentiality, and upon expiration of [redacted] those documents [redacted] to Norman Chirite ("Chirite"), who served as [redacted]

14. [redacted] Donovan is [redacted] and he is [redacted] He is also [redacted] (Ex. 1, ¶ 27 & Ex. A.)

15. [redacted] contains [redacted] disclosure of any Confidential Information [redacted]



are governed by Virginia law.

16. Donovan strictly complied with the , . He declined to speak to . (*Id.*, ¶¶ 30-32.)

**Wilkinson's Retention By The Team**

17. Upon information and belief, the Team retained Wilkinson – a sophisticated attorney with experience in handling internal investigations – as legal counsel on or about July 16, 2020, for the purpose of conducting a privileged and confidential internal investigation and to provide legal advice to the Team regarding recently alleged workplace culture problems and acts of misconduct at the Team, including the allegations of sexual harassment referenced in an investigation by the Washington Post.



**Wilkinson Learned About Through Privileged Communication With**

18. Donovan, Chirite spoke to Wilkinson. told Wilkinson Donovan told Wilkinson about . (*Id.*, ¶ 37.) Chirite told Wilkinson this information Chirite also shared information The information was shared

[redacted]

19. [redacted] Chirite [redacted] a copy [redacted] some related documents to Wilkinson [redacted] (*Id.*, ¶ 5; *see also* Ex. 1 at ¶ 39.)

20. [redacted] Chirite spoke to Wilkinson again after she [redacted] Confidential Information. She expressly confirmed to Chirite [redacted] Confidential Information [redacted] (Ex. 2, ¶ 7.)

21. [redacted] received an email from Wilkinson's firm stating that [redacted] confirmed that all individuals were released from confidentiality obligations in order to speak with the Wilkinson firm as part of its investigation. [redacted] her as a privileged document. The Wilkinson firm's email was [redacted] contacted Wilkinson [redacted] (*Id.*)

22. [redacted] Chirite spoke to Wilkinson [redacted] sharing certain Confidential Information for the investigation, [redacted] (*Id.* ¶ 8.) Wilkinson replied, "[redacted]

**Wilkinson's Retention By The NFL**

23. Upon information and belief, in September 2020, the Team agreed with the NFL that Wilkinson would be retained separately by the NFL and continue her investigation under the oversight of the NFL, while also maintaining her attorney-client relationship with the Team. [REDACTED]

**Donovan Declines Wilkinson's Demand For An Interview [REDACTED]**

24. On October 8, 2020, Wilkinson called Donovan to attempt to interview him about [REDACTED]. (Ex. 1, ¶¶ 42-44.)

25. Donovan understood from published reports that [REDACTED] investigation and retained Wilkinson to conduct the investigation and [REDACTED] report to [REDACTED]. Donovan told Wilkinson [REDACTED] Wilkinson contended [REDACTED] Donovan strongly disagreed. (*Id.*, ¶¶ 45-46.)

26. Donovan also told Wilkinson [REDACTED] and Donovan was also concerned about potential civil claims. Wilkinson claimed [REDACTED] confidential matters. (*Id.*, ¶¶ 47-49.)

27. Wilkinson continued to pursue an interview of Donovan by sending him proposed (unsigned) draft [redacted] (*Id.*, ¶ 50.)

28. Donovan retained counsel to deal with Wilkinson on these issues. Donovan's counsel sent Wilkinson a letter on [redacted] explaining the grounds for Donovan's inability to sit for an interview regarding [redacted] privilege and confidentiality [redacted] (*Id.*, ¶¶ 51-54 & Ex. D.)

29. Wilkinson responded with an accusation that Donovan was being uncooperative and a threat to report that to [redacted] with which Donovan has a longstanding positive professional relationship. She also claimed, inaccurately, that [redacted] had agreed she could speak with Donovan about this issue [redacted] have denied Wilkinson's assertion [redacted] privilege and confidentiality [redacted] and Wilkinson has provided no evidence backing up her claim.

30. Donovan's counsel responded with another letter requesting production of evidence of these alleged waivers of privilege and the confidentiality [redacted] Wilkinson has never produced [redacted] *Id.*, ¶¶ 60-65 & Ex. F.)

**Wilkinson's [redacted] And Refusal To Follow [redacted]**

31. Unbeknownst to Donovan at the time of his [redacted] ommunications with Wilkinson, on or about [redacted] Wilkinson approached the [redacted]



32. In order to induce Wilkinson, expressly acting as by falsely representing to that disclosure was permissible and would not breach , on the asserted grounds that had released . (Ex. 3-1 at Ex. 1.)

33. Wilkinson knew that (Ex. 1 at Ex. A, § 21(D).) Donovan has never . Therefore, even if a by which would be plainly inadequate, that would not be sufficient unless which has never happened. Therefore, this misrepresentation by was false, inaccurate and ineffective. As a consequence of her misrepresentation, however, Wilkinson succeeded because lawyer, relying on Wilkinson's representations, produced apparently counseled that (Ex. 3-1 at Ex. 1.)

34. Donovan understands that, based upon Wilkinson's misrepresentations, the with Wilkinson in an interview, thus violating

strictly confidential. Wilkinson's interview with [REDACTED] appears to have taken place several days after Wilkinson's initial outreach on [REDACTED]

35. When [REDACTED] learned of this, [REDACTED] wrote a letter to Wilkinson [REDACTED] also demanded that she destroy all such documents and information [REDACTED] disclosing such documents and information [REDACTED] (*See generally* Ex. 3-1.) [REDACTED] also pointed out [REDACTED] without which her statements [REDACTED] (*Id.*)

36. After Wilkinson's flagrant misconduct in inducing [REDACTED] came to light, Wilkinson refused to concede wrongdoing or destroy the information obtained from [REDACTED] or her misused copies [REDACTED]

37. Wilkinson responded to [REDACTED] letter with her own letter accusing [REDACTED] trying to interfere with her investigation [REDACTED] and contending that [REDACTED] had waived privilege and confidentiality [REDACTED] (*See generally* Ex. 3-2.) Her letter denies ever having any limitations imposed on her use of the [REDACTED], despite Chirite's clear statement that [REDACTED] the investigation [REDACTED] Wilkinson also admitted that she told [REDACTED] counsel, in writing, that [REDACTED] had waived and released [REDACTED] from any [REDACTED] *Id.*) Wilkinson's only response to inducing [REDACTED]

[redacted] was to blame [redacted] for concluding that Wilkinson's representation about [redacted] was sufficient. In other words, Wilkinson had [redacted] rendering her representations [redacted] her representation that [redacted]

38. Wilkinson's [redacted] letter also advised that she fully intended to use the information she obtained [redacted] in her written report [redacted]

**Imminent and Irreparable Harm To Donovan**

39. Wilkinson's letter firmly asserts she will not cease investigating [redacted] intends to use the Confidential Information she has learned [redacted] report [redacted]

40. Wilkinson has requested an interview of [redacted] and has advised [redacted] Upon information and belief, Wilkinson will submit her report [redacted] within as little as twenty-four hours following [redacted]

41. The NFL has repeatedly publicly announced and disclosed written reports on matters of public interest in the last several years. *See, e.g.*, Gregg Rosenthal, *Wells Report released on footballs used in AFC title*, AROUND THE NFL (May 6, 2015), https://www.nfl.com/news/wells-report-released-on-footballs-used-in-afc-title-0ap3000000491385 (last visited Nov. 8, 2020); *Robert Mueller releases report on Rice investigation*, AROUND THE NFL (Jan. 8, 2015), https://www.nfl.com/news/robert-mueller-releases-report-on-rice-investigation-0ap3000000455483 (last visited Nov. 8, 2020). Consequently, if and when Wilkinson furnishes a written report [redacted] it can be assumed that

[redacted] the report publicly available shortly thereafter, including the Confidential Information Wilkinson wrongfully elicited [redacted], and the privileged and confidential information she obtained from [redacted] and [redacted] in her role as legal counsel to [redacted] thus vastly escalating the consequences of Wilkinson's wrongdoing and inflicting profound damage on all parties [redacted]

42. The Washington Post has already published two articles about the matters Wilkinson was originally retained by [redacted] to investigate. The recent [redacted] is further evidence that at a minimum, the Washington Post will prominently publicize any information about Donovan [redacted] may be revealed [redacted] report.

43. [redacted] and counsel are presently operating under the false impression that they [redacted] information [redacted] and Wilkinson's [redacted] letter to [redacted] states that [redacted] which indicates that [redacted] have discussed [redacted] Confidential Information [redacted]

44. And, by some unknown means, [redacted]

45. Having not interviewed Donovan about these matters, Wilkinson's portrayal of Donovan's role in [redacted] investigation [redacted] is likely to be adverse, negative, disparaging and harmful to his reputation. Donovan has no means of curing or rebutting the imminent harm Wilkinson is threatening to his reputation by disclosing this highly confidential information, because Donovan is prohibited by attorney-client privilege and [redacted]

[redacted] The [redacted], so the likelihood that [redacted] told Wilkinson disparaging, false or negative things about or related to him, which Donovan would successfully dispute and could disprove [redacted] high to almost certain.

46. An injunction is the only measure that can prevent the imminent irreparable harm to Donovan that will result from Wilkinson's intentional interference with [redacted]

**COUNT I**
**(Tortious Interference with Contract)**

47. Mr. Donovan re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully alleged and set forth herein.

48. [redacted] all parties, [redacted] the parties' [redacted]

49. Moreover, the parties have scrupulously [redacted] has ever suggested [redacted] nor has Wilkinson.

50. Wilkinson was fully aware of the [redacted] having been informed of its existence [redacted] and provided with a copy of [redacted] by Chirite [redacted]

51. Upon information and belief, Wilkinson further demonstrated her subjective awareness of the [redacted] by specifically addressing [redacted] in her discussions with [redacted].

52. Wilkinson intentionally and fraudulently induced [redacted] by representing [redacted] could validly and permissibly disclose information [redacted] on the claimed grounds that [redacted] had validly waived [redacted]

53. Donovan [redacted] confidentiality [redacted] confidentiality [redacted]

54. Wilkinson knew that her representations and assurances to the [redacted] were false, because she was aware that [redacted] confidentiality [redacted] confidentiality.

55. Wilkinson's tortious actions occurred outside the scope of her authorized representation [redacted] and she used improper means, namely fraudulent misrepresentations, to carry them out.

56. As a direct and proximate result of Wilkinson's misrepresentations [redacted] disclosing Confidential Information [redacted] Wilkinson interfered with [redacted] for the purpose of causing [redacted]

57. Upon information and belief, Wilkinson acted with deliberate bad faith and malicious intent in inducing [REDACTED]

58. As a result of Wilkinson's conduct in inducing [REDACTED] Donovan has and is experiencing harm to his reputation and business relationships, and will imminently experience irreparable reputational harm that exceeds $75,000 in value, and as a result hereby seeks relief including:

(i) an Order from this Court

(a) enjoining and restraining Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from any disclosure or discussion [REDACTED] underlying subject matter, or any other information designated as confidential [REDACTED] to any third party, including but not limited to [REDACTED] or the media;

(b) enjoining and restraining Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from further interference with [REDACTED]; and

(c) directing Wilkinson to certify under penalty of perjury, on or before a date to be set by the Court, that she has destroyed all paper, digital, and other files and documents, in whatever format they may exist, containing information designated as confidential [REDACTED] and

(ii) any other relief the Court may deem just and proper, including an award of compensatory damages arising from Wilkinson's tortious conduct, the quantum of which is difficult to ascertain at this stage but shall be ascertained at trial.

**COUNT II**
**(Declaratory Judgment)**

59. Donovan re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully alleged and set forth herein.

60. An actual controversy and dispute has arisen and exists between Donovan and Wilkinson regarding Wilkinson's tortious interference with [REDACTED]

61. Donovan is informed and believes, and on that basis alleges, that Wilkinson believes she is entitled to disclose information she obtained as legal counsel to [REDACTED], and information otherwise designated as confidential [REDACTED]

62. As a result of Wilkinson's misconduct, Donovan has suffered harm, and if Wilkinson is allowed to carry through with her significant further threatened misconduct, Donovan will suffer irreparable harm and damage, in that the wrongs that will be caused by Wilkinson are of a continuing character, and will expose Donovan to ongoing harm.

63. As a result of Wilkinson's misconduct, Donovan has sustained and will continue to sustain actual damages that are difficult to ascertain or calculate with certainty at this time, but will be proven at trial.

64. Donovan does not have an adequate remedy at law for the injuries which he has suffered and will continue to suffer in the future unless Wilkinson's wrongful conduct is stopped.

65. Donovan therefore seeks a judicial declaration from this Court that (i) the [REDACTED] are valid and

enforceable; (ii) any disclosure of information or material designated as confidential [REDACTED] is and shall be prohibited; and (iii) Wilkinson may not assist in, solicit, or cause the breach of, or in any other manner interfere with, the rights and obligations [REDACTED]

**COUNT III**
**(Temporary, Preliminary and Permanent Injunctive Relief)**

66. Mr. Donovan re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully alleged and set forth herein.

67. Wilkinson tortiously interfered with the [REDACTED] disclosure of Confidential Information to Wilkinson [REDACTED]

68. Wilkinson has refused to assure Donovan that she will refrain from disclosing any Confidential Information [REDACTED] to any third party, including as part of a report or written findings [REDACTED] To the contrary, Wilkinson has continued to pursue additional disclosure of Confidential Information, and has (i) expressly refused to refrain from further interference [REDACTED] and (ii) confirmed that she will disclose Confidential Information [REDACTED] via her written report of her investigation [REDACTED]

69. Further, [REDACTED] will, presumptively, further publish Wilkinson's written report and findings to the public, as it has done with several other high-profile investigations in recent years.

70. Therefore, unless injunctive relief is granted barring Wilkinson's further misuse and disclosure of Confidential Information, Donovan will suffer profound and irreparable harm, including but not limited to the lost value of unique and sensitive Confidential Information, harm to business relationships and opportunities, lost goodwill and reputational harm.

71. Mr. Donovan is therefore entitled to injunctive relief (i) barring Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from any disclosure or discussion [REDACTED] underlying subject matter, or any other information designated as confidential [REDACTED] to any third party, including but not limited to [REDACTED] or the media; (ii) barring Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from further interference [REDACTED] and (iii) directing Wilkinson to certify under penalty of perjury, on or before a date to be set by the Court, that she has destroyed all paper, digital, and other files and documents, in whatever format they may exist, containing information designated as confidential [REDACTED] [REDACTED]

WHEREFORE, for all of the foregoing reasons, Donovan respectfully requests that the Court enter judgment in favor of Donovan and against Wilkinson as follows:

(1) As to Counts I-III above, imposing a temporary, preliminary and permanent injunction on Wilkinson that (i) bars Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from any disclosure or discussion [REDACTED] underlying

subject matter, [REDACTED] information designated as confidential [REDACTED] to any third party, including but not limited to [REDACTED] or the media; (ii) bars Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from further interference with the [REDACTED]; and (iii) directs Wilkinson to certify under penalty of perjury on or before a date to be set by the Court that she has destroyed all paper, digital, and other files and documents, in whatever format they may exist, containing information designated as confidential [REDACTED]

(2) As to Count I above, awarding compensatory damages for Wilkinson's tortious interference with [REDACTED], the amount of which is difficult to ascertain at this stage but shall be proven at trial, and in no event shall be less than $100,000; and

(3) As to Count II above, declaring and adjudging that [REDACTED] valid and enforceable, [REDACTED] [REDACTED]

(4) As to Counts I-III above, awarding Donovan his reasonable legal fees and costs incurred in bringing the instant action; and

(5) Granting Donovan such other and further relief as the Court may deem just and appropriate under the circumstances.

Dated: November 9, 2020

Respectfully submitted,

/s/ Cathy A. Hinger

Cathy A. Hinger (VSB No. 46293)
Lela M. Ames (VSB No. 75932)
WOMBLE BOND DICKINSON (US) LLP
1200 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
Telephone: 202-857-4489
Facsimile: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: lela.ames@wbd-us.com

*Counsel for Plaintiff*

**VERIFICATION**

I, David P. Donovan, do hereby certify that I have reviewed the foregoing Verified Complaint. The facts contained in the foregoing Verified Complaint are true and correct to the best of my personal knowledge, information, and belief. I am aware that should any of the foregoing facts be willfully false, I am subject to punishment.

Dated: November 8, 2020

David P. Donovan