**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

DAVID P. DONOVAN,

      Plaintiff,

      v.

BETH A. WILKINSON,

      Defendant.

No.: _____

**EXPEDITED HEARING
REQUESTED**

## PLAINTIFF DAVID P. DONOVAN'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

Plaintiff David P. Donovan ("Donovan"), by his undersigned counsel, hereby moves this Court for a temporary restraining order ("TRO"), and then a preliminary injunction, against attorney Beth A. Wilkinson ("Wilkinson") to enjoin her from including confidential information in an investigative report that she is imminently preparing to deliver to her client, ███████ ████████████████. This matter arises out of the recently publicized investigation concerning workplace misconduct allegations at ██████████████████████████ ████████████, which Wilkinson is investigating.

An injunction should be entered for the following reasons:

- Donovan is a party to ████████████████████████ ████████████████████████████████████████ █████████████ arose out ██████████████████████████ ██████████████████, which Donovan ██████████ fully investigated ████████ None of the parties to ████████████ have ████████████████████, and all of the parties to █████████████

███████████████████████████████ for any party to ███████████

█████████████████████

- Wilkinson has ███████████████ and related documents ("Confidential Information") because she received them via privileged communications when she represented ██████████████████████████████████ █████████ She has been interviewing witnesses in her investigation of the recent allegations,█████████████████████that ████████████████████ even though it has not, intentionally inducing a breach of █████████████by the ██████████

- Wilkinson is imminently planning to share ███████████████████████ Confidential Information ███████████████ in an investigative report, despite demands from ███████████████ because ██████████████ that disclosure violates █privilege and █████████████████████████████

- Donovan expects ████████ will publicly release Wilkinson's report and the media will publish the Confidential Information.

- Donovan cannot respond to, rebut, defend or disprove whatever Wilkinson reports █ ██████████ about the Confidential Information because ████████████████████████ █████████ and his attorney-client privilege not to disclose any information about these matters.

- Wilkinson's tortious interference with the█████████████████████████████ ███████████████ is threatening imminent and irreparable harm to Donovan's reputation, that can only be avoided by emergency injunctive relief restraining her from

delivering the information she tortiously obtained and is using in violation ████
████ privilege to ████ or the media.

As will be shown herein, and as shown in the Verified Complaint and attachments thereto, Donovan satisfies all factors for a TRO and preliminary injunction.  First, Donovan is likely to succeed on the merits because the evidence is undisputed: no party ████████████ has signed ████████ of ██████████████. The plain language of the ████████ ████ ████ any party from ██████████████████████ without ████ ████ all parties; therefore, Wilkinson's representations to ██████████ that the ██████████ to divulge Confidential Information to ██████████████ ████████████████████████████████ ████████ Wilkinson's false representations are the sole reason the ████████ spoke to ████████ about the Confidential Information.  Therefore, Donovan is likely to succeed on the merits of his tortious interference claim.

Second, Donovan is likely to suffer irreparable harm, absent emergency injunctive relief, because he is a long-time attorney who is well regarded in the legal community, and among the teams and executives in the NFL. ████████████████████████ so he has good cause to expect ████████ reported adverse allegations and information about him to Wilkinson during ██ interview about the ████████ Donovan has meritorious responses to ████████ allegations, including some very personal and private information about ██ ████ that bore on the veracity of ████████ allegations.  However, he cannot, and will not reveal any information that would rebut whatever the ████████ may have told Wilkinson because ██████████████████████ and attorney-client privilege.  Donovan's reputation will be unfairly and untruthfully smeared in the press, with

Donovan unable to respond, unless Wilkinson is enjoined from sharing the Confidential Information ████████ and the media.

Third, the balance of hardships tips firmly in Donovan's favor. He is an innocent bystander in an ████████████ that has arisen between Wilkinson and ████████. Wilkinson faces no hardship if the requested injunction issues because it was her inexplicable abandonment of her ████████████ ████████████████████████████████████████ by ████████████, and seeking to induce a ████████████████—████████████████████ ████████████████████████████████████████████. On the other hand, the hardship to Donovan, if this Confidential Information is turned over ████████ which releases ████ reports to the public, is irreparable.

Fourth, the injunction is in the public interest because the privacy, secrecy and integrity of maintaining the secrecy of ████████████████ is critical to inducing civil dispute resolutions. It is also in the public interest to encourage reporting of workplace disputes, and confidential resolution of them. Employees and employers alike benefit from mechanisms ████████████ ████████ to protect the privacy of persons involved and resolutions that likely otherwise would not occur if public.

For the foregoing reasons, Donovan respectfully requests the Court order a temporary, preliminary and permanent injunction on Wilkinson that:

      i.    Enjoins Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from any disclosure or discussion of the ████████████████████████████████████████ or any other

 to any third party, including but not limited to ████████ or the media;

ii.   Enjoins Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from further interference with ████████ ██████████ and

iii.  Orders Wilkinson to certify under penalty of perjury on or before a date to be set by the Court that she has destroyed all paper, digital, and other files and documents, in whatever format they may exist, ████████████████████████████ ██████████████████████

## STATEMENT OF FACTS

Donovan hereby incorporates the facts set forth in his Verified Complaint,[1] and the Declaration testimony and evidence attached thereto, as the factual basis underlying his request for injunctive relief.

## ARGUMENT

## I.   DONOVAN IS ENTITLED TO INJUNCTIVE RELIEF.

To grant preliminary injunctive relief, a court must consider whether, "(1) [the plaintiff] is likely to succeed on the merits; (2) [the plaintiff] is likely to suffer irreparable harm; (3) the balance of hardships tips in [plaintiff's] favor; and (4) the injunction is in the public interest." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013); *see also Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017) ("The standard for granting either a

---

[1]   All capitalized terms have the meaning ascribed to them in the Verified Complaint, unless otherwise indicated herein.

TRO or a preliminary injunction is the same.").  The decision to grant a preliminary injunction is evaluated under an abuse of discretion standard.  *See Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

Here, these four factors all weigh heavily in favor of Donovan and the issuance of a temporary and preliminary injunction to preserve the *status quo* and prevent the irreparable harm that Donovan will suffer if Wilkinson is permitted to share ███████ ████████████and Confidential Information with ███████ or the media.

## A. Donovan Has A Likelihood of Success On The Merits.

Donovan has a high likelihood of prevailing on all three counts in this lawsuit.  A plaintiff seeking a preliminary injunction "need not show a certainty of success[,]" but rather the he is "likely to succeed at trial[.]"  *Id.* at 321.  This standard is satisfied here.

### 1. *Tortious Interference*

The elements of tortious interference with contract are (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; and (4) resulting damages.  *See Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001).

Donovan's Verified Complaint, along with his supporting exhibits and declarations, squarely satisfy the elements of this claim.  First, there is no dispute that a valid contract exists. The parties to ███████████████ each of whom were represented by counsel, willingly entered into ████████████████████████████████████ ███████████████████████████████ (Verified Compl. ¶¶ 12-15.) ██████████████ is complete, supported by consideration, and properly executed by all parties.  (*Id.* ¶ 14, 48.)  Indeed, the parties have strictly followed and observed the terms of the

6

████████████████ for ███████ and neither Wilkinson, nor any of the parties, has ever suggested that ████████████████ is somehow invalid or unenforceable. (*Id.* ¶¶ 13-16, 49.)

Second, Wilkinson, in her role as attorney for ████████ was first told about ███████████ ████████ by ████████████████████████████and Donovan, and she received a copy of ██████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████ Thus, there is no question that Wilkinson had full knowledge of ████████████ and its ████████ ████████ This knowledge is further underscored by Wilkinson's discussions with ████████ regarding ██████████████████████████ (*Id.* ¶¶ 31-32.) That is, Wilkinson was wholly aware of the parties' agreement to ████████████████ █████████████████████████

Third, Wilkinson knowingly and intentionally interfered with these requirements ██ ███████████████ ████████████████ by speaking with ████████████████ ███████, about ████████████████and its subject matter. Specifically, ████████████ ████████████ to ████████████ by falsely representing that ████████████████ ██████████████████████████████ (*Id.* ¶¶ 32-33.) However, any such ███████████████████████████████████████ (*Id.* ¶ 33; Verified Compl. Ex. 1 at Ex. A, ████████████ §§ 12, 21(D).) ███████████████████████████ ████████████████████████ an interview with Wilkinson, ███████████████████████████████████████████, in

material breach of the ████████████████████████████████████████████
(Verified Compl. ¶ 33.)   Donovan has never ███████████████████████████
████████████████████████████████████████ *Id.*)

Lastly, Donovan has, and will continue to suffer, damages due to this disclosure of confidential information.  Damages for tortious interference "include losses that flow from the interference" including "harm to reputation[.]"   *Kamin v. U.S. Bank Nat'l Ass'n*, No. 1:13CV00058, 2013 WL 6409891, at *3 (W.D. Va. Dec. 9, 2013) (quoting RESTATEMENT (SECOND) OF TORTS § 774A (1979)).   Such reputational damages satisfy this final prong of Donovan's tortious interference claim.  *See AWP, Inc. v. Commonwealth Excavating, Inc.*, No. 5:13CV031, 2013 WL 3830500, at *8 (W.D. Va. July 24, 2013) (concluding that plaintiff properly pled tortious interference when its damages included alleged injuries to its reputation and goodwill); *see also King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1270-71 (N.D. Ala. 2014) (denying defendant's motion for summary judgment of plaintiff pharmacist's tortious interference claim where defendant spoke to licensing authority, potentially causing damage to plaintiff's reputation, which was "recoverable independent from other categories of relief").

████████████████████████ and the events leading up to ████████████████ concern sensitive matters that will have an ongoing impact on Donovan in both his personal and professional capacity.  Donovan is an accomplished attorney and currently consults on a variety of sports law matters.  (Verified Compl. Ex. 1, Donovan Decl. ¶¶ 2-9.)  Donovan has been approached by a prominent university to run a new sports law program; serves on the Dean's Advisory Committee for his alma mater; and is currently writing a book about the Team, highlighting his positive (and non-privileged) experiences with the Team.   (*Id.* ¶¶ 10-12.) Donovan's ongoing professional endeavors are sure to be jeopardized if Wilkinson is permitted to

disclose Confidential Information concerning ██████████ to █████ and the media.  Unable

to sit for an interview with Wilkinson due to ████████████████████████████████████

█████████ and as ███████████ former attorney, Donovan is hamstrung and will have no way to

respond at all to any summary or conclusions concerning ███████████ that Wilkinson may

report to █████ or that she or █████████ may disclose to the media.

### 2. *Declaratory Judgment*

Given the express language in ████████████████ and Wilkinson's refusal to

████████████████████████████████there is a genuine dispute between the parties regarding

██████████████████████ that warrants the Court entering a declaratory judgment in Donovan's

favor.  Where a party "has disputed" another's "contractual rights, thereby putting itself in a

position legally adverse to that [other party] (and has maintained such position), there is clearly a

substantial controversy between such parties 'of sufficient immediacy and reality to warrant the

issuance of declaratory judgment.'"  *Shore Bank v. Harvard*, 934 F. Supp. 2d 827, 837 (E.D. Va.

2013) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

That is precisely the situation here.  Wilkinson disputes, or has chosen to disregard, ██

██████████████████████ plain terms, which require that ███████████████████████████████

█████████████████████████████████████████████████████████ (Verified

Compl. ¶ 33; Verified Compl. Ex, 1 at Ex. A, ████████████████ §§ 12, 21(D).)  Thus, an

actual controversy exists between the parties, which requires this Court to declare that ██

█████████████████████████████████████████████████are valid and enforceable, and

that no disclosure of Confidential Information may be made █████████████████████████

████████████████████████████████

### 3. *Preliminary and Permanent Injunctive Relief*

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). Notably, federal courts in Virginia routinely grant injunctive relief to prevent the tortious interference of one party with the contractual or business interests of another. *See Audio-Video Grp., LLC v. Green*, No. 1:14CV169 JCC/TCB, 2014 WL 793535, at *6 (E.D. Va. Feb. 26, 2014) (TRO granted in part, predicated on, among other claims, tortious interference with business relationship arising out of confidentiality agreement covering proprietary information); *Lilly v. Sisk*, No. CIV. A. 99-0023-C, 1999 WL 370060, at *6 (W.D. Va. Apr. 9, 1999) (preliminary injunction granted, based on, among other claims, tortious interference with business relationship where defendants used confidential information obtained during certain negotiations to compete with plaintiffs' business, in violation of an express confidentiality agreement); *One Stop Deli, Inc. v. Franco's, Inc.*, No. CIV. A. 93-090-H, 1993 WL 513298, at *11 (W.D. Va. Dec. 7, 1993) (preliminary injunction granted based in part on defendants' tortious interference through use of proprietary information acquired from former employer).

Likewise, courts frequently enjoin the disclosure or use of confidential information to prevent irreparable harm. *See, e.g., RelaDyne Reliability Servs. Inc. v. Bronder*, No. 2:20CV377, 2020 WL 5745801, at *3-4 (E.D. Va. Aug. 4, 2020) (granting TRO to enjoin former employee from disclosing confidential information, and recognizing that harm to reputation constitutes irreparable harm); *Physicians Interactive v. Lathian Sys., Inc.*, No. CA 03-1193-A, 2003 WL 23018270, at *1, *11 (E.D. Va. Dec. 5, 2003) (enjoining company from using confidential information, which was impermissibly obtained through a hack of plaintiff's computer systems).

Here, Donovan is likely to prevail on his claim for injunctive relief. Wilkinson's tortious interference and disclosure of confidential information are precisely the type of actions that injunctive relief is designed to address. As explained in greater detail below, Donovan satisfies the factors for such relief, and is thus likely to succeed on this claim as well.

**B. Donovan Will Suffer Irreparable Harm.**

"The purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (internal citation omitted). That is, a likelihood of irreparable harm (rather than a certainty) is what is required. *See Metro. Reg'l Info. Sys., Inc.*, 722 F.3d at 595; *see also Bath Indus., Inc. v. Blot*, 427 F.2d 97, 111 (7th Cir. 1970) ("it is not necessary that the trial court find the certainty of a wrong, a likelihood is sufficient"); *see also* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 2948.1 (3d ed.) ("[T]he injury need not have been inflicted when application is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis."). "[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (citation omitted), *abrogated on other grounds*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *see also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (irreparable harm typically cannot be remedied or "compensated by an award of money damages at judgment").

Importantly here, a "loss of reputation" typically cannot "be remedied absent injunctive relief." *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 706-7 (E.D. Va. 2000); *see also* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 2948.1 (3d ed.) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.").

11

As such, reputational harm frequently warrants injunctive relief.  *See, e.g.*, *Diamond Resorts Int'l, Inc. v. Cheatham*, No. 417CV00079RAJLRL, 2017 WL 7052259, at *1 (E.D. Va. Nov. 6, 2017) (granting consent motion for permanent injunction predicated on claims including tortious interference, finding that "irreparable harm will result to [plaintiff] if this injunction is not granted in that [plaintiff's] reputation, branding and goodwill will be irreparably damaged by defendants"); *Fletcher v. Geesling*, 286 F.2d 545, 546 (D.C. Cir. 1961) (reinstating preliminary injunction to protect plaintiff from "alleged and [potentially] untrue scandalous matter[s]" that, if made public, would harm plaintiff's reputation); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 326 (D.R.I. 1999), *aff'd*, 217 F.3d 8 (1st Cir. 2000) (Court ordered permanent injunction to prohibit further violations of settlement agreement, explaining that "an injunction is often a particularly appropriate remedy where the injury suffered by the plaintiff is to its reputation or goodwill.").

The Fourth Circuit has expressly recognized that "when the failure to grant preliminary relief creates the possibility of . . . the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co.*, 22 F.3d at 552; *see also Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15-CV-00058, 2016 WL 1247220, at *28 (W.D. Va. Mar. 24, 2016) ("The loss of goodwill or industry reputation is a well-recognized basis for finding irreparable harm . . . . Courts in the Fourth Circuit have held that loss of clients' goodwill and future business . . . [is] difficult, if not impossible, to measure fully." (citation omitted)).

For example, in *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, an egg producer sued the defendant after it issued an email claiming that plaintiff had improperly certified its eggs.  193 F. Supp. 3d 556, 564-65 (E.D. Va. 2016), *aff'd*, 700 F. App'x 251 (4th Cir. 2017). The Court granted a TRO and thereafter a preliminary injunction to stop the dissemination of this

damaging email and requiring the defendant to issue a corrective email.  *Id.* at 565, 576. Particularly in the internet age, the potential for reputational harm is significant, with the Court noting that "[e]ach forward of the email . . . poses the risk of additional loss of goodwill, customers, and growth opportunities. . . . . [T]hose injuries are irreparable." *Id.* at 575.

While many preliminary injunction cases are brought on behalf of business entities, this remedy is likewise appropriate, and necessary, to prevent reputational harm to individuals.  For example, the Fifth Circuit affirmed a district court's decision granting a preliminary injunction to reinstate the plaintiff, a school superintendent, because the plaintiff would likely suffer irreparable injury to her professional reputation absent such relief.  *See Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997).  The Court reached this conclusion based on "an affidavit from a former school superintendent with nationwide experience in the conduct of searches to fill such positions," stating that the school board's decision to terminate the plaintiff for "inefficiency and incompetence" would inflict a severe injury to plaintiff's "*professional reputation*[.]"  *Id.* (emphasis in original); *see also Fletcher*, 286 F.2d at 545-47 (reversing lower court's ruling and reinstating preliminary injunction to protect individual plaintiff from a lawsuit regarding a "scandalous matter[,]" which defendants allegedly filed in violation of a settlement agreement). Likewise, this Court granted a preliminary injunction to protect an individual author "from destruction of her reputation[,]" which "could cost her large sums in book sales." *Cornwell*, 99 F. Supp. 2d at 706.

Similar to reputational harm, the release of confidential or privileged information is the type of injury that cannot be undone—i.e., the bell cannot be un-rung, making the damage irreparable.  "Once confidential attorney-client communications are disclosed, their confidential nature is permanently and irrevocably impaired." *X Corp. v. Doe*, 805 F. Supp. 1298, 1304 (E.D.

13

Va. 1992), *aff'd sub nom. Under Seal v. Under Seal*, 17 F.3d 1435 (4th Cir. 1994); *see also Moller-Maersk A/S v. Escrub Sys., Inc.*, No. 1:07CV1276JCC, 2007 WL 4562827, at *2 (E.D. Va. Dec. 21, 2007) (enjoining defendant from entering into any agreements, or sharing any information, with third parties regarding particular intellectual property, which could not "be un-learned" once disclosed). That is, even if a plaintiff "were ultimately to prevail" at trial, "its right to prevent disclosures of confidential information might be forever lost absent a preliminary injunction." *X Corp.*, 805 F. Supp. at 1304. Specifically, in *X Corp*, this Court enjoined plaintiffs' former general counsel from disclosing plaintiffs' confidences, noting that "[i]nformation . . . acquired [from a client] is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it." *Id.* (citing *NCK Org. v. Bregman*, 542 F.2d 128, 133 (2d Cir.1976)).

In the case of Donovan, the facts well exceed the "likelihood" standard and establish irreparable harm. Wilkinson has already elicited, ███████████, Confidential Information concerning ██████████████ and ███████████ from ████████████ (Verified Compl. ¶¶ 31-34.) ████████████████████████████████████(Verified Compl. Ex. 1, Donovan Decl. ¶ 26), and thus, it is highly likely that ███████████ reported disparaging information about Donovan to Wilkinson during ████████████ interview. Moreover, Donovan investigated ████████████ and authored ██████████ concerning his findings and conclusions. (Verified Compl. ¶ 11.) Any criticism of ██████████ or its conclusions will cast aspersions on Donovan personally and professionally. This type of reputational damage is precisely the type of harm that is difficult to quantify and fully compensate for through monetary damages, warranting injunctive relief. *See Cornwell*, 99 F. Supp. 2d at 707. This professional

harm to Donovan is akin to "the loss of goodwill" and thus fully satisfies the "irreparable injury

prong[.]"  *See Multi-Channel TV Cable Co.*, 22 F.3d at 552.

Wilkinson has made it clear in written correspondence 

or otherwise privy to

(Verified Compl. ¶ 38.)  Wilkinson is poised to double-

down on these efforts and cause substantial, irreparable injury to Donovan, first through a written

report to ███████ and ultimately public dissemination.  (*Id.* ¶¶ 39-41.)

The threat of widespread public disclosure goes well beyond a theoretical possibility, and

represents a near certainty with ████████████ has a pattern and practice of releasing full

copies of the reports[2] concerning internal investigations.  (*Id.* ¶ 41.)  Not only does the NFL

routinely publish these reports, it often publicly praises and effectively legitimizes them.  *See, e.g.*,

Gregg Rosenthal, *Wells Report release on footballs used in AFC title*, Around the NFL (May 6,

2015, 6:33 AM), https://www.nfl.com/news/wells-report-released-on-footballs-used-in-afc-

title0ap300 0000491385 (last visited Nov. 8, 2020) (The NFL Commissioner wrote: "I want to

express my appreciation to Ted Wells and his colleagues for performing a thorough and

---

[2]      *See, e.g.,* Paul Tagliabue, *In the Matter of New Orleans Saints Pay-for-Performance/Bounty*, NFL.COM, (Dec. 11, 2012, 6:43 AM), https://www.nfl.com/news/paul-tagliabue-s-full-decision-on-saints-bounty-appeal0ap1000000109668 (last visited Nov. 8, 2020); Gregg Rosenthal, *Summary of Ted Wells report on Miami Dolphins*, AROUND THE LEAGUE, (Feb. 14, 2014, 5:58 AM), https://www.nfl.com/news/summary-of-ted-wells-report-on-miami-dolphins-0ap2000000325899 (last visited Nov. 8, 2020); Darin Gantt, *Former Dolphins trainer fired after bullying scandal resurfaces*, PRO FOOTBALL TALK, (June 13, 2016, 11:22 AM), https://profootballtalk.nbcsports.com/2016/06/13/former-dolphins-trainer-fired-after-bullying-scandal-resurfaces/ (last visited Nov. 8, 2020); Theodore V. Wells Jr., Brad S. Karp, Lorin L. Reisner, *Investigation Report Concerning Footballs Used During the AFC Championship Game on January 18, 2015*, NFL.COM, (May 6, 2015), http://static.nfl.com/static/content/public/photo/2015/05/06/0ap3000000491381.pdf (last visited Nov. 8, 2020).

independent investigation, the findings and conclusions of which are set forth in today's comprehensive report").

Donovan's professional reputation and his business opportunities will suffer if Wilkinson is allowed to move forward and disclose Confidential Information about ██████████. Much like these other ██████████ and the disparaging email at issue in *Handsome Brook Farm, LLC*, 193 F. Supp. 3d at 575, Wilkinson's incomplete report ██████████████████ is likely to reverberate through the internet, placing Donovan's personal and professional endeavors in jeopardy, including his consulting work; his role on the Dean's Advisory Committee of his college; potential involvement in a university sports law program; his ability to secure a publisher for his book; and any other professional endeavors he may decide to pursue.  (*See* Verified Compl. Ex. 1, Donovan Decl. ¶¶ 9-12.)

Wilkinson's dissemination of this Confidential Information is particularly injurious because it is necessarily one-sided.  As ██████████ former attorney, Donovan is bound by attorney-client privilege, as well as ████████████████████ and cannot speak with anyone regarding ██████████ (Verified Compl. ¶ 28.)  Donovan has meritorious responses to ██████████ allegations, including some that relate to personal and private matters ██████████ ██████████ but Donovan cannot (and will not) reveal any such information given his ██████████ both as an attorney and a ████████████████████ Donovan is likewise unable to ████████████████████████ or defend the quality of ██████████.  That is, Donovan is in an impossible position: he cannot sit for an interview with Wilkinson or otherwise present his side of the story without ██████████ ██████████████████████████ (*Id.* ¶ 45.)  Wilkinson's imminent publication of a report containing Confidential Information and an incomplete picture of ██████████

█████ will result in substantial and irreparable harm to Donovan and his professional reputation, absent injunctive relief.

### C. The Balance Of Equities Favors The Imposition Of Injunctive Relief.

The benefit of injunctive relief to Donovan far outweighs any detriment to Wilkinson. Plainly, the potential harm to Donovan is massive in that Wilkinson is poised to further disclose matters relating to ███████████ which will presumptively end up in the public domain. The revelation of this Confidential Information is particularly unjust because Donovan is an innocent bystander in a conflict that has arisen between ████████████ (*See* Verified Compl. Ex. 1, Donovan Decl. ¶¶ 34, 67.) Moreover, Donovan specifically sought to protect this sensitive information through ████████████████████ ██████ An injunction will protect Donovan's personal and business reputation, as well as his contract rights.

Conversely, Wilkinson has no equities on her side. It was Wilkinson's abandonment of her duty ███████████ that resulted in this ██████████ originally hired Wilkinson as its attorney; thereafter, ██████ also retained Wilkinson. (Verified Compl. ¶¶ 17, 23.) ██████ asserts that it did not waive privilege over ██████████ or give Wilkinson permission to disclose ████████████████ to ██████ (*See* Verified Compl. Ex. 2, Chirite Decl. ¶¶ 7-8.) That is, this is a situation of Wilkinson's own making, which likely can only be resolved by ███████████████ ██████ (*See* Verified Compl. Ex. 3-1 at Ex. A, Ethics Opinions.) In short, the equities do not favor allowing Wilkinson to proceed with revealing Confidential Information. *See Audio-Video Grp., LLC v. Green*, 2014 WL 793535, at *6 (E.D. Va. Feb. 26, 2014) (enjoining employee from using employer's confidential information where employee "loses nothing by an injunction prohibiting"

the disclosure of confidential information but without injunction plaintiff may lose business).

**D.  The Public Interest Favors The Imposition Of Injunctive Relief.**

The public has an interest in "protect[ing] the sanctity of contracts" and protecting confidential information. *Moller-Maersk A/S*, 2007 WL 4562827, at \*4; *see also Pearl Ins. Grp., LLC v. Baker*, No. 0:18-CV-02353-JMC, 2018 WL 4103333, at \*5 (D.S.C. Aug. 29, 2018) ("The relief requested by Plaintiff is consistent with the public interests of enforcing valid contracts . . . and protecting confidential" information).  An injunction enforcing the terms of ██████████ ██████ and requiring Wilkinson to return and refrain from using or disclosing any confidential information ████████████████████████████ would uphold these important values.  *See Dynamic Aviation Grp., Inc.*, 2016 WL 1247220, at \*31 ("[T]he public is best served when courts enforce provisions of valid contracts.").

Even more so than other contracts, the public has a particularly strong interest in enforcement of ████████████████.  *See Ross-Simons of Warwick, Inc.*, 66 F. Supp. 2d at 331 (granting permanent injunction to prohibit further violations of settlement agreement and explaining that the "Court is unable to identify any reason why enforcement of the [settlement agreement] might be contrary to the public interest").  The public has an interest in private parties settling their disputes, and maintaining the secrecy and integrity of ████████████ as a means to encourage the out-of-court resolution of disputes.  ████████ prior to trial avoids burdening the court system, and taxpayers, with lengthy and costly litigation, and provides parties with the ability to craft mutually beneficial, and potentially creative, resolutions to their disputes.

Likewise, the public has an interest in encouraging the reporting of workplace disputes and ████████████████.  Employees and employers alike benefit from ████████

18

███████ to protect the privacy of persons involved, to encourage full and frank disclosure, and to allow the parties to agree to terms that best suit and resolve the situation at hand.

Certainly, the public has no interest in promoting any interference in ███████ ███████ particularly when those actions amount to effectively duping ███████ ███████ The public interest is not served by allowing Wilkinson to obtain sensitive, confidential information under false pretenses.  (Verified Compl. ¶ 5.)  Likewise, the public interest is not served by permitting attorneys ███████ and represent ███████ (*See* Verified Compl. Ex. 3-1 at Ex. A, Ethics Opinions.)

Like the other factors, the public interest weighs strongly in favor of Donovan, warranting the issuance of injunctive relief.

## **CONCLUSION**

For the foregoing reasons, Donovan respectively requests a temporary and preliminary injunction that:

i.   Enjoins Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from any disclosure or discussion of ██ ███████ its underlying subject matter, or ███████ ███████ to any third party, including but not limited to ███████ or the media;

ii.  Enjoins Wilkinson and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her

authority, or in coordination with her, from further interference with ██████████

██████ and

iii.  Orders Wilkinson to certify under penalty of perjury on or before a date to be set

by the Court that she has destroyed all paper, digital, and other files and

documents, in whatever format they may exist, containing ████████████

████████████████████████

Dated: November 9, 2020                    Respectfully submitted,

*/s/ Cathy A. Hinger*
Cathy A. Hinger (VSB No. 46293)
Lela M. Ames (VSB No. 75932)
WOMBLE BOND DICKINSON (US) LLP
1200 Nineteenth Street NW, Suite 500
Washington, DC 20036
Tel:     (202) 857-4489
Fax:     (202) 261-0029
E-mail:Cathy.Hinger@wbd-us.com
E-mail:Lela.Ames@wbd-us.com

*Counsel for Plaintiff David Donovan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion will be served in connection with the

service of process of the Verified Complaint filed in this matter.

<u>*/s/ Cathy A. Hinger*</u>
Cathy A. Hinger (VSB No. 46293)
Lela M. Ames (VSB No. 75932)
WOMBLE BOND DICKINSON (US) LLP
1200 Nineteenth Street NW, Suite 500
Washington, DC 20036
Tel:    (202) 857-4489
Fax:    (202) 261-0029
E-mail:Cathy.Hinger@wbd-us.com
E-mail:Lela.Ames@wbd-us.com

*Counsel for Plaintiff David Donovan*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| DAVID P. DONOVAN, | |
| Plaintiff, | |
| v. | No.: _____ |
| BETH A. WILKINSON, | |
| Defendant. | |

**<u>ORDER</u>**

Upon consideration of Plaintiff David P. Donovan's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and any response thereto, it is hereby ORDERED that said Motion shall be GRANTED.  It is further ORDERED that the following temporary and preliminary injunctive relief shall be granted that

     i. Enjoins Defendant and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from any disclosure or discussion of the ███████████████████ its underlying subject matter, or any other information designated as confidential ████████ to any third party, including but not limited to ██████ or the media;

    ii. Enjoins Defendant and all of her agents, employees, partners, other affiliates, and any other persons or entities acting or purporting to act on her behalf, under her authority, or in coordination with her, from further interference with █ ████████████ and

iii. Orders Defendant to certify under penalty of perjury on or before a date to be set by the Court that she has destroyed all paper, digital, and other files and documents, in whatever format they may exist, containing information designated as confidential ████████████████████

It is further ORDERED that all costs of this action be taxed against Defendant and awarded to Plaintiff.

Dated:  November ____, 2020

_____
Judge, United States District Court for the Eastern District of Virginia, Alexandria Division

2