UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| David P. Donovan,<br><br>        Plaintiff,<br><br>v.<br><br>Beth A. Wilkinson,<br><br>        Defendant. | Index No. 20-cv-1344 |

## BETH WILKINSON'S PREHEARING MEMORANDUM

This case is not about David Donovan's reputation. It's about the fact that, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ incident ██████ within days of █ alleged occurrence.

Donovan had nothing to do with ████████. He was not accused of any █ misconduct and was not even ████████ when the alleged events happened. Donovan's sole role

was to later investigate ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ not appear to have at that time ▓▓▓▓▓ ▓▓▓▓▓

▓ investigation ▓▓▓▓▓ and ▓▓▓▓ wants it to stay hidden now. But he has a problem. He

agreed with 

as chronicled in correspondence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ that is attached in full as an Exhibit to this memorandum. So Donovan has brought these

claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ .

Complicated issues underlie this case, and the Court is entitled to a full exposition of evidence. While we summarize the relevant facts here—less than forty-eight hours after receiving Donovan's 212-page filing—Wilkinson and her law firm, Wilkinson Stekloff LLP, are obligated to consult and coordinate with their client, ▓▓▓▓▓▓, before submitting a substantive evidentiary response to Donovan's filing. As such, the ethics rules (and practicality) require that she take more time than two days to prepare a response to Donovan's motion for injunction.

In any event, the timing for Wilkinson Stekloff's presentation of findings to ▓▓▓▓▓▓ obviates the core of Donovan's assertion for emergency relief. Donovan asserts that he will suffer harm when Wilkinson Stekloff presents its findings to ▓▓▓▓▓▓ and ▓▓▓▓▓▓ (he speculates) then makes them public. That is baseless, but also not a claim for imminent harm, because Wilkinson Stekloff is still conducting the investigation and will not be presenting its findings and recommendations ▓▓▓▓▓▓ for at least two weeks. ▓▓▓▓▓▓▓▓▓ already knows about the

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████ that Donovan invokes, so there is nothing to enjoin there, either. Even if that were not so, Donovan cannot interfere with a lawyer's attorney-client relationship based on the meager showing and two days' notice he's provided here.

Moreover, any temporary relief the Court would provide here would be ineffective anyway, because Donovan has omitted a required party to manufacture diversity jurisdiction. ███████ hired Wilkinson Stekloff LLP, not just Beth Wilkinson, and any temporary injunction against Wilkinson personally will not affect her partners, whom she does not control and who have independent ethical obligations to ███████ to move forward at its direction. We expect to seek dismissal on those grounds as well.

The appropriate next step is to set a briefing schedule so that the Court can review the relevant facts in context. We are amenable to filing a response to Donovan's motion for preliminary injunction as soon as next week.

**I.      Discussion of Background Facts**

In early ███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

Before the Washington Post even published its story, the Team told the paper that it had hired Wilkinson Stekloff to "conduct a thorough independent review of this entire matter." *See From Dream Job to Nightmare*, The Washington Post (July 16, 2020), https://www.washingtonpost.com/sports/2020/07/16/redskins-sexual-harassment-larry-michael-alex-santos/. The retention letter the firm signed with █████ ████████████████████████████████████ ████████████████████████████████████ ███████████ ███████████████████ ████████████████████████

On July 16, 2020, the Washington Post published the first of several articles detailing over a decade of allegations of sexual harassment and workplace misconduct at the Team. *See From Dream Job to Nightmare*, supra. The article did not ████████████████ but did recount that many former employees thought ███████████ of the misconduct they alleged.

Two days later, on ██████████████ emailed Wilkinson that ████████ ████████████████████████████████████████ asked Wilkinson to ████████████████████████████████████████, ██████ ████████████████████████████████████████ ████ ████████████████████████████████████████ who provided additional details ███████ Donovan had nothing to do with ████████ ████████████████████████████████████████ ███████████ He also noted that ████████████████████████████. As Donovan has told the Court here, Donovan then ██████████████ ████████████████████████████████████ ████████████████

4

The next day, ███████████████████████████████████ ███████████████████████████████ that we described above in more detail. █████████ Donovan, ██ Chirite told Wilkinson that █████████████████████ ████████████████████████████████████ Had they done that, it would have contravened ███████████████████████████████████████, and would have contradicted ████████████████████████████████████████. And if that had been the case, ██████████████████████████████████████████ On ████████████ two days after █████████████████████████████ ██ ██████████████████████████████████████████████ ████████████████████████████████████████████ as ██████████████ █████████████████ █████████████████████████████████████ s █████████████ ███████████████████████████████████████████ The next day, another Wilkinson Stekloff lawyer, Moira Penza, emailed ████████████████████████ to report ██████ had confirmed █████████████████████████████ █████████████ ██████████████████████████████████████████████ ████████████████████. █████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████ Once again, neither Wilkinson nor ██ ████ would have consented to that limitation ██████ actually attempted to impose it at the time.

On August 26, 2020, the Washington Post ran a second feature article detailing additional allegations of sexual harassment at the Washington Football Team, this time including allegations ████████████████████████████████████████████████████ *See Lewd Cheerleader Videos, Sexist Rules: Ex-Employees Decry Washington's NFL Team Workplace*, The

Washington Post (Aug. 26, 2020), https://www.washingtonpost.com/sports/2020/08/26/redskins-cheerleaders-video-daniel-snyder-washington/. ███ shortly thereafter spoke to ███ ███, who recounted their conversation ███. *See* ███, attached as Exhibit A. ███ ███ ███ and that ███ ███ ███ committed to the ███ ███ thereafter retained Wilkinson Stekloff to complete the investigation.

In late ███ with the documents related to ███ ███ Wilkinson sought to speak to ███ directly. She wrote to ███ lawyer, ███, to convey ███ had given for ███ ███. Wilkinson wrote:

███
███
███
███
███

███
███
███

███
███

███
███ ███ Wilkinson Stekloff could share ███
███

6

In ▮▮▮▮▮, Wilkinson then sought to interview Donovan about his role ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Never, however, did he assert to Wilkinson Stekloff that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Then, two days ago at 1:00pm, Donovan's lawyers emailed Wilkinson to tell her that they had filed a lawsuit against her. They asked to arrange to provide courtesy copies of the filing, though they made clear that, since there was no summons, they were not yet actually serving the papers. We responded to Donovan's lawyers, and at 4:30pm received a hard copy of Donovan's filing at our office, where an office manager scanned the 212-page package and shared it with lawyers working remotely.

In filing Monday, Donovan knew that ▮▮▮▮ was due to provide an interview to Wilkinson Stekloff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that ▮▮▮▮ would do anything to avoid talking about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He also knew, however, that Wilkinson Setkloff was not a party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Donovan incorrectly alleged that ▮▮▮▮▮▮ had not consented to ▮▮▮▮ talking to the internal investigators, and asserted that Wilkinson had "tricked" and "dup[ed]," Mem. For Prelim. Inj. at 7, 19, none other than ▮▮▮▮▮▮—of "not a potted plant" fame—into agreeing to let ▮▮▮▮ sit for an interview. ▮▮▮▮ saw things differently, relating in a letter that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ letter detailing his version of the events is a damning account ▮▮▮▮ efforts to hinder the investigation, and we urge the court to review it in full.

Donovan's allegations here do not make sense. The ▌permits a party to ▌ ▌ ▌on the other, with notice for each ▌ ▌respectively. ▌ The ▌ had told Wilkinson that it would ▌ ▌Wilkinson was therefore an authorized agent of ▌ Wilkinson said nothing to ▌ ▌ ▌.

But despite that plain language, Donovan now alleges that ▌ could only reveal information if there was a ▌ ▌ ▌could not talk to Wilkinson Stekloff ▌ Bizarrely, Donovan further alleged that Wilkinson knew this, ▌ ▌Thus, Donovan claimed that Wilkinson was "intentionally and fraudulently ▌ ▌when she, among other things, suggested ▌ ▌ Compl. at ¶ 52.

None of that is true. But Donovan faced a more fundamental problem with his claim. Donovan's goal was not to limit Wilkinson Stekloff from sharing notes from ▌interview with ▌ He has told the Court that he wanted to stop Wilkinson Stekloff from sharing even ▌ own report and the basic facts ▌ *See* Compl. at ¶ 58. But

8

Donovan himself, along with ▮▮▮▮ had provided Wilkinson Stekloff that information long before Wilkinson had ever talked ▮▮▮▮ So how to connect his claim that Wilkinson caused ▮▮▮▮ onfidential information to his demand that Wilkinson ▮▮▮ the report ▮▮▮▮

Donovan couldn't find a way to make that connection, so he instead submitted hundreds of pages obscuring the issue. Since his apparent goal was to ▮▮▮▮ Donvan made countless references to Wilkinson Stekloff's duties ▮▮▮▮ sensitive nature of the information itself. But only ▮▮▮ has standing to sue over ▮▮▮ ▮▮▮▮ has not brought that lawsuit, ▮▮▮▮

▮▮▮▮ third parties. In the end, Donovan suggests *no* connection between the information that Wilkinson Stekloff learned from ▮▮▮▮ and his allegation that ▮▮▮▮. Even if the inaccuracies in Donovan's complaint were true, they would fail to state a claim for the relief he seeks.

## II. There is No Imminent Emergency Here.

There is more than this to present, and this Court is entitled to admissible evidence to support what we outline here. Wilkinson, for her part, is also entitled to a reasonable time to assemble and present that factual support, and this is particularly so where she has duties to her client, ▮▮▮ to consider in preparing that response.

There is no imminent emergency that suggests otherwise. ▮▮▮▮ ▮▮▮▮, and Donovan cannot interfere with a lawyer's communication with her

client without a much stronger showing than he has made here. Moreover, Donovan alleges that his reputational harm flows through ▇▇▇▇ disclosure of whatever report Wilkinson Stekloff may present it here. But Wilkinson Stekloff is still investigating, and any presentation of findings and recommendations is still weeks away. And ▇▇▇▇ has yet to decide whether to release any such findings and recommendations to the public. There is plenty of time to properly present the facts and the law to the Court and to resolve this dispute appropriately over the coming weeks.

### III. Any Temporary Relief Would be Ineffective, Because Donovan Has Failed to Join a Required Party.

Finally, Donovan (a Virginia resident) has sued Wilkinson (a District of Columbia resident) as if it is Wilkinson alone who represents ▇▇▇L here. But ▇▇▇▇ did not retain Wilkinson— it retained the law firm Wilkinson Stekloff (then called Wilkinson Walsh). Any temporary relief (or permanent relief, for that matter) against Wilkinson personally will have no effect on her partners, whom Wilkinson does not control and who owe independent ethical duties to the firm's client, ▇▇▇▇. Why did Donovan not sue the law firm? Because the firm has at least one equity partner who is a Virginia resident, and since LLPs have the citizenship of all partners, Donovan would have no diversity jurisdiction. In short, the firm is a required party, and Donovan omitted it here to manufacture diversity jurisdiction. We plan to move to dismiss on that ground as well, and raise the issue here only to point out that it is a further reason to set an orderly briefing schedule to put all of the relevant issues before the Court.

### IV. Conclusion

Donovan has brought a lawsuit based on false allegations and a facially meritless legal theory. More importantly, he has done so to ▇▇▇▇▇▇▇▇▇▇▇ very serious ▇▇▇▇▇▇ that he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ There is no immediate harm to Donovan at risk

here, and not even a jurisdictional basis for effective relief. The Court should set a briefing schedule and hear the relevant facts and law in detail.

Dated: November 11, 2020
Washington, DC

                                      Respectfully Submitted,

                                      Beth Wilkinson

                                      By: /s/ Thomas G. Connolly
                                      Thomas G. Connolly (VA Bar No. 29164)
                                      Thomas B. Mason (*pro hac vice forthcoming*)
                                      Jared Paul Marx (VA Bar No. 91213)
                                      HARRIS, WILTSHIRE & GRANNIS, LLP
                                      1919 M Street NW, 8th Floor
                                      Telephone: (202) 730-1300
                                      Fax: (202) 730-1301
                                      tconnolly@hwglaw.com
                                      tmason@hwglaw.com
                                      jmarx@hwglaw.com

                                      *Counsel for Defendant*

# Exhibit A

# Exhibit B

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused the foregoing to be served by email on the following:

> Cathy A. Hinger
> Lela M. Ames
> WOMBLE BOND DICKINSON LLP
> 1200 Nineteenth Street, NW, Suite 500
> Washington, D.C. 20036

Dated: November 11, 2020                    */s/ Thomas G. Connolly*
                                            Thomas G. Connolly