UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **DAVID P. DONOVAN,** *Plaintiff,* v. **BETH A. WILKINSON,** *Defendant.* | Civil Action No. 1:20-cv-1344 |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff David P. Donovan ("Plaintiff" or "Donovan"), pursuant to Local Rule 7(F)(1), hereby replies to Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction ("Opposition"). Plaintiff commenced this action to enjoin Defendant Beth A. Wilkinson ("Defendant" or "Wilkinson") from disseminating confidential information she acquired that is the subject of ▮▮▮▮▮.

New information contained in the Opposition, and its declarations, confirm beyond question that attorney Beth Wilkinson acquired confidential information based upon a knowingly false representation she made ▮▮▮▮ that Pro-Football, Inc. ("PFI") ▮▮▮▮ had authorized her to represent that PFI ▮▮▮▮ had waived their confidentiality rights ▮▮▮▮. Wilkinson's Opposition not only establishes that her actions were tortious, but that she immediately disseminated the tortiously obtained information to ▮▮▮▮, in further violation of ▮▮▮▮ ▮▮▮▮, to say nothing of her ethical obligations to her client ▮▮▮▮ Notwithstanding that Plaintiff is unable to provide material information known to him concerning this matter due to Defendant's failure to seek and obtain ▮▮▮▮

███████████████  ████████████████  Defendant's Opposition makes clear that it is her intent to criticize Plaintiff's investigation ███████████ ██████████████████.

In light, however, of the uncontested facts Defendant has presented about the extent to which the information she improperly obtained has already been disseminated █████, Plaintiff has reluctantly concluded that the injunctive relief he sought is no longer of practical value. Although he sets forth herein his response to Defendant's principal arguments in her Opposition so that the record can be clear, Plaintiff is filing herewith, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), a Notice of Voluntary Dismissal of this action, without prejudice to the filing of a future action, if appropriate, for money damages.

I. **Defendant's Contention That She Authored A Valid** ████████ ███████ **Is Baseless.**

Wilkinson's contention that she, or her law partners, could be the authors of an effective ████████████████████ is baseless. (Opp'n. at 13.) Defendant asserts that one of her first tasks was to "confirm with [PFI] that [her] firm had authority to tell former employees that the Team was releasing them from their confidentiality obligations for purposes of talking to [her] firm." (Opp'n. at 8.) Conveniently, rather than obtaining any written memorialization of that authority, Wilkinson claims that she had a conversation ███████████████████ ████ ███████████████ █████ would generically waive ██████████ ██████ ████████████ (*Id.*) Wilkinson claims ███████████████ ██████████████████████████████ (*Id.*) It is highly implausible ████████ such a representation because ████████████████████ ████ instruction ████████████████████████████████████. In fact, there is no indication that Wilkinson █████████████████████ ████████ Nor does Wilkinson indicate she had any discussion with ████████

2

how such a ████████ would suffice to ████████ ████████ Obviously, this purported generic ████████ ████████, without regard to the individual requirements of each such agreement, was fraught with risk that it would not be compliant ████████ ██ and ██████

In fact, in a subsequent email exchange with Defendant's law partner, Moira Penza ("Penza"), ████████████████████████████████ ████████████████████████████████████████ but stated that █ ██████ to consider ████████████████████████████████ ████████ to discuss ████████. (Opp'n. at Ex. W-18-A.) In reply, Penza said █ ████████████████████████████ discuss ████████ (*Id*.) Nothing in the declarations, or documents, Defendant has submitted indicates that Wilkinson, or Penza, ██ followed up ████████████████████████████████ ████████ in addition to ████████████████. All indications from the record presented by Defendant is that Wilkinson and Penza simply ignored ████████ ████████ further discussion ████████████████.

Although Wilkinson admits she spoke to Chirite the next day, and denies his testimony in his sworn declaration that █ instructed ████████████████████████ ████, she does not say what they *did* talk about twice that day. As for her argument t████ ████████████ ████████ talk to ████████, that was before the ████████ when Wilkinson's client, ████████ instructed ████████████ ████████████████████ (Opp'n. at 9.)

Next, Wilkinson contends that, to the extent ████████████████ ████████ she authored such a writing herself when she was counsel ████

3

Bizarrely, Defendant claims her ▮▮▮▮▮▮▮ email to ▮▮▮ lawyer, in which she misrepresented that she ▮▮▮▮▮▮▮▮ to inform ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ speaking with ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (Opp'n. at 13; *see also* Wilkinson Decl. at Ex. W-10.)  But, Wilkinson repeatedly asserts that she never ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Plaintiff certainly never retained Wilkinson or gave her authority to waive anything on his behalf.  And, now we know that, weeks before Wilkinson's ▮▮▮▮▮▮▮ email, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ expressly stated ▮▮▮▮▮▮▮▮▮▮ with ▮▮▮ counsel on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that neither ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF 55-4, Sullivan Decl. ¶ 6.)  Wilkinson's submissions demonstrate that these calls occurred a full month *after* the supposed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and after Rawson's email ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Clearly, Wilkinson has no plausible argument that she had authority as counsel ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and all the evidence she has submitted points to the unmistakable conclusion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Moreover, the record is now clear from the Defendant's declarations that *before* her law partners interviewed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮ counsel attests in his Declaration that he *told* Wilkinson's partners when they met on ▮▮▮▮▮▮ that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ told ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and they had warned him that ▮▮ would be in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*, ¶¶ 6, 9.)  Thus, despite knowledge that ▮▮▮▮▮ Defendant's client, ▮▮▮▮▮▮, had called ▮▮▮ lawyer

4

three times to inform him they had not ███████████ Wilkinson's partners proceeded with ███████████ anyway. (*Id.*, ¶ 6.)

Wilkinson's argument, therefore, is that she authorized *herself* to override ███████████ explicit instructions in August and September, based on a prior ███████████ she perceived ███████████ and during which the ███████ was not specifically discussed. (Opp'n. at 13.) This purported prior ███████ was also contrary to ███████ subsequent statement that ███████████ addressed. (Opp'n. at Ex. W-18-A.)

In fact, Wilkinson had no basis ███████████████████████████████. Certainly, once ███████ advised Defendant's partners on ███████ that counsel for ███████████████████████████, Wilkinson must have known ███████ participation in an interview would be in direct violation of her obligations ███████ and that ███████████. Wilkinson's representation to ███ that she had authority as counsel ███████ to override ███ ███ client, ███ instructions, and to further make a representation based upon a purported oral communication by ███ (who Wilkinson contends was ███ her client) ███████████ discussed, is inexplicable and is firm evidence of her tortious intent.

**II.    The Opposition Confirms Defendant's Tortious Intent.**

The reasonableness of the reliance by ███ and her counsel on Wilkinson's representations is not an issue for this litigation. Nor is Wilkinson's claim that the relief Plaintiff has requested would disrupt her client relationship with ███████ a hardship that should sway the Court. (Opp'n. at 26.) The disruption of Wilkinson's client relationship, if any, stems from her choice, ███████████████████ that she tortiously secured, and which resulted in ███████████████████████████████ client, ███████

5

███ new client, ██████. Proving *why* Wilkinson misrepresented ████████████ counsel is not Plaintiff's burden, only that she, in fact, did so in violation of the rights of ████████████████████████████████████████.

Nevertheless, Defendant argues Plaintiff has failed to present a motive for her tortious conduct. (Opp'n. at 19.) That would be a topic for discovery in a deposition. Perhaps Wilkinson acted precipitously because ████████████████████████████████████████ counsel for ████████████████████ conflict between the position she was taking ████████ her client ████████████████████████████████████, according to ████████████, to conduct an investigation ████████████████████████████ Perhaps Wilkinson feared that if she ██████ secure ████████ ██████████████████████████████████████, she would – as she has asserted repeatedly throughout this matter so far – ████████████████████ ██████████████████████████████████ Perhaps Wilkinson was so desirous of this high-profile engagement ████████ that she was prepared to ignore the facts, ██████████████████████████ in order to be able to complete her report ██ ████ without any further delay.

Whatever Wilkinson's motivations, however, these facts plainly raise substantial questions about the objectivity, thoroughness, fairness, and even competence ████████████████. Wilkinson went to great lengths to secure an interview with ██ in order to unearth ████████ of ████████████████████████████████████████████████████ which Wilkinson immediately shared with the League. And, she did so knowing that Donovan remains subject to binding confidentiality obligations owed to ████████████████████████ ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

### III. The Opposition Confirms Defendant Intends To Disparage Plaintiff's Investigation Because He Would Not Submit to Her Demands For An Interview.

Defendant's accusation that Plaintiff is refusing to defend ████████████████ ████████████████████████████. (Opp'n. at Ex. W14.) Wilkinson has expressly threatened to report to ████████ that Plaintiff is interfering with her investigation by not submitting to an interview. (*Id*.) Yet, she also has filed multiple letters from Plaintiff's counsel asserting that Donovan would cooperate if ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ At the same time, Wilkinson admits that she has never even *asked* ████████████████████████ release ████████ that would ████████████████████████████████ these matters. ████████ counsel's ████████████ ████████████████████████████████████████████████████████████ ████████, which is all but an open threat that ████████████████████████ should he disclose any information ████████████████████████████████████████████████ ████████████████████ (Sullivan Decl. ¶ 14.)

Thus, while Wilkinson went so far as to misrepresent her authority to release ████████ ████████████████████ to secure ████████████████████, she appears to have done literally nothing to secure ████████████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████ to secure ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ duties he owes ████████ ████████, despite Donovan repeatedly proposing ████████████████████████. (Opp'n.

7

at Ex. W-13, W-15.) It would be patently untrue to cast Donovan as uncooperative in an impending report ▓▓▓▓▓▓, or to otherwise disparage his investigation, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

### IV. Defendant's Dissemination Of The Confidential Information Appears Already To Have Occurred.

As shown, the evidence revealed by the Opposition substantially strengthens Plaintiff's likelihood of success on the merits of his tortious interference claim. Unfortunately, however, other facts revealed to Plaintiff for the first time by the Opposition show that disclosure of the tortiously acquired information ▓▓▓▓▓▓ – which was the principal relief he was seeking by the requested injunction – has already occurred. Thus, even an injunction prohibiting further disclosures or discussion about the matter in Wilkinson's report, if any, would likely be pointless, for the facts and information now known ▓▓▓▓▓▓, and what it does with that information, is already out of Defendant's hands.

As a consequence, and notwithstanding the new evidence Plaintiff believes conclusively establishes that Defendant tortiously interfered with the parties' rights and obligations ▓▓▓▓▓▓ ▓▓▓▓▓▓, Plaintiff no longer believes burdening the Court with consideration of a request for injunctive relief is a wise use of judicial resources, given that the cat is already out of the proverbial bag, and there is little more this Court can do to unring that bell under the facts now before it. Absent a present need for injunctive relief, Plaintiff also believes that pursuing a claim for money damages would be more appropriate after Defendant determines whether she will author a written report that disparages Plaintiff, and until ▓▓▓▓▓▓ makes a determination about further dissemination of this information and the report, if any, it receives from Defendant. Therefore, Plaintiff is simultaneously filing herewith a voluntary dismissal of this action, ***without prejudice***

8

under Fed. R. Civ. P. 41(a)(1)(A)(i).[1]  Nevertheless, Plaintiff reserves his rights to refile an action seeking damages for reputational harm against Defendant and any other person or entity that ███████████████, tortiously interfered ████████ false and defamatory statements about Plaintiff's conduct of the investigation ████████.

    Respectfully submitted, this the 23rd day of November, 2020,

                                                                /s/ *Cathy A. Hinger*
Cathy A. Hinger (VSB No. 46293)
Lela M. Ames (VSB No. 75932)
Claire J. Rauscher (Admitted Pro Hac Vice)
Ana L. Jara (Admitted Pro Hac Vice)
WOMBLE BOND DICKINSON (US) LLP
1200 Nineteenth Street, N.W.
Suite 500
Washington, DC  20036
Telephone:  202-857-4489
Facsimile:  202-261-0029
Email:  cathy.hinger@wbd-us.com
Email:  lela.ames@wbd-us.com
Email:  claire.rauscher@wbd-us.com
Email:  ana.jara@wbd-us.com
*Counsel for Plaintiff*

---

[1] Notwithstanding the foregoing, Plaintiff repeats what his counsel advised Defendant multiple times: If counsel for ████████ obtains, and provides, satisfactory ████████████ regarding attorney-client privilege and █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, he remains willing to be interviewed with respect to any matter under ████ review.

## **CERTIFICATE OF SERVICE**

I hereby certify this 23rd day of November, 2020, that I caused a true copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, and that I provided email copies of the foregoing to all counsel of record.

                                               */s/ Cathy A. Hinger*
                                               Cathy A. Hinger, Esq.