IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DAVID P. DONOVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20cv1344 (AJT/IDD) |
| | ) | |
| BETH A. WILKINSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF INTERVENOR'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDERS ON SEALING**

John L. Brownlee (VSB No. 37358)
Stuart G. Nash (*pro hac vice*)
Robert J. Farlow (VSB No. 87507)
David L. Haller (*pro hac vice*)
Holland & Knight LLP
800 17th Street N.W.
Washington, D.C. 20006
Phone: 202.261.3300
Facsimile: 202.261.3333
john.brownlee@hklaw.com
stuart.nash@hklaw.com
robert.farlow@hklaw.com
david.haller@hklaw.com

*Counsel for Intervenor*
*Pro-Football, Inc.*

# TABLE OF CONTENTS

**I. INTRODUCTION ........................................................................................ 1**

**II. BACKGROUND ........................................................................................ 3**

**III. LEGAL STANDARD ........................................................................................ 7**

**IV. ARGUMENT ........................................................................................ 8**

A. General Sealing Standard ........................................................................ 9

B. Privileged Communications Between the Team and Defendant ........................ 10

C. Defendant's Work Product and Mental Impressions ........................................ 14

D. Matter Subject to ████ Involving Third Parties and ████ Concerning the Same ........................ 16

E. Scandalous and Immaterial Allegations About Non-Parties ................................ 19

**V. CONCLUSION ........................................................................................ 23**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Object Innovation, Inc.*,
2011 WL 7042224 (E.D. Va. Dec. 5, 2011) ....................10

*Armitage v. Biogen Inc.*,
2019 WL 1789909 (M.D.N.C. Apr. 24, 2019) ....................14

*Armstrong v. Kennedy Krieger Inst., Inc.*,
2012 WL 1554643 (D. Md. Apr. 30, 2012) ....................11

*Ashcraft v. Conoco. Inc.*,
218 F.3d 288 (4th Cir. 2000) ....................10

*Asher & Simons, P.A. v. J2 Global Canada, Inc.*,
965 F. Supp. 2d 701 (D. Md. 2013) ....................21

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Res. Org.*,
2020 WL 973751 (E.D. Va. Feb. 7, 2020) ....................10

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*,
2019 WL 8108115 (E.D. Va. Aug. 15, 2019) ....................9, 10

*Better Gov't Bureau v. McGraw*,
106 F.3d 582 (4th Cir. 1997) ....................12, 14

*Bost v. Wexford Health Sources, Inc.*,
2018 WL 9923980 (D. Md. Feb. 6, 2018) ....................14

*Carrigan v. Cal. State Legis.*,
263 F.2d 560 (9th Cir. 1959) ....................20

*Caruthers v. Thau*,
2013 WL 6048799 (E.D. Va. Nov. 14, 2013) ....................12

*In re Copley Press, Inc.*,
518 F.3d 1022 (9th Cir. 2008) ....................15, 16

*CSC Recovery Corp. v. Daido Steel Co.*,
1997 WL 661122 (S.D.N.Y. Oct. 22, 1997) ....................13

*Dorsey v. TGT Consulting, LLC*,
888 F. Supp. 2d 670 (D. Md. 2012) ....................17

*EEOC v. MVM, Inc.*,
2018 WL 1882715 (D. Md. Apr. 18, 2018) ........................................20

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ........................................9

*Fether v. Frederick Cnty.*,
2014 WL 1123386 (D. Md. Mar. 19, 2014) ........................................15

*In re Grand Jury Proceedings #5*,
401 F.3d 247 (4th Cir. 2005) ........................................11

*In re Grand Jury Subpoena*,
341 F.3d 331 (4th Cir. 2003) ........................................11, 12

*In re Grand Jury Subpoena*,
870 F.3d 312 (4th Cir. 2017) ........................................14

*Hawkins v. Stables*,
148 F.3d 379 (4th Cir. 1998) ........................................11

*Hickman v. Taylor*,
329 U.S. 495 (1947) ........................................14

*In re application of the United States.*,
707 F.3d 283, 289 (4th Cir. 2013) ........................................8

*Jones v. City of Danville*,
2020 WL 6063063 (W.D. Va. Oct. 14, 2020) ........................................20

*Jones v. Metro. Life Ins. Co.*,
2010 WL 4055928 (N.D. Cal. Oct. 15, 2010) ........................................20

*Kelly v. FedEx Ground Package Sys., Inc.*,
2011 WL 1584764 (S.D.W. Va. Apr. 26, 2011) ........................................20

*In re Knight Pub. Co.*,
743 F.2d 231 (4th Cir. 1984) ........................................2, 4, 10

*Level 3 Comm's LLC v. Limelight Networks. Inc.*,
611 F. Supp. 2d 572 (E.D. Va. 2009) ........................................17

*Lifenet Health v. Lifecell Corp.*,
2015 WL 12517430 (E.D. Va. Feb. 12, 2015) ........................................17, 18, 23

*Malon v. Franklin Fin. Corp.*,
2014 WL 12768782 (E.D. Va. Dec. 4, 2014) ........................................16

*Moussouris v. Microsoft Corp.*,
2018 WL 1159251, at *6 (W.D. Wash. Feb. 16, 2018), *rpt. & rec. adopted*, 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018) ....................17

*In re NC Swine Farm Nuisance Litig.*,
2017 WL 5178038 (E.D.N.C. Nov. 8, 2017) ....................9

*Matter of New York Times Co.*,
828 F.2d 110 (2d Cir. 1987) ....................17

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ....................19, 21

*Pittston Co. v. United States*,
368 F.3d 385 (4th Cir. 2004) ....................17, 23

*In re Policy Mgmt. Sys. Corp.*,
1995 WL 541623 (4th Cir. Sept. 13, 1995) ....................9

*Powers v. Braun*,
2013 WL 6623193 (D. Md. Dec. 16, 2013) ....................11

*Press-Enter. Co. v. Superior Court of Cal.*,
464 U.S. 501 (1984) ....................10

*Publicker Indus., Inc. v. Cohen*,
733 F.2d 1059 (3d Cir. 1984) ....................11

*Regscan, Inc. v. The Bureau of Nat'l Affairs, Inc.*,
2012 WL 12903672 (E.D. Va. May 22, 2012) ....................19

*Rushford v. New Yorker Magazine, Inc.*,
846 F.2d 249 (4th Cir. 1988) ....................10

*Saunders v. Champ Sports, Inc.*,
2008 WL 5142393 (S.D. W. Va. Dec. 8, 2008) ....................19

*In re Search Warrant Issued June 13, 2019*,
942 F.3d 159 (4th Cir. 2019) ....................10, 11, 14, 16

*Siedle v. Putnam Invs.*,
147 F.3d 7 (1st Cir. 1998) ....................11

*Matter of the Appl. & Aff. for a Search Warrant*,
923 F.2d 324 (4th Cir. 1991) ....................8

*United States v. Jones*,
696 F.2d 1069 (4th Cir.1982) ....................23

*United States v. Lentz*,
419 F.Supp.2d 820 (E.D. Va. 2005) ....................................................................................11

*United States v. Rodriguez-Silva*,
2019 WL 1937144 (M.D.N.C. Apr. 8, 2019) ......................................................................20

*United States v. Rodriquez-Silva*,
2019 WL 1934036, at *1 (M.D.N.C. May 1, 2019) ...........................................................20

*Upjohn Co. v. United States*,
449 U.S. 383 (1981)..............................................................................................................14

*Va. Dep't of State Police v. Wash. Post*,
386 F.3d 567 (4th Cir. 2004) ...............................................................................................10

*In re Williams*,
2017 WL 6278764 (Bankr. W.D. Va. Dec. 8, 2017) ...........................................................17

*X Corp. v. Doe*,
805 F. Supp. 1298 (E.D. Va. 1992) .....................................................................................14

**Statutes**

28 U.S.C. § 636(b)(3) ...........................................................................................................1, 8

Va. Rule of Prof. Conduct 1.6(b)(2) ...........................................................................12, 15

**Other Authorities**

Paul R. Rice, Attorney-Client Privilege in the United States § 5:14 (2020) ................................13

Intervenor Pro-Football, Inc., d/b/a the Washington Football Team (the "Team" or "Intervenor"), pursuant to 28 U.S.C. § 636(b)(3) and the Court's inherent power to control access to judicial documents, hereby respectfully objects to the Magistrate Judge's Order of April 6, 2021 (Dkt. 173) (the "Order") denying the Team's request to seal certain terms and phrases within seven documents — previously filed under seal in this litigation — before they are placed on the public docket. A list of the redactions at issue, along with a brief explanation of the legal and factual basis for each, is attached hereto as Appendix A.

## I. INTRODUCTION

This lawsuit began as an effort by one former lawyer for the Team (David Donovan) to enjoin another lawyer for the Team (Beth Wilkinson) from publicly divulging information that would be detrimental to David Donovan, and to other nonparties, including the Team [REDACTED] [REDACTED].

Ironically, however, unless this Court intervenes, the lawsuit, which would have *protected* the Team (along with Donovan) from the improper disclosure of such information will itself be the vehicle by which confidential information pertaining to the Team [REDACTED] [REDACTED] enters the public domain. Despite the Magistrate Judge's diligent efforts that resulted in redaction of significant portions of the filings in this case, certain information left unredacted by the Magistrate Judge would allow outside observers to:

- identify the nature and content of [REDACTED] [REDACTED] [REDACTED] that was the subject of the lawsuit;
- have access to information that is protected by the attorney-client privilege; and
- have access to protected attorney work product in the form of mental impressions Defendant formed while performing her investigation, as an attorney for the Team.

Piling irony on top of irony, although it is the Team that will be harmed by the public disclosure of this information, the Team was not a party to this litigation until after the lawsuit was dismissed. It was only after the dismissal, when the matter was subject to potential unsealing, that the Team intervened to protect itself from this backdoor disclosure of its confidential information. By that time, perhaps secure in the understanding that certain of the filings were being made under seal, *both* of the Team's lawyers (that is, Plaintiff and Defendant here) had introduced extensive amounts of the Team's privileged [redacted] into the record. The Team has never waived its privilege with respect to the public disclosure of any of this information and, as a latecomer to this litigation, has faced the unenviable task of attempting, with the aid of the Magistrate Judge, to turn back the clock, and preserve its rights of privilege and confidentiality.

The Team is aware that the courts have long recognized a right of the public to be kept apprised of the nature and content of court proceedings generally. However, courts, including the Fourth Circuit, have been quick to recognize that "[t]his right of access to court records is not absolute . . . and may [be] . . . outweighed by competing interests." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Surely, it cannot be the law that a case brought to enjoin the dissemination of confidential information must be unsealed to the public in a manner that divulges the nature of that very information the lawsuit seeks to protect. Such an application of the law would, in effect, deprive a potentially aggrieved party of *ever* being able to go to court to protect itself from improper disclosure of information. And the unfairness of such a result is only magnified when the party who would be harmed by the unsealing, was not even a party to the litigation in the first place.

Despite the inherent unfairness of this situation, the Team acknowledges that, under applicable law, it is not entitled to a blanket sealing of this entire matter. The Team respectfully

submits that, notwithstanding the diligent work of the Magistrate Judge, there remain 11 instances where redaction is necessary, either because the information is, on its face, privileged or subject to the Team's [REDACTED] [REDACTED], or because the information will fuel reasonable inferences about the contents of information the Magistrate Judge has properly redacted. Significantly, all of the proposed redactions that are subject to these objections are redactions that Defendant — who has been the party most motivated to get this information before the public — has agreed to during the course of this litigation.

The Team respectfully requests the Court: (1) grant the Team's request for redaction of these 11 passages; and (2) to articulate plainly the principle that information from which the content of redacted material may be inferred must also be redacted.

## II. BACKGROUND

This case arose out of a dispute between two lawyers regarding their legal work on behalf of the Team. Thus, the very nature of the dispute calls for discussion of privileged and confidential information.

In July 2020, the Team retained Beth Wilkinson ("Defendant") and her law firm of Wilkinson Stekloff (then known as Wilkinson Walsh) to conduct a privileged and confidential internal investigation (the "Investigation"). *See* (Dkt. 94-9). On November 9, 2020, the Team's former general counsel brought this suit "to enjoin [the] Defendant from disseminating information that is the subject of [REDACTED] and other related confidential information." (Dkt. 24 at 1). Defendant obtained this information from the Team's representatives in the course of providing legal services to the Team.

Although the Team was generally supportive of the result Mr. Donovan attempted to achieve — preventing the public disclosure of material subject to [REDACTED]

[redacted] — the Team did not join the lawsuit and never authorized Mr. Donovan or the Defendant to disclose any privileged information in connection with this litigation. Indeed, the Team repeatedly affirmed to Mr. Donovan and Defendant that it considers all communications the Team or its attorneys or representatives have had with Defendant and her firm to be protected by the attorney-client privilege; and that all work product generated by Defendant and her firm are similarly protected from disclosure by the attorney work product doctrine.

Plaintiff and Defendant filed numerous motions, briefs, and exhibits that contained or referenced privileged and confidential information, including, *inter alia*: (1) privileged communications between the Team and Defendant; (2) Defendant's attorney work product; (3) communications protected by the common interest privilege; (4) [redacted]; and (5) material relating to [redacted]. Some filings in this litigation also contained immaterial and needlessly scandalous statements about the Team and other non-parties.

Given the confidential nature of this material, when Plaintiff first filed this lawsuit, he sought to seal the case in its entirety. *See* (Dkt. 32 at 1). On November 17, 2020, the Court denied Plaintiff's motion but found that "there may be subject matter, facts, allegations or references that would justify redactions from the public." (Dkt. 32 at 4). As a result, the Court directed the Parties "to present expeditiously any such issues to Magistrate Judge Davis." *Id.* After further briefing and hearings, on November 25, 2020 the Magistrate Judge entered an Order (the "Sealing Order") requiring that certain information be redacted from "all filings by either party." (Dkt. 68 at 1). This material includes "information protected by attorney-client privilege" and:

> the phrases [redacted] references to [redacted]; references to [redacted] [a]ll discussions or references concerning

particularities of [REDACTED] [REDACTED].

(*Id.* at 1-2). The Sealing Order also directs the Parties to "revise the documents" and "incorporate the redactions" subject to the Sealing Order. (*Id.* at 3).

On December 9, 2020, the Team moved to intervene with consent of all parties, in order to assert its right — [REDACTED] — to seal confidential and/or privileged information from the public record. *See* (Dkt. 79). The Court granted the Team's motion that same day. *See* (Dkt. 84). On December 17, 2020, the Team filed a Motion to Seal, Strike, and Reconsider in Part the Sealing Order. *See* (Dkt. 94). Together with that motion, the Team filed proposed redactions of the documents under seal. *See* (Dkt. 95). Neither Plaintiff nor Defendant objected to the Team's motion or proposed redactions. *See* (Dkt. 136, 137)

On January 8, 2021, the Magistrate Judge held a closed hearing (via Zoom) on the Team's Motion to Seal, Strike or Reconsider. The Magistrate Judge declined to accept the Team's proposed redactions in their entirety, despite the fact that none of parties had registered any objection to them. Instead, the Magistrate Judge articulated a more restrictive set of instructions as to what could not be sealed. *See* (Dkt. 145). By Order dated January 11, 2021, the Magistrate Judge granted in part and denied in part the Team's motion. *See* (Dkt. 147). The order directed the parties—*i.e.*, Plaintiff, Defendant, and the Team—to confer and submit a new set of proposed redactions to the sealed documents based on the Court's guidance from the January 8th hearing and the Sealing Order. *Id.* The parties subsequently conferred and submitted new proposed redactions for the Magistrate Judge's review. *See* (Dkts. 154, 154-1). The Magistrate Judge provided additional feedback, and Plaintiff, Defendant, and the Team revised these redactions yet again (each document at least once) in February 2021. Each round generally contained fewer proposed redactions than the last, sometimes dramatically so.

On March 10, 2021, by e-mail, the Magistrate Judge provided still more feedback on the proposed redactions and directed the parties to update the documents accordingly by March 17, 2021. On March 16, 2021, the Magistrate Judge issued an Order requiring the parties to follow the Clerk's procedures and upload directly to the Docket "properly redacted versions" of several documents "pursuant to" the Court's rulings of November 17, 2020 (Dkt. 32), November 25, 2020 (Dkt. 68), and January 11, 2021 (Dkt. 147). *See* (Dkt. 165 at 2).

The parties worked through the sealed documents at issue to implement the instructions contained in the Court's March 10 email and March 16 Order. However, the Team and Plaintiff noted some inconsistencies between those instructions, on the one hand, and the Magistrate Judge's prior rulings and controlling law, on the other. After the Team informed the Magistrate Judge of these inconsistencies, he instructed the parties to submit memoranda providing examples of the inconsistencies and an explanation for why the identified material should remain redacted.

As instructed, the Team submitted its memorandum directly to the Magistrate Judge's Chambers on March 24, 2021, highlighting 11 sample redactions for the Magistrate Judge's reconsideration and providing legal and factual reasons in support.[1] On March 31, 2021, Defendant submitted her memorandum in response, which opposed the Team's examples in part.[2] Defendant's memorandum did not ask the Magistrate Judge to reconsider any of the other redactions that he previously ruled upon. Defendant's memorandum argued, for the first time, against some of the legal positions the Team had consistently maintained for months. For example, [redacted]

[1] The Team's memorandum was later filed under seal on the docket. *See* (Dkt. 169-1).

[2] Defendant's memorandum was later filed under seal on the docket. *See* (Dkt. 172).

[redacted]

More specifically, Defendant argued that confidential and privileged information about the Team should not be redacted if the Magistrate Judge was unwilling to redact potentially damaging information about her, stating: "whatever principles the Court applies to redactions must apply equally to statements about her and others." (Dkt. 172 at 2). Defendant further asserted that "[i]f the Court is willing to redact the Team's attacks on Ms. Wilkinson in the Jan. 8 hearing and the Team's motion to seal and strike, then she would not oppose redacting [one of her own statements]." (*Id.* at 2). However, if the Magistrate Judge was unwilling to apply redactions to Defendant's liking, then redactable passages the Team identified "should be unredacted consistent with the unredaction of the Team's accusation against her." (*Id.*). Defendant cited no authority for the proposition that the Magistrate Judge's sealing decisions should be premised on an effort to seek some kind of "parity" in the resulting public perception of the parties.

On April 5, 2021, the Magistrate Judge directed the parties to file their memoranda on the docket and informed them that he would treat the Team's memorandum as a motion for reconsideration and Defendant's memorandum as an opposition brief. The Team filed its memorandum on the docket under seal that same day (Dkt. 169), and Defendant filed her memorandum under seal on April 6, 2021 (Dkt. 172). On April 6, 2021, the Magistrate Judge issued an Order granting one of the disputed redactions in full and two additional redactions in part. *See* (Dkt. 173 at 1). The other proposed redactions were denied. *See* (*Id.* at 2).

## III. LEGAL STANDARD

The Magistrate Judge's sealing decisions are subject to *de novo* review. A magistrate judge's "power to control access to judicial documents or docket sheets," including the "power to

seal or unseal a document derives from the district court's power to take such actions." *In re application of the United States*, 707 F.3d 283, 289 (4th Cir. 2013) (quoting *Matter of the Appl. & Aff. for a Search Warrant*, 923 F.2d 324, 326 n.2 (4th Cir. 1991). As such, a magistrate judge's decision concerning sealing and unsealing documents "falls under the 'additional duties' prong of the Federal Magistrates Act, 28 U.S.C. § 636(b)(3), and decisions under this prong are accorded *de novo* review by the district court." *Id.*

## IV. ARGUMENT

It is well-settled that some degree of redaction is necessary in this case. This Court has noted that: "[u]pon review of the Complaint and the pleadings . . . it does appear that there may be subject matter, facts, allegations, or references that would justify redactions from the public record." (Dkt. 32 at 4). The Magistrate Judge's Sealing Order ruled even more concretely that certain material — including all references to and details regarding the material subject to the Contractual Confidentiality Obligations and all "information protected by attorney-client privilege" —should be redacted from the parties' filings. (Dkt. 68 at 1-2). His subsequent orders and guidance provided further direction that certain phrases, sentences, and topics should be redacted.

None of the parties challenge the vast majority of the Magistrate Judge's final decisions as to which material should remain sealed.

The only question, therefore, is whether the few terms and phrases the Team objects to unsealing reveal the kinds of confidential and privileged information the Magistrate Judge already has correctly ordered should remain sealed. They do. The disputed redactions generally fall into four categories: (1) the substance of conversations between the Team—or its agents—and Defendant in her capacity as the Team's lawyer; (2) attorney work product in the form of mental impressions Defendant formed while performing her Investigation; (3) [redacted]

[redacted]; and (4) immaterial and needlessly scandalous allegations against the Team and other nonparties. As explained below, the privacy interests in favor of keeping this material sealed override the presumption of public access—to the extent one exists—and meet the applicable standard of sealing. *See BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*, 2019 WL 8108115 at *1-3 (E.D. Va. Aug. 15, 2019).

**A. General Sealing Standard**

The public has no right of access to most of the filings at issue because they were filed under seal and never used in support of a dispositive motion. The Fourth Circuit has specifically held that documents that "do not play any role in the adjudicative process" are "more akin to discovery materials" and do not trigger a public right of access. *In re Policy Mgmt. Sys. Corp.*, 1995 WL 541623, at *3-4 (4th Cir. Sept. 13, 1995). Indeed, the consensus of federal courts is that "the federal common law right of access does not apply to documents filed under seal" at least until those documents are used in support of a dispositive motion. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (collecting cases). "Therefore, when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted …." *Id.*

Applying these principles, another court in this circuit has held that "there is no right of public access" to confidential documents that a party attaches to a summary judgment motion that is later voluntarily withdrawn because "the court [never] considered [them]." *In re NC Swine Farm Nuisance Litig.*, 2017 WL 5178038, at *8 (E.D.N.C. Nov. 8, 2017). These same principles should be applied here because Plaintiff voluntarily dismissed his case before the Court adjudicated the Parties' rights. In other words, the sealed documents are not judicial records and do not trigger the "presumption of public access." *Policy Mgmt. Sys.*, 1995 WL 541623 at *4.

Even to the extent a public right of access exists, however, the Court is empowered to "seal documents if the public's right of access is outweighed by competing interests." *In Re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). "The public's right to access judicial records stems from two sources: the common law and the First Amendment to the United States Constitution." *BASF Plant Sci., LP*, 2020 WL 973751, at *13 (E.D. Va. Feb. 7, 2020) (citing *Level 3 Comm's LLC v. Limelight Networks. Inc.*, 611 F. Supp. 2d 572, 577-78 (E.D. Va. 2009)). Here, the more lenient common law standard applies because the filings (most of which relate to collateral sealing issues) do not "substantively resolve" the case. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988); *BASF Plant Sci., LP*, 2019 WL 8108115, at *2 (E.D. Va. Aug. 15, 2019). Under that standard, which applies to most judicial records, the presumption of public access is "rebutted if countervailing interests heavily outweigh the public interests in access." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Rushford*, 846 F.2d at 253).[3] Regardless, the Team's privileged and confidential information warrants sealing under either standard.

**B. Privileged Communications Between the Team and Defendant**

"The attorney-client privilege is 'the oldest of the privileges for confidential communications known to the common law.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 172-73 (4th Cir. 2019) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). It is

[3] The First Amendment right is more stringent but applies only to matters that "substantively resolve" the case. *Rushford*, 846 F.2d at 252. Even the First Amendment standard allows for sealing documents where there is "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 502 (1984). Here, that standard, too, is satisfied because the redactions are narrowly tailored and essential to preserve those aforementioned higher interests. Any information that warrants sealing under the First Amendment standard "necessarily satisfies the relevant common law standards." *Adams v. Object Innovation, Inc.*,, 2011 WL 7042224, at *4 (E.D. Va. Dec. 5, 2011) (citing *Ashcraft v. Conoco. Inc.*, 218 F.3d 288, 302 (4th Cir. 2000)).

black-letter law that attorney-client privilege "belongs to the client, not the attorney." *United States v. Lentz*, 419 F.Supp.2d 820, 826 n.11 (E.D. Va. 2005) (citing *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005)); *accord In re Search Warrant*, 942 F.3d at 173; *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998).

The Magistrate Judge's ruling that "any information protected by attorney-client privilege" should be redacted from "all filings by either party" (Dkt. 68 at 1-2),[4] is consistent with the national consensus that "[c]ourts generally accept a claim of privilege as capable of overriding the presumption of public access and thereby justifying redaction of documents." *Powers v. Braun*, 2013 WL 6623193, at *2 (D. Md. Dec. 16, 2013); *see also, e.g.*, *Siedle v. Putnam Invs.*, 147 F.3d 7 (1st Cir. 1998); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984); *Armstrong v. Kennedy Krieger Inst., Inc.*, 2012 WL 1554643, at *6 (D. Md. Apr. 30, 2012).

Yet the Magistrate Judge's Orders would unseal portions of filings that reveal privileged communications between the Team or its agents and Defendant. These include, for example, the substance of conversations between Defendant [REDACTED] Tr. of Sealed Proceedings of Nov. 20, 2020 at 6:8-20.

These communications between the Team and Defendant — client and attorney — about how Defendant would conduct her Investigation are privileged. The Fourth Circuit "has adopted the 'classic test' for determining the existence of an attorney-client privilege." *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982)). Under that test, the privilege applies if:

---

[4] Similarly, the Magistrate Judge has redacted common-interest communications [REDACTED]. The Team does not object to any of the Magistrate Judge's decisions regarding the common interest privilege.

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id*. These elements are satisfied here. First, the Team was Defendant's client. *See Caruthers v. Thau*, 2013 WL 6048799, at *8-9 (E.D. Va. Nov. 14, 2013) ("The Engagement Letter constitutes prima facie evidence of the parties' professional-client relationship."). Second, Defendant is a licensed attorney and participated in the communications in her legal capacity. Third, these communications relate to facts Defendant learned about or was told about by the Team, in private, for the purpose of obtaining legal services. *See Better Gov't Bureau v. McGraw*, 106 F.3d 582, 601-03 (4th Cir. 1997) (recognizing that investigation can be a form of legal services to which privilege attaches). Finally, the Team has not waived its privilege.

Defendant has argued that she was permitted to disclose these conversations as part of her defense against Plaintiff's "claim that [redacted]." (Dkt. 172 at 4-5) (citing Va. Rule of Prof. Conduct 1.6(b)(2)). [redacted] In other words,



[redacted][5]

Defendant has also argued that these communications were not privileged because they relate to the substance of a decision [redacted] that was meant to be conveyed to third parties (the employees). *See* (Dkt. 172 at 5). That is not correct. First, as the case Defendant cites makes clear, client *decisions* are not privileged precisely because they are often independent of communications with counsel. *See CSC Recovery Corp. v. Daido Steel Co.*, 1997 WL 661122, at *5 (S.D.N.Y. Oct. 22, 1997). Similarly, as a leading treatise explains: "[r]evealing client *actions or decisions* would not necessarily disclose either the substance of the attorney's recommendation or the content of the client's privileged communications upon which the recommendation was based." Paul R. Rice, Attorney-Client Privilege in the United States § 5:14 (2020) (emphasis added). [redacted] Thus, because these passages disclose privileged communications and that privilege has not been waived, they must be redacted from the final record.

[5] Intervenor was unable to bring this point to the Magistrate Judge's attention because no reply briefs were permitted on the Motion for Reconsideration.

### C. Defendant's Work Product and Mental Impressions

The Magistrate Judge correctly ruled that "the results of [Defendant's] investigation" are to be redacted whether they are "true or not." Tr. of Closed Hr'g at 58:2-3 (Jan. 8, 2021). The attorney work-product doctrine is "no less important" than the attorney-client privilege. *In re Search Warrant*, 942 F.3d at 173. The privilege requires "strong protection" to allow attorneys to "assemble information, sift … the relevant from the irrelevant facts, prepare [their] legal theories and plan [their] strategy[ies]" "with a certain degree of privacy." *Id.* (citing *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947)). This privilege covers both "fact work product … and opinion work product, which 'represents the actual thoughts and impressions of the attorney.'" *Id.* at 174 (quoting *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017)). This privilege is "held by lawyer and client alike." *Id.* In addition, clients "have a right to enforce [an attorney's duty of] confidentiality" even where privilege might not apply. *X Corp. v. Doe,* 805 F. Supp. 1298, 1307 (E.D. Va. 1992). Thus, the Team has an enforceable privilege and confidentiality interest in the information about, and materials gathered or generated during, the Investigation. Redaction of such material is proper.

Internal investigations fall squarely within the attorney-client relationship. Indeed, the Supreme Court's landmark decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), involved just such an investigation. *Id.* at 396; *see also Better Gov't Bureau v. McGraw*, 106 F.3d 582, 601-03 (4th Cir. 1997). Accordingly, courts around the country, including in this circuit, have granted motions to seal internal investigation materials. *See, e.g.*, *Armitage v. Biogen Inc.*, 2019 WL 1789909, at *3 (M.D.N.C. Apr. 24, 2019) (redacting documents, in their entirety, from "confidential internal investigations into personnel issues and culture concerns"); *Bost v. Wexford Health Sources, Inc.*, 2018 WL 9923980, at *2 (D. Md. Feb. 6, 2018) (investigative memorandum

and "internal investigation report"); *Fether v. Frederick Cnty.*, 2014 WL 1123386, at *2 (D. Md. Mar. 19, 2014) ("While Plaintiff is entitled to use of these internal affairs investigative records, this Court finds that the documents do warrant protection under the confidentiality order.")

Yet the Magistrate Judge has ordered that portions of filings that reveal conclusions and mental impressions that Defendant formed in the course of — and based on information gathered during — Defendant's investigation be unsealed. For example, Defendant apparently [redacted] *See* (Dkt. 46-2 at 2-3, 9-10). Under the April 6, 2021 Order, however, these mental impressions would be unsealed on the ground that they relate to Defendant's defenses "in the current litigation." *See* (Dkt. 173) ([redacted] the Magistrate Judge erred in denying the Team's motion to redact those mental impressions from the public record.

The Magistrate Judge also denied the Team's request to redact a portion of the closed hearing transcript involving argument about those mental impressions where [redacted]" Tr. of Closed Hrg. at 29:8-10 (Jan. 8, 2021).[6] This goes against the "quite sensibl[e]" principle that discussions of the bases for sealing are themselves sealable. *See In re Copley Press, Inc.*, 518 F.3d

---

[6] Under the Magistrate Judge's rulings, the sentence at issue would read: "That's what we have here. We have defendant's impression that, [redacted] trying [redacted] [redacted]."

1022, 1027-29 (9th Cir. 2008). Passages such as this one "inevitably contain not only the facts the parties hope to keep secret, but also their reasons for doing so, which are likely to be just as private as the facts at issue. It's rarely possible to justify one secret without telling other secrets." *Id.*at 1027; *see also* Dkt. 117 ¶ 3 (ruling that public has no right of access to hearing on the Team's motion to seal).

Defendant has also argued that the mental impressions at issue relate to "the events in question in this lawsuit" and not her investigation. Dkt. 172 at 6. The events that gave rise to Plaintiff's suit and Defendant's Investigation, however, are one and the same. [REDACTED] Thus, these attorney "thoughts and impressions" are privileged and should be redacted from the public record. *In re Search Warrant*, 942 F.3d at 173.

**D. [REDACTED] Involving Third Parties and [REDACTED] Concerning the Same**

The portion of the Magistrate Judge's Sealing Order redacting all references to the material subject to the [REDACTED] including terms, parties, and allegations giving rise to it was correct. [REDACTED]

[redacted]

Importantly, the Team was not a party in this case. Sealing is especially appropriate where the agreement concerns the rights of non-parties. For example, in *Pittston Co. v. United States*, "in order to facilitate the discovery of documents from [a nonparty], counsel for both [the plaintiff] and [the nonparty] agreed that certain categories of information produced in discovery would be protected from public disclosure." 368 F.3d 385, 406 (4th Cir. 2004). The Fourth Circuit refused a subsequent motion to unseal those documents even after the plaintiff had attached them in support of its motion for summary judgment. *Id.*; *see also, e.g.*, *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (analyzing privacy interests of third parties against qualified First Amendment right to access).

Federal courts, therefore, routinely seal information subject to [redacted]

[redacted]

Some of the redactions denied by the Magistrate Judge, however, would reveal precisely such [redacted]. For example, the Magistrate Judge denied the Team's request to redact [redacted].” Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 55 at 27-29). [redacted] reveals several otherwise non-public aspects of the circumstances giving rise to [redacted] Moreover, unsealing the words [redacted] and [redacted] in conjunction with the public record that already reveals that the litigation relates to an investigation of the Team, would disclose that [redacted] Thus, as in *Pittston* and *Lifenet*, these references should be redacted to protect the [redacted].[7]

---

[7] In her opposition to the Team's motion for reconsideration, Defendant argued that revealing these allegations was necessary to provide “key context for [her] side of the story.” (Dkt. 172 at 3). But Defendant's desire to tell her side of the story has no bearing on whether the language at issue is confidential or covered by the Magistrate Judge's general guidance determining that references to [redacted]. [redacted] And, as explained below, the Magistrate Judge had valid reasons for treating allegations about the parties and allegations about nonparties differently. Moreover, the whole notion that decisions regarding unsealing various parts of the proceedings should depend on a weighing of equities between the parties, or in this case between a party and a non-party, has no precedent in the case law.

The redactions at issue also include references to an exchange between lawyers for parties subject to [redacted] *See* Tr. of Closed Hrg. at 38:22-25 (Jan. 8, 2021). [redacted] Thus, the Magistrate Judge correctly ruled that "references [to] discussions about settlement and possibilities of settlement" are to be redacted. *See* Tr. of Closed Hr'g at 55:5-7 (Jan. 8, 2021).

Yet the Magistrate Judge refused to redact discussion of Defendant's characterization of a conversation regarding a supposed "[redacted] Tr. of Closed Hrg. at 38:22-25 (Jan. 8, 2021) (quoting Defendant's Prehearing Memorandum). As discussed below, this unsworn statement by a party [redacted]. *See* (Dkt. 94-3 at ¶ 17; Dkt. 94-8). Even if the statement were true, however, Defendant's characterization of that exchange reveals [redacted] and, therefore, is sealable.

**E. Scandalous and Immaterial Allegations About Non-Parties**

Immaterial and scandalous allegations against the Team and nonparties should be redacted to prevent the parties' filings from becoming "reservoirs of libelous statements for press consumption." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978) (describing established exceptions to the presumed right of public access). To a large extent, the Magistrate Judge has done so (*see* Dkt. 68 at 1-2), but a number of problematic passages remain subject to being unsealed.

Courts in this circuit have inherent authority to strike "any redundant, immaterial, impertinent, or scandalous matter" from all filings. *Kelly v. FedEx Ground Package Sys., Inc.*, 2011 WL 1584764, at *3 (S.D.W. Va. Apr. 26, 2011) (citation omitted); *see also, e.g., United States v. Rodriguez-Silva*, 2019 WL 1937144, at *9 (M.D.N.C. Apr. 8, 2019) (recommending that motion relying on frivolous and patently incorrect argument be stricken), *rpt. & rec. adopted*, 2019 WL 1934036, at *1 (M.D.N.C. May 1, 2019). Preventing improper disclosure of material that should rightly remain confidential is another proper use of this inherent authority. *See EEOC v. MVM, Inc.*, 2018 WL 1882715 at *14 (D. Md. Apr. 18, 2018) (striking evidence offered by defendant in violation of Title VII's prohibition on using statements made in conciliation in later proceedings).

Thus, courts have applied their inherent power to control the docket and strike extraneous, improper material where documents and statements put before them serve only to cause prejudice. *See, e.g.*, *Carrigan v. Cal. State Legis.*, 263 F.2d 560, 564 (9th Cir. 1959) (discussing courts' inherent power to strike motions and briefs that are "scandalous, impertinent, scurrilous, and/or without relevancy"); *Jones v. Metro. Life Ins. Co.*, 2010 WL 4055928, at *14 (N.D. Cal. Oct. 15, 2010) (striking disclosure of confidential settlement negotiations as unfairly prejudicial, immaterial, and generally improper).

Such material is especially ripe for removal where it needlessly disparages a nonparty. For example, in *Jones v. City of Danville*, the court struck from the complaint as immaterial and impertinent paragraphs disparaging the actions, thoughts, and motives of the Commonwealth's attorney, a non-party to the case. 2020 WL 6063063, at *3 (W.D. Va. Oct. 14, 2020). In so finding, the court recognized that "the disfavored character of Rule 12(f) is relaxed in the context of scandalous allegations, *i.e.*, those that improperly cast a derogatory light on someone." *Id.* (quoting

*Asher & Simons, P.A. v. J2 Global Canada, Inc.*, 965 F. Supp. 2d 701, 702 (D. Md. 2013)).

The same principle applies here. Several passages in the sealed documents insinuate [redacted] Such statements serve no legitimate purpose, are needlessly inflammatory, and prejudice [redacted]. *See Nixon*, 435 U.S. at 598-99 (recognizing exceptions to the presumed right of public access where filings are used to "gratify private spite or promote public scandal" and where filings may "serve as reservoirs of libelous statements for press consumption"). Furthermore, this information is irrelevant, as such oblique and unnecessary insinuations have no value in a now-dismissed case or any valid public interest.

The Magistrate Judge's general guidance to redact certain identifying terms and allegations, *see* Dkt. 68 at 1-2, covers most of this material but leaves a few important gaps. For example, the Order leave undredacted a reference to [redacted] Tr. of Closed Hrg. at 38:22-25 (Jan. 8, 2021). This allegation is immaterial to the suit between Plaintiff and Defendant and is needlessly scandalous given that neither [redacted] to this litigation. [redacted] *See supra*

Part IV.D. Thus, the only feasible remedy is to redact the scandalous, immaterial, privileged allegation from the record.

Another example involves a passage in which Defendant accuses Plaintiff of "attempting to obliquely raise the privacy interests of [redacted]," in "yet another indication … that he is improperly bringing this litigation as a proxy for [redacted] [redacted] reputation by obstructing the independent investigation designed to uncover the truth." (Dkt. 46-2 at 9-10) (Defendant's Opposition to Plaintiff's Motion to Seal). The Team has already agreed to unseal Defendant's basic allegation that Plaintiff brought this lawsuit to protect the privacy interests of others. But the further unsealing of counsel's characterization that Plaintiff was acting as a proxy [redacted]. [redacted] Thus, at a minimum, the words [redacted] should remain sealed.

[redacted]



In summary, immaterial and scandalous allegations should be redacted from the public record, especially where those allegations harm nonparties like the Team. *See, e.g.*, *Jones*, 2020 WL 6063063, at *3. The Magistrate Judge has adequately addressed most such passages by redacting identifying language or the underlying allegations. The additional examples identified in Part IV of the attached Appendix, while superficially less direct, are equally objectionable and identifying and, therefore, should be redacted as well.

## V.    CONCLUSION

For the reasons set forth above the Court should sustain the Team's objections to the challenged portions of the Magistrate Judge's final Order on redactions, and approve the 11 additional redactions proposed by the Team listed in Appendix A.


Dated: April 20, 2021                              Respectfully submitted,


                                                   */s/ John L. Brownlee*
                                                   John L. Brownlee (VSB No. 37358)
                                                   Stuart G. Nash (*pro hac vice*)
                                                   Robert J. Farlow (VSB No. 87507)
                                                   David L. Haller (*pro hac vice*)
                                                   Holland & Knight LLP
                                                   800 17th Street N.W.
                                                   Washington, D.C. 20006
                                                   Phone: 202.261.3300
                                                   Facsimile: 202.261.3333

john.brownlee@hklaw.com
stuart.nash@hklaw.com
robert.farlow@hklaw.com
david.haller@hklaw.com

Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Phone: 212.698.3500
Facsimile: 212.698.3599

*Counsel for Intervenor*
*Pro-Football, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2021, a true and correct copy of the foregoing memorandum was filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ John L. Brownlee*
John L. Brownlee (VSB No. 37358)

*Counsel for Intervenor*
*Pro-Football, Inc.*

# APPENDIX A

**UNDER SEAL**

The red underlined text indicates the text the Team objects to unsealing. Black ~~strikethrough~~ indicates text the Magistrate Judge has ordered to remain sealed. Plain roman text indicates undisputed material to be unsealed.

## I. Privileged Communications

| Text | Concern / Argument |
|---|---|
| Tr. of Sealed Proceedings of Nov. 20, 2020 at 6:8-20:<br><br>"Number two, when Ms. Wilkinson was hired by the Washington Football Club and then later by the NFL, [redacted] and Ms. Wilkinson was therefore permitted to speak to any employees who had previously [redacted] | This paragraph recounts a conversation between [redacted] Thus, it should be redacted pursuant to this Court's November 25, 2020 Order, and case law protecting attorney-client communications. |
| Plaintiffs Reply to Defendant's Opposition to Motion for Preliminary Injunction (Dkt. 61) at 2:<br><br>"Conveniently, rather than obtaining any written memorialization of that authority, Wilkinson claims that she had a conversation [redacted] would generically waive [redacted]" (quoting Defendant's Opposition to Motion for Preliminary Injunction at 8). | These sentences reveal the substance of a privileged conversation regarding [redacted] Thus, it should be redacted pursuant to this Court's November 25, 2020 Order, and established case law protecting attorney-client communications. |

## II. Attorney Mental Impressions from Internal Investigation

| Text | Concern / Argument |
| --- | --- |
| Defendant's Opposition to Plaintiffs Motion to Seal Case (Dkt. 46-2) at 2-3:<br><br>"And it comes on the heels of [redacted] recent efforts to [redacted] [redacted]—[redacted] silence and non-cooperation with [redacted] investigation, as documented and rebuffed by [redacted] Brendan Sullivan of Williams & Connolly LLP." | The Court recognized during the Closed Hearing of January 8th [redacted] Namely, Defendant only spoke to [redacted] is likewise a privileged mental impression of her investigatory findings. Thus, as a "result[] of her investigation," Tr. of Closed Hrg. of Jan. 8, 2021 at 58:2-3, it is sealable.<br><br>In addition, redacting this characterization is especially appropriate because [redacted] *See* Dkt. 94-8 at 2-3. |
| Defendant's Opposition to Plaintiffs Motion to Seal Case (Dkt. 46-2) at 9-10:<br><br>"Moreover, to the extent Mr. Donovan is attempting to obliquely raise the privacy interests of [redacted], his doing so is yet another indication (among the others noted in Ms. Wilkinson's Prehearing Memorandum) that he is improperly bringing this litigation as a proxy [redacted] reputation by obstructing the independent investigation designed to uncover the truth [redacted] among other issues." | Defendant's characterization that [redacted] constitutes counsel's privileged mental impression formed during her investigation. Thus, while superficially this allegation is a characterization of litigation itself, counsel's [redacted] |

| | |
|---|---|
| Tr. of Closed Hrg. of Jan. 8, 2021 at 29:8-10:<br><br>"That's what we have here. We have defendant's impression that, ~~that~~ [REDACTED] | In response to oral argument describing why the information should be sealed, the Court subsequently determined that "the results of [Defendant's]] investigation" are to be redacted whether they are "true or not." Tr. of Closed Hr'g of January 8, 2021 at 58:2-3. Permitting the argument at the hearing to be fully disclosed runs counter to the Court's later response at the hearing agreeing to seal this information as revealing mental impressions of an attorney conducting an investigation. |

**III. Particulars of [REDACTED] and [REDACTED]**

| Objection | Issue |
|---|---|
| Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 55) at 29:<br><br>"Finally, the public interest weighs firmly against issuing a preliminary injunction here. The public has a legitimate, statutorily-recognized interest in the content of lawsuits involving allegations of misconduct in the workplace. This is particularly true for suits implicating organizations that are headed by public figures and play a prominent role in the community… This is not an ordinary contractual dispute between private parties. [REDACTED] | This highlighted sentences reveal several otherwise non-public aspects of [REDACTED] Thus, this sentence reveals information about [REDACTED]<br><br>Moreover, in light of the other text that provides [REDACTED] |
| Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction (Dkt. 61) at 1, 5 6<br><br>"New information contained in the Opposition, and its declarations, confirm beyond question that attorney Beth Wilkinson acquired confidential | The Court has ordered redaction of individual names and the word [REDACTED] in connection with [REDACTED] in order to keep those particulars confidential. Order of November 25, 2020, Dkt. 68 at 1. In this context the phrase [REDACTED]" is no different from the term [REDACTED] |

**UNDER SEAL**

| | |
|---|---|
| information based upon a knowingly false representation she made [redacted] that Pro-Football, Inc. ("PFI") [redacted] had authorized her to represent that PFI [redacted] had waived their confidentiality rights [redacted] . . .<br><br>In fact, Wilkinson had no basis [redacted] Certainly, once [redacted] advised Defendant's partners on [redacted] that counsel for [redacted] Wilkinson must have known [redacted] participation in an interview would be in direct violation of her obligations [redacted] and that [redacted] Wilkinson's representation to [redacted] that she had authority as counsel [redacted] to override [redacted] client, [redacted] instructions, and to further make a representation based upon a purported oral communication by [redacted] (who Wilkinson contends was [redacted] her client) [redacted] discussed, is inexplicable and is firm evidence of her tortious intent.<br><br>Wilkinson went to great lengths to secure an interview with [redacted] in order to unearth [redacted] of [redacted], which Wilkinson immediately shared with ~~the League~~. And, she did so knowing that Donovan remains subject to binding confidentiality obligations owed to [redacted]. . . | Moreover, unsealing these sentences would reveal [redacted] Tr. of Closed Hr'g of January 8, 2021 at 27:12-19, 56:2-7 ("[redacted]" "would be taken out."). |





| | |
|---|---|
| Tr. of Closed Hrg. of Jan. 8, 2021 at 38:23-25; 40:14-17:<br><br>█████ █████ █████<br>(quoting Defendant's Prehearing Memorandum)<br>…<br>"I don't know how you can read a statement that when someone is, it says through private attorneys, █████ █████, how that doesn't disparage someone's client." | This language quotes a portion of Defendant's Prehearing Memorandum characterizing a █████ █████ it reveals (albeit in characterized form) █████ █████. Moreover, █████ |

## IV. References to the NFL, the Washington Football Team, and Its Owner

| **Text** | **Concern / Argument** |
|---|---|
| Tr. of Sealed Proceedings of Nov. 20, 2020 at 14:21-25:<br><br>"In our cases, our redactions are very, very limited. It's the name of █████ █████ about what I discussed early in this hearing, and it's the, the nature of █████ █████ | This Court has consistently ruled that references to █████ be redacted because █████ █████ This Court has also recognized that otherwise general phrases—such as █████—can, in the right context, reveal confidential information. The November 25, 2020 Order makes clear that the redactions in this case involve █████ █████ In light of those contextual clues, revealing that the redactions at issue involve █████ █████ |

| | |
|---|---|
| Tr. of Closed Hrg. of Jan. 8, 2021 at 38:23-25; 40:14-17:<br><br>"[redacted]." (quoting Defendant's Prehearing Memorandum)<br>…<br>"I don't know how you can read a statement that when someone is, it says through private attorneys, [redacted] how that doesn't disparage someone's client." | These sentences relate to [redacted] Moreover, the Court recognized the sensitivity of being able to piece information together about the allegations: [redacted] Tr. of Closed Hr'g of January 8, 2021 at 58:23-25. |
| Defendant's Opposition to Plaintiffs Motion to Seal Case (Dkt 46-2) at 9-10:<br><br>"Moreover, to the extent Mr. Donovan is attempting to obliquely raise the privacy interests of [redacted], his doing so is yet another indication (among the others noted in Ms. Wilkinson's Prehearing Memorandum) that he is improperly bringing this litigation as a proxy [redacted] reputation by obstructing the independent investigation designed to uncover the truth [redacted], among other issues." | The Team has already agreed to unseal the Defendant's basic allegation that the Plaintiff brought this lawsuit to protect the privacy interests of others. But the further unsealing of counsel's characterization that [redacted] Coupled with the numerous contextual clues, including the other unsealed text and the November 25, 2020 Order, unsealing this language would show that the non-party allegedly being protected is [redacted] |