**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| DAVID P. DONOVAN, | |
| Plaintiff, | Civil Action No. 1:20-cv-1344 |
| v. | |
| BETH A. WILKINSON, | |
| Defendant. | |

**BETH WILKINSON'S OPPOSITION TO**
**OBJECTIONS BEFORE JUDGE TRENGA ON SEALING ISSUES**

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................. 1

II.   Background ............................................................................................................. 3

  A.   The Investigation ............................................................................................. 3

  B.   The Lawsuit .................................................................................................... 5

  C.   Initial Redaction Ruling and the Team's Intervention ...................................... 6

  D.   Second Redaction Ruling and Joint Redaction Proposals ................................ 8

  E.   Third Redaction Rulings and Team's Request for Reconsideration.................. 10

  F.   The Team's Objections.................................................................................... 11

III.  Argument .............................................................................................................. 13

  A.   Legal Standard .............................................................................................. 13

  B.   The Team's Objections Are Not Well Taken ................................................... 16

    1.   Purported "Privileged Communications Between the Team and Defendant".............. 17

    2.   Ms. Wilkinson's Purported "Work Product and Mental Impressions"........................ 20

    3.   Purported "███████████████████████ Involving Third Parties and ████████████████████ Concerning the Same"................................. 21

    4.   Purported "Scandalous and Immaterial Allegations About Non-Parties" ................... 23

  C.   Comments on Individual Passages Identified in the Team's Chart ................... 25

    1.   Purported "Privileged Communications Between the Team and Defendant".............. 25

    2.   Ms. Wilkinson's Purported "Work Product and Mental Impressions"........................ 26

    3.   Purported "███████████████████████ Involving Third Parties and ████████████████████ Concerning the Same"................................. 26

    4.   Purported "Scandalous and Immaterial Allegations About Non-Parties" ................... 28

IV.   Conclusion ............................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*CSC Recovery Corp. v. Daido Steel Co.*, No. 94-cv-9214, 1997 WL 661122
(S.D.N.Y. Oct. 22, 1997) ................................................................................................ 18

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ....................................................... 24

*Easley v. Cromartie*, 532 U.S. 234 (2001).................................................................... 13

*Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 456 (E.D. Va. 1998) ............... 13

*Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652 (4th Cir. 1988)............................ 22

*Godfredson v. JBC Leg. Group, P.C.*, 387 F. Supp. 2d 543 (E.D.N.C. 2005) ............ 24

*GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09CV123 (JCC), 2009 WL 2160451
(E.D. Va. July 17, 2009). ............................................................................................... 24

*Hensley v. Hooks*, No. 1:19-CV-114-FDW, 2020 WL 2062310 (W.D.N.C. Apr. 28, 2020)....... 25

*In re Application of the United States*, 707 F.3d 283 (4th Cir. 2013)...................... 13, 14

*In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2017 WL 5178038
(E.D.N.C. Nov. 8, 2017) ................................................................................................ 16

*In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, 1995 WL 541623 (4th Cir. 1995) ........... 16

*In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570, 2020 WL 6712191
(S.D.N.Y. Nov. 16, 2020) .............................................................................................. 13

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 6122012
(E.D. Va. July 16, 2019) ................................................................................................ 18

*Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324 (4th Cir. 1991)............. 14

*Morris v. Jetblue Airways Corp.*, No. 15-CV-1664 (ENV) (RLM), 2015 WL 8042227
(E.D.N.Y. Dec. 3, 2015) ................................................................................................ 13

*RegScan, Inc. v. Bureau of Nat. Affs., Inc.*, No. 1:11-CV-1129 JCC/JFA, 2012 WL
2994075 (E.D. Va. July 19, 2012) ................................................................................. 13

*RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 WL 10602398
(W.D. Va. Oct. 30, 2018)................................................................................................ 15

*Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 F. App'x 123 (4th Cir. 2001) ................ 14

*Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249 (4th Cir. 1988)............................... 16

*Stephens v. Cty. of Albemarle*, 422 F. Supp. 2d 640 (W.D. Va. 2006)..........................................22

*Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988).........................................16

*United States v. (Under Seal)*, 748 F.2d 871 (4th Cir. 1984) ......................................................18

*United States v. Bailey*, 322 F. Supp. 3d 66 (D. Md. 2017)........................................................25

*United States v. Rodriguez*, No. 2:04-cr-55, 2006 WL 8438023 (D.N.D. June 29, 2006) ..........24

*White v. Chapman*, No. 1:14-CV-848 JCC/IDD, 2015 WL 4360329
   (E.D. Va. July 14, 2015) ........................................................................................... 13, 14

**Statutes**

28 U.S.C. § 636(b)(1)(A)..............................................................................................................13

28 U.S.C. § 636(b)(3) ...................................................................................................................13

**Other Authorities**

*NFL Will Consider Disciplining Washington But Is Not Expected To Force
   Daniel Snyder To Sell*, The Washington Post (July 17, 2020)....................................................2

███████████████████████████████████████████████████
███████████ ................................................................................................. 7, 21

**Rules**

Fed. R. Civ. P. 12(f)......................................................................................................................23

Fed. R. Civ. P. 72(a) .....................................................................................................................13

Fed. R. Evid. 106 ..........................................................................................................................23

Fed. R. Evid. 408(a).......................................................................................................................22

Va. Rule of Prof. Conduct 1.6(b)(2) .............................................................................................19

Beth Wilkinson opposes the objections of ███████████, intervenor Pro-Football, Inc., d/b/a the Washington Football Team (the "Team") to Judge Davis's redactions rulings. She is not doing so from any desire to ████████████████████████████████████. She is doing so because the Team's legal arguments are not well taken, and because its factual representations are ███████████████████████████████████████████████.

## I.    Introduction

Reading the Team's arguments, one would think that Judge Davis ordered the disclosure of ███████████████████████. This is nowhere near the case. Judge Davis ordered the redaction of ████████████████████ other than a few scant instances— not at issue in the Team's objections—where the parties quoted public statements ██████████ Similarly, Judge Davis has ordered descriptions of █████████████████████ ████████████████████████—redacted.

███████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

The legal arguments offered by the Team, both as to the standard of review and as to how the passages in question purportedly fit categories of redactable material, strain credulity.

This is enough to overrule the Team's objections. But there is more. While the Team protests that ████████████████████████, the truth is to the contrary.

███████████████████████████████

███████████████████████████████

1



Then, after Mr. Donovan dismissed the lawsuit and the Team intervened with Ms. Wilkinson's consent, ███████████████████████████████ while seeking maximal redactions.  Meanwhile, ███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████[1]

Despite this conduct, Ms. Wilkinson did not seek to unredact more material.  She did not oppose the Team's first set of very broad redactions, and she joined with the Team and Plaintiff in submitting a second and third set of agreed proposed redactions that still largely redacted characterizations (both direct and indirect) about the parties, ███████████████.  Each set of redactions was reviewed with care by Judge Davis.  It was only when Judge Davis issued line-by-line instructions for more than 150 pages of pleadings and transcripts that Ms. Wilkinson could

---

[1] https://perma.cc/ARV2-CG9Q.

not stay silent in the face of the Team's demands ████████████████████████████

████████████████████ at the expense of her own.

Judge Davis's rulings will result in many ████████████████████████████████

████████████ seeing the light of day.  They will do so because, as Judge Davis repeatedly

instructed, "[*the*] *legal positions and opinions of parties and possible witnesses in the underlying*

*litigation concerning the actions of others as set forth in ANY of the documents in question may*

*cast them in an undesired light; but, they are not redactable*."  Email from Toni Coleman to

Counsel, Attachment at 2 (Mar. 10, 2021), Ex. 2 (italics and underline supplied by Judge Davis).

Whatever the Team may think of that instruction, it is not clearly erroneous or contrary to law.

And Judge Davis properly applied it to passages concerning the Team ██████████, not only to

those concerning Ms. Wilkinson.

The Team's efforts to selectively unwind Judge Davis's instructions are legally

indefensible.  None of the passages in question reveal information legitimately protected from

public disclosure as attorney-client communications, work product or mental impressions,

settlement negotiations, or the legally-unrecognized and factually-misdescribed category of

scandalous and immaterial allegations.  This Court should reject the Team's objections in their

entirety and uphold Judge Davis's rulings.

## II.    Background

### A.  The Investigation

The Team hired Beth Wilkinson and Wilkinson Stekloff LLP (then Wilkinson Walsh LLP)

in July 2020 to conduct an independent investigation into sexual and workplace misconduct at the

Team, as reported on that month by The Washington Post.  After a second major Washington Post

article in August 2020, ███████████████████████████████████████████████████████

██████████████████████████████.  *See* Submission by Defendant Beth Wilkinson to Correct the

Record (Dkt. No. 139) at 1 ("Wilkinson Stekloff ceased to represent ████████████████████

██████████████████████████████████████");  Declaration of Lisa M. Friel (Dkt.

No. 55-3) at ¶¶ 11, 13 (same).

        Both when first announcing the investigation ████████████████████████████████

█████████  the Team committed publicly that they would cooperate with the investigation.  *See,*

*e.g.*, Opposition to Motion for Preliminary Injunction (Dkt. No. 55) at 6.[2]  ████████████ ███

██████████████████████████████████  they released current and former employees from

contractual  confidentiality  obligations  for  the  limited  purpose  of  cooperating  with  the

investigation.  *Id*. at 6-9.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

        After Ms. Wilkinson obtained ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

---

[2]  In July 2020, "Dan Snyder stated publicly that 'Beth Wilkinson and her firm are empowered to
do a full, unbiased investigation.' *Daniel Snyder says alleged behavior 'has no place' in franchise;
NFL to consider discipline*, The Washington Post (July 17, 2020) (https://perma.cc/ARV2-CG9Q).
The NFL issued a similar statement, recounting that the Team had 'engaged outside counsel to
conduct a thorough investigation into these allegations,' and had 'pledged that it will give its full
cooperation to the investigator.'" *See* Opposition to Motion for Preliminary Injunction at 6.  In late
August, Mr. Snyder again stated publicly that he "'remains committed to fully cooperating with
all aspects of the investigation.'"  *Id.* at 11.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

**B.  The Lawsuit**

████████████ David Donovan, former General Counsel for the Team, filed the present lawsuit.  Mr. Donovan sought ████████████████████—that Ms. Wilkinson ████ ████████████████████████████ and destroy all documents that she had relating ████████████ Although the ████████████████████████ he sued to stop Ms. Wilkinson's investigation on the putative basis that revelation of a report he wrote ████████████ would irreparably sully his own reputation.  *See, e.g.,* Complaint at ¶ 45.

Between Ms. Wilkinson's October 30,████ letter and Mr. Donovan's November 9 ████ lawsuit, ████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████ Complaint

---

[3] Post hoc, the Team tries to characterize the exchange ████████████████████████ ████████████████████████████ Transcript of Motion Hearing (Jan. 8, 2021) at 53:12-21.

at Ex. 3-1.  Mr. Bolden's declaration also attached a highly redacted version of 

Norm Chirite, also prepared a declaration for Mr. Donovan.  Among other things, Mr. Chirite

At a hearing held three days after his filing, this Court denied Mr. Donovan's request for a temporary restraining order.  It then scheduled an evidentiary hearing on Mr. Donovan's Motion for a Preliminary Injunction for November 30, 2020.  Mr. Donovan in turn named

Mr. Chirite, as one of his witnesses for that hearing.  In anticipation of that proceeding, Ms. Wilkinson filed a detailed and lengthy opposition to Donovan's motion.  But the hearing never took place.  Instead, on November 23, Mr. Donovan filed both a reply to Ms. Wilkinson's opposition and, seconds later, a voluntary dismissal of his entire complaint.  Ironically, this gratuitous "reply" contains several statements by Mr. Donovan that the Team and Mr. Donovan now seek to redact.  Reply Memorandum (Dkt. No. 62); Voluntary Dismissal (Dkt. No. 63); Memorandum in Support of Intervenor's Objections to the Magistrate Judge's Orders on Sealing (Dkt. No. 193) ("Objections") Appendix A at 2, 4.

### C.  Initial Redaction Ruling and the Team's Intervention

Sealing issues arose immediately upon Mr. Donovan's initial filing, because he initially sought to seal the entire lawsuit, including its very existence.  This Court denied that request on November 17, 2020, and referred to Judge Davis the issue of what should remain under seal.  Order (Dkt. No. 32).  When Donovan dismissed his suit six days later, the issue of sealing remained

pending. Two days later, on November 25, 2020, Judge Davis issued an order resolving it. The order described the parameters for what was to be unsealed and directed the parties to apply those principles to the filed documents in the case. Mr. Donovan and Ms. Wilkinson reached consensus on how to do that for a subset of documents, and on December 4, 2020, Ms. Wilkinson sought to publicly file redacted versions of four of those agreed-to documents. Before the Court docketed those documents, ███████████████████████████████████████████████████████████ ████████████████ the Team filed an emergency motion to stop their docketing and moved to intervene. Plaintiff's Emergency Motion to Halt Clerk's Entry on the Public Docket (Dkt. No. 72); Consent Motion to Intervene (Dkt. No. 79).

Ms. Wilkinson did not oppose the Team's request to delay docketing the redacted documents and did not oppose the Team's request for intervention. When the Team moved for much broader redactions than Judge Davis had ordered on November 25, 2020, Ms. Wilkinson did not oppose that either. Submission by Defendant Beth Wilkinson to Correct the Record (Dkt. No. 139) at 1. Mr. Donovan had dismissed his claims; Ms. Wilkinson's interest was only that the ill-considered lawsuit come to a close, and that whatever standard the Court applied in ruling on redactions be applied in the same manner as to all documents and allegations, regardless of whether they were about her, Mr. Donovan, the Team███████████████.

In the meantime, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████  ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████



### D.  Second Redaction Ruling and Joint Redaction Proposals

On January 8, 2021, Judge Davis held a hearing on the Team's requests for further redactions.  Once again Ms. Wilkinson did not oppose the Team's requests.  When Ms. Wilkinson made clear she would not object to the Team's requests, Judge Davis told the Team not to "forget to thank Mr. Connolly [counsel for Ms. Wilkinson] for his kindness in removing objections that we otherwise may have had to discuss."  Jan. 8, 2021 Tr. at 60:5–7.

At the hearing before Judge Davis, the Team claimed that it was "late to this party," and that it was "really surprised at the kind of information that was filed in this case without our knowledge and without our consent."  *Id.* at 17:17–19.  ████████████████████████
████████████████████████████████████████████████████

████████████  Instead,  ████████  asked for special solicitousness  ████████████████
████████████████████████████████████████████████  not a party to this suit."  Mot. to Seal, Strike at 15.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████  *See id.* at 36:8–13 (stating that the Court "does not take into

8

consideration statements of counsel" in that regard).  When the Team further asserted that Ms. Wilkinson had acted to "gratify either public spite or to promote public scandal," Judge Davis made clear he saw "absolutely no evidence of that."  *Id.* at 38:11–13.



After all of that, Judge Davis still granted some—though certainly not all—of the Team's unopposed requests for redactions, making clear that "[f]actual allegations are not sealable."  Jan. 8, 2021 Tr. at 16:12.  During the January 8, 2021, hearing, Judge Davis reviewed the Team's proposed redactions for a single document, then directed the parties to submit proposed joint redactions for the other documents on the docket in conformity with that guidance by January 15, 2021.  Order (Dkt. No. 147).  The parties and the Team reviewed the documents filed with the Court and reached agreement on proposed redactions.  Letter of Christina Sarchio to Judge Davis (Jan. 14, 2021) (Dkt. No. 154-1) at 1 ("Intervenor and Defendant have reached agreement as to all previously-disputed documents.").   After the parties submitted the proposed redactions, Judge

Davis on January 19, 2021, gave additional guidance directing the parties to unredact more text. *See* Email from Toni Coleman to Counsel (Jan. 19, 2021), Ex. 1 ("Judge Davis asked me to convey his concerns that the proposed redactions go beyond his ruling and do not comply with the standard for sealing documents."). Again Ms. Wilkinson reached agreement with the Team and Mr. Donovan, and the Team submitted further agreed revisions on February 3, 2021.

### E.  Third Redaction Rulings and Team's Request for Reconsideration

On March 10, 2021, Judge Davis conducted yet another detailed review, this time of the joint February redactions proposal. He again found that the proposal was too broad, and this time gave detailed instructions on particular passages and phrases to unredact through four single-spaced pages of notes covering almost twenty documents. *See* Email from Toni Coleman to Counsel and Attachment (Mar. 10, 2021), Ex. 2. ███████████████████████

████████████████████████████████████████████

██████████████████████████████ Judge Davis also clarified: "*To be sure, and to once again reiterate to the parties, their legal positions and opinions of parties and possible witnesses in the underlying litigation concerning the actions of others as set forth in ANY of the documents in question may cast them in an undesired light; but, they are not redactable.*" *Id.*, attach. at 2 (Court's italics and underlining).

Despite the unredaction of much ███████████████, she again did not object to Judge Davis's guidance, as she believed it consistent with the law and concluded that Judge Davis has applied it equally to all interested parties. Judge Davis's thorough and detailed work produced an outcome that favored neither side, and Ms. Wilkinson was willing to accept Judge Davis's painstaking work and conclude this case.

The Team, however, asked Judge Davis to reverse his rulings as applied to passages that it deemed ██████████████████████████.  *See* Team Mem. in Support of Reconsideration (Dkt. No. 169).  The Team also continued to seek redaction of portions of the declaration that ██ ███████████████████████████████████████████████████████████████  *Id.* at 4.  Ms. Wilkinson agreed with two of the Team's requests (redaction of Donovan's use of ████████ ███████████████████████████████████████████████████████████████ ████████████ but otherwise opposed the Team's request.  Wilkinson Memorandum Opposing Reconsideration (Dkt. No. 172).  While Ms. Wilkinson had declined previously to oppose the Team's mischaracterizations and flawed arguments in support of redactions, this request by the Team for reconsideration and special treatment only as to the passages indirectly concerning ██ ██████ went too far.  Ms. Wilkinson pointed out █████████████████████████████████ ████████████████████, and described the weakness of the Team's substantive arguments. *See id*.  Judge Davis agreed with Ms. Wilkinson across the board: he granted the Team's request only for the two further redactions that Ms. Wilkinson had agreed to in her memorandum and denied the rest.  Order (Dkt. No. 173).

### F.  The Team's Objections

Now the Team (with new counsel) has filed the present objections to Judge Davis's April 6 Order (Dkt. No. 173), which summarized all his previous rulings.  The Team has dropped its complaint about unredactions to Norm Chirite's declaration, but otherwise reprises its reconsideration request in full.  Again, without mention of ██████████████████████████ ████████████████████████ the Team claims that the "unfairness" of the redactions here is "only magnified" because the Team was "not even a party to the litigation in the first place." Objections at 2.  ██████████████████████████████████████████████████████

11

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Ms. Wilkinson opposes the Team's objections. The time has come for the redactions process to end, more than five months after Mr. Donovan voluntarily dismissed this action. The Team ███████████████ no basis under the law—as applied judiciously and appropriately by Judge Davis—for the extreme special treatment they seek. █████████████████████ ██████████████████████, and the Team's arguments for additional redactions are the same ones Judge Davis repeatedly rejected. To be clear, Ms. Wilkinson now, as always, would not object to the balanced redactions that she jointly submitted with the Team and Mr. Donovan on February 3. But that would require a wholesale rejection of Judge Davis's rulings from March affecting dozens of passages, not only reversing him on the passages that the Team want redacted. Because Judge Davis did not clearly err or act contrary to the law in his redactions rulings, Ms. Wilkinson accepts those rulings, and the Team's objections should be denied in their entirety.

## III.   Argument

### A.  Legal Standard

Under the Federal Magistrates Act and Rule 72(a) of the Federal Rules of Civil Procedure, the district court reviews all pre-trial rulings by a magistrate judge—including sealing decisions—for whether they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  *See, e.g.*, *White v. Chapman*, No. 1:14-CV-848 JCC/IDD, 2015 WL 4360329, at *2 (E.D. Va. July 14, 2015) (applying standard to objection to sealing order); *RegScan, Inc. v. Bureau of Nat. Affs., Inc.*, No. 1:11-CV-1129 JCC/JFA, 2012 WL 2994075, at *2 (E.D. Va. July 19, 2012) (same); *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570, 2020 WL 6712191, at *1 (S.D.N.Y. Nov. 16, 2020) (same); *Morris v. Jetblue Airways Corp.*, No. 15-CV-1664 (ENV) (RLM), 2015 WL 8042227, at *2 (E.D.N.Y. Dec. 3, 2015) (same).  Under this "deferential" standard, *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 456, 460 (E.D. Va. 1998), a reviewing court will not reverse the magistrate's ruling on a non-dispositive pre-trial matter "simply because [it] would have decided the case differently," *White*, 2015 WL 4360329, at *2 (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).  "Rather, a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Easley*, 532 U.S. at 242).

The case the Team relies on, Objections at 7-8, is not to the contrary.  *In re Application of the United States*, 707 F.3d 283, 289 (4th Cir. 2013) ("*In re Application II*"), applied a *de novo* standard of review because the magistrate's sealing rulings arose in the context of the assignment of "additional duties" under section 636(b)(3), not the assignment of general pre-trial duties under section 636(b)(1).  *See id.* at 289 (citing "additional duties" prong of 28 U.S.C. § 636(b)(3)).  Specifically, *In re Application II* involved a motion to vacate an *ex parte* order obtained by the

government compelling Twitter to disclose certain information "at the pre-grand jury phase of an ongoing criminal investigation." 707 F.3d at 286. *In re Application II* does not displace the standard of review for review of typical pre-trial rulings. On the contrary, as an earlier Fourth Circuit precedent cited with approval by *In re Application II* makes plain, rulings by a magistrate judge for "pretrial matters are subject to a 'clearly erroneous or contrary to law' standard" of review. *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324, 326 n.2 (4th Cir. 1991) (cited at 707 F.3d at 289).

Here, this Court referred the sealing issues to Judge Davis for pre-trial redactions rulings while the case was awaiting a preliminary injunction hearing. *See* Nov. 17, 2020 Order (Dkt. No. 32) at 3 (referring sealing issues to Judge Davis). The fact that Mr. Donovan voluntarily dismissed his complaint does not change the analysis. The district court's "jurisdiction to review sealing orders is not impacted by resolution of the merits of the underlying case." *White*, 2015 WL 4360329, at *2 (reviewing magistrate's pre-trial sealing order under "clearly erroneous or contrary to law" standard); *cf. Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 F. App'x 123, 131 (4th Cir. 2001) ("The caselaw establishes that our jurisdiction to review a district court's sealing orders is based not on our jurisdiction over the subject matter of the underlying claims addressed by the district court, but on the public right of access, under the common law or the First Amendment, to judicial documents.").[4] Thus, this Court may overturn Judge Davis's determinations with respect to sealing only if they are "clearly erroneous or contrary to law."

---

[4] Donovan attempted a similar ██████████████████████████ when he wrote Judge Davis on November 25, just after he had dismissed his complaint, and claimed his voluntary dismissal deprived the Court of jurisdiction to address sealing issues. Plaintiff's Notice of Lack of Jurisdiction and Mootness with Respect to Defendant's Objections to Plaintiff's Proposed Redactions of the Record (Dkt. No. 67). Ms. Wilkinson pointed out the many legal errors in this argument in her Response to Plaintiff's "Notice" of Lack of Jurisdiction and Mootness (Dkt. No.

Moreover, the vast majority of the passages at issue in the Team's objections are from filings and arguments that occurred *before* Donovan dismissed his lawsuit.  *See* Objections at App. A.  Seven of the eleven passages come from briefings and hearings that occurred days before the voluntary dismissal.  *Id.* (the first passage in Category I, the first two passages in Category II, the first passage in Category III, and the first and third passages in Category IV).  Two of the passages came from Donovan's Reply, filed moments before his voluntary dismissal notice.  *Id.* (second passage in Category I, second passage in Category III).  The only passages that post-date the voluntary dismissal are two statements by *the Team's* lawyers at a sealed hearing in January, which simply echo the substance of the pre-dismissal passages in dispute.  *Id.* (third passage in Category II, third passage in Category III).

Finally, the Team's argument that the public does not have a right of access to the documents in question "because they were filed under seal and never used in support of a dispositive motion," Objections at 9, is plainly incorrect.  As this Court explained in its Order unsealing this case, "the First Amendment right of access applies to sealing motions for injunctive relief, which is the primary object of this litigation."  Order (Dkt. No. 32) at 2; *see also RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 WL 10602398, at *1 (W.D. Va. Oct. 30, 2018) (collecting cases).  "Because the First Amendment provides a right of access, strict scrutiny applies to any decision to prevent such access, justified 'only on the basis of a compelling government interest, and only if denial [of access] is narrowly tailored to serve that interest."  Order (Dkt. No. 32) at 2 (alteration in original) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180

_____

69), and Judge Davis has continued to issue redaction rulings without anyone questioning his jurisdiction to do so.

(4th Cir. 1988)).[5]  And even if this matter were judged by the less exacting common law standard, the Team still cannot show that Judge Davis's rulings were clearly erroneous or contrary to law.

The Team's argument also proves far too much:  If the Team were correct, then all of the sealed filings and transcripts (or at least all the ones since the voluntary dismissal)—███████████ ███████████████████████████████████████████ would remain permanently sealed.  But not only has the Team offered no precedent for such an extraordinary outcome, it is not the relief the Team is now seeking.[6]  The Team is not seeking blanket sealing of this case, nor is it seeking blanket sealing of all filings and transcripts that post-date the voluntary dismissal—███████████ ████████████████████████████.

### B.  The Team's Objections Are Not Well Taken

Judge Davis did not come close to committing a clear error or acting contrary to the law. Indeed, even under the incorrect *de novo* standard that the Team urges this Court to adopt, there is no basis to grant the Team's objections.  We address below each of the categories that the Team presents in support of its requests, and then discuss the relevant in a chart analogous to the chart the Team attached to its filing.  None of the Team's arguments supports sealing.

---

[5] The Fourth Circuit's unpublished decision in *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, 1995 WL 541623 (4th Cir. 1995) (table), is inapposite.  That case concerned the public's right to access to *exhibits* attached to a memorandum in opposition to a motion to dismiss.  *See id.* at *1.  Because the District Court refused to consider these exhibits given the procedural posture of the motion to dismiss, the Fourth Circuit reasoned they were "more akin to discovery materials" that thus did not implicate the public's right of access.  *Id.* at *3.  By contrast, all the passages at issue in the Team's objections were properly presented on the merits of Mr. Donovan's preliminary injunction request or on the redactions issues decided by Judge Davis.

[6] *In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2017 WL 5178038, (E.D.N.C. Nov. 8, 2017), is distinguishable.  The issue in that case concerned not, as here, the pleadings and related transcripts but "deposition excerpts" attached to the pleadings.  *See id.* at *8.  As the Fourth Circuit has observed, "discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court."  *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988).

## 1. Purported "Privileged Communications Between the Team and Defendant"

Judge Davis previously ruled that the parties should redact "any information protected by attorney-client privilege, such as letters between lawyers and clients."  Order (Dkt. No. 68) at 2. Neither the Team nor Ms. Wilkinson objects to that ruling.  The Team, however, now claims that Judge Davis's later orders would result in the disclosure of privileged communications, including "the substance of conversations between Defendant and ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████  Objections at 11.  The Team misapplies the doctrine of attorney-client privilege in making that argument.

The text that the Team seeks to redact does not refer to privileged communications.  The Team's objections here relate to the ████████████████████████████████████████ ████████████████████.  In the February joint submission on redactions—*to which the Team and Plaintiff agreed*—the parties marked for unredaction other descriptions of the very same ██████. *See, e.g.*, Opp. to Mot. for Prelim. Injunction (Dkt. No. 55).  Specifically, the Team agreed to unredact the following sentences, with the exception of the material indicated by brackets:

- "One of the first tasks that Wilkinson Stekloff undertook was therefore to confirm with the Team that the firm had authority to tell […] that the Team was releasing them from their confidentiality obligations for purposes of talking to the firm. […] Wilkinson talked to […] about that subject […] told Wilkinson that […] agreed to waive their confidentiality rights with [..] so that those […] could speak to Wilkinson Stekloff." *Id.* at 8.

- "Wilkinson was also relying expressly on the communications that she and Moira Penza had had with […], in which the Team authorized Wilkinson Stekloff to communicate the Team's waivers[…]" *Id.* at 14.

- "First, Direct written evidence from Wilkinson and Moira Penza confirm Wilkinson's understanding that [...] had waived their confidentiality rights. Wilkinson spoke […], and took contemporaneous notes of the conversation. Wilkinson Decl. at ¶ 25.  […] told her that […] were waiving those confidentiality rights[.]" *Id.* at 17.

17

The March 10 instructions to remove redactions from additional descriptions of the same communication are consistent with the Court's prior guidance, which even the Team understood to apply to these communications.

The instruction to ██████████████████████████████ is not privileged, for several reasons. *First*, these conversations were not for the purpose of seeking legal advice, but for the purpose of communicating ████████████. *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 6122012, at *2 (E.D. Va. July 16, 2019) ("For the privilege to apply . . . the communication must be for the purpose of seeking legal advice"). Nowhere does the Team explain how these communications could have been made for the purpose of the Team ██████ seeking legal advice from Ms. Wilkinson. *Second*, the text in question communicates *the substance* of a decision that the Team made, and the substance of a decision is not privileged. *See, e.g.*, *CSC Recovery Corp. v. Daido Steel Co.*, No. 94-cv-9214, 1997 WL 661122, at *5 (S.D.N.Y. Oct. 22, 1997) ("[M]any client decisions are based in full or in part on attorney advice. The client decisions are not privileged, in contrast to the underlying advice of counsel."). If the passages that the Team seeks to maintain redacted contained any advice of counsel regarding the ████████ ████████████, then that advice may be privileged. But they do not. They simply reflect the Team's decision to ████████████ so that Ms. Wilkinson could conduct the independent and thorough investigation that the Team ████████ had repeatedly promised publicly.

*Third*, ████████████████████ was intended to be *revealed* to third parties— *i.e.*, the current and former employees interviewed as part of Ms. Wilkinson's investigation—and therefore is not privileged. *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984) ("if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information . . . will not enjoy the privilege."). The ██████ was of no

use to Ms. Wilkinson unless she could communicate it to those she sought to interview, and the

fact that it would be so communicated was obvious to everyone involved.[7] *Fourth*, the Team has

waived any privilege by disclosing facts and circumstances concerning ██████ to Donovan

for purposes of bringing a lawsuit in his private capacity, who in turn disclosed it to the Court.

Even if the ████████ were privileged—which they are not—Ms. Wilkinson

was plainly entitled to disclose them here.  Ms. Wilkinson was allowed to describe ██████ in

her pleadings because they are a core part of her defense against the claim that she did not have

authority to interview ██████.  The Virginia Rules of Professional Conduct permitted—

and still allow—Ms. Wilkinson to "respond to allegations in any proceeding concerning the

lawyer's representation of the client," Va. Rule of Prof. Conduct 1.6(b)(2), even if that response

involves privileged or confidential information.  *See also* Jan. 8, 2021 Tr. at 39:11-14 (Court to

Team's counsel: "you have not shown me any (inaudible) out of spite or improperly used to do

something.  [Ms. Wilkinson] was protecting herself based upon allegations against her.  That's not

an improper use of information.").

The Team errs in asserting that Ms. Wilkinson has a "duty" to ensure that any discussion

of these communications is kept under seal.  Objections at 13.  The decision of what should be

unredacted is a legal and factual one for the Court, not a judgment call for Ms. Wilkinson.  She

has complied with any obligation she had to limit access to the information under the Comments

to Rule 1.6 by submitting filings under seal pending Court orders on redactions.  Indeed, she went

far beyond that by not opposing the Team's initial proposed redactions (even though they were

---

[7] Citing no authority, the Team claims that its employees are "█████████████████
██████████████ and thus no "third parties" are involved.  Objections at 13.  Whatever
the extent of ███████████████, however, it surely does not extend to former
employees no longer associated with the Team, to whom Ms. Wilkinson was also instructed to
████████████████████.

overbroad), and by reaching agreements on proposed redactions submitted to Judge Davis on January 14 and on February 3, 2021.  The situation here is different.  ███████████████

███████████████████████████████████████████████████████████████████████████

███████████   The Rules do not require an attorney to sponsor the position of a former client that is contrary to the law, the facts, and her own interests because of the former client's ███████████.

### 2.  Ms. Wilkinson's Purported "Work Product and Mental Impressions"

The Team next argues that further redaction of "information about, and materials gathered or generated during, the Investigation" is proper because certain passages reveal attorney work-product or mental impressions formed by Ms. Wilkinson in the course of her investigation. Objections at 14–15.  These doctrines provide no basis for redacting the material in question.  None of the passages cited by the Team concern Ms. Wilkinson's mental impressions or work product related to the subject of her investigation.  They do not relate to ███████████████

███████████████████████████████  Rather, they reveal her defenses and allegations relating to *the events in question in this lawsuit*.  They concern ███

███████████████████████████████████████████████████████████████████████████

███████████████████████████████     ██████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████     A lawyer's response to threats and lawsuits against her ██████████████████████ is not itself "work product."  Because these matters concern this case and not what may have happened in the conduct that Ms. Wilkinson was engaged to investigate, Ms. Wilkinson's filings below do not reveal any kind of attorney work product or privilege.

The events that gave raise to this lawsuit and the investigation are not "one and the same," as the Team now claims.  Objections at 16.  The Team's argument makes no more sense than to say that Mr. Donovan and the Team's filings and arguments ███████████████████ ███████ should be redacted because those accusations are the "mental impressions" of ███ ██████████████████████████████████

###    3.    Purported "Matter Subject to ██████████████████ Involving Third Parties and ███████████████████████ Concerning the Same"

The Team claims Judge Davis held that "all references to the material subject to the ██████████████████████ including terms, parties, and allegations giving rise to it" should be redacted.  Objections at 16.  That is incorrect.  Judge Davis previously ordered the redaction of "[a]ll discussions or references *concerning particularities of* █████████ ████████████████████████████████████████████████ ██████████ " Order (Dkt. No. 68) at 1–2 (emphasis added).  Now the Team argues that general references to ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ at 18.  None of this material concerns █████████████ █████████████████████████████████████ and Judge Davis properly ordered this statement unredacted.

Judge Davis's ruling is also well-founded because █████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

The Team also seeks to seal a reference ████████████████████████

███████████████████████████████████████████████████

████████████████████████████████   Judge Davis was on solid ground to reject

this argument.   ██████████████████████████████   ████████████████

███████████████████████████████████████████████████

█████████████████████████████████████   The reason courts maintain

the confidentiality of settlement agreements and discussions is to promote the "early and amicable

settlement" of claims to "avoid[] protracted litigation."  *Stephens v. Cty. of Albemarle*, 422 F.

Supp. 2d 640, 644 (W.D. Va. 2006).  Federal Rule of Evidence 408 is similarly motivated by "the

public policy of favoring and encouraging settlement," *Fiberglass Insulators, Inc. v. Dupuy*, 856

F.2d 652, 654 (4th Cir. 1988), and Rule 408 applies only to evidence of statements related to

"compromising or attempting to compromise *the claim*" and "conduct or a statement made during

compromise negotiations *about the claim*."  Fed. R. Evid. 408(a) (emphasis added).

The statement identified by the Team is not such a statement.  Judge Davis had ample basis

to conclude that it was not part of a ████████████████████████████████████

███████████████████████████████████████████  .  It is more than enough that the

Court has elected to redact ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

 There is no basis to go further and redact this far more general statement, which does not disclose the involvement of ███████ ██████.[8]

Finally, it bears repeating that the Team itself submitted to █████████████ ███████████████████████████████████████████████ █████████████████████████████████████ *see also* Fed. R. Evid. 106 (describing the rule of completeness). On this issue in particular, the Team's claim that "[s]ealing is especially appropriate where the agreement concerns the rights of non-parties," Objections at 17, is particularly inapt.

### 4.   Purported "Scandalous and Immaterial Allegations About Non-Parties"

The Team's request that the Court seal supposedly "scandalous and immaterial allegations about non-parties" likewise was properly rejected by Judge Davis. Nothing here is scandalous or immaterial, except insofar as the Team uses those words to describe information that it does not like. Even if it were, the Team has no legal basis for its position that Judge Davis erred here. Not one of the cases the Team cites in its attempts to redact "scandalous and immaterial allegations" supports *sealing* that material in filings in a now-dead case—they are all about *striking* text from pleadings under Fed. R. Civ. P. 12(f). Further, where courts strike "immaterial or scandalous" material under Rule 12(f), they do so only on a showing of prejudice, not reputational harm. *See,*

---

[8] Indeed, if the standard on review were *de novo* as the Team incorrectly claims, and given the information now available to the Court, it should *unredact* the ████████████████ in its entirety, other than the identification of █████████████████████. At the time the Team persuaded Judge Davis to redact ████████████████████████████████████████████████████████████████████. Mot. to Seal, Strike (Dkt. No. 94-2) at 17-19.

*e.g., Godfredson v. JBC Leg. Group, P.C.*, 387 F. Supp. 2d 543, 556–57 (E.D.N.C. 2005) (denying motion to strike because "showing of actual prejudice to the defendants has not been made"). Nowhere does the Team explain how unsealing the three pieces of material that it now objects to under this category would cause any actual prejudice.

In any event, none of the material the Team asks to be redacted comes close to meeting the standard for striking pleadings, let alone sealing them.  "Most courts hold that Rule 12(f) motions to strike impertinent or scandalous matters should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09CV123 (JCC), 2009 WL 2160451, at *4 (E.D. Va. July 17, 2009). It is difficult to understand why the Team believes that the three pieces of text it points to are so "scandalous and immaterial" that they must be redacted, when they can have no practical effect in this no-longer live proceeding.  Further, none of the passages name particular individuals, and they plainly meet the low bar of relevance to the subject matter of this litigation and Ms. Wilkinson's defense.

The Team makes much of its status as a nonparty to argue that there is no reason allegations about the Team and related individuals should be treated the same as allegations about Ms. Wilkinson.  Objections at 22–23.  Judge Davis was right, and the Team is wrong.  Courts have recognized that for the public to engage in "public oversight of the courts, including the processes and the outcomes they produce," *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014), the public needs equal access to filings presenting all sides of the issues before the tribunal. *See United States v. Rodriguez*, No. 2:04-cr-55, 2006 WL 8438023, at *2 (D.N.D. June 29, 2006) ("If these four

documents were unsealed, and the media were to report solely on the information contained within them, it would present an incomplete and possibly prejudicial version of the motions.").

The principles underlying the rule of completeness also support Judge Davis's rulings. The purpose of the rule is "to ensure that a misleading impression created by taking matters out of context is corrected." *Hensley v. Hooks*, No. 1:19-CV-114-FDW, 2020 WL 2062310, at *2 (W.D.N.C. Apr. 28, 2020) (quotation omitted). It applies when "some clearly identifiably unfairness would exist without allowing the party that would be prejudiced the opportunity to offer information that would clarify or explain" the information presented by the opposing party. *United States v. Bailey*, 322 F. Supp. 3d 661, 675 (D. Md. 2017). Although the issue here is not one of admissibility of evidence, the same principles of equity and fairness apply: either the Court should redact all accusations—including those about Ms. Wilkinson—or it should stick with Judge Davis's instructions that such accusations are not to be redacted, regardless of whom they concern, except to the extent (unlike the 11 unredacted passages in question in the Team's objections) they contain other material that is subject to redaction.

### C. Comments on Individual Passages Identified in the Team's Chart

Below we respond to the Team's discussion of the passages that it seeks to have redacted. We have copied the text in the "Court's Unredactions" column to match the Team's appendix.

### 1. Purported "Privileged Communications Between the Team and Defendant"



| | |
|---|---|
| ████████████████████████████<br>███ nd Ms. Wilkinson was therefore permitted to speak to any employees who had previously ████████ | |
| **Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction (Dkt. 61) at 2:**<br><br>"Conveniently, rather than obtaining any written memorialization of that authority, Wilkinson claims that she had a conversation ████████████████████ ████ would generically waive ████████" (quoting Defendant's Opposition to Motion for Preliminary Injunction at 8). | This general description of ████████ to waive confidentiality provision—in this case *placed into the record* by ████████ former lawyer Mr. Donovan—are not protected by the attorney-client privilege. |

## 2. Ms. Wilkinson's Purported "Work Product and Mental Impressions"

| **Court's Unredactions** | **Judge Davis's Rulings Were Correct** |
|---|---|
| Defendant's Opposition to Plaintiff's Motion to Seal Case (Dkt. 46-2) at 2-3:<br><br>"And it comes on the heels of ████████ recent efforts to ████ ████████ silence and non-cooperation with ████████ investigation, as documented and rebuffed by Brendan Sullivan of Williams & Connolly LLP." | As discussed above, these are not mental impressions from Ms. Wilkinson's prior representation of the Team. The passage derives from a conversation with Mr. Sullivan, ████████████████ . |
| Defendant's Opposition to Plaintiff's Motion to Seal Case (Dkt. 46-2) at 9-10:<br><br>"Moreover, to the extent Mr. Donovan is attempting to obliquely raise the privacy interests of ████████ his doing so is yet another indication (among the others noted in Ms. Wilkinson's Prehearing Memorandum) that he is improperly bringing this litigation as a proxy ████████████ reputation by obstructing the independent investigation designed to uncover the truth ████████ , among other issues." | Ms. Wilkinson's characterization to the Court of the motivations behind *present lawsuit* against her cannot possibly be privileged or protected by the work product doctrine. |
| Tr. of Closed Hrg. of Jan. 8, 2021 at 29:8-10:<br><br>"That's what we have here. We have defendant's impression that, ~~that~~ ████████████████████ " | This is text that *the Team itself* placed on the record. The Team's characterization of Ms. Wilkinson's defense cannot possibly be privileged or protected as Ms. Wilkinson's work product. |

## 3. Purported "Matter Subject to ████████████ Involving Third Parties and ████████████ Concerning the Same"

| **Court's Unredactions** | **Judge Davis's Rulings Were Correct** |
|---|---|
| Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 55) at 29:<br><br>"Finally, the public interest weighs firmly against issuing a preliminary injunction here. The public has a legitimate, statutorily-recognized interest in the content of lawsuits involving allegations of misconduct in the workplace. This is particularly true for suits implicating organizations that are headed by public figures and play | This text provides no particulars about ████████<br>████████████████████████████████████████ |



a prominent role in the community… This is not an ordinary contractual dispute between private parties. ▮▮▮

The sentence in red is key context for Ms. Wilkinson's side of the story. When the Team accuses her of such things as "violat[ing] the professional rules of conduct" (Jan. 8, 2021 Tr. at 23:10–11), "disparag[ing] the client," (*id.* at 34:17), "turning against [her] client" (*id.* at 34:20-21), acting out of "spite" and "improperly cast[ing] one in a derogatory light" (*id.* at 38:18-20)—in passages that Judge Davis ordered unredacted in its March 10 instructions—it is key for the public to know that such attacks come in the context of ▮▮▮ then she would not oppose redacting the sentence in red from Dkt. No. 55 at 29; otherwise that sentence should be unredacted.

Plaintiff's Reply re: Motion for Preliminary Injunction (Dkt. 61) at 1, 5 6

"New information contained in the Opposition, and its declarations, confirm beyond question that attorney Beth Wilkinson acquired confidential information based upon a knowingly false representation she made ▮▮▮ that Pro-Football, Inc. ("PFI") had authorized her to represent that PFI ▮▮▮ had waived their confidentiality rights ▮▮▮ …

In fact, Wilkinson had no basis ▮▮▮. Certainly, once ▮▮▮ advised Defendant's partners on ▮▮▮ that counsel for ▮▮▮, Wilkinson must have known ▮▮▮ participation in an interview would be in direct violation of her obligations ▮▮▮ and that ▮▮▮ Wilkinson's representation to ▮▮▮ client, ▮▮▮ instructions, and to further make a representation based upon a purported oral communication by ▮▮▮ (who Wilkinson contends was ▮▮▮ her client) ▮▮▮ discussed, is inexplicable and is firm evidence of her tortious intent.

Wilkinson went to great lengths to secure an interview with ▮▮▮ in order to unearth ▮▮▮ of ▮▮▮ which Wilkinson immediately shared with ~~the League~~. And, she did so

The Court ordered the word ▮▮▮ redacted " ▮▮▮ Nov. 25 Order (Dkt. No. 68) at 1. ▮▮▮ does not; it is ▮▮▮.

Nor do the references to ▮▮▮

| | |
|---|---|
| knowing that Donovan remains subject to binding confidentiality obligations owed to ███ … | |
| Tr. of Closed Hrg. of Jan. 8, 2021 at 38:23-25, 40:14-17:<br><br>███████████████████████████ (quoting Defendant's Prehearing Memorandum)<br>…<br>"I don't know how you can read a statement that when someone is, it says through private attorneys, ███████████ how that doesn't disparage someone's client. | These statements are not references to or characterizations ████████████<br><br>The Team's belief that this statement is false is not a valid ground for redaction. *See* Jan. 8, 2021 Tr. at 57:23-24. If it were, then the Court should also redact the malicious accusations against Ms. Wilkinson, all of which are false. |

### 4.  Purported "Scandalous and Immaterial Allegations About Non-Parties"

| Court's Unredactions | Judge Davis's Rulings Were Correct |
|---|---|
| Tr. of Sealed Proceedings of Nov. 20, 2020 at 14:21-25:<br><br>"In our cases, our redactions are very, very limited. It's the name of ████████████████ about what I discussed early in this hearing, and it's the, the nature of ████████████████████████ | This text does not refer to ████████████. To the contrary, it expressly obscures ████████████ There is no basis for redaction. |
| Tr. of Closed Hrg. of Jan. 8, 2021 at 38:22-25; 40:14-17:<br><br>███████████████████████████ (quoting Defendant's Prehearing Memorandum)<br>…<br>"I don't know how you can read a statement that when someone is, it says through private attorneys, ███████████ how that doesn't disparage someone's client." | This text, which quotes the Team's attorney repeating a passage in an earlier filing, makes no reference to ████████. The Team's only argument is that the allegation is "needlessly scandalous" and "false." This is not a basis for redaction. *See* Jan. 8, 2021 Tr. at 57:23-24. If it were, then the Court should also redact each of the accusations against Ms. Wilkinson. |
| Defendant's Opposition to Plaintiff's Motion to Seal Case (Dkt 46-2) at 9-10:<br><br>"Moreover, to the extent Mr. Donovan is attempting to obliquely raise the privacy interests of ███████, his doing so is yet another indication (among the others noted in Ms. Wilkinson's Prehearing Memorandum) that he is improperly bringing this litigation as a proxy ████████████████████ reputation by obstructing the independent investigation designed to uncover the truth ███████████████ among other issues." | This text also makes no reference to ████████████████ is redacted all three times. The idea that "contextual clues" could permit the public to piece together a negative narrative about ████████ is not the applicable standard. There is no reason ████████████████████ should be concealed from even the slightest risk of purported contextual clues. This is particularly so because Ms. Wilkinson—dragged into Court ████████████ has been the subject of express and direct attacks. |

**IV.    Conclusion**

  Judge Davis did not err in ordering the 11 passages in question to be unredacted.   The

Team's objections should be denied.


Dated: May 4, 2021      Respectfully submitted,

             Beth Wilkinson


             By: */s/ Thomas G. Connolly*
             Thomas G. Connolly (VA Bar No. 29164)
             Thomas B. Mason (*pro hac vice*)
             Jared Paul Marx (VA Bar No. 91213)
             HARRIS, WILTSHIRE & GRANNIS, LLP
             1919 M Street NW, 8th Floor
             Telephone: (202) 730-1300
             Fax: (202) 730-1301
             tconnolly@hwglaw.com
             tmason@hwglaw.com
             jmarx@hwglaw.com

             *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true copy of the foregoing to be served by

ECF on all parties.

Dated: May 4, 2021                           */s/ Thomas G. Connolly*
                                                  Thomas G. Connolly

# EXHIBIT 1

| | |
|---|---|
| **From:** | Toni Coleman |
| **To:** | Sarchio, Christina; Hinger, Cathy; Thomas Connolly |
| **Cc:** | lela.ames@wbd-us.com; Jared P. Marx |
| **Subject:** | Feedback on redactions--20-cv-1344 Donovan v. Wilkinson |
| **Date:** | Tuesday, January 19, 2021 5:03:33 PM |

Counsel,

After reviewing the proposed redactions submitted to the Court on Jan. 14, Judge Davis asked me to convey his concerns that the proposed redactions go beyond his ruling and do not comply with the standard for sealing documents. He asked me to send you a clarification of his holdings to use as guidance as you work to further refine the redactions.

The judge's November 25, 2020 ruling sought to redact the phrases "settlement" and "settlement agreement" ███████████████████. As such, the redactions of those generic terms, outside ███████████, do not comport with his ruling. Parenthetical information referencing the holding of caselaw should not be redacted simply because they speak to confidential agreements.  References to "written report" should not be redacted.  References to general terms like "confidential" or "confidential information," "report," "incident," etc. should not be redacted.

Judge Trenga unsealed the case, so much of the information in the Complaint should not be redacted. For example, allegations against Ms. Wilkinson that do not involve facts about her investigation should not be redacted. Also, resumes or CVs of experts and portions of their reports that simply cite to professional responsibility rules and other legal authority should not be redacted.

Please use this note, the document discussed at the last hearing, and the November 25, 2020 order as your guide as you work to further minimize the redactions and submit new documents to Judge Davis as soon as possible. If you have any questions, feel free to contact me.

*Toni Coleman*
**Law Clerk to the Honorable Ivan D. Davis**
United States District Court for the Eastern District of Virginia
Albert V. Bryan Courthouse
401 Courthouse Square
Alexandria, VA 22314
(703)299-2218

# EXHIBIT 2

| | |
|---|---|
| **From:** | Toni Coleman |
| **To:** | Hinger, Cathy; Thomas Connolly; Sarchio, Christina; lela.ames@wbd-us.com; Jared P. Marx |
| **Subject:** | Donovan v. Wilkinson redactions |
| **Date:** | Wednesday, March 10, 2021 2:43:32 PM |
| **Attachments:** | Donovan v. Wilkinson redaction notes.docx |

Counsel,

Judge Davis has reviewed all of the proposed redactions you've submitted to the Court. Attached, please find a list of redactions he is denying because they do not comport with his earlier rulings. Judge Davis would like for you to update the documents in accordance with the attachment by close of business a week from today.

What do you do with the properly redacted documents once you're done?  As for any hearing transcripts, please send those to me, and I will see that the court reporter uploads them. I'm hoping you can file the other documents to CM/ECF so that they link back to the original sealed document currently on the record, but I'm still coordinating that with the judge and the Clerk's office. I'll be in touch.


*Toni Coleman*
**Law Clerk to the Honorable Ivan D. Davis**
United States District Court for the Eastern District of Virginia
Albert V. Bryan Courthouse
401 Courthouse Square
Alexandria, VA 22314
(703)299-2218

*No Redactions for:*

**Plaintiff's Confidential Memorandum in Support of Redactions and Sealing 30 Nov Hearing**

No redactions for: p.2, 1st full para, line 5 "with and attempt to publicly disclose the," and line 10 "released by the."

**Plaintiff's Confidential Reply to Opposition to Seal the Case**

p.2 line 5 "and her rebuke of the instructions," p.6 line 3 "provisions here have been followed for over," and line 4 "the confidentiality protects," p.11 lines 2-3 "that she is second-guessing and calling into question the veracity and propriety of" Plaintiffs," and line 4 "that this very lawsuit is an abuse of process, intended only to obstruct," and line 6 "including whether Plaintiff properly handled," and line 7 "'lacked independence,' whether Plaintiff's" and lines 8 & 9 "obstruction of the" and "efforts . . .the truth."

**November 20 Transcript of Motion Hearing**

Redo is okay.

**November 20 Transcript of Sealed Portion of Motion Hearing**

p.5 line 3 "that protects the," and line 7 "is a contract," and line 15 "is ambiguous?" p.6 lines 8-13, except "          ," "                    ," and "            ," and lines 14-20 "



                ," "SC          ," "          ," "                                ".

p.6 lines 9-11 "it by falsely," "that there was a," "when there was not,".

p.8 line 5 "about her," p.9 lines 6-8 "by interfering with my," "she's going to submit that to," "which we expect will then turn it over to," p.10 line 9 "She is not obligated pursuant to the terms of," p.14 line 23 "and it's the, the nature of," and line 24 "              ,".

**Verified Complaint (generally no redaction of accusations and opinions of one party against the other concerning their conduct, including but not limited to the following statements):**

No redaction of "it or any" or "related to it" in last 2 lines of p.1, "acknowledge her wrongful position and retract her request," in lines 4 and 5 (p.2), "intentionally induced at least one party to the" and "by speaking about" and "coerced this breach by falsely telling this party that" and "would not be effective because" (para 2, lines 1-3 and 5), and "misleading and intended to induce a breach of" (para 2, last 2 lines), and highlighted information on p.3, line 1, "achieved by unethical and deceptive means" in para 5, line 3 and "unauthorized and improper" line 8.

Also, no redaction of "that led up to it" in para 4, line 4, "figures" in last line; "violating in her representation of her other client," para 5 lines 10& 11, "abandonment of her duty of privilege to her original client," "conflict," and "withdrawing as counsel for" in last 3 lines of para 5.

No redactions in para 29, 1ˢᵗ 2 lines except "███████." No redactions for references to Wilkinson's "misrepresentations" throughout, beginning at para 33, "wrongfully elicited" and "Wilkinson's wrongdoing" in last 4 lines of para 41, "outside the scope of her authorized representation" and "improper means, namely fraudulent misrepresentations" in para 55, "deliberate bad faith and malicious intent in inducing" and "in inducing" in paras 57&58, "misconduct" and "wrongful conduct" in paras 62-64, and "misuse" in para 70.

**Wilkinson's Opposition to Plaintiff's Motion to Seal Case**

No redaction of "████████████████████" and █████████████████" in first 2 paras on p. 2, "sports team" on last line of p.3, and "███████████████████" in 3ʳᵈ line p.10.

**Opposition to Motion for PI**

No redaction of highlighted info. In 2ⁿᵈ full para on p.3 except "████████." No redaction for phrases "former employees" and "the contract" throughout, "tricking of" in Relief Requested para on p.22, "facts that are central to her representation" in Balance of Hardships section on p.26, "by public figures and play a prominent role in the community" in section E. on p.27, highlighted section of 1ˢᵗ 2 lines of last full para on p.28 as well as last sentence in same para, and highlighted portion of last 3 lines before Conclusion on p.29.

**Submission by Wilkinson to Correct Record**

No redaction of general phrases and terms such as "ceased to represent," "no longer represented," "remained her client," "still represent," "does not presently represent," as well as the phrases "it was clear that the evidence contradicted that position," and "this omission was misleading and cast the exchange in an incorrect manner."  *To be sure, and to once again reiterate to the parties, their legal positions and opinions of parties and possible witnesses in the underlying litigation concerning the actions of others as set forth in ANY of the documents in question may cast them in an undesired light;  but, they are not redactable.*

**8 Jan 2021 Transcript of Closed Hearing**

No redaction for references to an investigation being "conducted," as well as general references to "allegations," "alleged events," "defenses," "client," p.23 lines 10 & 11 "frankly, in violation of the professional rules of conduct," and lines 12 & 13 "All of the information that we shared with the lawyer is now in the public domain," p.29 lines 9 & 10 references about █████████████████, p.31 lines 2 & 3 "legal interests were at odds with one another at that juncture."  Nothing on p. 34 should be redacted except for the phrase "████████," as in all other documents.  No redaction for highlighted information on p. 35 lines 12-14, references to turning on client, representation of client, or how client may be feeling on p. 37, highlighted information on p. 38 lines 19-20 and 23-25, anything on p. 39 except for ███████," p. 40 lines 15-17, the phrase "directly implicated" used throughout, p. 47 lines 22-23, p. 49 lines 2-5, p. 51 lines 13-15 except "███████," and p. 57 lines 18-20 except "███████."

**Plaintiff's Reply to Defendant's Opposition to Motion for PI**

No redaction of "to ████ lawyer" on p.1 and other references to ██ and ██ counsel, "rather than obtaining any written memorialization of that authority" and claims that Wilkinson had conversations ████████████████████████, on p.2, except for ██████ and ██ general references to "the matter," Wilkinson's "client" or that she is or was "counsel for," except redacting ████████ throughout the document, references to Wilkinson's ethical obligations and general terms such as "discussed," "instructions," "inexplicable," "to release," "secure," "versions," etc.

**Pro-Football's Motion to Seal and for Reconsideration**

No redaction of Wilkinson's or anyone else's motives or intent in doing things, phrases such as "common-interest," "other executives," "scandalous," "improper," "extraneous," serving to "cause prejudice," "false and misleading information," and other terms and phrases which simply represent someone's opinion about another's actions.

**Plaintiff's Response to above**

No redactions for information noted above as well as information related to disputes Wilkinson may have had with her clients ████████ except redaction of ████████, general phrases like "her firm still represented," airing disputes in other court actions, and "in support of her impertinent accusations."

**Donovan Declaration**

There should be no redactions concerning Mr. Donovan's opinions about adverse interests, conflicts of interests, relationship between Wilkinson and ████████, possibility of ████████ suing him (obviously the word ████████ in all circumstances is redactable), dates and times Wilkinson called or spoke to him (except year), employee trust, and Wilkinson's being counsel and reporting to ████ (except the term ██).

**Chirite Declaration**

No redactions for understandings concerning employees or former employees rights to speak freely, etc., (except the term/phrase "████████████████████"), mentioning of copies or storage of copies of materials (except term "████████████"), anyone's intentions or desires to disclose information (except reference to ████████████████).

**A. Bolden Declaration**

No redactions for references to a Karen Poop and fact letter was sent or received.

**Expert Materials**

Redactions for ████████████████████████. No redactions for purpose of reports (except ████████████) or expert opinions.

**Donovan's Emergency Motion for TRO**

No redactions in paragraph starting with the word Fourth on p. 4 except terms
███████████████████████ .

**Confidential Memo in Support of Plaintiff's Motion to Seal Case**

No redaction of general terms and phrases such as "resolved serious, contested, scandalous allegations," "risks disclosure of the very allegations and content," "facts and circumstances leading up to," and "any litigation filings made to enforce it must be filed under seal."